Affidavit of Rick Ojeda

I, Rick Ojeda, state as follows:

1. I am a former FBI agent and police officer with over 25 years of investigative experience. I own and operate Orion Security & Investigations Inc., a full service investigative and consulting firm located in Austin, Texas. I am a licensed private investigator, Texas license # C10121.

2. I have been retained as an investigator by counsel to Sherman Fields, Jeff Ellis of Ellis, Holmes & Witchley.

3. On December 19, 2008 I interviewed Homero DeLeon, an inmate currently residing at the Federal Correctional Institution ("FCI") – Low, Yazoo City Mississippi. Peter Isajiw, also counsel to Sherman Fields, accompanied me at this interview.

4. In preparation for this interview I reviewed several documents provided to me by counsel including: (1) DeLeon's trial testimony; (2) Documents related to DeLeon's various sentence reductions; (3) a February 12, 2003 letter from DeLeon to Mark Frazier, Chief Assistant U.S. Attorney and Greg Gloff, attached as Exhibit A, and; (4) A report of a November 13, 2003 Interview of DeLeon by Assistant United States Attorney (AUSA) Gregory Gloff and Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF), Special Agent (S/A) Douglas J. Kunze, attached as Exhibit B.

5. Several topics were discussed during the interview. Most of what DeLeon said about these topics was inconsistent with his trial testimony. In addition, DeLeon's version of events changed during the course of our interview with him.

6. We asked DeLeon how he came to be a witness at Fields' trial.

7. In response, DeLeon gave two somewhat contradictory explanations.

8. In his initial description, DeLeon explained that he approached Fields while they were together at FMC Fort Worth. DeLeon explained that he initially solicited information from Fields concerning the events surrounding the murder of Suncery Coleman.

9. DeLeon explained that after Fields provided him with information, DeLeon immediately contacted AUSA Gloff by letter and later met with AUSA Gloff. After DeLeon's contact with AUSA Gloff, DeLeon sought additional information from Fields by attempting to have several additional conversations with him. According to DeLeon, he would write down the substance of each conversation on a piece of yellow legal pad and immediately forward it to AUSA Gloff.

10. Later in the interview, DeLeon changed his story and explained that prior to his first meeting with AUSA Gloff, DeLeon met with Fields on several occasions, recorded

the contents of the conversation on a piece of yellow legal pad paper, and then sent all of his notes (along with a summary) to AUSA Gloff.

11. Mr. DeLeon did not clarify these differences for us.

12. In any event, DeLeon insisted that he sent AUSA Gloff a package of approximately 10 or 11 pages of notes that he took of his conversations with Mr. Fields.

13. When asked what Mr. Fields told him about the crimes, DeLeon stated that Fields escaped from the jail by crawling through a vent, carjacked an old lady and drove to the hospital, picked up his girlfriend, and then drove her to a deserted location where he shot her. Deleon indicated that these details would be contained in his notes.

14. The topic of DeLeon's notes was discussed several times, and in several ways during the interview. Unlike other aspects of our conversation, each time DeLeon described the notes consistently. He asserted that the notes contained several details of the purported conversations, including the caliber of gun used, the names of people mentioned in conversations and other details about the shooting. DeLeon explained that without those notes, he would not have been able to remember all the details.

15. The details allegedly contained in DeLeon's notes are not contained in S/A Kunze's interview notes. This is significant because it is standard investigative procedure to note details like these if they were discussed during a witness interview.

16. DeLeon consistently told us that he sent all his notes to AUSA Gloff without retaining a copy.

17. DeLeon denied asking for or being offered any "time cut" or other benefit in exchange for his testimony. DeLeon persisted in his denial of requesting or being offered a "time cut" even after it was pointed out to him that he actually received one.

18. Also among the topics of discussion during the interview was the number of meetings DeLeon had with representatives of the prosecution team before trial. Deleon remembered two meetings, one in November of 2003 with AUSA Gloff and S/A Kunze at the U.S. Bureau of Prisons (BOP), Three Rivers and another, closer to the time of trial with AUSA Snyder at a facility DeLeon described as in "downtown Waco."

I declare under the penalty of perjury that the foregoing is true and correct.

2/27/09, GEORGETOWN
TEXAS

Date and Place                    Rick Ojeda

Anna Jackson
My Commission Expires
03/13/2010