The Hon. Walter S. Smith, Jr.

# IN THE UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>　　　　　Plaintiff,<br><br>　　v.<br><br>SHERMAN L. FIELDS,<br>　　　　　Defendant. | NO.　W-01-CR-164<br><br>MOTION TO COMPEL<br>REASONABLE COMPENSATION<br>OF COUNSEL<br><br><br>* **THIS IS A CAPITAL CASE**<br>*Oral Argument Requested* |

## MOTION

Mr. Fields is entitled to counsel.

Counsel is entitled to reasonable compensation for work done in defense of Mr. Fields.

This Court, by denying counsel compensation for most of the work done already *and* for all of the work left to be done in this case, is functionally denying Sherman Fields the right to counsel.

Thus, Mr. Fields respectfully requests that this Court reconsider its earlier orders denying payment of several outstanding vouchers and refusing to authorize payment for any additional work on this case.

To be clear, undersigned counsel respects the authority of this Court to determine the reasonableness of counsel's vouchers. However, counsel must be given an

Motion re: Denial of Counsel--1

opportunity to demonstrate the reasonableness of his outstanding vouchers based on the facts and circumstances of this case. Just as importantly, it is patently unreasonable to refuse to pay counsel for any future work in this case.

Counsel seeks an opportunity to present additional facts and argument in support of this motion. However, because providing additional support this motion requires counsel to reveal work product, the hearing should be conducted *ex parte*.

## FACTS

1. <u>Introduction</u>

Mr. Fields was convicted of numerous crimes and is under a death sentence. Through counsel, Mr. Fields has prepared and filed a § 2255 motion seeking to overturn both his convictions and death sentence. In fact, counsel filed two motions—one on January 14, 2009, and an expanded pleading on March 1, 2009.

As of this writing, the Government has been given more than a year (and almost 14 months from the initial filing) to complete and file its *Answer.* This Court has repeatedly granted without comment the Government's requests for additional time, which argued that additional time was necessary in order to respond to the numerous issues raised in Mr. Field's motion. Implicit in the Government's requests for additional time and this Court's decision to grant those motions is the recognition that this case is complicated and requires an extraordinary amount of work for both parties. Indeed, allowing over one year for the Government to answer a capital § 2255 petition is virtually unprecedented. Indeed, counsel does not know of any case where this Court has granted that amount of time for the Government to respond. To be clear, Fields does

Motion re: Denial of Counsel--2

not contest the continuances.  Further, Fields is assured that the Government has been diligently working on this case.  Instead, the amount of time requested by the Government demonstrates the extraordinary amount of work this case requires.

2.      Appointment Decision

This Court appointed undersigned counsel to represent Mr. Fields in these proceedings.  This Court's appointment order notes it found that Mr. Ellis was fully qualified to represent Mr. Fields "with due consideration to the seriousness of the penalty imposed and to the unique and complex nature of the litigation."  Mr. Ellis has been an attorney for over 22 years.  He has been involved in the representation of capital defendants for almost 15 years.  He has extensive experience in habeas corpus litigation, including representation in the Northern District of Texas of a prisoner under a state death sentence.   He is a member of the Texas and Washington bars.  He previously practiced in Texas and taught at the University of Texas Law School.  Prior to this case, he has never had a CJA voucher reduced or denied.

This Court's order also appointed Robert Owen; indicated that each of them would be paid $170 an hour for their work; and authorized interim payments.  Mr. Owen later withdrew and has not billed for any of his work.  This Court's appointment order also authorized the *pro bono* appearance of Cadwalader, Wickersham, and Taft, LLP.

Thus, Mr. Ellis is the only attorney on this case with death penalty experience.  He is also the only attorney who has or intends to submit a voucher to the Court for work on this case.

Motion re: Denial of Counsel--3

3.       *Ex Parte* Requests for Funds and Response to Requested Budget

One of Mr. Ellis' first requests to this Court was to authorize funds for the appointment of an investigator.  In that motion, Mr. Ellis sought up to $10,000 in order to retain an investigator.  In a supporting document filed under seal because it contains the work product of counsel, Mr. Ellis set forth in detail the need for an investigator and the types of tasks he sought to have the investigator perform.  During this same time, Mr. Ellis inquired whether the Court would like counsel to submit a proposed budget, detailing his expected work, as well as his need for expert assistance.

