## IN THE UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS
## WACO DIVISION

| | | |
|---|---|---|
| **SHERMAN LAMONT FIELDS,** | * | |
| | * | |
| **Petitioner,** | * | |
| | * | |
| **v.** | * | **CIVIL NO. W-09-CA-009** |
| | * | **CRIMINAL NO. W-01-CR-164** |
| **UNITED STATES OF AMERICA,** | * | |
| | * | |
| **Respondent.** | * | |

### GOVERNMENT'S RESPONSE TO PETITIONER'S MOTION TO VACATE, SET ASIDE, OR CORRECT SENTENCE PURSUANT TO 28 U.S.C. § 2255

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW the United States of America, by and through the United States Attorney for the Western District of Texas, and files its response to Petitioner's Motion to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C. § 2255.

### I. STATEMENT OF THE FACTS

Sherman Fields escaped from the McLennan County Jail, met his former girlfriend and killed her.

### II. PROCEDURAL HISTORY

Following a jury trial, Sherman Fields was found guilty of conspiring to escape from federal custody, in violation of 18 U.S.C. § 371; escaping from federal custody, in violation of 18 U.S.C. § 751; using and carrying a firearm during and in relation to his escape from federal custody, resulting in intentional murder, in violation of 18 U.S.C. § 924(c)(1) and (j); carjacking, in violation of 18 U.S.C. § 2119; using and carrying a firearm during and in relation to the carjacking offense, in violation of 18 U.S.C. § 924 (c)(1)(A)(ii); possessing a firearm as a

1

convicted felon, in violation of 18 U.S.C. § 922(g)(1); and using and carrying a Ruger .22 caliber firearm during and in relation to his escape, in violation of 18 U.S.C. § 924(c)(1). After a separate sentencing phase hearing conducted pursuant to the Federal Death Penalty Act of 1994 (FDPA), the jury unanimously recommended that Fields be sentenced to death on the murder count, and the district court sentenced him to death. Fields appealed his sentence and the Court of Appeals affirmed on March 29, 2007. Certiorari was denied on January 14, 2008. On January 14, 2009 Fields timely filed a Motion to Vacate, Set Aside, or Correct Sentence under 28 U.S.C. § 2255. On March 1, 2009 Fields filed a corrected Motion to Vacate, Set Aside, or Correct Sentence under 28 U.S.C. § 2255.

## III. ISSUES PRESENTED

In his motion, Fields complains of numerous alleged constitutional violations during both the guilt phase and sentencing phase of his trial. For ease of understanding, the issues will be listed. Mr. Fields alleges that:

1. He was incompetent to waive his right to counsel.

2. The hearing to determine his competency was inadequate.

3. He received ineffective assistance of counsel and his sentence is unreliable because his counsel failed to conduct a competency investigation.

4. After the court approved his request to waive counsel, Fields' right to self-representation was violated.

5. His right to self-representation was violated when he was not permitted to participate in bench and chamber conferences.

6. His right to be present at trial was violated when he was not permitted to participate in bench and chamber conferences.

7. He received ineffective assistance of counsel because appellate counsel failed to raise Fields' exclusion from bench and chambers conferences as an issue on direct appeal.

8. His rights were violated when standby counsel failed to use a peremptory challenge against a juror Fields sought to strike.

9. His right to a fair and impartial jury and his right to due process were also violated because there was no peremptory challenge.

10. His right to be present at all critical stages of the trial was violated when he was excluded from the chamber conference to discuss the court's response to the jury's note.

11. He received ineffective assistance of counsel because counsel failed to object to Fields' exclusion from the chamber conference to discuss the court's response to the jury's note.

12. His Fifth, Sixth, and Eighth Amendment rights were violated when he was required to reveal his trial strategy by doing his cross-examination of a key witness before the actual cross-examination and without reciprocal revelation from the Government.

13. He received ineffective assistance of counsel because his appellate counsel failed to raise Fields being required to reveal his trial strategy on direct appeal.

14. His Fifth, Sixth, and Eighth Amendment rights were violated when the court failed to inquire as to whether Fields knowingly and voluntarily waived his right to testify.

15. His conviction violates his Fifth, Sixth, and Eighth Amendment rights because he is innocent.

16. His rights were violated when the Government presented evidence and testimony it knew or should have known was false.

17. His Fifth, Sixth, and Eighth Amendment rights were violated because counsel failed to conduct a competent investigation into the facts of a charged homicide.

3

18. The Government failed to disclose exculpatory evidence in violation of the Fifth, Sixth, and Eighth Amendments.

19. The Government failed to correct a material misstatement of fact by a witness in violation of Fields' Fifth, Sixth, and Eighth Amendment rights.

20. His Fifth, Sixth, and Eighth Amendment rights were violated because jailhouse informants acted as Government agents following Fields' indictment.

21. He received ineffective assistance of counsel because counsel failed to conduct a competent penalty phase investigation.

22. He received ineffective assistance of counsel because his counsel failed to competently prepare for and cross-examine the Government expert, Dr. Coons, at the penalty phase of the trial.

23. He received ineffective assistance of counsel when his counsel failed to investigate and present expert testimony regarding Fields' risk of future violence.

24. He received ineffective assistance of counsel when his counsel failed to investigate and present expert testimony of the ability of the federal prison system to control Fields' behavior.

25. He received ineffective assistance of counsel when his counsel failed to investigate and present expert testimony of Fields' minimal risk of escape from a federal prison.

26. The Government committed prosecutorial misconduct by misrepresenting the conditions of Fields' confinement.

27. He received ineffective assistance of counsel when his counsel failed to respond to the Government's argument concerning future dangerousness.

28. He received ineffective assistance of counsel when his counsel failed to object to the Government's argument concerning future dangerousness.

29. His right to a jury trial was violated when the court instructed the jury to continue deliberations after the jury informed the court that they could not come to a unanimous decision.

30. His right to due process and self-representation were violated by requiring him to wear a stun belt.

31. His right to counsel and his right to a reliable determination of punishment were violated when the trial court failed to warn Fields of the disadvantages of wearing a stun belt.

32. His right to be present at the trial was violated by requiring him to wear the stun belt.

33. He received ineffective assistance of counsel because counsel failed to demand a hearing regarding the directive that Fields wear the stun belt.

34. His right to counsel during the penalty phase of the trial was violated by requiring Fields to wear the stun belt.

35. His right to a reliable sentence was violated by the requirement that he wear the stun belt.

36. His right to self-representation was violated by the conditions of his confinement.

37. His Fifth, Sixth, and Eighth Amendment rights were violated by increased security measures that were apparent to jurors.

38. He received ineffective assistance of counsel when counsel failed to explain to jurors how the increased security measures affected Fields' demeanor.

39. His right to a reliable determination of punishment was violated when the United States Marshals increased security after the jury returned a guilty verdict.

40. His right to a jury trial and a reliable determination of punishment were violated when the United States Marshals informed the jurors that they would escort them to their vehicles.

41. His right to be present and his right to a reliable determination of punishment were violated when the court told jurors to report any threats to the court.

42. The Federal death penalty statute is unconstitutional.

43. He received ineffective assistance of counsel when his appellate counsel failed to raise the issue that the Federal death penalty statute is unconstitutional.

44. The Constitution mandates comparative proportionality, and the death sentence must be overturned as disproportionate.

45. He received ineffective assistance of counsel when appellate counsel failed to raise the claim that the Constitution mandates comparative proportionality.

46. The cumulative effect of these errors is a violation of due process.

47.  He re-alleges all the errors raised on direct appeal.

48. He received ineffective assistance of counsel in "multiple respects."

49. He is entitled to an evidentiary hearing.

### IV. PROCEDURAL BAR

Before addressing the substance of these issues, it is necessary to note that Fields faces a procedural bar on a few of the issues he raises. Once the defendant's chance to appeal has been exhausted, a court is entitled to presume he stands fairly and finally convicted, especially when he already has had a fair opportunity to present his federal claims to a federal forum. *United States v. Frady*, 456 U.S. 152, 164-65 (1982). Claims 29, 30, and 47 are procedurally barred due to being raised on direct appeal. Claim 47 even goes so far as to re-allege all the errors Fields raised on direct appeal. Claim 48 also repeats a catch-all that Fields used on direct appeal;

6

namely, that the cumulative errors in his case constitute a violation of his rights to due process, to a fair trial, and to be free from cruel and unusual punishment. Fields raised these very issues on appeal. He cannot raise them again on collateral review; rather, his final judgment on these issues commands respect. *Id.*

Fields' initial motion, which was filed within the one-year statute of limitations, did not include the following claims, as numbered in the corrected motion: 7, 9, 13, 14, 16, 26-28, 31, 38, 40, 41, 43, and 45. In addition to adding these claims to his motion, Fields' corrected motion also supplements his original arguments. His changes were substantial, increasing the length of the motion from a relatively modest 46 pages to 226. Fields filed his correct motion after the district court granted his request for an equitable tolling of the statute of limitations. However, the court should not have granted Fields' motion for an equitable tolling of the statute of limitations. While the limitations period in a § 2255 Motion may be equitably tolled, the court should only grant such a request under rare and exceptional circumstances. *United States v. Patterson*, 211 F.3d 927, 928 (5th Cir. 2000). To apply the doctrine of equitable tolling, the courts must look to the facts and circumstances of each case. *Id.* at 931. A district court's decision to invoke equitable tolling is reviewed for an abuse of discretion. *Cousin v. Lensing*, 310 F.3d 843, 848 (5th Cir. 2002). A court abuses its discretion when it makes an error of law. *United States v. Riggs*, 314 F.3d 796, 799 (5th Cir. 2002).

Equitable tolling can be granted in cases where a court has led the movant to believe he has done everything required of him to the movant's detriment. *See Baldwin County Welcome Center v. Brown*, 466 U.S. 147, 151 (1984). Some possible examples of such a situation are incidents when counsel has been appointed to a case unexpectedly and needs more time to prepare for trial. There is no similar reason for the case here. The motion for equitable tolling

7

was made just so Fields can allege more claims, many of which are frivolous and already alleged on direct appeal.  Accordingly, there was no extreme or rare circumstance in this case that could justify equitable tolling.

## VI. FIELDS' CLAIMS

### Competence

Claim 1 – Mr. Fields was incompetent to waive his right to counsel.

Fields first alleges that he was incompetent to waive his right to counsel, and that by permitting Fields to represent himself the district court violated the constitutional guarantees of the Fifth, Sixth, and Eighth Amendments. As Fields has unsurprisingly and correctly recognized, a criminal defendant may not be tried unless he is competent. (Fields Motion at 28); *Godinez v. Moran*, 509 U.S. 389, 396 (1993). Likewise, a person who seeks to waive his right to counsel must be competent to do so. *Id*. Consequently, the defendant must understand the nature of the proceedings against him and have a sufficient present ability to consult with his lawyer. *Dusky v. United States*, 362 U.S. 402 (1960) (per curiam). Accordingly, the district court must have been satisfied that Fields knowingly and intelligently chose to waive his right to counsel and to proceed *pro se*. *Faretta*, 422 U.S. 806, 835 (1975). The district court performed an approximately 15-minute interview with Fields in the presence of counsel to determine whether Fields understood the nature of the proceedings against him and the ramifications of choosing to waive his right to counsel. TT at 13-26. Fields met with Dr. J. Randall Price, a defense psychologist, on two occasions before the pretrial hearing in which this issue was discussed.  TT at 26-28.  The court subsequently had Fields meet with Dr. Stephen Mark before determining that Fields was competent to waive his right to counsel and represent himself.

Fields maintains that the court's inquiry was inadequate because it must have satisfied itself that Fields was competent to represent himself and not just competent to waive his right to counsel. (Fields' Motion at 39). Thus, he claims a higher level of competence is required in his case than was required for the defendants to waive their right to counsel in either *Godinez* or *Faretta*. He makes this claim by distinguishing his case from *Godinez* based on the fact that the defendant in *Godinez* did not seek to represent himself at trial, but merely sought to change his plea of guilty. Fields also relies on the holding in *Indiana v. Edwards* that the "Constitution permits States to insist upon representation by counsel for those competent enough to stand trial under *Dusky* but who still suffer from severe mental illness to the point where they are not competent to conduct trial proceedings by themselves." *Indiana v. Edwards*, 128 S. Ct. 2379, 2388 (2008). However, this holding, which came four years after Fields' trial, merely reflects the fact that the Constitution permits States to insist on representation by counsel without violating the right to represent oneself, but does not require a higher degree of competence for waiver. *Id*. As the dissent explained in that opinion, the majority did not answer the question of whether another constitutional requirement limits a defendant's right to elect self-representation, but only answered whether an individual State's view of fairness permits it to strip the defendant of this right. *Id*. at 2391-92 (Scalia, J., dissenting).

