## Affidavit of Robert Swanton, Esq.

I, Robert Swanton, state as follows:

*Introduction*

1. I am over 18 and competent to make this affidavit.

2. I am an attorney admitted to practice law in the State of Texas.

3. I was one of two attorneys appointed to represent Mr. Fields in his capital trial in the United States District Court for the Western District of Texas (Waco). My co-counsel was Scott Peterson.

4. I have been an attorney since 1984. I have been practicing criminal defense law now for the past 20 years. This was my third capital trial in which the death penalty was sought. I have represented approximately six other individuals in non death capital cases.

*Penalty Phase Investigation*

5. In addition to Mr. Peterson and myself, our defense team included an investigator (Don Youngblood), a mitigation specialist (Jane Bye *nee* McHan), and a psychiatrist (Dr. Randall Price).

6. I was the attorney who primarily worked with Dr. Price.

7. I asked Dr. Price to assess Mr. Fields' intelligence and to offer defense strategy opinions regarding Mr. Fields after his interviews with Mr. Fields. I also asked Dr. Price to assess the relationship between Mr. Fields' intelligence and his ability to adapt to prison, if Fields were sentenced to life. I also discussed the issues of future dangerousness with Dr. Price and Mr. Fields' history of problems while he was incarcerated.

8. I did not ask Dr. Price to conduct an actuarial assessment of Mr. Fields' future dangerousness.

9. I did not ask Dr. Price to conduct any specific neuropsychological testing on Mr. Fields though I knew Dr. Price had experience in the field of neuropsychology and would have relied on his opinion if he felt any such testing was warranted after his interviews with Mr. Fields.

10. Further, I did not consult with any other experts on any of these issues.

11. After Dr. Price formulated his opinion that Mr. Fields had above average intelligence and the ability to adapt to a prison environment, we decided to call Dr. Price as a witness at trial.

12. Prior to trial, the Government indicated that it would call Dr. Richard Coons as a witness. I had previously tried cases involving Dr. Coons, so I was familiar with his approach to predicting future dangerousness. Thus, I did not conduct any additional research or review prior transcripts of Dr. Coons' testimony.

13. During trial, Dr. Coons opined that Mr. Fields would likely pose a future danger, if sentenced to life in prison. Dr. Coons based his opinion of dangerousness, in part, on Fields' prior criminal behavior, his prior misconduct in detention settings, and the previous diagnoses of Mr. Fields concluding he suffers from an anti-social personality disorder.

14. During my cross-examination of Dr. Coons, I attacked Dr. Coons' methodology, rather than the "facts" underlying his opinion.

*Mr. Field's Decision to Represent Himself*

15. Neither Mr. Peterson nor I wanted Mr. Fields to represent himself. We both repeatedly told Mr. Fields not to waive his right to counsel.

16. Nevertheless, Mr. Fields was adamant, believing that, if he asked the questions, the witnesses would be forced to tell the truth—a dynamic that he felt would not exist if the witnesses' were examined by counsel.

*Security Measures During Trial*

17. I was aware that Mr. Fields was forced to wear a stun belt during the entire trial. I do not believe I was present when the U.S. Marshals explained the use of the stun belt to Mr. Fields.

18. I was aware of the security personnel in the courtroom during trial.

19. I was not aware of any incidents that took place during trial which would have merited any increased security measures.

20. I was unaware of any changes in security measures during the course of the trial.

21. If there were any changes or additional security measures considered or taken during trial (especially if those measures involved jurors), I would have wanted notice and an opportunity to be heard before any such measure was implemented.

I declare under the penalty of perjury of the laws of the State of Texas that the above is true and correct.

_____
Robert T. Swinton, Jr., Affiant

SUBSCRIBED AND SWORN TO BEFORE ME on the 13th day of January, 2009, to certify which witness my hand and official seal.

> **KIMBERLY F. LONGNECKER**
> Notary Public, State of Texas
> My Commission Expires
> December 28, 2011

_____
Notary Public, State of Texas