IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION

SHERMAN LAMONT FIELDS,

                Movant,

        *-against-*

UNITED STATES OF AMERICA,

                Respondent.

CIVIL No. W-09-CV-009

CRIMINAL No. W-01-CR-164

**\*THIS IS A CAPITAL CASE**
*Oral Argument Requested*

**MOTION FOR RECONSIDERATION OF THE DENIAL OF
MOVANT SHERMAN LAMONT FIELD'S MOTION FOR LEAVE
TO COMPEL PRODUCTION OF PHYSICAL/BIOLOGICAL EVIDENCE
FOR DEFENSE EXAMINATION AND POSSIBLE DNA TESTING
(DOCKET NO. 327)**

Law Office of Alsept & Ellis
621 SW Morrison St., Ste 1025
Portland, OR  97205
Tel:  (206) 218-7076

Cadwalader, Wickersham & Taft, LLP
One World Financial Center
New York, NY  10281
Tel:  212-504-6000
Fax:  212-504-6666

*Attorneys for Mr. Fields*

Movant Sherman Lamont Fields ("Fields"), by this timely motion, petitions the Court to reconsider its order of September 25, 2012 [Dkt. No. 334] ("Order") insofar as it denies Fields' Motion for Leave to Compel Production of Physical/Biological Evidence for Defense Examination and Possible DNA Testing, dated August 11, 2010 [Dkt. No. 327] ("DNA Motion"), and requests oral argument on the merits of this motion for reconsideration and the appropriateness of DNA testing.

## PRELIMINARY STATEMENT

When it denied Mr. Fields' First Amended Motion for a New Trial and To Vacate, Set Aside and Correct Conviction and Death Sentence, and for Relief from Judgment, Made Pursuant to 28 U.S.C. § 2255 or Rule 33 of the Federal Rules of Criminal Procedure ("§ 2255 Motion") this Court also denied his DNA Motion.  This Court reasoned:

> Given the compelling evidence of guilt presented at trial, the Court does not conclude that any DNA testing would raise a reasonable probability of Movant's actual innocence with regard to the murder of Ms. Coleman.  Indeed, there is no requirement that Movant be linked to the murder through a positive DNA test on Ms. Coleman's body and the items seized at the crime scene. Furthermore, even assuming that the outcome of any DNA test would be favorable to Movant, he has not established that such outcome would raise a reasonable probability of his actual innocence.  Movant's motion for DNA testing (Doc. 327), therefore, is without merit.

Order at 17.  This Court should reconsider.

Under the Court's test, no post-conviction petitioner would ever be entitled to DNA testing because the evidence presented at trial is always sufficiently "compelling" to have convinced a jury that guilt has been established beyond a reasonable doubt.  As discussed below, Fifth Circuit law is materially different.

-1-

In addition, the Order fails to recognize the obvious probative value that accompanies biological material found on the body of a deceased victim.  If the biological material located on the victim's body or clothing originated from someone other than Mr. Fields, that evidence would have tremendous probative value.  Just as importantly, DNA evidence linking someone other than Mr. Fields to Ms. Coleman's murder would turn what this court terms "compelling" trial testimony into perjury.  As Mr. Fields has explained, "the recovery of DNA from someone other than Mr. Fields from the body of the victim or her clothing would be highly exculpatory."  Fields' Reply to the Government's Response to His Motion for a New Trial and To Vacate, Set Aside and Correct Conviction and Death Sentence, and for Relief from Judgment, Made Pursuant to 28 U.S.C. § 2255 or Rule 33 of the Federal Rules of Criminal Procedure, dated August 23, 2010 [Dkt. No. 331] at 59.

Despite denying Mr. Field's motion to test DNA, this Court granted his request for the Government to preserve all physical evidence seized in this case for possible forensic examination and DNA testing.  Order at 13-14.  The Court's directive to preserve "all of the physical evidence in this case" is an implicit recognition that such evidence has the real potential to prove who murdered Ms. Coleman – at a minimum, reasonable jurists could differ on the appropriateness of additional testing.  It does not serve justice for the Court to order the evidence to be preserved by the Government, yet keep it off limits to Mr. Fields.

The Court has not given a reason to deny DNA testing, the Government put forth none,[1] and indeed none exists because no one is harmed by ordering the Government to provide

---

[1]   The Government did not oppose Fields' motion for DNA testing.  Rather, on September 7, 2010, it filed a 2-page "Response" stating that it was unable to adequately respond because it did not have sufficient specificity, and requested that Fields "identify which specific items of evidence he seeks for DNA testing."  Government's Response to Motion for Leave To Compel Production of Physical/Biological Evidence for Defense Examination and Possible DNA Testing, dated September 7,

the evidence to an expert for examination and possible testing – except perhaps those individuals whose lies will be exposed by the results.  Indeed, Mr. Fields has offered to pay the expenses associated with such examination and testing.  However, that should not be this Court's concern.  Instead, this Court should encourage Fields' search for the truth, especially where Fields seeks only the transfer of several items of evidence to a defense expert, and has verified a good-faith willingness to work with the Government to ensure that such transfer does no damage to the evidence.

