IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | |
|---|---|
| SHERMAN LAMONT FIELDS, <br><br> Movant, <br><br> -*against*- <br><br> UNITED STATES OF AMERICA, <br><br> Respondent. | CIVIL No. W-09-CV-009 <br><br> CRIMINAL No. W-01-CR-164 <br><br> **\*THIS IS A CAPITAL CASE** <br> *Oral Argument Requested* |

**MOTION FOR RECONSIDERATION OF THE DENIAL OF
MOVANT SHERMAN LAMONT FIELD'S MOTION FOR
AUTHORIZATION OF FUNDS FOR EXPERT ASSISTANCE
(DOCKET NO. 329)**

Law Office of Alsept & Ellis
621 SW Morrison St., Ste 1025
Portland, OR  97205
Tel:  (206) 218-7076

Cadwalader, Wickersham & Taft, LLP
One World Financial Center
New York, NY  10281
Tel:  212-504-6000
Fax:  212-504-6666

*Attorneys for Mr. Fields*

Movant Sherman Lamont Fields ("Fields"), by this timely motion, petitions the Court to reconsider its order of September 25, 2012 [Dkt. No. 334] ("Order") insofar as it denies Fields' Motion for Authorization of Funds for Expert Assistance, dated August 23, 2010 [Dkt. No. 329] ("Expert Motion") and requests oral argument on the merits of this motion and the underlying motion for funds.

## PRELIMINARY STATEMENT

When it denied Mr. Fields' First Amended Motion for a New Trial and To Vacate, Set Aside and Correct Conviction and Death Sentence, and for Relief from Judgment, Made Pursuant to 28 U.S.C. § 2255 or Rule 33 of the Federal Rules of Criminal Procedure [Dkt. No. 318] ("§ 2255 Motion"), this Court also denied Mr. Fields' motion for funds for a trauma expert.  This Court reasoned:

> The record reflect (*sic*) that Movant has submitted a detailed affidavit from Dr. George W. Woods, a licensed physician specializing in psychiatry and neuropsychiatry, who examined Movant following his conviction in a federal prison. (Doc. 319, Ex. B).  Dr. Woods provided extensive statements in his affidavit as to Movant's mental condition and his developmental background, including the potential impact of trauma on Movant's behavior. (*Id.*).  The Court finds, therefore, that the appointment and authorization of funds for a separate trauma expert is not reasonably necessary.  Movant's motion (Doc. 329), therefore, is denied.

Order at 12-13.  This Court later concluded that Dr. Woods' declaration detailing the evidence of Fields' mental impairment functions as a "two-edged sword," as it "can be both mitigating and aggravating."  Order at 97.  This Court's conclusion about Dr. Woods' opinion, which was reached without the benefit of an evidentiary hearing and by overlooking material facts, is incorrect.  However, assuming for argument's sake that Dr. Woods' opinion could be somehow

viewed as supporting a claim of future dangerousness, a trauma expert's opinion would not be "double-edged." As a result, this Court should reconsider.

In support of this motion, the Court should consider the declaration of Dr. Kathleen Wayland ("Wayland Declaration"), a trauma expert who details how the opinion of a trauma expert could add material facts to the record, which is attached hereto as Exhibit A.

## ARGUMENT

This Court simultaneously concluded that a trauma expert would not add anything new to this case, but that Dr. Woods' declaration was not sufficient to merit even an evidentiary hearing, much less a new penalty phase, because his opinion was "double-edged." Mr. Fields disagrees with the latter conclusion and has set forth his objections in his separately filed Motion To Vacate, Alter, or Amend The Court's Order Denying His First Amended Motion for a New Trial and To Vacate, Set Aside and Correct Conviction and Death Sentence, and for Relief from Judgment, Made Pursuant to 28 U.S.C. § 2255 or Rule 33 of the Federal Rules of Criminal Procedure, dated October 23, 2012. This motion is confined to requesting reconsideration for funds for a trauma expert.