Seeking funds for an investigator is a common request in any § 2255 case, capital or otherwise.

In a letter dated June 6, 2008, this Court began by stating: "You have certainly renewed my reason for not appointing out-of-state 'death penalty experts.'"  The letter then stated that counsel needed to "get a budget approved" and questioned why he needed an investigator "to file a Section 2255 petition which should only involve legal issues."  The letter ended with: "I will await your response before deciding whether I need to correct my decision to appoint you."

As requested, on July 21, 2008, Mr. Ellis filed a proposed budget.  The 14-page budget noted post-conviction counsel's duty to thoroughly investigate both the guilt and penalty phase stages of the case; requested funds for investigative and expert services; and set forth an educated guess regarding the amount of time that counsel would need to spend on the case prior to the initial filing of the petition.  The motion stated:  "Mr. Ellis anticipates that he will spend approximately 400 additional hours preparing the *Motion* in

Motion re: Denial of Counsel--4

this case.  This estimate is based on work on the case to date, as well as counsel's previous experience in prior habeas cases, and is consistent with other budgets submitted in capital 2255 cases."

At the time, Mr. Ellis had already billed for 103 hours and had worked approximately 50 more.  Thus, counsel's total estimate was approximately 550 hours.  The cover letter further noted: "Please let us know if you have any questions that we can answer in person, in writing, or telephonically."

This Court did not rule on or respond to the proposed budget, which obviously exceeded the presumptive $35,000 cap set by the Fifth Circuit.  However, at no point did this Court indicate disapproval with the estimated number of hours for counsel's work as outlined in the proposed budget.

As a result, beginning in early September, 2008, Mr. Ellis then prepared individual motions for each of the several experts referred to in the proposed budget.  This Court denied those requests, with one exception.  The Court granted in part counsel's request for funds in order to retain a neuropsychologist.  However, the Court authorized only $1/3^{rd}$ of the amount requested by counsel.  The Court denied Mr. Ellis' requests for investigator and expert funds.  Mr. Ellis spent considerable time preparing the individual motions for each expert, given this Court's failure to rule on the proposed budget as a whole.  In other words, this task added to counsel's total hours worked.

In mid-September 2008, Mr. Ellis also filed an "emergency" motion to compel a budget ruling.  That motion noted:

Motion re: Denial of Counsel--5

After undersigned counsel was appointed and reviewed the records associated with Mr. Fields' trial (transcripts, pleadings, and various documents accumulated by the trial team), counsel moved this Court--now over four months ago--for funds for an investigator.  More than three months ago, this Court directed counsel to submit a budget for the Court to approve before continuing to work on this case.  Counsel filed that budget approximately two months ago.  This Court has remained silent regarding Mr. Fields' proposed budget, and has not ruled on any of Mr. Fields' subsequent funding motions.

Because of the limited time remaining before Mr. Fields must file his motion under 28 U.S.C.§ 2255, it is imperative that this Court act immediately to provide him with the investigative and expert services contemplated by Congress and the Supreme Court, and essential to the full and fair development and presentation of his claims for relief.

Mr. Fields has just over **four months** remaining to investigate, prepare, and file his motion for relief.  In order to discharge his professional responsibilities to Mr. Fields competently, undersigned counsel requires the assistance of an investigator and reasonably necessary experts.  Just as important, counsel needs to retain those experts immediately.

That motion concluded by urging this Court to "either promptly set an *ex parte* hearing on this motion, or immediately rule on Mr. Fields' proposed budget, including his pending requests for funds for reasonably necessary expert and investigative assistance."

At no point in these proceedings has this Court ever formally ruled on the proposed budget.

4.      Without Resources, Counsel was Required to Act as Investigator

As a combined result of the Court's initial failure to rule and its eventual denial of funding motions seeking expert services, Mr. Ellis was forced to do much of the investigation (both guilt and mitigation or penalty phase) himself.  This resulted in an increase of hours over those originally estimated.