Additionally, the Court in *Edwards* expressly declined to overrule *Faretta*. *Id*. at 2388. Contrary to Fields' understanding, the district court could rely on *Godinez* and *Faretta* without violating Fields' rights. "A criminal defendant's ability to represent himself has no bearing upon his competence to *choose* self-representation," nor does a defendant's technical legal knowledge have relevance to an assessment of his knowing exercise of the right to defend himself. *Godinez*, 509 U.S. at 400 (emphasis in original); *Faretta*, 422 U.S. at 836. A defendant who seeks to

waive his right to counsel and represent himself does not have to clear a higher hurdle of competence than a defendant who is going to trial with the assistance of counsel. *Id.* at 399; *See also Faretta v. California*, 422 U.S. 806, 835 (1975). Like the defendant in *Faretta*, the record affirmatively shows that Fields was literate, competent, and understanding, and that he was voluntarily exercising his informed free will. *Faretta*, 422 U.S. at 835-36; TT at 13-26. Fields even prepared and filed a Motion for Change of Venue. TT at 36. Also like *Faretta*, "the trial judge warned [Fields] that he thought it was a mistake not to accept the assistance of counsel, and that [Fields] would be required to follow all the 'ground rules' of trial procedure." *Faretta*, 422 U.S. at 835-36; TT at 19-20. The District Court also had the benefit of numerous letters and motions which Fields had filed with the Court to represent himself (Exhibits 1 and 2), and a change of venue (Exhibit 3). In addition, Fields pled guilty to federal firearm charges a few months before the trial and the Judge found him competent to plead guilty (Exhibit 4). Finally, Fields appeared in a hearing on September 2, 2003, to represent himself (Exhibit 5).

Fields is asking the Court to second guess his competency based on an after-the-fact analysis of Fields' experts. If that type of second guessing is relevant, then it is relevant to look at the complete picture of the way in which Fields conducted himself during trial. He conducted voir dire, argued objections, conducted opening and closing, and questioned and cross-examined witnesses.

Although Fields lacked legal training and presumably did not have any significant knowledge of the law, or of rules of evidence or criminal procedure, he was competent to waive his right to counsel.

<u>Claim 2 – Fields was denied his right to counsel and due process with an inadequate competency hearing.</u>

Closely related to his first claim, Fields next alleges that the district court denied him his right to counsel and due process by conducting an inadequate hearing to determine whether he was competent to represent himself. If the court conducted an adequate hearing, then Fields will have been found competent and both his first and second claims would be resolved. For the most part, Fields correctly states the basic rule for establishing that the court must perform a competency hearing. That is, once doubt as to the defendant's mental capacity is raised, due process requires an adequate hearing to determine the defendant's competency. (Fields' Motion at 30); *Drope v. Missouri*, 420 U.S. 162, 180 (1975). However, this articulation of the rule neglects the more specific requirement that the court must perform a competency hearing if the circumstances, such as a "defendant's irrational behavior, his demeanor at trial, and … prior medical opinion," create *sufficient* doubt about the defendant's competence. *Drope*, 420 U.S. at 180 (emphasis added). Conspicuously absent from Fields' claim in this respect is any refutation or support for the findings of Dr. Price. Fields did not behave irrationally before the court nor did Dr. Price's prior medical opinion create sufficient doubt regarding Fields' competence.

As mentioned above, Dr. Price met with Fields and evaluated him on December 29, 2003 and on January 6, 2004. (See Declaration of Dr. J. Randall Price p. 1 attached to Fields' Motion). Dr. Price specifically found no mental disorder that precluded Fields' competency to represent himself. (Declaration of Dr. Price p. 2). Dr. Price did express the opinion that Fields' decision to represent himself was poor judgment, but the district court also recognized as much when it repeated to Fields the old adage that a person who chooses to represent himself has a fool for a client. TT at 20. In light of Dr. Price's previous evaluations of Fields, there was not sufficient

11

doubt about Fields' competence to render a competency hearing necessary. *See Drope*, 420 U.S. at 180.

Even if Fields somehow showed sufficient doubt about his competence that would give rise to the requirement of a pretrial hearing for the specific purpose of determining his competence, the combination of Fields' normal behavior, Dr. Price's evaluations, Fields' attorneys' opinions, the court's questioning, and Dr. Mark's evaluation constituted an adequate inquiry of whether Fields was competent to represent himself. *See Drope*, 420 U.S. at 180. The hearing transcript itself indicates that the meeting with Dr. Mark may not have been necessary at all, but the court took this extra step as a precaution to ensure that Fields was competent to waive his right to counsel. TT at 24-28. Fields' own counsel admitted that he would be "surprised if Dr. Mark came back with anything that would cause the Court concern." TT at 28.

Fields argues that "courts have repeatedly found psychiatric examinations as cursory as Dr. Mark's simply 'too short' for the purposes of formulating a diagnosis as to mental disorder or competency." (Fields' Motion at 32). However, each case to which he cites contains particular facts which are not present in Fields' case. In *Ford v. Wainwright*, the defendant had delusions of a hostage crisis involving his family and members of the United States Senate. Ultimately, the Court concluded that the Eighth Amendment prohibits a State from inflicting the death penalty on an insane prisoner. *Ford v. Wainwright*, 477 U.S. 399, 410 (1986). *Ford* specifically stated that the failure in the proceeding lay in Florida's procedure for determining the mental soundness of a defendant, and in the lack of "any opportunity to clarify or challenge the state experts' opinions or methods." *Id*. at 415. Before his meeting with Dr. Mark, Fields had already been evaluated by Dr. Price. The record also indicates that if his counsel had sought to challenge Dr.

12

Mark's opinion or methods they could have. Unlike the defendant in *Ford*, Fields never gave any indication that he was incompetent. TT at 27.

In addition to *Ford*, Fields cites a number of circuit cases that involved relatively short interviews ranging from five minutes to an hour. (Fields' Motion at 32). However, each of these cases involved unique circumstances that required finding the respective evaluations inadequate. The Fifth Circuit considered a forty-minute interview that was performed during a lunch recess in the course of a trial inadequate because it was the only psychiatric testimony given on behalf of the defendant. *Bush v. McCollum*, 344 F.2d 672, 673 (5th Cir. 1965). Unlike the defendant in that case, Dr. Mark's conclusion did not stand alone. Furthermore, neither Dr. Mark nor Dr. Price attempted to diagnose Fields as suffering from such a mental illness during a recess in the midst of the trial.

The Fourth Circuit found a thirty-minute interview inadequate to afford the defendant sufficient opportunity to develop a defense of lack of criminal responsibility for his conduct. *United States v. Walker*, 537 F.2d 1192, 1194 (4th Cir. 1976). However, the court came to this conclusion because the psychiatrist's report did not include an evaluation of the defendant's mental capacity to commit the offense alleged in the indictment. *Id*. at 1195. On the other hand, and more important to the determination of the question posed in Fields' case, the Fourth Circuit found that "the record [was] adequate to support the finding that [the defendant] was competent to stand trial; not only does the psychiatrist's report support this conclusion, but also the trial judge extensively examined [the defendant's] counsel regarding the possibility of [the defendant's] incapacity to stand trial." *Id*. at 1194. Similarly, Dr. Mark's report to the district court, and the judge's personal questioning of Fields support the finding that Fields was competent to stand trial and waive counsel and represent himself.

13

Fields cites four other cases from the Seventh, Fourth, and First circuits, and one from Louisiana to support his claim. The Seventh Circuit deals more particularly with the confrontation clause of the Sixth Amendment, and referenced the trial court's finding that the defendant was competent despite evaluation by doctors that indicated otherwise. *United States v. Hamilton*, 107 F.3d 499, 503 (7th Cir. 1997). The Fourth Circuit determined that the length of the interview was insufficient to determine mental culpability for a crime committed previously, but explicitly found that the interview was sufficient for examining the defendant's competence to stand trial, "and the court properly ordered the case to trial." *United States v. Taylor*, 437 F.2d 371, 376 (1971). The First Circuit determined that a five-minute interview alone would be insufficient; however, the defendant was evaluated by another doctor as well, and the defense never moved for a formal hearing to determine competence. *United States v. Lebron*, 76 F.3d 29, 32 (1st Cir. 1996). The Louisiana court found that an hour examination was inadequate for conclusively determining that an individual suffered from "traumatic neurosis" following a car accident. *Boutte v. Mudd Separators, Inc.*, 236 So.2d 906, 911 (La.App., 1970). None of the cases on which Fields relies require finding that the inquiry into Fields' competence was inadequate. Rather, Fields relies on a vague and cursory understanding of the cases themselves that is insufficient for that purpose. Neither Fields' right to counsel nor his due process rights were violated by the district court's manner of determining his competency to stand trial.

Claim 3 – There was an unreliable competency investigation violating Fields' right to counsel and right to a reliable sentence.

In connection with these claims, Fields further complains that his counsel provided ineffective assistance and he received an unreliable sentence because his counsel failed to conduct a competency investigation. For Fields to show ineffective assistance of counsel, he

14

must establish that his counsel's performance fell below an objective standard of reasonableness, and, but for this deficient performance, the outcome would likely have been different. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). A failure to make a showing of either of these factors negates a court's need to consider the other. *Id*.

Performance is deficient if it falls "below an objective standard or reasonableness" measured "under prevailing professional norms" and considered in light of the circumstances. *Id.* at 688. At the same time, defendant must overcome "a strong presumption that counsel's conduct falls within the wide range of counsel's assistance." *Id.* at 689. To establish prejudice, the defendant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would be different." *Id.* at 694. Considering the overall record and performance of counsel, considering the evaluations of Dr. Mark and Dr. Price, the defense's own evaluator, the trial court's questioning, and the opinion of counsel after spending months interacting with Fields, counsel's performance inquiry was sufficient and did not fall beyond the objective standard of reasonableness outlined in *Strickland*.

**Self-representation and assistance of counsel**

Claim 4 – Fields Right to Self Representation Was Violated.

Fields asserts that once the court approved his request to represent himself, his right to self-representation was violated. (This claim alone has no substance deserving of a response.) Rather, claims 5 and 6 contain the substantive grounds on which Fields' bases this allegation.

15

<u>Claim 5 – Fields' rights under the Fifth, Sixth and Eighth Amendments were violated when Fields was not permitted to participate in bench and chamber conferences.</u>

Fields next alleges that his right to self-representation was violated when he was not allowed to participate in chamber and bench conferences. Fields again correctly states the general rule that applies to his claim. Specifically, the right to self-representation imposes certain limits on the extent of standby counsel's unsolicited participation. First, a *pro se* defendant is entitled to preserve actual control over the case he chooses to present to the jury. *McKaskle v. Wiggins*, 465 U.S. 168, 178 (1984). Second, participation by standby counsel without the defendant's consent should not be allowed to destroy the jury's perception that the defendant is representing himself. *Id.*

The Fifth Circuit addressed the issue in *LeFevre v. Cain*, 586 F.3d 349 (5th Cir. 2009). In *LeFevre*, the defendant argued that his right to self-representation was violated because he was not allowed to participate in bench conferences during his trial. Even though LeFevre argued that his rights had been violated, he never objected to standby counsel's participation in the bench conferences. He never moved to approach the bench himself nor requested to have the jury removed to argue an objection. LeFevre's trial court never ruled that LeFevre could not participate in the bench conferences and LeFevre was present in the courtroom during the bench conferences and had an opportunity to object to his absence from the conferences, either at the time of the conference or later when the jury was not in the courtroom. The Court ruled that in the absence of an objection, the trial court had no way of knowing that LeFevre was unhappy with standby counsel's participation on his behalf during the bench conferences. The Court concluded that LeFevre acquiesced to standby counsel's participation in the bench conferences and thus waived his right to self-representation at the conferences. *Id.* at 357.

During Fields' trial, Fields was present and acquiesced to standby counsel's participation at the bench conferences.  He had an opportunity to object and did not.  If Fields did not have standby counsel to participate in those conferences, he would have objected because Fields made no qualms about who was in charge in his case.  He conducted voir dire, argued against certain jurors being empaneled, conducted opening and closing, questioned witnesses, cross-examined witnesses, and argued objections during witnesses' testimony.  In fact, the record demonstrates that standby counsel is reporting to Fields what is occurring at the bench conferences.  TT at 1585.

At least one circuit has concluded that unsolicited participation will merely "erode" the right to self-representation, but will not necessarily "violate" it. *United States v. McDermott*, 64 F.3d 1448, 1454 (10th Cir. 1995). Fields claims that courts, including the First and Tenth Circuits, "have routinely granted relief" in cases facing the issue of whether exclusion from sidebar conferences violated a defendant's right to self-representation. (Fields' Motion at 51). Yet, he does not mention the opposite conclusion reached by the Second Circuit. *United States v. Mills*, 895 F.2d 897 (2d Cir. 1990). Moreover, the facts from the cases on which Fields relies are distinguishable from his own.

In the First Circuit, the court relied heavily on the reasoning of the district court and found that "three sets of errors in combination led to a violation of [the] petitioner's Sixth Amendment constitutional right to represent himself." *Oses v. Massachusetts*, 961 F.2d 985, 986 (1st Cir. 1992). Fields however only alleges that his right to represent himself was violated by his exclusion from bench and chamber conferences. Furthermore, the trial court in *Oses* held over seventy bench conferences during the course of the trial. *Id.* Fields claims to have been barred

17

from participating in only two chamber conferences and ten bench conferences during his own trial. (Fields' Motion at 47).

Likewise, Fields misplaces his reliance on the Tenth Circuit's reluctant conclusion that the defendant's exclusion from bench conferences violated his right to self-representation. *McDermott*, *Id.* at 1454. Fields seems to ignore vital portions of the court's opinion. Specifically, the Tenth Circuit found that the trial court had restricted the defendant's participation in bench conferences because he "was not equipped to handle purely legal matters." *Id*. at 1452. It further stated that it was important to note "that the [trial] court gave no other reasons for excluding [the defendant], including such matters as security considerations." *Id*. Contrary to what Fields may hope serving as one's own lawyer does not unfetter a defendant from restrictions placed upon his movements by necessary and reasonable security measures. *See Martinez v. Court of Appeal of California*, 528 U.S. 152, 162 (2000) ("Even at the trial level, therefore, the Government's interest in ensuring the integrity and efficiency of the trial at times outweighs the defendant's interest in acting as his own lawyer").