The Court should not ignore the utility of DNA to identify Mr. Fields as someone who was wrongfully convicted, as DNA has done in so many other cases where judges and juries thought the proof of guilt was "compelling."

## ARGUMENT

Fundamental fairness dictates that any and all properly preserved DNA evidence relevant to guilt be tested before a man is put to death.  "[U]nless we are to refuse to accept the weakness of eyewitness testimony, a reality that DNA testing has forced upon the legal community", defendants attacking a conviction must be allowed to explore properly preserved DNA evidence even where there "is no question but that the conviction [was] well supported by evidence."  *United States v. Fasano*, 577 F.3d 572, 578 (5th Cir. 2009) (granting motion for DNA testing following conviction and affirmance by the 5th Circuit).

DNA's track record on death row alone should be sufficient reason for this Court to reconsider.  Each new DNA exoneration gives clarity to the harsh reality that individuals are wrongfully convicted.  Many exonerations occur in shooting deaths, as proved by the National

---

2010 [Dkt. No. 333] at 2.  However, Fields made clear that he sought "all of the physical evidence seized from the crime scene so that a forensic scientist retained by Mr. Fields can examine that evidence for the presence of any biological or other foreign material."  DNA Motion at 2.

Registry of Exonerations.  *See* http://www.law.umich.edu/special/exoneration/pages/about.aspx. It is not an overstatement that DNA evidence is the preeminent investigatory tool available to the criminal justice system.  This Court should reconsider its denial of that tool to Mr. Fields.

## I.    <u>FACTS SUPPORTING ADDITIONAL DNA TESTING</u>

Mr. Fields was convicted of capital murder and sentenced to death.  He has consistently maintained his innocence.  The evidence at trial largely consisted of "snitch" or informant testimony.  No physical evidence linked Fields to the murder.  In places where there should have been evidence linking Fields to the crime, under the prosecution's theory of the case, there was none.  For example, there was no blood found in the Grand Am that Mr. Fields was driving on the night of Ms. Coleman's disappearance.  § 2255 Motion at 100.

Most importantly, biological material was identified on the victim's body. That biological material is relevant to identifying the killer.  Several hairs were located on Ms. Coleman's clothing.  Those hairs were examined microscopically, but not subjected to DNA testing.  Significantly, these hairs were not microscopically similar to either Mr. Fields or Ms. Coleman.  In addition, at least one fingernail clipping was taken from Ms. Coleman.

These items can now be subjected to DNA testing.  For example, hair is now routinely subject to mitochondrial DNA testing.  Fingernail scrapings have proved useful in cases reaching back nearly 50 years.  *See* Rachel E. Cline, *et al*, *The Fingernails of Mary Sullivan: Developing Reliable Methods for Selectively Isolating Endogenous and Exogenous DNA from Evidence*, 48 J. Forensic Sci. 328 (May 2003).

To be clear, as this Court recognized, Mr. Fields seeks to first examine all of the physical evidence seized in this case (Order at 13) along with Ms. Coleman's body, to determine if additional biological material can be located and tested.  Fields should not be limited to

biological matter  previously identified.  There are reasons to conclude that additional DNA from Ms. Coleman's killer will be found on her body or the personal effects recovered with her body. Ms. Coleman's body was found in an area where there were thickets.  She had been shot.  She likely struggled with her killer before her death.  Her body and clothing were carefully recovered and preserved.    Thus, additional examination is warranted to determine the existence of biological material not previously identified.

The evidence that Fields seeks to examine and test is in Government control.  Mr. Fields has been willing to examine and test the evidence with his own experts, at his own expense.  It is important to note that Mr. Fields, who has always proclaimed his innocence, raised several claims of error in his § 2255 Motion related to proving that he is not a murderer.  This Court did not allow Mr. Fields an opportunity to develop any of those claims through discovery or an evidentiary hearing.

## II.    FIELDS' RIGHT TO DNA TESTING

Mr. Fields has separately argued that he is entitled to discovery under the court rules.  DNA Motion at 5-8.  He incorporates that discussion by reference here.  This motion focuses on his constitutional right to DNA testing to prove his innocence in this post-conviction proceeding.