An expert in the field of trauma is reasonably necessary for Mr. Fields' defense, and funds for such an expert should be authorized by this Court pursuant to 18 U.S.C. § 3599. Although Dr. Woods is a highly-lauded expert whose work is nationally recognized, his specialty is as a psychiatrist and neuropsychiatrist. It is a gross misunderstanding to treat all mental health experts as simply interchangeable as this Court's Order appears to do. A neuropyschiatrist specializes in understanding mental health problems from the aspect of structural brain development, whereas a trauma expert has expertise in understanding the symptoms and effects of trauma (such as disassociative behavior) and can explain how such behavior impacts a person's functioning. Merely because there is overlap between specialties, does not mean that

-2-

-3-

the roles are interchangeable. Here it was erroneous for the Court to assume that Dr. Woods'
assessment explains the entirety of Mr. Fields' mental health symptoms and behavior in all their
complexity. Yet, it is this full assessment that is necessary to determine how Mr. Fields was
prejudiced by his trial counsel's failure to discover his readily available trauma history and other
history of mental disease and associated symptoms.

A trauma expert is reasonably necessary in this case because (1) trial counsel
failed to fully investigate evidence of trauma or consult with an expert in the field of trauma
despite a glaring red flag, Mr. Fields' diagnosis of Post-Traumatic Stress Disorder ("PTSD") at
the age of fourteen by a prison psychologist and (2) a trauma expert would provide distinct and
necessary insight into Mr. Fields' life and behavior.

## I. TRIAL COUNSEL OVERLOOKED EVIDENCE CLEARLY HIGHLIGHTING THE NEED FOR AN EXPERT IN THE FIELD OF TRAUMA

Here, trial counsel's mitigation investigation was deficient and fell below the
prevailing norms regarding the investigation and presentation of the penalty phase of capital
cases at the time of Mr. Fields' trial in 2004. His trial team overlooked the devastating, and
well-documented, history of trauma in Fields' life, despite a prior diagnosis of PTSD and other
red flags. For instance, when Mr. Fields was 16, he witnessed his grandfather's death. Mr.
Mitchell, who was 85 at the time, was "struck by a car while he was mowing his yard." Exh. 70
at 000261.[1] The drunk driver "veered off the road and struck Mitchell" at 2:30 p.m. and
"[s]everal of Mitchell's relatives witnessed the incident" including Fields. *See* Exh. 70 at 00260.
By the time Mr. Fields was nineteen years old, at least twelve of his close friends, family and
loved ones died tragically. By the time he was 27, that number rose to at least nineteen. These

---

[1] For the ease of the Court, unless otherwise noted, all references to Appendixes and Exhibits herein
are references to documents attached to and filed with Mr. Fields' § 2255 Motion.

events are vividly depicted in Exhibit 117 of the § 2255 Motion, which is attached hereto as Exhibit B. *See also* § 2255 Motion at 50-57, 195-207; Fields' Reply to the Government's Response to His Motion for a New Trial and To Vacate, Set Aside and Correct Conviction and Death Sentence, and for Relief from Judgment, Made Pursuant to 28 U.S.C. § 2255 or Rule 33 of the Federal Rules of Criminal Procedure, dated August 23, 2010 [Dkt. No. 331] at 28-35.

The result of this investigative failure was that the jury that sentenced Mr. Fields to death was presented with only a small portion of the mitigating evidence that could have been presented (some of which was incorrect and misleading), and was left to consider whether Mr. Fields should be executed based solely on the testimony of a handful of defense witnesses whose testimony was brief, poorly prepared, and superficially presented. Trial counsel's failure to conduct a thorough, and constitutionally adequate investigation was confirmed by Jane Bye, the trial team's mitigation specialist, who, after reviewing the newly discovered evidence, admits:

> There was no tactical reason for me not to have uncovered this information. To the contrary, this was exactly the type of information that I was attempting to uncover.

Appendix H (Second Affidavit of Jane Bye) ¶ 6; *see* § 2255 Motion at 161-229.

## II. A TRAUMA EXPERT IS REASONABLY NECESSARY TO UNDERSTAND THE PREJUDICE MR. FIELDS SUFFERED BY TRIAL COUNSELS' OMISSIONS

There are at least three reasons that a trauma expert would add material facts to the record that are not contained in Dr. Woods' opinion and which lend further support to his opinion.