Motion re: Denial of Counsel--6

Eventually, Cadwalader was willing to fund the most essential expert services themselves.  Thus, Cadwalader has both contributed both numerous attorney hours and funds for experts/investigators.

5.    Vouchers: Approved and Denied

Once every two or three months, Mr. Ellis submitted vouchers for his work.  This Court approved the first two vouchers without comment.  Those two vouchers totaled 250 hours.  From that time until the time the original petition was filed, Mr. Ellis worked and billed for an additional 425 hours.

In addition, Mr. Ellis sent a cover letter with each voucher.  His cover letter December 16, 2008, stated:

I have enclosed my third interim bill for this case.

I wanted to explain my expense worksheet.  First of all, I have not billed for expenses (airfare, lodging, or food) while doing work in Texas.  Instead, my expenses are limited to gas.  Second, I have cut all of my travel time billings by at least 50 %.  Finally, I have either cut or not billed for most of my expenses for a trip to New York to meet with several of the *pro bono* counsel and with a consulting expert.  This trip involved two meetings with counsel and one with the expert over the course of two days.  For example, I have only billed for a fraction of my hotel cost. I have not billed for food other than breakfast.  I certainly can provide receipts for unbilled expenses, but include only billed expenses (organized in the order on the billing sheet).

The next invoice was accompanied by the following:

I have enclosed my fourth interim bill for this case, which includes work from December 2009 and January 2009, when we filed Mr. Fields' initial 2255 petition.

As previously, I have not billed for expenses (airfare, lodging, or food) while doing work in Texas.  Instead, my expenses are limited to gas and rental car.  Second, I have cut all of my travel time billings by at least 50 %.  Finally, I have

Motion re: Denial of Counsel--7

not billed for more than 10 hours a day, despite working as many as 16 hours for a number of days leading up to the filing of the petition.

I have now billed for the majority of the work associated with investigating, researching, preparing, and writing this capital habeas petition.  Please let me know if I can assist in any way or if I have forgotten to include any necessary information.  I much appreciate your kind help.

On February 16, 2009, this Court directed the United States District Court Clerk's Office to return the submitted vouchers.  The letter indicates:  "This office has been advised that Judge Smith will not approve any additional funds on this case."

Between the initial filing on January 29, 2009, and the March 1st petition, counsel worked an additional 92 hours.

On April 6, 2009, Mr. Ellis sent the following letter to the Court:

Enclosed please find my previous two and my current invoice seeking payment for my work and expense incurred on this case.

Recently, I received a letter from the financial clerk returning my last two vouchers.  That letter further indicated that you "will not approve any additional funds on this case."  Since March 1, 2009, was the filing deadline for our § 2255 petition, this is my first opportunity to respond.

The February 17, 2009, letter indicating that you will no longer pay me for my work on this case begins with a paragraph specifically noting that when a Court intends to reduce a request for compensation and reimbursement that appointed counsel is entitled to "(a) prior notice of the proposed reduction with a brief statement of the reason(s) for it, and (b) an opportunity to address the matter."  Needless to say, I was not given prior notice.  Likewise, no reasons for the refusal to pay me were contained in the letter.  Thus, this letter attempts to answer all possible questions about my vouchers.  Obviously, if this Court wishes to communicate specific concerns, I will respond to those with particularity.

I am certainly available and willing to discuss this matter with the Court informally, whether "in person, telephonically, or electronically" as provided in the CJA Guidelines.  However, if the Court does not intend to do so and remains unwilling to approve my vouchers, I am requesting that the Court set an *ex parte* hearing to address this issue.

This Court appointed me to represent Mr. Fields.  I take the obligation to represent a death-sentenced client extremely seriously.  It is the most important work that I

Motion re: Denial of Counsel--8

do—work that I have been performing continuously for over a decade.   I also realize my obligation to work effectively and efficiently in appointed cases.  I am proud to say that no previous court has cut my fees or refused to pay me for my work.