Fields faced potential exclusion from bench conferences not because of his lack of legal training, but because of security measures and an attempt by the court to avoid skewing the jury's perspective. Following voir dire the court discussed some pre-trial matters with both Fields and the Government. In particular, the court noted its concern regarding security measures and the jury's perception of a security problem. TT at 1164-65. In light of these concerns, the court imposed restrictions on both the Government and Fields requiring them to question witnesses from the tables where they would be sitting so that it would not appear "to the jury that … [Fields] was considered by the marshals to be more of a security problem than what would ordinarily be apparent." TT at 1165. The court also addressed the issue of avoiding the

18

perception of a security problem when bench conferences would occur during the course of the trial. "Any of the bench conferences in which Mr. Fields has to be involved will have to be done outside the presence of the jury and I will certainly insist that to the extent possible that be done after a recess or after the jury's left." TT at 1166. The court also decided and explained that "if there must be a bench conference that would interfere and require me to excuse the jury, I would certainly hope that Mr. Fields would authorize his attorneys to speak for him in whatever … matter needs to be discussed." TT at 1166.  Fields did not object to this procedure and the Court asked if there were "any other things," to which Fields stated, "Nothing else, Your Honor."  TT at 1166.

Fields points to a number of bench conferences that occurred in the presence of the jury to show violations of his right to represent himself, but misstates the effect of what took place during those conferences. Fields cites one bench conference in particular in which his standby counsel participated to discuss a 404(b) motion. (Fields' Motion at 59-60); TT at 1584-85. Fields tries to use the record of this conference to establish that standby counsel was participating without his consent. (Fields' Motion at 60). Yet, Fields ignores the fact that counsel delivered Fields' own request to the court, and following the discussion at the bench, standby counsel conferred with Fields before the Government could even continue its examination. TT at 1585. Consequently, Fields, not his standby counsel, maintained control over the case he actually wanted to present. Likewise, the fact that standby counsel had to confer with Fields before the prosecution could continue would help preserve, rather than destroy, the jury's perception that Fields represented himself. See TT at 1585.   In fact, the perception was that Fields was in charge of his case and that standby counsel did his bidding.

Claim 6 – Fields' Sixth and Eighth Amendment Rights to be present at trial were violated when he was not permitted to participate in bench and chamber conferences.

Fields claims the trial court violated his right to be present when he was not permitted to participate in bench and chamber conferences. While Claim 5 is more related to Fields' right to self-representation under *Feretta*, this claim concerns Fields' right to be present under the Sixth Amendment right to confrontation and Eighth Amendment right to a fair trial. The Sixth Amendment guarantees the right to be present at every stage of a trial. *Illinois v. Allen*, 397 U.S. 337, 338 (1970). However, this right is not absolute and can be forfeited if a defendant behaves in a disorderly and or obstructionist manner.

The reason why the trial court did not violate these rights is that Fields acquiesced to the procedure and did not object. *LeFevre* at 357. *McKaskle* also makes clear Sixth Amendment rights are not infringed when "standby counsel assists the *pro se* defendant in overcoming routing procedural or evidentiary obstacles to the completion of some specific task, such as introducing evidence or objecting to testimony… nor are they infringed when counsel merely helps to ensure the defendant's compliance with basic rules of courtroom protocol and procedure." *McKaskle v. Wiggins*, 465 U.S. 168, 183 (1984). In this case, reasons of protocol and order in the court justified Fields remaining at the counsel table as Fields was a dangerous and previously convicted prisoner and it is uncontested that he had already escaped from custody before and had attempted to escape after being apprehended and placed back in jail. The trial court could not have allowed Fields to leave counsel's table and freely move in the courtroom during bench and chamber conferences without risking the appearance that Fields was a dangerous person who had to be guarded. Further, the U.S. Marshals made clear they were uncomfortable with Mr. Fields walking around the court during trial. TT at 1165.

It has also been settled that the defendant does not have the Constitutional or statutory right to be present for a purely legal matter. *United States v. Graves,* 669 F.2d 964, 972 (5th Cir. 1982). The matters discussed here were purely legal and not in any way prejudiced to the defendant regarding sequestration to admissibility of testimony. (Fields' Motion at 47). The analysis done by the Fifth Circuit Court of Appeals in *United States v. Sinclair* is also indicative that Fields' rights were in no way violated or prejudiced by the exclusion. In that case, defendant was denied presence in a chamber conference regarding the admissibility of testimony. The Fifth Circuit held there was no violation of the right to be present because the exclusion in no way, 1) prejudiced the defendant, and 2) was in nature of a conference on a point of law, and 3) in any event, was agreed to by the defendant through his counsel. *United States v. Sinclair*, 438 F.2d 50, 52 (5th Cir. 1971). Like in the *Sinclair* case, the matters discussed by counsel at bench and chamber conferences concerned legal matters such as admissibility of evidence and courtroom decorum, which in no way prejudiced Mr. Fields. Besides those moments, the defendant conducted every aspect of his trial including opening and closing. (Fields' Motion at 47). Because of the purely legal matters discussed and the failure of Fields to object, there was no violation of the defendant's right to be present.

Claim 7 – By failing to raise on appeal Fields' exclusion from bench and chamber conferences, Fields' right to effective counsel was violated.

Next, Mr. Fields argues his appellate counsel violated his Sixth Amendment rights by failing to raise his exclusions from bench and chamber conferences as a point of error on appeal. (Fields' Brief at 69). To constitute ineffective counsel within the scope of the Sixth Amendment, Fields must show counsel's performance was deficient and the deficient performance prejudiced his defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). A deficient performance is one

21

in which counsel made errors so serious that counsel was not functioning as the counsel guaranteed by the Sixth Amendment. *Id.* The failure of counsel to raise meritless or weak issues does not constitute ineffective assistance of counsel. *See Jones v. Barnes*, 463 U.S. 745, 751-752 (1983). Experienced advocates since the time beyond memory have emphasized the importance of winnowing out weaker arguments on appeal and focusing on central ones. *Id.* Justice Jackson once observed, "Multiplying assignments of error will dilute and weaken a good cause and will not save a bad one" *Id.* at 752 (quoting J. Jackson, *Advocacy Before The Supreme Court*, 25. Temple L.Q. 115, 119 (1951)). Accordingly, an appellate lawyer must review the record and select the most promising issues for appeal. *Id.*

On appeal, Mr. Fields' attorney raised a litany of issues, ranging from *Crawford v. Washington* violations to a coercive *Allen* charge to faulty admissibility of testimony and evidence to a potential conflict of interest on the part of standby counsel and even alleged cumulative error. *United States v. Fields*, 483 F.3d 313, 313 (5th Cir. 2009). The Fifth Circuit, in an eighty-five page decision, addressed all of appellant's points, even stating that many of Fields' complaints do not amount to error at all. *Id.* at 362. After such a lengthy and thorough review of the record, it cannot be said Fields' appellant lawyer neglected to address many issues of the case. On the contrary, Fields' attorney made a point to raise several errors which on review were not determined to be near error at all. *Id.* Because of the thorough review the attorney conducted, he did not consider the exclusion from bench conferences to be a central issue and decided to focus on over ten other issues which he felt were stronger claims, and must be granted deference for it. Thus, Fields was not prejudiced by the decision and there was no violation of the right to effective counsel.  Furthermore, Fields acquiesced to his standby counsel participating in certain parts of the trial, including bench and chamber conferences.  He never

objected because he wanted his standby counsel to participate in such a manner.  Since he did not object, he waived the right to complain.  See *LeFevre* at 357.

Claim 8 – Standby counsel failed to exercise a peremptory challenge against a juror Fields sought to strike.
Claim 9 – Standby counsel refusing to exercise a peremptory strike at the insistence of Fields violated his right to a fair trial and right to due process.

Claims 8 and 9 raise issues concerning the way standby counsel conducted voir dire and the conduct violated Mr. Fields' Fifth, Sixth and Eighth Amendment rights to an impartial jury, a fair trial and due process by not issuing a peremptory strike on a potential juror Mr. Fields found offensive. (Fields' Motion at 71). Mr. Fields wished to strike Jimmy D. Ansay when standby counsel instead elected to strike different perspective jurors based on their own opinions. *Id.* at 70-71. It should be noted Mr. Fields consented, though, to standby counsel conducting any Batson challenges. TT at 1152. There is nothing in the record of the trial during the voir dire examination hinting at any objection made by Mr. Fields during the questioning of Mr. Ansay or issuing his peremptory strikes.  In fact, Defendant's peremptory challenges list was signed and submitted by Fields himself and Swanton's and Peterson's names were scratched out.  Fields never complained about his peremptory challenges.  He made them and signed them.  (See Government's Exhibit #6).

Fields' consent to standby counsel performing his strikes under *Batson v. Kentucky* waives any complaint as to how standby counsel went about issuing those strikes. *See McKaskle v. Wiggins*, 465 U.S. 168, 183 (1984). Consent to participation by standby counsel's representation during voir dire hinders any complaint regarding their conduct, for *McKaskle* stated if a defendant is given the opportunity and elects to have counsel appear before the court or jury, much of his complaints regarding the conduct of counsel lose force. *Id.* A defendant does

23

not have a constitutional right to choreograph special appearances by counsel. *Id.* In fact, *McKaskle* indicates once a defendant allows and consents to one appearance by standby counsel, then the right to complain about subsequent appearances, even if unsolicited, is eroded. *Id.* One circuit has stated once a defendant delegates a task to standby counsel and assents to standby counsel performing that task then no waiver analysis is required because there is no affront to the scope of *Faretta*. *Frantz v. Hazey*, 533 F.3d 724, 753 n. 3 (9th Cir. 2008) (C.J. Gould concurring). When a defendant asks standby counsel to handle anything, there is no need to burden the court procedures with a task-oriented waiver analysis. *Id.* By allowing standby counsel to perform his *Batson* challenges, Fields consented to whatever means standby counsel wished to conduct those strikes and cannot choreograph the way standby counsel went about them. Petitioner's brief argues Fields wanted to control the jury selection process, however no objection appears in the trial record, thus any complaint to such a claim is waived.

Fields in his motion argues the right of self-representation is structural and therefore *per se* prejudicial. (Fields' Motion at 74). However, the motion confuses something that did not amount to a violation of the right to self-representation for a structural error. It is true if the right to self-representation is violated then a structural error has occurred, and that is one that cannot be subjected to a harmless error analysis. *See Myers v. Johnson*, 76 F.3d 1330, 1337 (5th Cir. 1996). However, there was no violation to the right of self-representation because Fields assented to standby counsel conducting his *Batson* strikes. TT at 1152. As was stated above, consent to standby counsel taking over part of the case does not amount to a violation of any rights secured by *Faretta*. *McKaskle*, 465 U.S. 168, 182 (1984). Fields' consent to standby counsel's conduct of his *Batson* challenges is not a violation of the right to self-representation

and there was then no structural error.  Furthermore, there can be no claim if Fields never raised an objection and submitted the strikes himself.

Claim 10 – Exclusion from a conference following a juror note during sentencing deliberations violated Fields' right to be present.

Fields allowed counsel to represent him during the penalty phase of the trial. (Fields' Motion at 78). During deliberating on whether to sentence Fields to death, the jury sent a note to the trial court which sparked a chamber conference. TT at 2548-2549. Fields was not present during this off the record conference even though counsel was, causing Fields to complain this exclusion violated his right to be present. (Fields' Motion at 78). The Sixth Amendment guarantees the right to be present at every stage of a trial. *Illinois v. Allen*, 397 U.S. 337, 338 (1970). There are also due process considerations that a defendant has a right to be present in his own person whenever his presence has a relation, reasonably substantial, to the fullness of his opportunity to defend against the charge. *Snyder v. Massachusetts*, 291 U.S. 97, 105-106 (1934). This presence is not guaranteed when his presence would be useless or a benefit but of a shadow. *Id.* Due Process requires the right to be present when his absence would thwart the purpose of the hearing. *Id.* at 108. Accordingly, presence of a defendant is guaranteed at any stage of the criminal proceeding that is critical to the outcome if his presence would contribute to the fairness of the procedure. *Kentucky v. Snider*, 482 U.S. 730, 744 (1987).

Here we remind the court that Fields was represented by counsel at the chamber conference concerning the jury note. The conference itself in no way required his presence as Fields possessed no substantive knowledge which would have contributed to the deliberations regarding the note and any resulting *Allen* charge. Nor has Fields in his motion made any evidentiary showing his presence at the hearing was critical to the outcome of the case. It has

25

also been settled that the defendant does not have the Constitutional or statutory right to be present for a purely legal matter. *United States v. Graves,* 669 F.2d 964, 972 (5th Cir. 1982). The matters discussed at the conference purely dealt with the proper response to the jury note and did not in any way necessitate Fields being there. Because Fields' presence was not required as his absence did not thwart the purpose of the conference, his right to be present was not violated.