The Supreme Court has consistently assumed a post-conviction right to prove innocence exists.  *See, e.g.*, *Herrera v. Collins*, 506 U.S. 390, 417 (1993) (assuming that "in a capital case a truly persuasive demonstration of 'actual innocence' made after trial would render the execution of a defendant unconstitutional, and warrant federal habeas relief if there were no state avenue open to process such a claim"); *House v. Bell*, 547 U.S. 518, 554-55 (2006) (discussing assumption of freestanding innocence claim).  Most recently and strikingly, the Court

ordered an evidentiary hearing in the case of a condemned Georgia prisoner who sought habeas corpus relief directly from the Court based on his claim of actual innocence. *See In re Davis*, 130 S. Ct. 1, 1 (2009) (transferring Davis' "petition for a writ of habeas corpus . . . to the United States District Court for the Southern District of Georgia for hearing and determination" and directing the District Court to "receive testimony and make findings of fact as to whether evidence that could not have been obtained at the time of trial clearly establishes petitioner's innocence"); *see also id*. at 1-2 (Stevens, Ginsberg, & Breyer, JJ., concurring) (observing that the District Court may find that relief is warranted for Davis "because decisions of this Court clearly support the proposition that it 'would be an atrocious violation of our Constitution and the principles upon which it is based' to execute an innocent person") (citations omitted).

The Supreme Court has also recently reaffirmed the importance of DNA testing in capital cases. *Skinner v. Switzer*, 131 S. Ct. 1289, 1298-300 (2011).

Mr. Fields also has a freestanding federal substantive due process right to obtain evidence that can prove his innocence. Here, the Government refuses to permit Fields access to any evidence recovered from the crime scene. This exercise of power violates principles of due process and "shocks the conscience" because it is a deliberate decision to deprive Mr. Fields of his life while denying him access to the materials that could prove his innocence. *See, e.g.*, *Rochin v. California*, 342 U.S. 165, 172 (1952).

In addition to the clear procedural and substantive due process violations, the continued refusal to provide Mr. Fields with access to the requested DNA evidence also violates Mr. Fields' right under the Eighth Amendment to be free of cruel and unusual punishment. It is cruel and unusual to deprive Mr. Fields of his life when potentially exculpatory DNA evidence exists that could (1) be tested at no financial cost to the state and (2) result in habeas relief or a favorable clemency decision.

### III.    THE POTENTIAL RELEVANCE OF DNA EVIDENCE TO THIS CASE

Mr. Fields claims he is actually innocent.  He also claims that the prosecution knowingly presented false testimony and that he received ineffective assistance of counsel because trial counsel failed to conduct an adequate guilt phase investigation, which should have included comprehensive forensic testing and analysis.  DNA testing is relevant to all of those claims, yet the Court's Order did not adequately address the actual innocence claim, and omitted any discussion of the relevance of DNA testing to ineffective assistance claim.

One of the basic principles of forensic science is that the perpetrator of a crime will bring something into the crime scene and leave with something from it, and that both can be used as forensic evidence.  Murders almost always involve the exchange of biological material. DNA from the killer is frequently found on the victim's body, even in shooting deaths.  Evidence collected from a victim's body is undeniably relevant to the investigation of death.

Biological material is equally probative when it comes from someone other than the person suspected or, as here, convicted of the crime.  *See Fasano*, 577 F.3d at 578 ("If however testing does not find [defendant's] DNA . . . but finds the DNA of [a third party] the strong case evaporates; here the strength of the evidence by no means makes fanciful a conclusion that there is a reasonable probability that [defendant] was not the robber").

The Government's experts have already identified hairs from someone other than Mr. Fields or Ms. Coleman and a fingernail clipping that have not been subjected to DNA testing.  That evidence is highly probative and demonstrates that Mr. Fields is not simply engaging in what this court pejoratively termed a "fishing expedition."  He should be allowed access to the evidence in order to examine and test it.

Given that the evidence sought has been maintained in Government control and "may produce new material evidence that would raise a reasonable probability that [Movant] did

not commit the offense", Mr. Fields' right to examine the evidence is beyond doubt and critical to achieving fundamental fairness. *Fasano*, 577 F.3d at 577-78.

## IV.   RECONSIDERATION IS WARRANTED BECAUSE WHOLESALE DENIAL OF THE DNA MOTION WAS CLEAR LEGAL ERROR AND WORKED A MANIFEST INJUSTICE ON FIELDS

Motions to reconsider non-dispositive orders such as that denying the DNA Motion are entertained under the same standards that govern reconsideration of dispositive orders, *see Krim v. pcOrder.com, Inc.*, 212 F.R.D. 329, 331 (W.D. Tex. 2002), which in turn are treated as motions to alter or amend the judgment under Federal Rule of Civil Procedure 59(e). *Dockery v. United States*, 2012 WL 2050200, at \*1 (S.D. Tex. June 6, 2012) (*citing Lavespere v. Niagara Mach. & Tool Works, Inc.*, 910 F.2d 167, 173 (5th Cir. 1990)), *see Cole ex rel. Ellis v. Knowledge Learning Corp.,*, 416 Fed. Appx. 437, 444 (5th Cir. 2011) (*per curiam*) (Unpublished).[2]   In its effect, a Rule 59(e) motion "'calls into question the correctness of a judgment.'"   *Templet v. HydroChem Inc.*, 367 F.3d 473, 478 (5th Cir. 2004) (*quoting In re Transtexas Gas Corp.*, 303 F.3d 571, 581 (5th Cir. 2002)).