First, a trauma expert can help insure that a competent and thorough investigation is conducted in order to discover information that is relevant, but often hidden, overlooked, or misunderstood. Dr. Wayland's attached declaration provides: "A competent social history investigation requires close examination of each event (or series of events), including the

circumstances of each trauma, the sequelae, the interaction or overlap with other disorders and disabilities, and the factors that shaped the client's response and recovery (or disability)." Wayland Declaration ¶ 12. As a result: "Investigation of traumatic events and other highly sensitive life experiences requires highly specialized knowledge and skills." *Id.* ¶ 13.

Second, a trauma expert can detail the symptoms of trauma, which are often mistaken for symptoms of anti-social personality disorder ("ASPD"). As the Court noted in its Order, the Government characterized Mr. Fields as a person suffering from ASPD in its penalty phase presentation to the jury. Order at 92. A trauma expert could have, and should have, been called to rebut that characterization. Again, Dr. Wayland explains:

> Absent a specialized understanding of the effects of trauma (and detailed information about Mr. Fields' life history), an evaluator might decide that behaviors signify "irritability and aggressiveness" (a symptom of ASPD) and miss the fact that the behaviors in question are a consequence of the hyperarousal component of PTSD. Similarly, an evaluator might decide that behaviors signify "lack of remorse" (a symptom of ASPD), and miss the fact that the behaviors in question are a consequence of the psychic numbing component of PTSD. Finally, an evaluator might decide that behaviors signify "reckless disregard for safety of self or others" (a symptom of ASPD) and miss the fact that the behaviors in question reflect symptoms of complex psychological trauma, sometimes referred to as DESNOS [disorders of extreme stress, not otherwise specified], as well as associated features of PTSD noted in the DSM-IV of dysregulated affect and behavior.

Wayland Declaration ¶ 16. Finally, there is nothing "double-edged" about a trauma expert's opinion. Mr. Fields is not to blame for the chronic traumatic experiences he has endured throughout his life. In addition, there is nothing to suggest that these experiences or the psychological consequences make him a substantial risk of committing future acts of violence if confined to prison for the remainder of his life.

In short, Dr. Wayland's declaration establishes that a trauma expert could add

significant facts that are material to this case.  A defendant's history of trauma is textbook mitigation evidence.  *See Williams v. Taylor*, 529 U.S. 362, 370 (2000) (counsel was ineffective during sentencing phase for failing to discover and introduce mitigation evidence based on defendant's childhood records, including evidence of defendant's "mistreatment, abuse, and neglect during his early childhood"); *see also Wiggins v. Smith*, 539 U.S. 510, 524 (2003) (counsel should have expanded investigation of mitigation evidence beyond social services records and reviewed family and social history and prepared a social history report).  It is beyond legitimate dispute that Mr. Fields experienced severe trauma throughout his life, starting at a very early age.  Moreover, a trauma expert's opinion would be relevant to not only mitigation, but also to several other disputed factual issues presented in Mr. Fields' § 2255 Motion, such as issues related to the effects on Mr. Fields concerning the use of a stun belt, his unusual conditions of pre-trial confinement and his competency to waive counsel and proceed *pro se*. The Court has, therefore, denied Mr. Fields' meritorious claims while depriving him of a full and fair opportunity to develop a factual record to support those claims.  As such, the Court's Order is fundamentally unfair, and should be amended.

## III.    RECONSIDERATION IS WARRANTED BECAUSE WHOLESALE DENIAL OF THE EXPERT MOTION WAS CLEAR LEGAL ERROR AND WORKED A MANIFEST INJUSTICE ON FIELDS

Motions to reconsider non-dispositive orders such as that denying the Expert Motion are entertained under the same standards that govern reconsideration of dispositive orders, *see Krim v. pcOrder.com, Inc.*, 212 F.R.D. 329, 331 (W.D. Tex. 2002), which in turn are treated as motions to alter or amend the judgment under Federal Rule of Civil Procedure 59(e). *Dockery v. United States*, 2012 WL 2050200, at *1 (S.D. Tex. June 6, 2012) (*citing Lavespere v. Niagara Mach. & Tool Works, Inc.*, 910 F.2d 167, 173 (5th Cir. 1990)), *see Cole ex rel. Ellis v. Knowledge Learning Corp.,*, 416 Fed. Appx. 437, 444 (5th Cir. 2011) (*per curiam*)

(Unpublished).[2]  In its effect, a Rule 59(e) motion "'calls into question the correctness of a judgment.'"  *Templet v. HydroChem Inc.*, 367 F.3d 473, 478 (5th Cir. 2004) (*quoting In re Transtexas Gas Corp.*, 303 F.3d 571, 581 (5th Cir. 2002)).