This Court also appointed Robert Owen, who had previously represented Mr. Fields on direct appeal.  Recently, this Court permitted Mr. Owen to withdraw as a result of his conflict of interest given that an ineffectiveness claim has been raised related to his direct appeal representation.  **Mr. Owen has not and does not intend to submit an invoice for his work in this case.**

This Court further authorized the appearance of lawyers from the New York office of Cadwalader, Wickersham, and Taft, LLP (hereinafter "Cadwalader").  Cadwalader has generously agreed to provide *pro bono* assistance, which has so far included, but was not limited to: attorney time and resources, paralegal support, creating and maintaining an on-line database, and resources for expert assistance.  **As of this writing the staff at Cadwalader has worked over 3500 (free) hours on this case.**

My outstanding invoices total approximately 500 hours.  I estimate that I have not billed for an additional 100 hours.  Further, I have not billed for many of my expenses related to several trips to Waco area.  These expenses easily exceed $5000.

Mr. Fields' § 2255 petition, filed on March 1, 2009, is 226 pages long and raises over 45 separate claims of error.  Many of those claims are based, in whole or in part, on extra-record evidence developed by counsel, along with others.   In short, I believe that document ably demonstrates the scope and depth of the work that I have preformed (along with others) on this case.

This Court has previously indicated that it does not feel a § 2255 motion requires investigation.  I respectfully disagree.  A § 2255 motion is distinguished from a direct appeal by the need to conduct an investigation.   As appointed capital post-conviction counsel, the ABA Guidelines specifically instruct me that I have a professional obligation to conduct a complete and thorough review of all aspects of this case.

As a lawyer admitted to the Texas State Bar, I have a further ethical obligation not to "rely on the previously-compiled record, but must conduct a thorough and independent investigation." *Guidelines and Standards for Texas Capital Counsel*, § 12.2 (B).  See also *ABA Guidelines for Appointment & Performance of Defense Counsel in Death Penalty Cases* 128 (rev. ed. 2003) ("ABA Guidelines"), available at  www.abanet.org/legalservices.  Additionally, I could not "assume that the trial record presents either a complete or accurate picture of the facts or issues in the case." *Texas Guidelines* § 12.2 (B)(1)(c); see also ABA Guidelines at 128 ("Subsection E(3) requires that they keep under continuing review the desirability

of amending the defense theory of the case, whether one has been formulated by prior counsel in accordance with Guideline 10.10.1 or not."). Instead, I was ethically obliged to "treat the habeas corpus stage as the first and last meaningful opportunity to present new evidence to challenge the capital client's conviction and sentence." *Texas Guidelines* § 12.2 (B)(1)(c); see also ABA Guidelines at 129 ("Collateral counsel should assume that any meritorious issue not contained in the initial application will be waived or procedurally defaulted in subsequent litigation, or barred by strict rules governing subsequent applications.").

Thus, I would have violated my ethical obligations as a member of the Texas Bar if I had not conducted this investigation, not to mention my obligation to zealously represent Mr. Fields, something I am proud to do.

Earlier in this case, you requested that I submit a proposed budget. I did so, although the Court has neither responded nor ruled on it—other than to grant in part one expert request and to deny remaining requests (which were also presented in separate motions). In that document I estimated that I would spend approximately 400 hours (in addition to what I had already billed) preparing the motion in this case. I exceeded that estimate by 100 hours. However, those 100 hours were spent on preparing a second pleading, something not contemplated at the time of my original estimate.

Further, my earlier estimate assumed that I would be provided various investigative services, including an investigator, a mitigation specialist, a forensic scientist, and various mental health experts. This Court did not provide funds for those services. As a result Cadwalader provided out-of-pocket funding for the expert assistance that we deemed most necessary. However, my workload was increased both as a result of having to make several requests for experts and having to personally conduct investigation for various guilt and penalty phase tasks.