Also, the right to be present may be waived by the defendant for being disruptive or unruly. *Illinois v. Allen*, 397 U.S. 337, 343 (1970). It is essential for the proper administration of criminal justice that dignity, order and decorum be the hallmarks of all court proceedings in the country. *Id.* Further, no one formula for maintaining the appropriate courtroom atmosphere will be best in all situations. *Id.* The defendant here had already escaped once from custody and had to be restrained or else have officers risk such an attempt again. The trial court felt exclusion was necessary from other conferences in order to maintain the safety of the courtroom. *See* TT at 1165. The exclusion then from this conference during jury deliberations can also be justified by wanting to secure the safety of the courtroom and maintain decorum.

It should be noted the Sixth Amendment right to be present is derived from the Confrontation Clause. *Young v. Herring*, 938 F.2d 543, 557 (5th Cir. 1991). There the right to be present is not considered absolute. *See Illinois v. Allen*, 397 U.S. 337, 338 (1970). The primary interest served by the Confrontation Clause is the right of cross-examination. *Douglas v. Alabama*, 380 U.S. 415, 418 (1965). The right to cross-examination, protected by the Confrontation Clause, thus is essentially a "functional" right designed to promote reliability in the truth finding functions of a criminal trial. *Kentucky v. Stincer*, 482 U.S. 730, 737 (1987). The right to cross-examination ensures the *opportunity* for effective cross-examination. *Id.* at 739. In moments of trial where there is no opportunity for effective cross-examination, any Sixth

26

Amendment rights are not triggered. *Id.* at 740. In this case, at this chamber conference, at a moment where the trial had already concluded, there was no meaningful opportunity to confront any witnesses with cross-examination. Because this hearing was totally devoid of any witnesses, that counsel was present at the conference and the trial had already concluded, the trial court did not infringe on any Sixth Amendment rights within the realm of the Confrontation Clause.

Claim 11 – Fields' right to effective counsel was violated by his exclusion during the chamber conference in response to jury note during deliberations that they were unable to reach a unanimous verdict.

Fields' next claim incorporates many of the arguments alleged in Claim 10, that his exclusion from the chamber conference regarding the juror note violated his rights. (Fields' Motion at 82.) Fields though on this claim argues his right to effective counsel was violated by counsel failing to object to his exclusion from that conference. *Id*. As was noted, nothing in the record indicates any objection to Fields exclusion from the chambers conference and Fields argues the lack of any objection came as a result of ineffective counsel. *Id*.

The test for ineffective counsel was laid out in *Strickland v. Washington* where counsel is deemed ineffective if there is a showing counsel's performance was deficient and that deficiency prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Performance is deficient if it falls "below an objective standard or reasonableness" measured "under prevailing professional norms" and considered in light of the circumstances. *Id.* at 688. At the same time, defendant must overcome "a strong presumption that counsel's conduct falls within the wide range of counsel's assistance." *Id.* at 689. To establish prejudice, the defendant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would be different." *Id.* at 694.

In this case, neither test is met. Viewing the failure to object to the exclusion objectively, there was no real need for Fields to be present because a purely legal matter was being discussed at the chamber conference. *United States v. Graves,* 669 F.2d 964, 972 (5th Cir. 1982). Nor can defendant cite any prevailing professional norms under the circumstances which warrant the exclusion deficient. Further, the defendant cannot show with any reasonable probability that his inclusion in the chamber conference would have led to a different outcome. The result of the conference was an *Allen* charge which instructed the jury to continue deliberating and defendant cannot show he possessed any knowledge in how to respond to the jury note. Therefore, counsel's conduct cannot be said to be deficient. In addition, after the chamber conference, the issues discussed and the case law were argued in open court and Fields' counsel vigorously objected to the Court telling the jury to "continue your deliberations." TT at 2548-2551. Fields never objected himself because he was represented by counsel and he had no knowledge of the law or what was appropriate to argue under the case law regarding the note.

Claim 12 – Fields' right to a fair trial, right to due process and right to a reliable verdict were violated when the trial court required him to provide preview of his cross-examination.

During Fields' cross-examination of Shalaykea Scroggins, a key Government witness, the trial court repeatedly sustained objections to Fields' questions for form and content. TT at 1611:3-1665:17. During the cross-examination of Ms. Scroggins, the trial court sustained approximately forty six objections by the Government for reasons such as asking questions that were irrelevant, referring repeatedly to the witness by her first name, and asking questions that were not even questions at all. *Id.* Mr. Fields inquired into irrelevant topics such as the siblings of the witness and the various occupations of the witness. TT at 1613:2 – 22. At one point Mr. Fields attempted to read from something not in evidence. TT at 1618:7. Mr. Fields also made

28

side-bar comments and argued with the witness rather than asking meaningful cross-examinations. TT at 1619:2; TT at 1627:23.

Following the conclusion of the day's testimony, the trial court dismissed the jury and then had Fields ask the witness in the presence of opposing counsel the rest of the questions he would like to ask. TT at 1669:9. As the Fifth Circuit pointed out in their opinion, "Eventually, the progress of trial becomes so frustrated by improper questioning that the Court dismissed the jurors to determine which of Field's questions would be acceptable." See *Fields* at 362. Mr. Fields proceeded to ask questions that were successfully objected to by opposing counsel for lacking personal knowledge and asking other questions such as:

> MR. FIELDS: Isn't it true, Ms. Scroggins, that that Jaguar is the key that will unlock this mystery. TT at 1674:5-6.
>
> MR. FIELDS: Whoever tried to pick her up and fell – and fell on her would have been bloody. Wouldn't you agree? TT at 1675:1-2
>
> MR. FIELDS: And isn't it true, Shalaykea, that Shining Star blood is somewhere in that Jaguar? TT at 1675: 14-15.

Mr. Fields even admitted at one point to not understanding the point of the exercise. TT at 1676:22. The trial court then explained:

> THE COURT: **There's no point in having the jury sit here for an interminable length of time listening to questions that are objected to and the objection is sustained when they're merely an attempt by you to get things into the record improperly Mr. Fields.** That's not fair because that's not the way the system works. It's – it's giving you the benefit that nobody else would ever have. It's not fair to the Government. It's not fair to the jury to have to sit here and listen something that they can't use to make a decision. It's all wasted time, and if time's going to be wasted, the jury's not going to have to put up with it… **You're not going to be able to waste the jury's time tomorrow any more that I can help it.** TT at 1677:16-1678:7.

Federal Rule of Evidence 611(a) states:

29

> Control by the Court. The court shall exercise reasonable control over the mode and order of interrogating witnesses and presenting evidence so as to (1) make the interrogation and presentation effective for the ascertainment of the truth, (2) avoid needless consumption of time, and (3) protect witnesses from harassment or undue embarrassment. Fed. R. Evid. 611(a).

In the past, the Fifth Circuit Court of Appeals has held, "the right of cross-examination is not unlimited." *United States v. Lavergne*, 805 F.2d 517, 522 (5th Cir. 1986). The district court is allowed wide discretion in the admission and scope of cross-examination. *Kilgore v. United States*, 567 F.2d 22, 28 (5th Cir. 1972). This discretion, though not absolute, is not abused when the exclusion is supported by some reason. *Id.* Rule 611(a)(2) gives the trial court control over the interrogation of witnesses to avoid the needless consumption of time. Fed. R. Evid. 611(a)(2). Further, a trial court may take reasonable attempts to deal with a trial that turned chaotic due to the defendant's insistence on self-representation. *See United States v. Einfeldt*, 138 F.3d 373, 378 (8th Cir. 1998). Mr. Fields over the course of several hours asked numerous questions which were repetitive and improperly phrased. The trial court did not cut off Mr. Fields' cross-examination, but instead' for the sake of the jury's time' allowed the filtering of questions which were irrelevant and ill-phrased in order to avoid the needless consumption of time.

Fields argues that the "preview" of his cross-examination gave the Government an unfair advantage by alerting the Government to Fields' trial strategy. The trial strategy was apparent. Fields believed he could testify through the guise of cross-examining Scroggins and tell the jury that she killed Suncerey Coleman. That is the reason he wanted to represent himself and that is what he told the jury in his opening. TT at 1202. Mr. Fields also acquiesced to the procedure and never objected.

>MR. FIELDS:  All right.  Well, I'm just going to go down the list and see how many they object to.

>THE COURT:  That's fine.

>MR. FIELDS:  All right.  TT at 1672.

Fields' repeated improper questioning and attempts to testify under the guise of asking questions became a real problem.  Rather than stop Fields from questioning, which the Court had the right to do, it allowed Fields to try and question witnesses the correct way.  It should be noted that Fields as his own attorney was required to follow the rules of procedure, decorum and evidence just like any other lawyer.  The Court bent over backwards to assist Fields yet maintain an orderly trial.

>THE COURT:  That's your attempt to try – well, I'm trying to help you out.  That's your attempt to try to testify without actually taking the stand and be under oath.  TT at 1676.

The Court repeatedly attempted to help Fields outside the presence of the jury.

>THE COURT:  That's something, Mr. Fields, that at the end of the evidence you can argue to the jury, but you can't do it now.  You have to do it at the proper time.  That's the point that you need to understand.  There's a difference between making an argument to the jury based on what the evidence has been and trying to make an argument now.  You can't do that.  The lawyers can't do that, either.  TT at 1679.

The Court summed up its reasoning for having Fields ask questions outside the presence of the jury by stating:

>THE COURT:  Because we were wasting the jury's time, Mr. Fields, and you were taking the opportunity to make speeches and to make statements that you otherwise wouldn't be able to make and that's not appropriate.  The only way I know to stop you from doing that is to do what we're doing right now. . . .  TT 1681 at 12-17.

Fields failed to object to this procedure at trial.  Therefore, he waived the right to complain about it at a later date.

31

Claim 13 – Fields' right to effective counsel was violated when appellate counsel failed to raise the issue of trial court requiring him to provide preview of his cross-examination.

Similar to Claim 7, Mr. Fields next argues of appellate counsel's failure to raise on appeal the issue of the trial court making Mr. Fields go over his cross-examination to filter out the irrelevant ones. TT at 91. Again, the standard for effective assistance of counsel is laid out in *Strickland v. Washington*; Fields must show counsel's performance was deficient and the deficient performance prejudiced his defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). A deficient performance is one in which counsel made errors so serious that counsel was not functioning as the counsel guaranteed by the Sixth Amendment. *Id.* The failure of counsel to raise meritless or weak issues does not constitute ineffective assistance of counsel. *See Jones v. Barnes*, 463 U.S. 745, 751-752 (1983). Experienced advocates since the time beyond memory have emphasized the importance of winnowing out weaker arguments on appeal and focusing on central ones. *Id.*

It is not the duty of appellate counsel to raise issues which are superfluous to the main issues for appeal. *Id.* Mr. Fields' appellate counsel did not feel the need to raise the trial court's requirement of going over Mr. Fields' cross-examination for Ms. Scroggins when there were already more pertinent issues concerning admissibility of the evidence and a possibly defective *Allen* charge. *United States v. Fields*, 483 F.3d 313, 313 (5th Cir. 2009). The trial court's decision was in the proper discretion of its powers, considering its previous frustrations with Mr. Fields' improper questions and its statutory power to limit cross-examination for purposes of not wasting the time of the court. Fed. R. Evid. 611(a)(2). The trial court did not eliminate Mr. Fields' right to cross-examination altogether, it just sought to avoid a waste of the jury's time because Mr. Fields had already caused examination to be drawn out longer than it should have

32

been due to questions which drew sustained objections for being argumentative and improperly phrased. Furthermore, Fields never objected to the procedure, therefore, any complaints are waived.

Claim 14 – The trial court failed to inquire as to whether the *pro se* defendant knowingly and voluntarily waived his right to testify.

Next Mr. Fields raises the issue as to whether the trial court made the proper inquiry whether the defendant knowingly and voluntarily waived his right to testify. (Fields' Motion at 92). In doing so, Fields argues there is a duty of the trial court to inform Fields of his right to testify and his conduct during the trial makes it clear he wished to testify. *Id*. at 96-97.

The Supreme Court of the United States has never stated there is a duty of the trial court to inform a *pro se* defendant of the right to testify. *United States v. McMeans*, 927 F.2d 162, 163 (4th Cir. 1991). The Ninth Circuit has stated no duty exists to inform a defendant of that right and, even further, there is no requirement to obtain an on-the-record waiver of that right. *United States v. Martinez*, 883 F.2d 750, 760 (9th Cir. 1989), *opinion vacated on other grounds,* 928 F.2d 1470 (9th Cir. 1991). Further, the Fourth and Seventh Circuits have held there is no duty on behalf of a district judge to inform a defendant of the right to testify. *McMeans*, 927 F.2d at 163; *United States v. Campione*, 942 F.2d 429, 439 (7th Cir. 1991). The First Circuit has stated the failure to affirmatively claim the right to testify will constitute waiver. *Siciliano v. Vose*, 834 F.2d 29, 30 (1st Cir. 1987). The Tenth Circuit has held there is no statutory or Constitutional mandate for a judge to conduct such an inquiry. *United States v. Janoe*, 720 F.2d 1156, 1161 (10th Cir. 1983). Lastly, a majority of the states have held no such duty exists for a trial court to inform a defendant of that right. *Martinez,* 883 F.2d at 760.