A motion for reconsideration under Rule 59(e) "'is properly invoked to correct manifest errors of law.'"   *In re Transtexas*, 303 F.3d at 581 (*quoting Waltman v. International Paper Co.*, 875 F.2d 468, 473 (5th Cir. 1989)); *accord Schiller v. Physicians Res. Grp., Inc.*, 342 F.3d 563, 567 (5th Cir. 2003).   Granting such a motion is warranted "to correct a clear error of law or fact or to prevent a manifest injustice."   *Manning v. United States*, 2012 WL 640056, at \*1 (W.D. Tex. Feb. 27, 2012) (*citing Schiller*, 342 F.3d at 567); *accord Alvarado v. Texas Rangers*, 2005 WL 1420846, at \*1 (W.D. Tex. June 14, 2005) (*citing Rosenzweig v. Azurix*

---

[2]   This motion was timely filed within twenty-eight days of the Order, and motions for reconsideration filed within twenty-eight days of judgment are considered under Rule 59(e), as opposed to Rule 60(b). *See United States v. Clark,* 2012 WL 3528013 at \*1 (S.D. Tex. Aug. 14, 2012).

*Corp.*, 332 F.3d 854, 863-64 (5th Cir. 2003); *In re Benjamin Moore & Co.*, 318 F.3d 626, 629 (5th Cir. 2002)).

As set forth above, the Court's wholesale denial of the DNA Motion was clear legal error and inconsistent with the cases cited above from the United States Supreme Court and the Court of Appeals for the Fifth Circuit. These errors demand correction through the granting of this motion for reconsideration.

Further, the denial of the DNA Motion worked a manifest injustice upon Fields. Though manifest injustice is evaluated on a "'case-by-case basis,'" various courts have looked to whether the decision was "patently unfair," "'"inequitable and not in line with applicable policy,"'" or whether the movant could have avoided the outcome. *See Bender Sq. Partners v. Factory Mut. Ins. Co.*, 2012 WL 1952265, at *4 (S.D. Tex. May 30, 2012) (collecting standards and granting reconsideration based on manifest injustice) (citations omitted). Here, Fields identified a reasonable scope of evidence to be examined and possibly subjected to DNA testing, described the relevance of such efforts to his claims, and offered to pay all expenses and work with the Government to ensure appropriate preservation throughout the process. The Government has not opposed the request nor asserted any prejudice as a result. However, despite the overwhelming evidence of the value of DNA testing and the gravity of the death penalty case at bar, the Court denied the motion without even addressing all of the reasons asserted by Mr. Fields in support of DNA testing. Putting Mr. Fields to death without so much as the opportunity to comprehensively examine for DNA evidence material that has been within the Government's control would be a manifest injustice, and warrants correction by the granting of this motion for reconsideration.

Finally, the Order negates Mr. Fields' constitutional right to access any exculpatory materials in the Government's possession. The Court's denial of full access to the

evidence was clear legal error in light of *Brady v. Maryland*, 373 U.S. 83 (1963), and it should reconsider its ruling and grant the requested access to the physical evidence seized in this case.

## <u>CONCLUSION</u>

For the foregoing reasons and those to be discussed at oral argument, this Court should reconsider the Order and direct the Government to permit Mr. Fields to examine and possibly test the evidence seized in this case.

Dated:      October 23, 2012

Respectfully Submitted,

/s/ Jeffrey E. Ellis

Jeffrey Ellis
Attorney at Law
Law Office of Alsept & Ellis
621 SW Morrison St., Ste 1025
Portland, OR  97205
Tel:  (206) 218-7076
Email:  JeffreyErwinEllis@gmail.com

Peter J. Isajiw
*Pro Hac Vice* Admission Pending
Cadwalader, Wickersham & Taft, LLP
One World Financial Center
New York, NY  10281
Tel:  212-504-6000
Fax:  212-504-6666
Email:  Peter.Isajiw@cwt.com

*Attorneys for Mr. Fields*

## CERTIFICATE OF SERVICE

I, Jeffrey E. Ellis, hereby certify that on October 23, 2012, I electronically filed

the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification

of such filing to the following attorneys of record in the above-entitled case:

**Gregory S. Gloff**
Assistant United States Attorney
800 Franklin Ave., Ste 280
Waco, TX  76701
Email:  Greg.Gloff@usdoj.gov


/s/ Jeffrey E. Ellis
Jeffrey E. Ellis
Attorney at Law