A motion for reconsideration under Rule 59(e) "'is properly invoked to correct manifest errors of law.'"  *In re Transtexas*, 303 F.3d at 581 (*quoting Waltman v. International Paper Co.*, 875 F.2d 468, 473 (5th Cir. 1989)); *accord Schiller v. Physicians Res. Grp., Inc.*, 342 F.3d 563, 567 (5th Cir. 2003).  Granting such a motion is warranted "to correct a clear error of law or fact or to prevent a manifest injustice."  *Manning v. United States*, 2012 WL 640056, at *1 (W.D. Tex. Feb. 27, 2012) (*citing Schiller*, 342 F.3d at 567); *accord Alvarado v. Texas Rangers*, 2005 WL 1420846, at *1 (W.D. Tex. Jun. 14, 2005) (*citing Rosenzweig v. Azurix Corp.*, 332 F.3d 854, 863-64 (5th Cir. 2003); *In re Benjamin Moore & Co.*, 318 F.3d 626, 629 (5th Cir. 2002)).

As set forth above, the Court's wholesale denial of the Expert Motion was clear legal error and inconsistent with the cases cited above from the United States Supreme Court and the Court of Appeals for the Fifth Circuit.  These errors demand correction through the granting of this motion for reconsideration.

Further, the denial of the Expert Motion worked a manifest injustice upon Fields. Though manifest injustice is evaluated on a "'case-by-case basis,'" various courts have looked to whether the decision was "patently unfair," "'"inequitable and not in line with applicable policy,"'" or whether the movant could have avoided the outcome.  *See Bender Sq. Partners v. Factory Mut. Ins. Co.*, 2012 WL 1952265, at *4 (S.D. Tex. May 30, 2012) (collecting standards

---

[2]    This motion was timely filed within twenty-eight days of the Order, and motions for reconsideration filed within twenty-eight days of judgment are considered under Rule 59(e), as opposed to Rule 60(b). *See United States v. Clark,* 2012 WL 3528013 at *1 (S.D. Tex. Aug. 14, 2012).

and granting reconsideration based on manifest injustice) (citation omitted).  Here, Fields made a reasonable request for necessary expert assistance.  However, despite the overwhelming evidence of the value of a trauma expert and the gravity of the death penalty case at bar, the Court denied the motion.  Putting Mr. Fields to death without so much as the opportunity to comprehensively explore the required mitigation evidence would be a manifest injustice, and warrants correction by the granting of this motion for reconsideration.

### CONCLUSION

For the foregoing reasons and those to be discussed at oral argument, this Court should reconsider the Order and grant the requested funds for a trauma expert.

Dated:      October 23, 2012

Respectfully Submitted,


/s/ Jeffrey E. Ellis

Jeffrey Ellis
Attorney at Law
Law Office of Alsept & Ellis
621 SW Morrison St., Ste 1025
Portland, OR  97205
Tel:  (206) 218-7076
Email:  JeffreyErwinEllis@gmail.com

Peter J. Isajiw
*Pro Hac Vice* Admission Pending
Cadwalader, Wickersham & Taft, LLP
One World Financial Center
New York, NY  10281
Tel:  212-504-6000
Fax:  212-504-6666
Email:  Peter.Isajiw@cwt.com

*Attorneys for Mr. Fields*

-8-

## <u>CERTIFICATE OF SERVICE</u>

I, Jeffrey E. Ellis, hereby certify that on October 23, 2012, I electronically filed

the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification

of such filing to the following attorneys of record in the above-entitled case:

**Gregory S. Gloff**
Assistant United States Attorney
800 Franklin Ave., Ste 280
Waco, TX  76701
Email:  Greg.Gloff@usdoj.gov

/s/ Jeffrey E. Ellis
Jeffrey E. Ellis
Attorney at Law