For example, there were a large number of witnesses who needed to be interviewed. These included witnesses not interviewed by the trial team, who were relevant to either the guilt or penalty phases of trial, or both. In some instances, thanks to funds provided by Cadwalader, I was able to assign these tasks to an investigator. However, in a number of other instances, I needed to conduct the interviews. These witnesses were scattered across Texas. In addition, I interviewed members of the trial team, a large number of witnesses who testified at trial, family members and other "mitigation" witnesses, and jurors. I also met with the Cadwalader lawyers and one of our experts, Dr. George Woods, at the offices in New York, given that Dr. Woods was in the city for an on-going trial. In short, as a result of this Court's denial of our funds request, I was forced to conduct a great deal of investigation not normally accomplished by a lawyer.

Despite having to perform numerous tasks normally conducted by an investigator or mitigation specialist, my total hours appear to be consistent with invoices

Motion re: Denial of Counsel--10

submitted in other federal capital § 2255 cases.  I have spoken with a number of capital § 2255 lawyers around the country.   My billed hours, although on the high side, are within the range of hours billed in these cases.  If you would like I can attempt provide you with total hours billed in other capital § 2255 cases.  I can also send you a declaration from member of the capital habeas resource attorneys describing capital § 2255 practice across the country.

Finally, I can assure you that I always conducted my work in good faith.  I greatly appreciate your decision to appoint me to represent Mr. Fields.  I respectfully request that you approve the enclosed vouchers.

(emphasis in original).

Once again, the Court did not respond.  Eventually, counsel contacted the Court by phone.  The Court indicated that any hearing would be a useless act, albeit one that the Court was willing to entertain, because the Court believed Mr. Ellis' work was "excessive."  On July 20, 2009, Mr. Ellis wrote another letter to the Court:

Recently, you indicated that you 'will not approve any additional funds on this case.'

I am writing to inquire whether your statement applies to any work that I have performed or will need to perform from the time that our habeas petition was filed throughout the completion of this case in this Court.

The Court responded by stating:

You have charged more than any CJA attorney since I have been on the federal bench (1984).  CJA atty's are expected to understand that they are potentially *pro bono.*  Do not ever apply for appointment in the Western District of Texas.

Since that time, counsel has worked approximately 50 more hours on this case, including a meeting with Mr. Fields at USP Terre Haute.  Mr. Ellis does not intend to bill for this time.  Likewise, he does not intend to include any time litigating this payment issue in any voucher.

Motion re: Denial of Counsel--11

6.    The Government's Repeated Requests for Additional Time

When Mr. Fields' petition was filed, this Court gave the Government 60 days to file an answer.  Thus, the Government's *Answer* was initially due in early May 2009.

On May 4, 2009, the Government sought an addition 120 days to file its *Answer.* The Government's motion for additional time stated: "Because the Movant's petition is quite voluminous and contains numerous grounds of error, the United States requests additional time to properly research and gather information necessary to prepare an adequate response."  Mr. Field's did not object.  This Court granted the motion without comment.

The Government did not file its *Answer* on September 7, 2009.  Instead, once again the Government sought additional time.  Once again, the Government stated that, "(a)fter reviewing Movant's petition, which is quite voluminous and contains numerous grounds of error, the United States requests additional time to research and gather information necessary to prepare an adequate response."  "The United States Attorney's Office requests additional time until December 7, 2009 to file said response."

This Court granted the Government's request for additional time.

On December 1, 2009, the Government sought its third extension of time—until March 1, 2010.   The motion states: "After reviewing Movant's petition, which contains over 200 pages and approximately 50 grounds of error, the United States requests additional time to research and obtain affidavits and gather information necessary to

Motion re: Denial of Counsel--12

prepare an adequate response. The undersigned has been working diligently on the response, however, is involved in other cases and investigations."

This Court granted the Government's motion on December 3, 2009 giving the Government until March 1, 2010, to file its response.

7.    Reply

Once the Government files its *Answer,* Mr. Fields intends to file a reply. Obviously, only after reading the *Answer* can counsel estimate the number of hours required in order to file that document.  However, the amount of work required will most likely be significant.  At this juncture, this Court refuses to pay counsel for any work.

Counsel is willing to submit a proposed budget for the reply and again for an evidentiary hearing.

8.    Conclusion

Petitioner now brings this motion.  To be clear, undersigned counsel is willing to discuss the reasonableness of any and all aspects of the invoices he has submitted.  In addition, counsel will, if permitted, provide further support for the amount of work performed in this case.