Fields in his motion cites the Fifth Circuit case of *Jordan v. Hagett* for the principal that a defendant must state he is aware of his right to testify. *See Jordan v. Hagett*, 34 F.3d 310 (5th Cir. 1994). *Jordan* states the exact opposite premise: that there should be no such rule for an affirmative declaration of the acknowledgment of the right to testify and the lack of such evidence can be used as evidence to show acquiescence to a voluntary waiver of that right. *Id.* at 314. Fields confuses the true point of *Jordan* – that a district court must hold an evidentiary hearing before rejecting a magistrate's credibility based fact findings. *Id.* The case at hand is distinguishable from *Jordan* because it does not deal with a district court's review of a magistrate's findings of whether a defendant waived the right to testify but instead deals with a district court's direct decision at trial whether that waiver occurred. The Fifth Circuit also stated in *Jordan*:

> That silence may itself be evidence of voluntary waiver of the right to testify. In the absence of evidence in the state court record of the defendant's wish to testify, we think it appropriate for the habeas court to presume that the defendant acquiesced in his counsel's advice or otherwise made a voluntary choice not to testify. *Id.*

The lack of evidence in the record of any objection by Fields for not testifying does not mean absolutely that Fields did not wish to testify, but it can be taken as a strong inference the defendant acquiesced and made a voluntary choice not to testify. *Id.*

Lastly, the petitioner's brief confuses Mr. Fields argumentative and testimonial questions made and objected to during cross-examination as evidence Mr. Fields wanted to testify.  It could also indicate that Fields had no intention of testifying under oath and being subjected to cross-examination but rather his attempt to testify and improperly put his story in front of the jury through his witness examination questions.  However, Mr. Fields can cite no direct evidence in the record that he wished to testify and stated as such to the trial court. In fact, Fields was well

aware of his right to testify.  During the voir dire of the jury, in which Fields was present acting as his own attorney, the Court told the jury that, "Mr. Fields and everyone charged with an offense has the right to remain silent."  TT at 108.  The Court further explained that, "You don't have to testify," TT at 109 ln 13, and that "if a defendant elects, for whatever reason, not to testify, then the jury can't use that against him or her as any suggestion or inference as evidence of guilt."  TT at 109.  Finally, the Court stated, "I don't know whether Mr. Fields will choose to testify in this case or not, but if he doesn't, the jury can't use that as evidence against him as any suggestion or inference of guilty."  TT at 110.

In addition, Fields pled guilty on May 9, 2002, to federal firearms charges which he was facing when he escaped from jail.  During the plea hearing, the Court advised Fields of his rights, including:

> THE COURT:  Also during a trial . . . you would have the right to testify yourself if you wished, but you couldn't be forced to, and if you elected not to testify, the fact that you did not couldn't be used against you as any suggestion or inference of your guilt.  Do you understand those rights that you would have if you elected to go to trial,
>
> THE COURT:  DO you, Mr. Fields?
>
> DEFENDANT FIELDS:  Yes, Sir.  (See Fields' guilty plea transcript May 9, 2002 at Pg. 38 lns 22-25; Pg 39 lns 1-7) (Exhibit 4).

The main evidence brought forth by Fields is the circumstantial evidence of poorly phrased questions which the trial court rejected. (Fields' Motion at 96).  At no point during the trial did Fields state his express wish to testify and therefore Fields knowingly and intelligently waived his right to testify.

35

**Guilt Phase**

Claim 15 – Fields is innocent and his conviction rests on false testimony.

Mr. Fields argues his conviction should be set aside because he is innocent of the charges brought against him. (Fields' Motion at 98). Fields argues his conviction of guilt because of his innocence deprives him of his Fifth, Sixth and Eighth Amendment rights. *Id*. Fields argues the improper forensic work and false testimony by the Government witnesses as the basis for his innocence. *Id*. at 99. However, Fields can bring forth no new evidence that was not presented at trial as an argument for his innocence. Fields can also muster no constitutional error such as a violation of Fourth Amendment unreasonable search and seizure rights or Fifth Amendment right against self-incrimination when attacking the evidence presented against him by the Government at trial.

A person when first charged with a crime is entitled to a presumption of innocence and may insist that his guilt be established beyond a reasonable doubt. *In Re Winship*, 397 U.S. 358 (1970). Once a defendant has been afforded the right of a fair trial and convicted of the offense for which he tried, the presumption of innocence disappears. *Ross v. Moffitt*, 417 U.S. 600, 610 (1974). When reviewing a conviction after appeal has been exhausted, the court may look to the sufficiency of the evidence, but its review is a limited one, focusing not on whether the trier of fact made the correct guilt or innocence determination, but rather whether it made a rational decision to convict or acquit. *Herrera v. Collins*, 506 U.S. 390, 402 (1993). The purpose of habeas review is to correct any error of Constitutional violations, not to correct any errors in fact. *Id.* at 400. It has been written "actual innocence" is not in itself a constitutional claim. *Id*. at 404. Event of the mere existence of newly discovered evidence relevant to the guilt of a prisoner is not grounds for habeas corpus relief. *Id*. at 401. Because of the very disruptive effect entertaining

36

claims of actual innocence would have on the need for finality in capital cases, and the enormous burden that having to retry cases based on often stale evidence would place on the states, the threshold showing for a claim of innocence would be extraordinarily high. *Id.* at 417.

*Herrera v. Collins* addressed a defendant's habeas application on a claim of actual innocence based on new evidence, consisting mainly of affidavits. *Id.* at 400. There the Supreme Court rejected the habeas review holding the new evidence failed to meet the "extraordinarily high" burden to show innocence. *Herrera*, 506 U.S. at 417. Here, Fields cannot even claim new evidence to support his actual innocence claim. He cannot claim any corroborating or direct evidence to support his claims of false testimony or faulty forensic work.  His only reasoning is purely circumstantial, such as arguing a lack of blood found in the car Mr. Fields was driving infers Mr. Fields did not commit the murder. (Fields' Motion at 100). Fields can also bring forward no corroborating evidence to support his allegations that the Government's witnesses gave false testimony. That evidence is for the jury to weigh and decide. Further the statements concern matters of credibility which the jury has already weighed at trial and thus cannot trigger any sort of constitutional claim meant for habeas review. *Id.* at 418-419.

<u>Claims 16 – The Government presented evidence it knew or should have known to be false.</u>

Fields argues the Government used false evidence in its prosecution of him. (Fields' Motion at 109). More specifically, Fields argues the testimony against Fields was unreliable. However, the jury is the sole judge of the credibility of the witness. *See Davis v. Alaska*, 415 U.S. 308, 317 (1974). The jury in this case found Fields to be guilty unanimously. Fields in his petition can cite no evidence other than insinuate circumstantial motives and biases as evidence the witnesses were not telling the truth.  (Fields' Motion at 109.) ("The prosecution's case

37

against Fields relied almost exclusively on the testimony of individuals with motives to lie and manipulate their testimony.") Fields also can claim no new evidence since his conviction disproving those witnesses. Further, Fields had numerous opportunities to cross-examine these witnesses. As cross-examination is the greatest legal engine for the determination of the truth, Fields had a chance to disprove these witnesses and could not muster forward any direct evidence disproving their testimony. Because of these opportunities to disprove the Government's witnesses, the jury's verdict agreeing with that testimony and the lack of any proof disproving the witnesses' testimony, the reviewing court must give a strong presumption in the jury's support of the Government's evidence.

Claims 17 – Counsel failed to make a competent investigation into the facts of a charged homicide.

Fields claims ineffective assistance of counsel due to the way in which counsel went about investigating the case. (Fields' Motion at 110). Namely, Fields complains about the selection of interviews counsel made with Government witnesses. However, what Fields neglects to mention is that the decision to appear *pro se* amounts to a waiver of any claim of effective assistance of counsel. *See Faretta v. California*, 422 U.S. 806, 834 n. 46 (1974) ("a defendant who elects to represent himself cannot thereafter complain that the quality of his own defense amounted to a denial of 'effective assistance of counsel' "). One circuit has even held the right to effective assistance of standby counsel does not exist. *United States v. Morrison*, 153 F.3d 34, 55 (2d Cir. 1998). A similar case arose in the District of Minnesota last year where the defendant who represented himself *pro se* complained about standby counsel's failure to interview key eye witnesses and alibi witnesses. *United States v. Mentzos*, 2008 WL 2563869 at *3 (D. Minn June

25, 2008). The trial court on collateral review could not find any error on behalf of standby counsel where the defendant did not request standby counsel perform any of these tasks. *Id.*

Even so, Fields cites the Fifth Circuit cases *Bryant v. Scott* and *Anderson v. Johnson* for the proposition that failure to interview witnesses constitutes ineffective assistance of counsel under *Strickland v. Washington*. *Id*. at 115. To meet the ineffective counsel threshold set forth by *Strickland v. Washington*, the injured party must show counsel's performance was deficient and that deficiency prejudiced the defendant. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). A deficient performance is defined by performance which falls below an objective standard of reasonableness. *Id.* at 688. There also must be a showing that but for the counsel's conduct, the result would have been different. *Id.* at 694.

However, the unreasonable conduct in *Bryant* was a cumulative effect of counsel failing to interview alibi witnesses, eyewitnesses and a codefendant. *Bryant v. Scott*, 28 F.3d 1411, 1414 (5th Cir. 1994). The conduct here is far from similar than the conduct in *Bryant*. Further, even if unreasonable conduct is discovered, there must be a finding of prejudice which was found in *Anderson* because the entire prosecution's case hinged on one particular witness the defense failed to interview. *Anderson v. Johnson*, 338 F.3d 382, 393-394 (5th Cir. 2003). In the case at hand, counsel managed to interview the crucial witnesses and the prosecution's case presented overwhelming evidence against the defendant, rendering it pointless to interrogate any other witnesses. Fields complains counsel failed to interview Mike McNamara, a U.S. Marshal who apprehended Fields. (Fields' Motion at 110). However, this witness was not a crucial part of the Government's case and was only asked a couple of questions. TT at 1967. Further, counsel did interview key witnesses such as Shalaykea Scroggins, the woman Fields claim was actually

39

involved in the perpetration of this crime. TT at 111.  Fields complains Edward Outley was not interviewed; however, he was represented by counsel.

Fields' attempts to cast a shadow on standby counsel's performance in investigating the facts of the homicide investigation during the guilt phase before Fields took over his own defense.  Thirty-eight witnesses testified for the Government during the guilt phase.  Fields claims it was ineffective for his lawyers not to interview all the witnesses.  That is not the standard under *Strickland* and that is not what happens in criminal cases.  Josalyn Rollins, the sister of Suncerey Coleman, testified about pictures and letters her sister had.  TT at 1242.  Alvin Brown testified about smelling something dead and then finding Coleman's body.  TT at 1246. Steve Smith, with the Waco Police Department, testified about getting the call about a body being found and establishing the crime scene.  TT at 1252.  Roy Davis testified about collecting evidence at the crime scene.  TT at 1259.  Morris Colyer, with the McLennan County Sheriff's Office, testified about capturing Fields at Steadman's apartment and finding a .22 caliber handgun.  TT at 1311.  Steve January, with the Waco Police Department, testified about processing various cars during the investigation.  TT at 1316.  Jerry Slaughter with Sprint, Amrad Patel with the New Road Inn, Raymond Bell and Lynn Shaw with Hillcrest Baptist Medical Center, and Julie Evans with CiviGenics were all document custodian witnesses called to introduce documents that Fields' counsel reviewed in discovery.  Dr. Jill Urban, Southwest Institute for Forensic Science, testified about conducting the autopsy on Suncerey Coleman.  TT at 1441.  Silvia Reyes and Jackie Harris were custodian/chain of custody witnesses from Southwest Institute for Forensic Science.  Andrew Degan, Waco Police Department, testified about finding the keys to Terry Edwards' car in Steadman's apartment.  TT at 1528.  Steve Graeter, Waco Police Department, testified about getting the call that Fields was at Steadman's

40

apartment.  TT at 1524.  Jimmy Stone, at the Highway 6 Jail, testified about intercepting Fields' mail.  TT at 1804.  Chris Casson, with the United States Marshal's Service, and Doug Kunze, with the Bureau of Alcohol, Tobacco, Firearms and Explosives (BATFE), were the case agents. The remaining witnesses either had given statements and/or testified under oath before the grand jury.  In addition, a majority of the witnesses had written reports that counsel reviewed.

Fields also claims that counsel merely relied on the Government's open-file discovery and filed no motions.  That allegation is untrue.  The defense filed a formal discovery motion (Exhibit 7).  Counsel also requested other items of discovery (Exhibit 8).

It must be noted that Fields represented himself.  It was his choice who to interview, who to subpoena, who to call as a witness during the trial.  The record does not reveal that Fields asked for a continuance to subpoena or interview witnesses.  Fields was in charge of his defense and he cannot claim ineffective assistance of counsel.

Because of the reasons mentioned, this claim must be denied.

### Claims 18 – The Government failed to disclose exculpatory evidence.

Fields next claims Government withheld exculpatory evidence by refusing to correct a statement by a witness that he did not have immunity and notes of another witness used to prepare his testimony. (Fields Motion at 120-121). Fields argues the evidence was not disclosed in violation of *Brady v. Maryland*. (Fields' Motion at 121). Fields correctly cites the correct test in the Fifth Circuit for alleging a *Brady* violation: 1) the prosecution suppressed evidence; 2) the evidence was favorable; 3) the evidence was material to guilt or punishment; and 4) discovery of the allegedly favorable evidence was not the result of a lack of due diligence. *See Parr v. Quarterman*, 472 F.3d 245, 254 (5th Cir. 2006). Fields' argument fails at step 3.  Evidence of

bias on the part of the witness, Edward Outley, while may be evidence of a motive to lie is not direct evidence of lying and is merely circumstantial.