**ARGUMENT**

1.    Introduction

The law guarantees a death-sentenced federal prisoner meaningful assistance of counsel prior to and in support of a motion for relief under 28 U.S.C. § 2255. Meaningful assistance of counsel can only take place where counsel is reasonably

Motion re: Denial of Counsel--13

compensated for work performed.  A determination of reasonableness varies from case to case—based on the unique requirements of the particular case.  While "caps" are helpful, the work performed by a particular attorney in a particular case must be evaluated individually.

The work already performed by counsel in this case was reasonable.

Nevertheless, counsel has not been paid for most of that work.

There is likely a great deal of work that will need to be done investigation, researching, and preparing the reply brief in this case.  However, this Court has already indicated that it will not compensate counsel for *any* of that work.

As a result, this Court is denying Mr. Fields the right to counsel.

2.      The Right to Assistance of Counsel Includes the Right to Reasonable Payment of Counsel.

Mr. Fields recognizes that authorization for expenditures of public funds to assist in preparation of a defense is not the traditional work of judges. There is ordinarily no adversary to challenge the request and there is no evidentiary context within which the reasonableness of it may be evaluated.

Mr. Fields further recognizes that a judge reviewing the reasonableness of vouchers has sometimes competing duties.  The judge, as gatekeeper for the fisc, has a ministerial duty to exercise restraint.  On the other hand, the judge as protector of due process necessary for a fair proceeding, must indulge the defense all benefit of every doubt.

Motion re: Denial of Counsel--14

The posture of a § 2255 motion only serves to complicate matters given that such a petition often challenges actions taken by and decisions made by the same trial judge who controls the purse-strings.  However, post-conviction counsel has an acknowledged duty to advance any and all potentially meritorious claims.  This is especially true in a capital case.

Ultimately, the reasonableness of requested payment turns on the facts in a particular case.

A death-sentenced federal prisoner is entitled to counsel in order to investigate, research, prepare, file, and defend a motion for relief under 28 U.S.C. § 2255.  *See* 18 U.S.C. § 3599.  This right to appointed counsel attaches prior to the filing of a formal, legally sufficient *habeas corpus* petition. *See McFarland v. Scott*, 512 U.S. 849, 855 (1994) (right to counsel for *habeas corpus* proceeding attaches when motion requesting *habeas* counsel filed).

A defendant unable to pay for his defense is in different circumstances than a defendant who is able to retain his own attorney. He must rely on the court's authority under the Criminal Justice Act, 18 U.S.C. § 3006A, for payment for counsel, investigators, experts and any other services necessary for adequate representation pursuant to plans approved by the judicial council of each circuit under the supervision of the Director of the Administrative Office of the United States Courts within guidelines promulgated by the Judicial Conference of the United States.

The Criminal Justice Act, 18 U.S.C. § 3006, *et seq.,* establishes a maximum amount of compensation a court may award appointed counsel in an ordinary case. *See* §

Motion re: Denial of Counsel--15

3006A(d)(2).  A court may enlarge the maximum fee only when a case is "extended or complex."  *See* § 3006A(d)(3). Whether a case is "extended or complex" is a matter of interpretation, but precedents exist.  Whether a case is "extended or complex" is determined by use of the criteria set out in the following paragraph:

> After establishing that a case is extended or complex, the approving judicial officer should determine if excess payment is necessary to provide fair compensation. The following criteria, among others, may be useful in this regard: responsibilities involved measured by the magnitude and importance of the case; manner in which duties were performed; knowledge, skill, efficiency, professionalism, and judgment required of and used by counsel; nature of counsel's practice and injury thereto; any extraordinary pressure of time or other factors under which services were rendered; and any other circumstances relevant and material to a determination of a fair and reasonable fee.

*Id.* at Chap. II, Part C, § 2.22B(3).