Fields was provided with the letter sent to Outley's attorney prior to trial.  The letter speaks for itself and correctly states the Government's agreement regarding Outley (Exhibit 12). Outley's trial testimony was consistent with his grand jury testimony as far as providing the car, the gun, the motel room, and the fact that Fields told Outley that he "messed up" when asked about killing Suncerey Coleman.  TT Vol. 12 at lns 1-6.  During the trial, Fields questioned Outley about any promises the Government made to him, plea deals, and any motions for departure pursuant to United States Sentencing Guidelines 5K1.1.  Fields had the letter that was sent to Outley's attorney and chose not to pose any questions, specifically about it or even enter it as an exhibit.  Outley testified about the reasons he was testifying and that Fields had forced him to testify because he was falsely alleging that Outley was present during the murder of Coleman.  TT Vol 12 at lns 4-9.  The Government fulfilled its obligations by disclosing to Fields the letter and all other information regarding Outley.  There were no *Brady* violations.

Fields claims that there are "missing" notes from Homero DeLeon regarding his conversations with Fields and that in these "missing" notes there is certainly *Brady* material. Fields has made no showing.  DeLeon sent a four page letter to the Government on February 12, 2003, after his conversations with Fields at the Fort Worth Medical Center (Exhibit 9), which Fields included as an exhibit in his Section 2255 motion.  DeLeon was interviewed on November 13, 2003, and Special Agent Kunze, BATFE, wrote a report (Exhibit 10) which Fields included as an exhibit to his Section 2255 motion.  DeLeon's trial testimony is consistent with his interview on November 13, 2003.  DeLeon testified Fields told him that Fields shot the victim, TT at 1426, and that Fields dragged her under a tree.  TT at 1426.  Fields alleges in his motion

that DeLeon was inconsistent with his story of how he escaped from jail.  Fields is confused.

DeLeon reported he asked Fields why he had been sent to Fort Worth because he thought Fields

was in the Highway 6 Jail in Waco.  TT at 1423.  Fields initially escaped from the downtown jail

facility.  After he was apprehended, he was housed at the Highway 6 Jail.  Fields then tried to

escape from the Highway 6 Jail and he was subsequently transferred to the Fort Worth Bureau of

Prisons facility.  Fields tried to escape by digging around a vent panel in the ceiling.  TT at 2300-

2301.

Similarly, any impeachment evidence against Homero DeLeon is not evidence of Fields'

innocence, and Fields can muster no direct evidence showing such.


Claim 19 – The Government failed to correct a material misstatement.

During the trial, Edward Outley stated the Government had made no promises to him.

(Fields' Motion at 125). Fields argues this statement was in conflict to the derivative use

immunity granted to Outley and Government prosecutors allowed this statement to go on the

record without correcting the witness. To obtain relief for false testimony, the defendant must

show: 1) the testimony was actually false; 2) the state knew it was false; and 3) the testimony

was material. *Kirkpatrick v. Whitley*, 992 F.2d 491, 497 (5th Cir. 1993). The standard for

materiality is whether there is a "reasonable likelihood that the false testimony could have

affected the jury's verdict." *Id.* That standard is not met here.  In no way was whether Mr. Outley

was given immunity weigh on the guilt or innocence of Fields. Further, there was no affirmative

statement made before the jury Mr. Outley did not have immunity; the specific statement made

by Outley was that no *promises* had been made. (Fields' Motion at 125).   Mr. Outley may not

have understood the questions, or he did not believe any promises were made to him or Fields

43

just failed to explain it.  The Government cannot speculate what trial tactic Fields was using.

Perhaps he was going to call an additional witness in an effort to impeach Outley.  It appears

from Fields' cross-examination that he was trying to show that Outley had been "promised" that

he would not be charged with murder.  Outley testified that he was not made such a promise by

the Government.  TT at 1847-1852.  The Government is not required to interrupt during a trial

and speculate as to what the witness is thinking or what Fields is attempting to do.  It is obvious

Fields had the letter and chose not to ask Outley questions specifically about the letter.  Because

the materiality prong has not been satisfied in this case, the testimony was not error.

Claim 20 – Fields was questioned in the absence of counsel when prison inmates acting as
informants questioned him and claimed he confessed.

Fields next argues the use of jailhouse informants conversing with Fields about the crime

violated Fields' Sixth Amendment right to counsel. The Supreme Court case *United States v.*

*Henry* answered the question as to whether a jailhouse informant acting on behalf of the

Government can violate the prisoner's Sixth Amendment rights when the informant deliberately

elicits the confession from the prisoner. *United States v. Henry*, 447 U.S. 264, 274 (1980). The

Supreme Court, however, stated in *Kuhlman v. Wilson*, that when the confession does not come

about from the deliberate acts of the agent that the Sixth Amendment was not violated.  *Kuhlman*

*v. Wilson*, 477 U.S. 436, 456 (1986).  Also important is at what point the Government became

involved in communication with the jailhouse informants. If the elicitation came prior to any

involvement of the Government, then there is no violation as it is the *deliberate* attempt to use

jailhouse informants as Government agents. *See Massaih v. United States*, 39 F.3d 419, 421-22

(1964). Here the jailhouse informant, Homero DeLeon, approached Fields on his own accord

with no initiation on behalf of the Government. TT at 1425. While DeLeon was acting in hopes

44

of receiving favorable treatment from prosecution, Government activity cannot be imputed on him because at the time he spoke to Fields, he was not acting on behalf of the Government. Thus, there was no Sixth Amendment violation.

**Penalty Phase**

Claim 21 – Counsel failed to conduct a competent penalty phase investigation.

Fields complains counsel was ineffective in violation of *Strickland v. Washington* by failing to conduct a competent penalty phase investigation. To meet the ineffective counsel threshold set forth by *Strickland*, the injured party must show counsel's performance was deficient and that deficiency prejudiced the defendant. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). A deficient performance is defined by performance which falls below an objective standard of reasonableness. *Id.* at 688. There also must be a showing that but for the counsel's conduct, the result would have been different. *Id.* at 694. The errors Fields states that were allegedly committed by counsel were: 1) counsel failed to obtain all the relevant social history of the Fields' family; 2) counsel failed to interview historical witnesses; 3) counsel failed to interview available family-member mitigation witnesses; 4) counsel failed to investigate and document trauma in Fields' life; 5) counsel failed to investigate Fields' mental illness and family history of mental illness; 6) counsel failed to investigate potential brain damage and dysfunction; and 7) counsel unreasonably failed to interview readily available witnesses about Fields' history of incarceration. (Fields' Motion at 138; 141; 144; 147; 149; 153).

However, Fields in his motion neglects to mention the mitigating evidence counsel did bring up at trial, much of which was related to the evidence Fields complains about in his motion. In direct contradiction to what Fields argues in his fourth allegation of ineffective

45

counsel in his motion that counsel had failed to investigate and document trauma in Fields' life, defense counsel stated in opening statements at the punishment phase, "**In this case we will show that Sherman Fields had a very disruptive, a very violent childhood.**" TT at 2371:11-12 (emphasis added). Counsel presented the evidence of Jane McHan, a social worker who testified about the family history of Mr. Fields. TT at 2393. Ms. McHan testified about how Mr. Fields' mother became involved with an abusive boyfriend who abused alcohol and abused Mr. Fields and other members of the family. TT at 2394. She testified how Ms. Fields, Sherman's mother, shot this man and was incarcerated because of it. TT at 2397-2398. Later, Ms. McHan touched on mental illness in Fields' family and how his mother received disability benefits for mental retardation. TT at 2404:1. Ms. McHan also testified about how Sherman had other problems with the law including an offense involving theft. TT at 2399:16. McHan's other testimony involved recalling Sherman's traumatic upbringing where several friends of his died tragically. TT at 2400:11-25 – 2401:1-21. She described Fields' childhood as "disruptive" and "violent." TT 2407:13-24.

In addition, defense counsel called Alice Swinnie, the mother of Sherman Fields, to testify regarding their family history. TT at 2456:12. Swinnie testified about the men who abused her and Mr. Fields. TT at 2458:21. She testified about having been to jail and making Fields live with her father. TT at 2464:2-20. Defense counsel also produced testimony from a psychologist regarding the mental health and intelligence of Mr. Fields. TT at 2473. The psychologist testified to the intellectual capacity of Mr. Fields and his potential for a long-term healthy life. TT at 2479:16.

Turning to Fields' specific complaints, Fields complains defense counsel did not obtain all of the relevant social information regarding the Fields family. However, defense counsel

produced numerous members of the Fields family to testify including his mother and his uncle. TT at 2456, 2432. Fields complains defense counsel failed to interview historical witnesses; however, defense counsel produced many people who had known Sherman Fields for his entire life, like his mother, uncle, cousin and a previous girlfriend. TT at 2456, 2432, 2442, 2453. Fields states counsel failed to document and investigate trauma in Fields' life, yet defense counsel produced testimony regarding Fields' abusive upbringing and the incident where his mother was incarcerated. TT at 2458:21.

Fields cites the recent string of Supreme Court cases which addressed failure of counsel to research and introduce mitigating evidence at trial under the *Strickland* standard. (Fields' Motion at 165). However, those cases, culminating in *Rompilla v. Beard*, are distinguishable from the case at hand. Those cases dealt with counsel that failed to discover whole areas of a defendant's past that could have been used at mitigation such as a prior conviction, a social history report, or history regarding a troubled background. *See Rompilla v. Beard*, 545 U.S. 374, 390 (2005); *Wiggins v. Smith*, 539 U.S. 510, 524 (2003); *Williams v. Taylor,* 529 U.S. 362, 395 (2000). Here, Fields' counsel did conduct an investigation into all the areas cited in Fields' motion. They produced testimony regarding Fields' abusive childhood, brought forward expert testimony regarding Fields' past and intellectual capacities and mentioned in detail Fields' past troubles with the law. It cannot be said that further research should have been done by counsel and that Fields was prejudiced by counsel's alleged failure.

In fact, counsel was very successful in proving the types of information Fields complained about. The jury in the Special Findings Form (Exhibit 11) reflects the following: Eleven jurors found that the imposition of a death sentence would cause emotional injury, harm and loss to the Defendant's mother, children and other family members; twelve jurors found the

Defendant has lived most of his life without having a significant father figure; twelve jurors found that the Defendant has spent a large portion of his life incarcerated; twelve jurors found that the Defendant's periods of incarceration have included significant times in solitary confinement; eleven jurors found that as the Defendant ages, his behavioral conduct problems may decrease; twelve jurors found that the Defendant suffered from physical and emotional abuse during his formative years; twelve jurors found that the Defendant suffered from parental neglect during his formative years; seven jurors found that the Defendant grew up in an atmosphere of violence and fear, which misshaped his perception as to the acceptability or necessity of violent conduct; nine jurors found that the Defendant can be of some productive value in a prison setting; twelve jurors found that the Defendant is a product of an impoverished background which impaired or hampered his integration into the social and economic main stream of society; twelve jurors found the Defendant's mother has a history of criminal behavior and incarceration; and twelve jurors found that the Defendant was exposed to the violent deaths of family members, loved ones and friends during his formative years. The jury's findings show that defense counsel was very successful in presenting mitigating evidence; therefore, counsel's performance did not fall below the *Strickland* standard.

Claim 22 – Fields' right to counsel was violated when counsel failed to competently prepare for and cross examine a key Government witness.

Claim 23 – Fields' right to counsel was violated when counsel failed to investigate and present testimony that there was a small risk Fields would engage in future acts of violence.

Claim 24 – Fields' right to counsel was violated when counsel failed to investigate and present testimony of the ability of the federal prison system to control Fields.

Claim 25 – Fields' right to counsel were violated when counsel failed to investigate and present testimony of the minimal risk of escape from a federal prison.

Fields' next four claims are all grouped together and raise alleged constitutional violations regarding the cross-examination of the Government's witness, Dr. Richard Coons, and counsel's failure to critique the future dangerousness of Mr. Fields. (Fields' Motion at 166). In other words, Fields complains that counsel was ineffective in attacking the Government's testimony regarding future dangerousness and failed to present evidence regarding Fields' risk in the prison system. At the penalty phase of the trial, the jury found Mr. Fields was likely to commit serious acts of violence in the future which would be a continuing and serious threat to the lives and safety of others. (Fields' Motion at 167). This finding occurred because of Government testimony offered by Dr. Coons, *Id.*, as well as evidence of Fields' behavior in prisons and his repeated escape attempts. Fields complains counsel was ineffective in its cross-examination of Dr. Coons. *Id.*

For counsel to have been ineffective, a petitioner must show counsel's performance was deficient and that the deficiency prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). A deficient performance is defined by performance which falls below an objective standard of reasonableness. *Id*. There also must be a showing that counsel's conduct prejudiced the defendant. *Id.*

Fields cannot meet that test here. Counsel conducted a vigorous challenge to Dr. Coons' testimony, which included a *Daubert* challenge and confronting the witness with professional psychiatric standards which question the difficulties of predicting future dangerousness. TT at 2317, 2356. During the *Daubert* hearing, counsel attacked Dr. Coons by stating the American Psychiatric Association has questioned the reliability of predicting future dangerousness. TT at 2319:9-12. Counsel brought to the attention of the witness a study done in the *Journal of Criminal Law and Criminology* which questioned the prediction of future dangerousness. TT at

49

2321:3-5. Defense counsel confronted the witness with his failure to speak with doctors who examined the defendant. TT at 2322:7. Defense counsel confronted the witness with the lack of peer review done on predicting future dangerousness. TT at 2324:19-21. Counsel also made the witness admit the lack of follow up he had done with any of the previous future dangerousness predictions. TT at 2328:11-18.