Congress has recognized the special nature of offenses punishable by death. A very old statute, with amendments, now found at 18 U.S.C. § 3005 provides:

> Whoever is indicted for treason or other capital crime shall be allowed to make his full defense by counsel; and the court before which the defendant is to be tried, or a judge thereof, shall promptly, upon the defendant's request, assign 2 such counsel, of whom at least 1 shall be learned in the law applicable to capital cases, and who shall have free access to the accused at all reasonable hours. In assigning counsel under this section, the court shall consider the recommendations of the Federal Public Defender organization, or, if no such organization exists in the district, of the Administrative Office of the United States Courts. The defendant shall be allowed, in his defense to make any proof that he can produce by lawful witnesses, and shall have the like process of the court to compel his witnesses to appear at his trial, as is usually granted to compel witnesses to appear on behalf of the prosecution.

Motion re: Denial of Counsel--16

3.        The Reasonableness of Counsel's Work Preparing the Motion

The amount billed by counsel in this case certainly falls within the range of reasonableness, as compared to other federal habeas cases nationwide.  This is especially true given the additional work required of counsel as a result of this Court's refusal to fund an investigator and other professionals.

As of early 2008, more than 400 federal death penalty prosecutions have been authorized, resulting in more than 175 federal death penalty trials involving about 230 defendants. As of that date approximately 30 capital post-conviction proceedings pursuant to 28 U.S.C. § 2255 have concluded or are underway.

There is no solid data that counsel could locate on the average amount of time expended by counsel in a § 2255 case.  At the state level, a 1993 committee of the Texas Bar found that, on average, it took between 400 to 900 hours of an attorney's time to handle a post-conviction case.  Of course, those numbers would very likely be significantly higher in 2008-10.  Undersigned counsel falls well within those averages.

The costs associated with a federal capital trial are easier to ascertain.  The average cost of defending a trial in a federal death case as of 2004 was $620,932.

Not unexpectedly, authorized cases are substantially more expensive than non-authorized cases. Authorized cases ranged in cost from a high of $1,788,246 to a low of $26,526.  The median cost for authorized cases that were tried ($465,602) is 2.3 times greater than for those that were pled ($200,933).

Motion re: Denial of Counsel--17

In capital trials, defense counsel spent a median 353 hours in-court and 2,373 hours out-of-court.  In pleas, they spent a median 42 hours in-court and 992 hours out-of-court.

Further, experts were utilized more extensively in capital trials, where the median cost for experts was $101,592, than in pleas, where the median was $42,049.  Almost 60 percent of expert expenses were attributable to two types of experts, investigators and mitigation specialists.

The national data also reveals a relationship between case cost and the likelihood of receiving a death verdict.  Defendants who received the least amount of attorney and expert time, and whose defense representation thus cost the least, faced a higher probability of receiving a death sentence.  Individuals whose defense received less than $320,000 in combined attorney and expert assistance – the lowest one-third of federal capital trials – had a 44 percent chance of being sentenced to death at trial. Individuals whose total representation costs were above that amount – the remaining two-thirds of defendants – had a 19 percent chance of being sentenced to death. Defendants in the low-cost group thus were more than twice as likely to be sentenced to death.

This correlation very likely exists for post-conviction work, as well.

In considering the cost of defense representation in cases where the possible outcome is death, it is interesting to note the cost of defense representation in complex white collar prosecutions.  The criminal defense of Enron Chief Executive Officer Jeffrey Skilling reportedly cost $70 million, and that of former HealthSouth CEO Richard Scrushy about $21 million.  Kenneth Lay's defense in the Enron prosecution was

Motion re: Denial of Counsel--18

reportedly $25 million, and that of Cendant Corporation executive E. Kirk Shelton was $24 million.  In 2007 litigation in the Southern District of New York, predictions of the cost of representation for individual former partners at KPMG ranged from $10 million to $44 million. Beth Bar, *Defense Cost Estimates Offered in KPMG Case*, New York Law Journal, July 13, 2007. *http://www.law.com/jsp/article.jsp?id=1184231199215* .

    4.    <u>Denial of Payment for Reasonable Work Constitutes the Denial of Counsel</u>

Counsel seeks an opportunity to prove that the work performed so far was reasonable.  If it was, then counsel deserves to be paid.  Counsel also seeks an opportunity to establish the work he reasonably must do in order to prepare the reply.