On cross-examination, counsel further attacked the predictability of future dangerousness assessments. TT at 2356:1. Counsel made the witness admit before the jury the American Psychiatric Association has indicated predicting future dangerousness is a very inexact science. TT at 2356:12-15. Counsel questioned the witness to admit there was the chance the defendant had made a substantial change in his behavior for the better. TT at 2358-2359. Counsel also got the witness to admit with a life sentence there was the possibility Fields would become less dangerous with age over time. TT at 2354.

Fields also criticizes the omission of counsel in failing to bring up the possibility of incarceration in the super-maximum facility ADX Florence. (Fields' Motion at 184). The nature of the facility of ADX Florence renders escape and any acts of violence very difficult and is a place where the worst inmates are to be housed. *Id*. at 185. "Supermax" facilities, like ADX Florence, are prisons with highly restrictive conditions meant to isolate inmates. *Wilkinson v. Austin*, 545 U.S. 209, 213 (2005). Fields argues the introduction of the possibility of incarceration in ADX Florence prejudiced Fields by not making the jury aware of a feasible incarceration site that could minimize Fields' violent tendencies. (Fields' Motion at 186). This critique though is a mere second-guess at the way in which counsel attacked Dr. Coons' methodology.

Any critique of the performance by counsel cannot meet the prejudice test as outlined in *Strickland*. Fields in his motion complains that counsel failed to demonstrate that Dr. Coons' methodology had been rejected by the APA. (Fields' Motion at 170). On the contrary, counsel did confront the witness during the *Daubert* hearing and at cross-examination with the APA's view predicting future dangerousness is a sketchy thing. TT at 2317, 2356. Fields complains counsel failed to confront the witness with several published psychiatric works doubting the accuracy of predicting future dangerousness. For an error to render counsel ineffective under *Strickland*, the error must be so serious that counsel did not serve the purpose of the Sixth Amendment. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). The performance must fall below an objective standard of reasonableness. *Id.* There are no set of detailed rules which state how counsel must conduct a defense. *Id.* Judicial review must be highly deferential to counsel's performance as it is too easy to second guess and criticize an act or omission as unreasonable. *Id*. at 689. The court must indulge a strong presumption that counsel's performance fell within the reasonable range of acceptable conduct. *Id.* In addition to that standard, that error must be one which made the outcome of the proceeding different. *Id.* at 694.

Counsel's conduct in this case was reasonable and did not prejudice the defendant. He did confront the witness with the difficulty of predicting future dangerousness and with the possibility Fields would be better behaved in the future. TT at 2317, 2356. Counsel made an effort to attack the witness' methodology and the Supreme Court has stated a reviewing court may not second-guess the strategy in making that attack. *Strickland*, 466 U.S. at 689. Ineffective counsel would have been a total *lack* of any criticism or investigation into Dr. Coons' methodology. The jury was made aware though of the problems with predicting future dangerousness, and counsel even tried to have the witness excluded by mounting a *Daubert*

challenge. The jury heard that APA considers predicting future dangerousness as "sketchy." TT at 2356:15. Thus, a reviewing court cannot say counsel's performance was unreasonable and prejudiced the defendant.

Claim 26 – The Government misrepresented the conditions of Fields' confinement and potential for future dangerousness.

Fields accuses the Government of prosecutorial misconduct. (Fields' Motion at 194). Specifically, Fields complains the Government misled the jury about the nature of any potential life imprisonment and the potential danger of Fields attempting to escape from prison again. *Id.* at 201. Fields argues the Government, in making an argument for the death penalty, misled the jury regarding the possibility of "escape-proof" prisons. *Id.* at 195. Fields argues there are such prisons within the Bureau of Prisons system, namely ADX Florence in Colorado, which can contain dangerous defendants. *Id.* at 196.

A criminal defendant bears a substantial burden when attempting to show that prosecutorial improprieties constitute reversible error. *United States v. Diaz-Carreon*, 915 F.2d 951, 956 (5th Cir. 1990). Improper prosecutorial comments require reversal only if the comments substantially affected the defendant's right to a fair trial. *Id.* In evaluating any effect on the right to a fair trial, we consider three factors: the magnitude of the prejudicial effect of the remarks, the efficacy of any cautionary instruction, and the strength of the evidence of the defendant's guilt. *Id.* The misconduct complained of must be examined in the context of the trial in which it occurred. *United States v. Willis*, 6 F.3d 257, 264 (5th Cir.1993).

Fields cannot meet this standard elicited by the Fifth Circuit in *Diaz-Carreon*. Looking at the factors listed, namely the factor concerning the strength of the evidence of the defendant's guilt, it is clear no misconduct occurred. First, Fields can point to no real evidence the remarks

made by the prosecutor prejudiced the jury into reaching a death penalty verdict. Fields claims the prosecutor used "false evidence" concerning the capability of the Bureau of Prisons to confine Mr. Fields. (Fields' Motion at 199). However, in no way at any point in the prosecution's closing argument did the Government state anything that was false. Fields argues the prosecution misled the jury by arguing his past escape warranted him a future danger. *Id*. at 202. There is nothing false or misleading in stating a man who has escaped from prison and killed may do so again. Further, it cannot be said such an omission led the jury to its death penalty finding. Many other arguments made by the Government during the jury argument may have led the jury to this conclusion, namely by arguing Fields met the statutory and non-statutory aggravating factors indicating a death sentence. TT at 2507:8. The Government argued Fields had deliberately planned the crime. TT at 2507:21-22. The Government argued Fields committed this crime while in the commission of an escape. TT at 2508:3. The Government also brought to the attention of the jury the defendant's arrest record. TT at 2509:1-8. The Government also argued for the non-statutory aggravating factors such as the harm caused to the victim's family and Fields' history of violence. TT at 2509-10. These arguments also led the jury to return a death penalty verdict and Fields cannot show any statements regarding the capability of prisons to contain Fields prejudiced him to the point that, but for that argument, the jury would not have returned a death penalty verdict.

The strength of the guilt of the defendant needs also to be taken into account when deciding the issue of prosecutorial misconduct. *United States v. Diaz-Carreon*, 915 F.2d 951, 956 (5th Cir. 1990). Restating the arguments made above, Fields in his motion can argue no new evidence exists exonerating the defendant. A jury found Fields guilty beyond a reasonable doubt. A valid final judgment weighs heavily on habeas review, as some errors which can be grounds

for reversal on direct appeal may not support a collateral attack on a final judgment. *United States v. Addonizio*, 442 U.S. 178, 184 (1979). The evidence of Fields' guilt is overwhelming. The Government brought forward testimony from the guard, Benny Garrett, regarding the conspiracy to escape. TT at 1567:13. The Government brought forward testimony from Tammy Edwards that the defendant stole her car. TT at 1738:15. There was testimony the defendant had a gun in his possession. TT at 1769:14-15. There was testimony from Christian Walker that the defendant stated he killed the victim. TT at 1773:16. Based on all the evidence and the guilty verdict found against the defendant, there was no violation of the defendant's right to a fair trial because of any prosecutorial misconduct. The prosecution did not deliver any misleading evidence because they made valid arguments in stating Fields posed a future danger because of his history of escape and violence.

Claim 27 – Right to counsel was violated when counsel failed to respond to Government's misleading evidence and arguments concerning his risk of dangerousness.

Claim 28 – Fields right to counsel was violated when counsel failed to object and present contradicting evidence to Government's assertion of future dangerousness.

Once again, Fields argues his right to effective counsel was violated. (Fields' Motion at 203). This time, Fields claims counsel failed to respond to what Fields claims was misleading evidence regarding his future dangerousness and his risk of future escape. To meet the ineffective counsel threshold set forth by *Strickland v. Washington*, the injured party must show counsel's performance was deficient and that deficiency prejudiced the defendant. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). A deficient performance is defined as a performance which falls below an objective standard of reasonableness. *Id.* at 688. There also must be a showing that but for the counsel's conduct, the result would have been different. *Id.* at 694.

Fields complains counsel failed to investigate and bring up the possibility of incarceration in ADX Florence and how incarceration in ADX Florence would greatly diminish Fields' chance of escaping from prison again. (Fields' Motion at 184). Again, counsel's conduct cannot be subjected to strict second guessing, and strong deference must be given to counsel's judgment. *Strickland*, 466 U.S. at 691. Counsel's job is to make an adversarial process work and there is a strong presumption he did so. *Id.* at 690. Counsel did make an attack on the Government's use of Dr. Coons and his presumption of future dangerousness. TT at 2356. Just because counsel second guesses the way in which counsel conducted his attack does not make his performance unreasonable. *Strickland*, 466 U.S. at 689.

Further, the defendant must, in order to demonstrate the prejudice prong of *Strickland*, show there was a reasonable probability that but for counsel's conduct, the outcome of the proceedings would be different. *Id.* at 694. When the defendant is attacking a death sentence, he must show there was a reasonable probability, absent the counsel's error, the sentence would have concluded the punishment did not warrant death. *Id.* at 695. Defendant has not met his burden in showing the mentioning of ADX Florence or a different attack on the reliability of predicting future dangerousness would have convinced the jury the death sentence was not warranted. Counsel did other things in attacking the credibility of Dr. Coons, such as casting doubt on his conclusions during the jury argument. TT at 2522:11. Counsel called into question the APA's doubtful opinion on predicting future dangerousness. TT at 2321:3-5. Counsel tried to get the witness excluded. TT at 2319:9-12. Further, the jury's knowledge that there is a prison in Colorado which Fields could be incarcerated does not reach the "reasonable probability" standard elicited by the Supreme Court that the omission of mentioning the prison would have led to a different outcome. There were many other reasons for the jury to arrive at a death

55

penalty sentence. The Government argued at opening argument about the deliberateness Fields showed in planning the escape and the steps to commit the crime. TT at 2498:24-2499:16. The Government talked about how Fields intentionally killed the victim. TT at 2505:16-23. The Government talked about how the defendant knew there was a risk of death involved. TT at 2506:11-14. The Government presented testimony about how the defendant had previously participated in attempted murders. TT at 2510:3-4. The Government presented testimony about how difficult Fields was as a prisoner. TT at 2510: 8-11. All of these other pieces of evidence contributed to the jury's finding of a death sentence and in no way did the omission of mentioning high security prisons prejudice the defendant otherwise.

<u>Claim 29 – Fields' right to jury trial was violated when court instructed jurors to reach a unanimous verdict after they declared they were unable to reach one.</u>

A.  Procedural Bar

It is standard jurisprudence that a defendant who has already had an opportunity to argue a claim on appeal in a fair manner may not do so again on collateral attack. *United States v. Frady*, 456 U.S. 152, 164-65 (1982). Only in cases alleging an error involving a "fundamental defect which inherently results in a complete miscarriage of justice" will collateral review be allowed. *See United States v. Adonnizio*, 442 U.S. 178, 185 (1979). If not, then the final judgment commands respect. *Frady*, 456 U.S. at 165. Fields on appeal complained about the *Allen* charge given to the jury during its deliberation after the sentencing phase. *United States v. Fields*, 483 F.3d 313, 338 (5th Cir. 2007). The Fifth Circuit rejected his complaint, finding the supplemental charge given by the trial court not to be coercive. *Id.* at 340. Because Fields was given the chance to complain about the *Allen* charge, the judgment of the Fifth Circuit commands our respect and the issue of the *Allen* charge cannot be reviewed.

56

B. The *Allen* Charge

Besides the procedural problems with Fields raising a complaint regarding the supplemental charge, the charge given by the court in no way can be considered an improper *Allen* charge. The Supreme Court has approved the giving of supplemental charges after the jury has deliberated. See *Allen v. United States*, 164 U.S. 492 (1896). The Fifth Circuit has stated the giving of an *Allen* charge rests initially in the sound discretion of the trial court. *Powell v. United States*, 447 F.2d 894, 900 (5th Cir. 1971). An *Allen* charge will only create problems if it is used to coerce the jury to reach a verdict. *Hale v. United States*, 435 F.2d 737, 741 (5th Cir. 1970). The charge given by the court in this case simply stated, "Please continue your deliberations." TT at 2548. Such a charge has been held to not be coercive and charges that contained stronger language have been held not to be coercive. *See United States v. Straach*, 987 F.2d 232, 243 (5th Cir. 2007). Thus the charge in question cannot be coercive and in violation of *Allen*.


**<u>Security and Confinement</u>**

<u>Claim 30 – Forcing Fields to wear a stun belt violated Mr. Fields right to self-representation and a fair trial.</u>

<u>Claim 31 – Forcing Fields to wear a stun belt violated Mr. Fields right to counsel and right to a reliable determination of punishment.</u>

<u>Claim 32 – Forcing Fields to wear a stun belt violated Fields right to be present at trial.</u>

<u>Claim 33 – Counsel's failure to demand a hearing and evidence in response to directive that Fields wear a stun belt violated of essential Fifth, Sixth and Eighth Amendment rights.</u>

<u>Claim 34 – Requiring Fields to wear a stun belt interfered with his ability to consult with counsel.</u>

<u>Claim 35- By affecting his demeanor in court, forcing Fields to wear a stun belt violated his rights to a reliable sentence</u>
.