While counsel fully accepts the proposition that appointed work is not always fully compensated, this Court has essentially held that counsel must work for free after he logged 250 hours—no matter the demands of the case.

This Court's ruling constitutes a denial of the right to counsel.  Not only has this Court indicated that it will not pay counsel for any additional work performed, it will not reimburse counsel for travel or other expenses.  This is an unfair burden to place on counsel.  Counsel is being forced to work for next to nothing after assuming the responsibility of representing someone who is under a sentence of death.

Counsel, as a member of the Texas State Bar, is obligated to perform competently—regardless of whether he is paid.  Counsel will not shrink from this responsibility.  However, it is not a burden he should be forced to assume for free.

This is especially true given the complete lack of due process associated with the denials of compensation.  This Court has not provided counsel with either an explanation

Motion re: Denial of Counsel--19

for its denial (other than to call the vouchers "excessive") and has not given counsel an opportunity to prove the reasonableness of his requests, both past and future, for compensation.

Appointed counsel should be provided "(a) prior notice of the proposed reduction with a brief statement of the reason(s) for it, and (b) an opportunity to address the matter." CJA Guidelines § 2.22.   As a result, all CJA attorneys enjoy the procedural protections articulated in § 2.22 for the service they provide.

"In making [an] award, the district court must strike a balance between granting sufficient fees to attract qualified counsel ..., and avoiding a windfall to counsel." *Moreno v. City of Sacramento,* 534 F.3d 1106, 1111 (9th Cir.2008) (internal citations omitted). Traditionally, "[w]e review the district court's calculation of the reasonable hours ... for abuse of discretion." *Id.* (citing *Camacho v. Bridgeport Fin., Inc.,* 523 F.3d 973, 977-78 (9th Cir.2008)). The district court is required to explain how it made its fee determination, and while that "explanation need not be elaborate, ... it must be comprehensible." *Id.; see also Hensley v. Eckerhart,* 461 U.S. 424, 437 (1983) (stating that the court's explanation may be "concise," but must also be "clear").

The purpose of the Act is not to compensate counsel with fees rivaling those available to attorneys representing non-indigent clients. *See generally United States v. Dillon,* 346 F.2d 633, 635 (9th Cir.1965) ( "[T]he obligation of the legal profession to serve indigents on court order is an ancient and established tradition, and ... appointed counsel have generally been compensated, if at all, only by statutory fees which would be inadequate under just compensation principles, and which are usually payable only in

Motion re: Denial of Counsel--20

limited types of cases."). Instead, Congress enacted the CJA to both "assure adequate representation in the Federal courts of accused persons with insufficient means," and "afford[ ] reasonable compensation to counsel who are assigned." S. REP. NO. 88-346, at 1 (1963).

The question thus becomes not "what hours were *actually* expended," but "what hours were *reasonably* expended completing work necessary for adequate representation." *See* 18 U.S.C. § 3006A(a). Even if all of counsel's work so far was not reasonable, most of it was. More importantly, he should be given an opportunity to prove that point.

## CONCLUSION

This Court should set an evidentiary hearing to determine the reasonableness of counsel's currently uncompensated work so far and to determine the amount of work reasonably necessary in order to file a reply. That hearing should be conducted *ex parte*.

DATED this 4th day of January, 2010.

Respectfully Submitted:
/s/ Jeffrey E. Ellis
Jeffrey E. Ellis
*Attorney at Law*
Law Offices of Ellis,
Holmes & Witchley
705 Second Ave., Suite 401
Seattle, WA 98104
(206) 262-0300
(206) 262-0335 (fax)

Motion re: Denial of Counsel--21

## CERTIFICATE OF SERVICE

I, Jeffrey E. Ellis, hereby certify that on January 4, 2010, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following attorneys of record in the above-entitled case:

Gregory S. Gloff
Assistant United States Attorney
800 Franklin
Suite 280
Waco, TX 76701
Email: Greg.Gloff@usdoj.gov

/s/ Jeffrey E. Ellis
Jeffrey E. Ellis
*Attorney at Law*

Motion re: Denial of Counsel--22