A. Procedural Bar

Fields again raises an issue, that of the stun belt Fields wore in court, as grounds for habeas review which he already raised on direct appeal. (Fields' Motion at 205). The claims related to the stun belt are, namely, that wearing the stun belt violated his right to due process, a fair trial, effective counsel, and a fair determination of punishment. *Id.* at 205-206. On direct appeal, Fields complained being forced to wear the stun belt was not necessary, was not at the discretion of the court and a result of the U.S. Marshals and unfairly prejudiced him in front of the jury. *United States v. Fields*, 483 F.3d 313, 356-357 (55h Cir. 2007). The Fifth Circuit rejected this argument, stating a trial court may rely heavily on the U.S. Marshal's advice and use of the stun belt was justified because of his previous escape attempts. *Id.* at 357. The appeals court also made conciliatory measures by making sure the stun belt was not visible to the jury and requiring all counsel to remain seated during questioning. *Id.*

Once again, a party that has argued one point on direct appeal may not do so again on habeas appeal as the final judgment of the original proceedings command respect. *United States v. Frady*, 456 U.S. 152, 164-65 (1982). Fields' complaints in his petition amount to nothing more than a rephrasing of the same arguments he made in front of the Fifth Circuit, that the stun belt unfairly prejudiced him and deprived him of his Fifth, Sixth and Eighth Amendment rights. (Fields' Motion at 204-205). Because he already had an opportunity to make his complaint known, he is procedurally barred for raising this appeal collaterally.

B.  The Stun Belt

The issue at hand is to what extent a defendant at trial may be restrained without infringing on basic Constitutional rights. Fields argues the stun belt is "the most restrictive security measure possible." (Fields' Motion at 207). A district court, however, retains the discretion to take measures to maintain order and security within its courtroom. *See Deck v.*

*Missouri*, 544 U.S 622, 632 (2005) (recognizing the need to give trial court latitude in making individual security determinations). The standard for whether a district court abused its discretion and, in the process, violated a defendant's constitutional rights, hinges on the nature and effect of the restraint. *United States v. Wardell*, 2009 WL 2998939 (10th Cir. 2009). Shackling for instance has been deemed to be an inherently prejudicial practice. *Deck*, 544 U.S. at 635.

It cannot be concluded that the jury was prejudiced when there is no evidence when the belt is not activated and the belt is not visible to the jury. *See United States v. Joseph*, 333 F.3d 587, 591 (5th Cir. 2003). Fields cites cases from several Circuit courts that have found use of a stun belt to be error. (Fields' Motion at 209-210). However, Fields ignores the Circuits which have upheld the use of a stun belt in certain specific circumstances. *United States v. Fields*, 483 F.3d 313, 357 (5th Cir. 2007); *United States v. Brooks*, 125 F.3d 484, 502 (7th Cir. 1997). Further, the error in the cases cited by Fields, *Gonzalez* and *Durham* was the trial court did not conduct a proper inquiry into the necessity of the stun belt and whether the defendant's conduct warranted the use of those types of restraint. *United States v. Gonzalez*, 341 F.3d at 901-2; *United States v. Durham*, 287 F.3d at 1308. In this case, Fields was an escaped prisoner who the United States Marshal's service felt was at risk of attempting to escape again. In addition, it must finally be noted Fields failed to preserve error at either the guilt or sentencing phase, impeding any opportunity of the trial court to correct any error. *Fields*, 483 F.3d at 357. Thus there was no error in being required to wear the belt.

Claim 36 – The conditions of Fields' confinement violated his Fifth, Sixth and Eighth Amendment rights.

Claim 37 – Increased security measures and the wearing of a stun belt violated Fields' Fifth Sixth and Eighth amendment rights.

Claim 38 – Security measures and wearing a stun belt violated Field's right to counsel and protection against cruel and unusual punishment.

Claim 39 – Increased security after guilty verdict violated Fields' right to a reliable determination of punishment

Claim 40 – Warning and escorting jurors to their vehicles during penalty phase violated Fields' right to trial by jury and right to a reliable determination of punishment

Claim 41 – Asking jurors to inform the court of any threats outside of Fields' or counsel's presence violated right to be present and right to a reliable determination of punishment.

Fields' next claims relate again to the nature of his confinement at trial. These claims, however, revolve around the increased security in the courtroom after the guilty verdict. (Fields' Motion at 213). The Supreme Court has held the Constitution permits special measures to be taken in the courtroom. *Illinois v. Allen*, 397 U.S. 337, 343-344 (1970). In *Holbrook v. Flynn*, the Supreme Court addressed the issue of whether additional security prejudiced the defendant's constitutional rights. *Holbrook v. Flynn*, 475 U.S. 560, 562 (1986). The Court reasoned every practice that tends to single out the defendant need not be struck down. *Id.* at 567. The presence of guards at a defendant's trial need not be interpreted that a defendant is especially dangerous or culpable. *Id.* at 569. The deployment of troopers, unlike the requirement to wear prison garb, is related to the state's interest in maintaining custody. *Id.* at 572. In federal court, if the practice is not inherently prejudicial and the defendant fails to show prejudice, then the inquiry is over. *Id.* Fields had already escaped from prison once, by his own admission. TT at 1195:4. It is fully within the discretion of the trial court to take additional measures to ensure a prisoner who has already escaped does not do so again. The Supreme Court in *Holbrook* stated additional guards

did not amount to the "unacceptable risk of prejudice" needed to find a constitutional violation. *Holbrook*, 475 U.S. at 571.

Fields also argues being required to wear the stun belt affected his demeanor and that condition was not explained to the jury. (Fields' Motion at 213). He states he denied his right to effective counsel by counsel failing to explain to the juror's how being made to wear the stun belt affected Field's demeanor. Again, to show ineffective assistance of counsel, Field must show the injured party must show counsel's performance was deficient and that deficiency prejudiced the defendant. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). A deficient performance is defined by performance which falls below an objective standard of reasonableness. *Id.* at 688. There also must be a showing that but for the counsel's conduct, the result would have been different. *Id.* at 694. Complaining about counsel's decision not to comment on the security measures within the courtroom do not fall below the objective standard of reasonableness that Fields must show to satisfy *Strickland.* Given the level of deference counsel gets in conducting its strategy and that a reviewing court presumes effective counsel, Fields cannot argue the omission was unreasonable. *Id.* at 689.

Lastly, Fields complains about the increased measures taken following the guilty verdict, namely the decision to increasing the number of guards in the courtroom, escorting jurors to their cars and asking them to report any threats of violence made towards the jury. (Fields' Motion at 213). It is important to note at the time the increased measures were taken, Fields had already been found guilty beyond a reasonable doubt of murder. TT at 2044:19. After that moment, he was no longer accorded the constitutional protection of having to be declared innocent until proven guilty. The jury had already determined the guilt of the defendant and any further proceedings would be to determine the sentence of the defendant. The measures taken under

consideration all occurred after the guilty verdict and in no way then affected the status of the defendant being innocent or guilty. Fields however claims these measures affected his right to a reliable determination of punishment. (Fields' Motion at 213).

**Disproportionate Death Sentence**

Claim 42 – The Death Penalty is unconstitutional.

After a series of cases analyzing the procedure and constitutionality of capital punishment, the United States Supreme Court held in *Gregg v. Georgia* that, "the death penalty is not a form of punishment that may never be imposed, regardless of the circumstances of the offense, regardless of the character of the offender, and regardless of the procedure followed in reaching the decision to impose it." *Gregg v. Georgia*, 428 U.S. 153, 187 (1976). Thus, there can be no real legal argument made against the sentence imposed by the court against Fields.

Claim 43 – By failing to raise on appeal the death penalty is unconstitutional, Fields' right to counsel was violated.

Again, to show ineffective assistance of counsel, Field must show the counsel's performance was deficient and that deficiency prejudiced the defendant. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). A deficient performance is defined by performance which falls below an objective standard of reasonableness. *Id.* at 688. There also must be a showing that but for the counsel's conduct, the result would have been different. *Id.* at 694. It is a long standing holding and often made failed argument that the death penalty is unconstitutional. *Gregg v. Georgia*, 428 U.S. 153, 187 (1976). The failure of counsel to raise meritless or weak issues does not constitute ineffective assistance of counsel. *See Jones v. Barnes*, 463 U.S. 745,

751-752 (1983). It is not below an objective reasonable level for counsel to feel an argument against the death penalty would fail. Thus, no error was made.

Claim 44 – Fields' death penalty sentence is disproportionate and thus should be overturned.

Fields argues his death penalty sentence must be overturned because it is disproportionate to the crime committed. (Fields Motion at 220). The Eighth Amendment bars the imposition of the death penalty for crimes where capital punishment would be "excessive." *Coker v. Georgia*, 433 U.S. 584, 592 (1977). The death penalty is disproportionate where: 1) it makes no measurable contribution to acceptable goals of punishment; or 2) is grossly out of proportion with the severity of the crime. *Id.* The Supreme Court has held the death penalty to be proportionate for deliberate murder. *Id.* The trial court sentenced Fields for the planned and deliberate murder of Ms. Coleman. TT at 2551. Thus, the imposition of the death penalty is not disproportionate for the crime Mr. Fields committed.

Claim 45 – By failing to raise on appeal the sentence was disproportionate, Fields' right to counsel was violated.

To show ineffective assistance of counsel, Fields must show that counsel's performance was deficient and that the deficiency prejudiced the defendant. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). A deficient performance is defined by performance which falls below an objective standard of reasonableness. *Id.* at 688. There also must be a showing that but for the counsel's conduct the result would have been different. *Id.* at 694. The failure of counsel to raise meritless or weak issues does not constitute ineffective assistance of counsel. *See Jones v. Barnes*, 463 U.S. 745, 751-752 (1983). As stated above, a death sentence is not disproportional when deliberate murder is committed. Because here it was found that deliberate murder was

committed, an argument for the death penalty as being disproportionate here was very weak and any failure of counsel to not raise the issue on appeal cannot be considered to not be reasonable.

## **Other Errors**

<u>Claim 46 – The cumulative errors in this case violate Fields' right to due process, a fair trial and to be free from cruel and unusual punishment.</u>

Fields argues there was cumulative error that warrants relief.  Relief can only be given for cumulative error when constitutional errors so "fatally infect the trial" that they violate the trial's fundamental fairness. *United States v. Stephens*, 571 F.3d 401, 411-412 (5th Cir. 2009). However, when the trial court does not err, there can be no cumulative error. *Id.* at 412. For the reasons stated above, there was no error committed in the guilt phase of the trial or the sentencing phase of the trial. Thus, there can be no cumulative error.

<u>Claim 47 – Fields raises again the issues he raises on direct appeal.</u>

Once again, a party that has argued one point on direct appeal may not do so again on habeas appeal as the final judgment of the original proceedings command respect. *United States v. Frady*, 456 U.S. 152, 164-65 (1982). Fields' attempts in his petition to raise all claims that he raised on direct appeal. The Supreme Court, in an attempt to promote judicial efficiency and not permit endless habeas review, has rejected the practice of allowing a defendant to re-allege claims raised on direct appeal absent any newly discovered evidence. *Id.*

Claim 48 – Fields' right to counsel was violated because appellate counsel was ineffective in multiple respects.

Fields argues he was denied effective assistance of counsel. For the reasons listed above, there was no ineffective assistance of counsel under the Supreme Court's decision in *Strickland v. Washington*.

Claim 49 – Fields is entitled to an evidentiary hearing.

## X. CONCLUSION

The record in this case is sufficient for the purpose of adjudication of Fields' claims, and an evidentiary hearing is not necessary. *See United States v. Bartholomew*, 974 F.2d 39, 41 (5th Cir. 1992); *United States v. Plewniak*, 947 F.2d 1284, 1290 (5th Cir. 1991). Fields' allegations in his 28 U.S.C. § 2255 Motion to Vacate, Set Aside, or Correct Sentence are without merit and should be denied.

Respectfully submitted,

JOHN E. MURPHY
United States Attorney

/s/ *Gregory S. Gloff*

By:    GREGORY GLOFF
Assistant United States Attorney
800 Franklin, Suite 280
Waco, TX 76701
254-750-1580

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 22nd day of March, 2010, a true and correct copy of the foregoing instrument was electronically filed with the Clerk of the Court using the CM/ECF System which will transmit notification of such filing to the following CM/ECF participant:

Jeffrey E. Ellis
Attorney at Law
705 Second Avenue
Seattle, WA  98104

/s/ *Gregory S. Gloff*
GREGORY S. GLOFF
Assistant United States Attorney

### IN THE UNITED STATES DISTRICT COURT
### WESTERN DISTRICT OF TEXAS
### WACO DIVISION

| | | |
|---|---|---|
| **SHERMAN LAMONT FIELDS,** | * | |
| | * | |
| **Petitioner,** | * | |
| | * | |
| **v.** | * | **CIVIL NO. W-09-CA-009** |
| | * | **CRIMINAL NO. W-01-CR-164** |
| **UNITED STATES OF AMERICA,** | * | |
| | * | |
| **Respondent.** | * | |

### ORDER

This matter having come before the Court on Petitioner's Motion to Vacate, Set Aside, or

Correct Sentence pursuant to 28 U.S.C. § 2255, and the Court having received the Government's

response thereto, and the Court being otherwise fully advised on the premises,

IT IS HERBY ORDERED that Petitioner's Motion is GRANTED/DENIED.

SIGNED AND ENTERED this _____ day of _____, 2010.

_____
WALTER S. SMITH, JR.
CHIEF UNITED STATES DISTRICT JUDGE