IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | |
|---|---|
| SHERMAN LAMONT FIELDS,<br><br>　　　　　　Movant,<br><br>　　　-*against*-<br><br>UNITED STATES OF AMERICA,<br><br>　　　　　　Respondent. | CIVIL No. W-09-CV-009<br><br>CRIMINAL No. W-01-CR-164<br><br>**\*THIS IS A CAPITAL CASE**<br>*Oral Argument Requested* |

**SHERMAN LAMONT FIELDS' MOTION TO VACATE, ALTER, OR AMEND
THE COURT'S ORDER DENYING HIS MOTION FOR A NEW TRIAL AND TO
VACATE, SET ASIDE AND CORRECT CONVICTION AND DEATH SENTENCE,
AND FOR RELIEF FROM JUDGMENT, MADE PURSUANT TO 28 U.S.C. § 2255
OR RULE 33 OF THE FEDERAL RULES OF CRIMINAL PROCEDURE
(DOCKET NO. 318)**

Law Office of Alsept & Ellis
621 SW Morrison St., Ste 1025
Portland, OR  97205
Tel:  (206) 218-7076

Cadwalader, Wickersham & Taft, LLP
One World Financial Center
New York, NY  10281
Tel:  212-504-6000
Fax:  212-504-6666

*Attorneys for Mr. Fields*

Pursuant to Rule 59(e) of the Federal Rules of Civil Procedure, Defendant Sherman Lamont Fields ("Mr. Fields"), by counsel, hereby moves this Court to vacate, alter, or amend its September 25, 2012 Order [Dkt. No. 334] ("Order") that denied in its entirety Mr. Fields' First Amended Motion for a New Trial and To Vacate, Set Aside and Correct Conviction and Death Sentence, and for Relief from Judgment, Made Pursuant to 28 U.S.C. § 2255 or Rule 33 of the Federal Rules of Criminal Procedure, dated April 12, 2010 [Dkt. No. 318] ("§ 2255 Motion").[1]  In addition, Mr. Fields moves the Court for recusal and reassignment pursuant to 28 U.S.C. § 455 based on the appearance of impropriety created by the Court's utilization of its personal recollection of extrajudicial events to resolve factual disputes alleged in the § 2255 Motion, rendering the Court a witness in these proceedings.  For the reasons stated below, the Order should be vacated or amended in its entirety.

## PRELIMINARY STATEMENT

The Court's denial of Mr. Fields' § 2255 Motion, without granting him an opportunity to develop his well-pled factual claims through discovery and an evidentiary hearing, is yet another systemic failure that renders his trial and conviction constitutionally

---

[1]    With his Petition, Mr. Fields also moved the Court for discovery and for the appointment of experts, including (1) Motion for Leave to Compel Production of Physical/Biological Evidence for Defense Examination and Possible DNA Testing, dated August 11, 2010 [Dkt. No. 327] ("DNA Motion"); (2) Motion for Authorization of Funds for Expert Assistance, dated August 23, 2010 [Dkt. No. 329] ("Expert Motion");  and (3) Sealed Motion for Authorization of Funds for Expert Assistance, dated August 23, 2010 [Dkt. No. 329] ("Expert Motion").  The Order also denied these motions and Mr. Fields has separately filed motions for reconsideration of the Order as it pertains to these motions.

Appendices and Exhibits referenced herein, unless otherwise noted, are attached to the § 2555 Motion and referenced in Mr. Fields' Reply to the Government's Response to His Motion for a New Trial and To Vacate, Set Aside and Correct Conviction and Death Sentence, and for Relief from Judgment, Made Pursuant to 28 U.S.C. § 2255 or Rule 33 of the Federal Rules of Criminal Procedure, dated August 23, 2010 [Dkt. No. 331] ("Reply").  The Government's Response to Motion To Vacate, Set Aside, or Correct Sentence Pursuant to 28 U.S.C. § 2255, dated March 22, 2010 [Dkt. No. 317] is referred to as "Gov't Response" and the Exhibits attached thereto as "Gov't Response Exhibits".  References to the Trial Transcript are in the form "TT at ___".

unreliable. Mr. Fields' § 2255 Motion presents numerous new factual allegations which, if true, would entitle Mr. Fields to judicial relief. His § 2255 Motion amply demonstrates that his conviction and death sentence result from a series of fundamental failures of the federal systems designed to safeguard his constitutional rights and the integrity of federal criminal trials. As such, his § 2255 Motion demonstrates that he is entitled to a new trial, or alternatively, discovery and an evidentiary hearing to develop the factual basis for his claims.

The Court's Order summarily denies all of these claims. Mr. Fields respectfully submits that the Order's disposition of his claims overlooks or misapprehends several issues of fact and law. Additionally, as set forth below, the Court denies many of these claims on the basis that Mr. Fields failed to present adequate factual support in his Petition, yet in the very same Order, the Court summarily denies Mr. Fields' request for discovery and an evidentiary hearing for the purpose of developing the very factual support required to prove his claims. As such, the Court's denial of these claims is both procedurally improper and fundamentally unfair. Mr. Fields respectfully submits that this Court should have granted Mr. Fields the discovery required to demonstrate the merits of his claims before ruling on them. In failing to do so, the Order has unfairly deprived Mr. Fields of his last substantive and procedural opportunity to correct the manifest injustices that led to his conviction and death sentence. Unless this Court vacates, alters or amends its Order and grants Mr. Fields a new trial, or alternatively discovery and an evidentiary hearing, this culmination of systemic failures will cost Mr. Fields his life and ultimately undermine the integrity of the federal criminal courts.

In his § 2255 Motion, Mr. Fields sought relief from the judgment entered by the Honorable Walter S. Smith, Jr., United States District Court Judge for the Western District of Texas at Waco, on April 7, 2004, following a jury trial upon which Mr. Fields was convicted of various crimes and sentenced to death. The United States Court of Appeals for the Fifth Circuit

affirmed Mr. Fields' convictions and death sentence on direct appeal, and Mr. Fields' § 2255 petition for a writ of *certiorari* was denied by the United States Supreme Court on January 14, 2008.  In connection with his § 2255 Motion, Mr. Fields formally requested to preserve the record and take further discovery in order to provide the Court with sufficient factual evidence to properly evaluate the claims raised in Mr. Fields' § 2255 Motion.  To that end, Mr. Fields filed (i) a Motion for Protective Order to Preserve Evidence, dated June 17, 2010 [Dkt. No. 323] ("Motion to Preserve Evidence"); (ii) a DNA Motion [Dkt. No. 327]; and (iii) a Discovery Motion [Dkt. No. 330].  Mr. Fields also formally requested that the Court authorize funds for Mr. Fields' *habeas* counsel and various experts to support his § 2255 Motion in his Motion to Compel Reasonable Payment of Counsel, dated January 4, 2010 [Dkt. No. 314] ("Motion for Reasonable Legal Fees") and a sealed Expert Motion [Dkt. No. 329].  In its Order, the Court granted Mr. Fields' Motion to Preserve Evidence, but the Court denied the remaining motions, including Mr. Fields' DNA Motion and Discovery Motion, neither of which the Government opposed.  Additionally, in the Order the Court, *sua sponte*, refused to grant a Certificate of Appealability ("COA"), pursuant to 28 U.S.C. § 2253(c), as to each of Mr. Fields' claims.

Mr. Fields respectfully submits that the Order erred in analyzing both legal and factual disputes underlying the § 2255 Motion.  This Rule 59(e) motion ("Motion") focuses on particular, specific aspects of the Order that inappropriately denied him discovery or an evidentiary hearing, yet resolved factual discrepancies against Mr. Fields or in favor of the Government.  This Motion does not address each and every ground for reversing the Order and Mr. Fields reserves his rights to raise any remaining legal or factual disputes before the appropriate judicial authority in due course.

Point I of this Motion sets forth the standard governing the application of Rule 59(e).  Point II details the errors associated with the Court's resolution of selected claims without

granting Mr. Fields the opportunity for discovery or an evidentiary hearing to build factual support for those claims. Point III demonstrates that the factual and legal disputes set forth in the § 2255 Motion and the Court's Order unquestionably merit debate amongst jurists of reason, and therefore, the Court's *sua sponte* refusal to grant a COA as to each of Mr. Fields' claims should be reversed. Finally, Point IV demonstrates that this Court should recuse itself pursuant to 28 U.S.C. § 455 for purposes of consideration of his Rule 59(e) motion.

## ARGUMENT

## I.    STANDARD GOVERNING THE APPLICATION OF FEDERAL RULE 59(e)

The Supreme Court has confirmed that Rule 59(e) was adopted "'to make clear that the district court possesses the power' to rectify its own mistakes in the period immediately following the entry of judgment." *White v. New Hampshire Dep't of Emp. Sec.*, 455 U.S. 445, 450 (1982) (citation omitted); *see also Enriquez v. Quarterman*, 2006 WL 3805645, at *1 (S.D. Tex. Dec. 21, 2006) ("'A Rule 59(e) motion is a motion that calls into question the correctness of a judgment'") (*quoting In re Transtexas Gas Corp.*, 303 F.3d 571, 581 (5th Cir. 2002)). A Rule 59(e) motion is appropriate "'"to correct manifest errors of law or to present newly discovered evidence."'" *Manning v. United States*, 2012 WL 640056, at *1 (W.D. Tex. Feb. 27, 2012) (citations omitted). Rule 59(e) requires the court to balance finality with "'the need to render just decisions on the basis of all the facts.'" *United States v. Carmouche*, 70 F.3d 1269 (TABLE), 1995 WL 696814, at *4 (TEXT IN WESTLAW) (5th Cir. 1995) (*per curiam*) (Unpublished) (citation omitted). A district court has considerable discretion to grant a motion to alter or amend judgment. *Bender Sq. Partners v. Factory Mut. Ins. Co.*, 2012 WL 1952265, at *2 (S.D. Tex. May 30, 2012).

**II.    THE COURT COMMITTED LEGAL ERROR BY ENGAGING IN A SUBSTANTIVE ANALYSIS OF MR. FIELDS' CLAIMS WITHOUT ALLOWING MR. FIELDS THE PROCEDURAL OPPORTUNITY FOR FACTUAL DEVELOPMENT THROUGH DISCOVERY AND AN EVIDENTIARY HEARING**

**A.    Standard Governing Evidentiary Hearings Pursuant To 28 U.S.C. § 2255**

The numerous newly developed factual issues presented in Mr. Fields' § 2255 Motion entitle him to discovery and an evidentiary hearing to prove his post-conviction claims. The standard for granting such an evidentiary hearing is set out in 28 U.S.C. § 2255, which states: "Unless the motion and the files and the records of the case conclusively show that the prisoner is entitled to no relief, the court shall cause notice thereof to be served upon the United States Attorney, grant a prompt hearing thereon, determine the issues and make findings of fact and conclusions of law with respect thereto."  28 U.S.C. § 2255(b); *accord United States v. Lopez,* 100 F.3d 113, 119 (10th Cir. 1996).  Accordingly, the plain text of the statute creates a presumption in favor of holding an evidentiary hearing in a § 2255 proceeding: "*Unless* the motion and the files and the records of the case conclusively show that the prisoner is entitled to no relief."  28 U.S.C. § 2255(b) (emphasis added).

The legislative history of this statute demonstrates that Congress intended evidentiary hearings to be liberally granted in § 2255 proceedings.  Likewise, cases interpreting *habeas* statutes support finding that an evidentiary hearing should be granted on petitions brought pursuant to § 2255.  Prior to the passage of the Anti-Terrorism and Effective Death Penalty Act ("AEDPA"), the standard governing the granting of evidentiary hearings in federal court for both §§ 2254 and 2255 proceedings was set out by *Townsend v. Sain*, 372 U.S. 293 (1963): "Where the facts are in dispute, the federal court in *habeas corpus must* hold an evidentiary hearing if the *habeas* applicant did not receive a full and fair evidentiary hearing in a

state court, either at the time of the trial or in a collateral proceeding." *Id.* at 312 (emphasis added).

When Congress passed the AEDPA, it made revisions to both § 2255 and § 2254, but those revisions differed as to the evidentiary hearing provisions of the respective statutes. With respect to § 2254 proceedings, Congress legislatively modified the *Townsend* standard and severely limited a federal district court's discretion to grant an evidentiary hearing on a § 2254 petition. *See* 28 U.S.C. § 2254(e)(2). The rationale for this change was that in a § 2254 proceeding, a petitioner has purportedly already had the opportunity for an evidentiary hearing as part of the state court post-conviction proceedings, so principles of comity and federalism required deference to findings of fact made by the state courts. *See Teti v. Bender*, 507 F.3d 50, 61 n.4 (1st Cir. 2007) ("AEDPA did not change the standard for granting evidentiary hearings under § 2255 . . . Congress intended 'to create a discrepancy between the (respectively, somewhat narrower and broader) rights to a hearing in section 2254 and section 2255.' . . . This discrepancy underscores the principles of comity and federalism embodied in § 2254") (citation omitted).

However, Congress placed no such similar limitations on the standard for granting an evidentiary hearing in § 2255 proceedings, as is evident by comparing the text of § 2254(e) with § 2255. *See United State v. Steads*, 67 F. Supp. 2d 1064, 1074 n.5 (D.S.D. 1999) ("Although the AEDPA modified, to some extent, the *Townsend* standard for obtaining evidentiary hearings in 28 U.S.C. § 2254 cases, Congress made no parallel changes in § 2255 practice and evidently chose to leave intact the *Townsend* standard and to create a discrepancy between the right to a hearing in § 2254 and § 2255 cases"). As a result, Mr. Fields' request for an evidentiary hearing is governed by the more liberal pre-AEDPA standard articulated in *Townsend*, which states that an evidentiary hearing must be granted if there are disputed issues of

fact in the proceeding. This more permissive standard is even more sensible with regard to claims which cannot be resolved on the extant record because the allegation involves events and occurrences that took place outside the courtroom. *See Massaro v. United States*, 538 U.S. 500, 504-06 (2003).

That discovery and an evidentiary hearing should be liberally granted in cases such as Mr. Fields' is amply demonstrated by the *habeas* case law on which the Order relies. Throughout the Order, the Court cites repeatedly to § 2255 (and § 2254) cases in support of its ruling. As just one example, the Order relies heavily on *United States v. Bourgeois*, 2011 WL 1930684 (S.D. Tex. May 19, 2011), to support the denial of Mr. Fields' § 2255 Motion. The *Bourgeois* court, however, "liberally allowed [movant] to prepare the factual basis for his post-judgment claims through expert and investigative assistance" allowing the parties to "develo[p] a rich factual record through the submission of written interrogatories, declarations, and record documents." *Id.* at *20. Moreover, the *Bourgeois* court's decision denying movant's § 2255 was reached only after:

> The Court held a week-long evidentiary hearing for the parties to present witnesses. Testimony during that week often extended long after normal court hours. Aside from the witnesses called during that hearing, the Court has heard testimony at different dates and allowed the taking of video depositions of other witnesses. The Court has spent many hours reviewing the testimony of the out-of-court witnesses. The Court has afforded [movant] a full and fair opportunity to develop his arguments.

*Id.* Further, "[t]he Court placed no limitation on [movant's] ability to call witnesses in the evidentiary hearing to testify about the failure-to-present-mitigating-evidence claim." *Id.* at *55. The *Bourgeois* court noted that during the evidentiary hearing twenty-six witnesses were called, nineteen on behalf of the movant (including five doctors) and seven on behalf of the government. *Id.* at *20 n.22. In addition, the parties in *Bourgeois* had the opportunity to depose an additional

eleven witnesses either through video deposition or live testimony before the Court on several days outside of the week-long evidentiary hearing.  *Id.* at \*20 n.23.

Here, the Court deprived Mr. Fields of any such opportunity to conduct discovery or have an evidentiary hearing, and still denied relief for all of his well-pled factual claims. Accordingly, for the reasons stated below, Mr. Fields respectfully submits that the Court must vacate its denial of the § 2255 Motion, allow discovery, and grant an evidentiary hearing or alternative means of factual development in order that a factual record can be made as to Mr. Fields' claims.

**B.**     **Specific Examples Of The Court's Wrongful Use Of Subjective Analysis Or The Court's Personal Recollection Of Extra-Record Events**

**1.**     **In Reaching Its Conclusions On Claims One Through Three, The Court Erred By Failing To Conduct An Evidentiary Hearing Concerning Mr. Fields' Mental Health Claims And By Inappropriately Relying On Subjective Analysis And Personal Recollection**

Mr. Fields' First, Second, and Third Claims set forth facts demonstrating that Mr. Fields' constitutional rights under the Fifth, Sixth, and Eighth Amendments were violated when he was permitted to waive counsel and proceed *pro se* without an adequate investigation into Mr. Fields' competency.  *See* § 2255 Motion at 30-70; Reply at 8-35.  Specifically, the § 2255 Motion sets forth evidence and allegations that Mr. Fields was incompetent to waive counsel and proceed *pro se* in the testimony of forensic psychiatrist George Woods (*see* Appendix B (Declaration of George Woods) ("Woods Declaration")).  Dr. Woods concluded after an extensive examination that, among other things, the "symptoms of Mr. Fields' mental disease or defect, including paranoid ideation, grandiosity, agitated depression, impaired judgment, irritability, hyperreactivity, withdrawal, and a numbing of affect and emotion, rendered him

unable to carry out the basic tasks necessary to present his own defense without the assistance of counsel." Appendix B (Woods Declaration ¶ 110).

In its Order, the Court does not dispute that the standard for waiving counsel is "high" and that the waiver must be done "competently and intelligently." Order at 20, 31. Nor does the Court dispute that the Woods Declaration set forth compelling evidence of Mr. Fields' mental illness. Indeed, the Court concludes "[a]fter a careful review of the record" that there is "no doubt" Mr. Fields has a "history of trauma in his life and [that he] suffered to some degree from mental illness before, during, and after his criminal proceeding." Order at 29. Instead of granting the hearing to determine whether such trauma and mental illness rendered Mr. Fields incompetent to waive counsel, the Court concludes, without a hearing, that Mr. Fields must have been competent to waive counsel because Mr. Fields appeared competent to the Court. Mr. Fields respectfully submits that the Court's conclusion that Mr. Fields' constitutional rights were not violated based on Dr. Stephen Mark's brief and uniformed evaluation, the Court's own recollections of Mr. Fields' demeanor, and the opinions of trial counsel is in error for several reasons.

First, the Court erred when it concluded that Dr. Mark's thirty-minute examination was sufficient. The § 2255 Motion sets forth ample evidence to, at the very least, support an evidentiary hearing regarding whether Dr. Mark was provided sufficient information to conduct a thorough evaluation. Indeed, the § 2255 Motion sets forth evidence discovered post-conviction that could have and should have been discovered and presented prior to trial but was not. *See* § 2255 Motion at 41-57; Reply at 19-34. Specifically, the § 2255 Motion and the Woods Declaration set forth information concerning Mr. Fields' childhood diagnosis of psychological disorders (including a suggestion of Atypical Bipolar Disease), his hospitalization at Waco's DePaul psychiatric hospital and his prior diagnosis of Post-Traumatic Stress Disorder.

§ 2255 Motion at 42 (*citing* Exhibit 7; Appendix B (Woods Declaration ¶¶ 95, 100)). This information was all readily available at the time of Dr. Mark's evaluation, but none of it was presented to him (nor did Mr. Fields' trial counsel raise it with the Court). While acknowledging that such evidence supports a conclusion that Mr. Fields suffers from mental illness, the Court nonetheless concludes that such evidence is irrelevant to the question of Mr. Fields' competency. Such a finding, absent a hearing, is in error.

Second, the Court places great weight on its own subjective observations of Mr. Fields' demeanor and conduct in courtroom and his evaluation of Mr. Fields' pleadings. Specifically, the Court finds that:

> [Mr. Fields'] **demeanor before the Court** at the pretrial hearing and in previous hearings reflects that he had the ability to consult with his lawyer and the Court with a reasonable degree of rational understanding and that he had a rational understanding of the criminal proceedings against him . . . *Pro se* court filings submitted by [Mr. Fields] during the course of the criminal proceedings also show that [Mr. Fields] rationally understood the criminal proceedings as he moved the Court to represent himself with access to a law library and for a change of venue. (Doc. 317, Exs. 1, 2, and 3). **Based on [Mr. Fields'] observed demeanor during the Court proceedings and the filing of coherent pleadings** with the Court, [Mr. Fields] was mentally competent to waive his right to counsel.

Order at 23 (emphasis added). Such subjective observations amount to testimony by the Court. The Court's factual determination of Mr. Fields' competency based on its recollection of Mr. Fields' demeanor during a trial that occurred over eight years ago without consideration of the post-conviction evidence produced by qualified medical professionals such as Dr. Woods, without discovery and without an evidentiary hearing was in error. As such, the Order requires reconsideration.

Third, the Order improperly relied on Mr. Fields' "attorney's observation after extensive interactions with [Mr. Fields]" as evidence of "the adequacy of the Court's inquiry into the competence issue." Order at 26-27. Trial counsel's opinion of his client's competency is not conclusive evidence thereof. Indeed, trial counsel is not capable of assessing a defendant's competency to waive counsel and proceed *pro se. See Hull v. Freeman*, 932 F.2d 159, 168 (3d Cir. 1991) (finding that trial counsel are "wholly unqualified to judge the competency of their clients"). Moreover, even if trial counsel's subjective opinions as to a client's competency were relevant, this opinion should be subject to cross-examination if the Court intends to rely on it to support a factual determination. As such, discovery and a hearing are required to analyze these claims.

Fourth, the Court should have granted Mr. Fields an evidentiary hearing to evaluate whether Mr. Fields was competent to proceed *pro se* during the guilt phase of trial. Indeed, the Court has never considered Mr. Fields' competency to proceed *pro se*, which is governed by a higher constitutional standard than Mr. Fields' competency to stand trial and waive counsel. *See Indiana v. Edwards*, 554 U.S. 164, 172-73 (2008). Mr. Fields has not had a sufficient opportunity to present to the Court evidence of his history of trauma and mental illness or the impact of his suffering from such trauma and mental illness on his ability to conduct his trial proceedings. Resolution of Mr. Fields' claim that the Court's inquiry into Mr. Fields' competence was constitutionally inadequate without the benefit of an evidentiary hearing was in error as the preferred practice by courts interpreting the Supreme Court's decision in *Indiana v. Edwards*, 554 U.S. 164, 172-73 (2008) is to conduct a hearing to determine competency to proceed *pro se. See United States v. Armann*, 2011 WL 1467625, at *2 (E.D. Wis. Apr. 18, 2011) (defendant's competency determined only after holding a hearing with an expert specifically requested to determine competency to represent himself in addition to stand trial);

-11-

*see also United States v. Carradine*, 621 F.3d 575, 578-79 (6th Cir. 2010) (pretrial hearing conducted during which defendant failed to convince trial court of competency to proceed *pro se*).

For the same reasons set forth above, the Court's reliance on Mr. Fields' counsels' opinion of Mr. Fields' competence and Dr. Mark's evaluation to determine the adequacy of trial counsel's performance with respect to Mr. Fields' competency to waive counsel and proceed *pro se* is in error. The Court reasoned that "[g]iven counsel's extensive interaction with [Mr. Fields] and the opinions rendered by Drs. Price and Mark regarding [Mr. Fields'] intelligence and competence to waive counsel, the Court finds counsel's conduct to be reasonable as to the issue of competence." Order at 30. As set forth above, trial counsels' impressions of Mr. Fields are not conclusive as to Mr. Fields' competence. *See Hull*, 932 F.2d at 168 (finding that trial counsel are "wholly unqualified to judge the competency of their clients"). The Court ignores the fact that trial counsel failed to cross-examine Dr. Mark and failed to present Dr. Mark – or the Court – with highly material and readily available information about Mr. Fields' mental health, including: medical records, social security records, medication records, and family history. § 2255 Motion at 41-57; Reply at 19-34. Trial counsels' failure to provide Dr. Mark and the Court with numerous documents in their possession that diagnosed Mr. Fields with serious mental illness constitutes the ineffective assistance of counsel. § 2255 Motion at 41-57; Reply at 19-34; *Brown v. Sternes*, 304 F.3d 677, 698 (7th Cir. 2002) (defendant was denied right to effective assistance of counsel where "the failure of [counsel] to discover and to bring [defendant's] mental problems and medical history to the court's attention," and was prejudiced by counsel's failure, *inter alia*, "to request a hearing to determine his competency to stand trial").

Accordingly, for the reasons set forth above, Mr. Fields is entitled to discovery and an evidentiary hearing to evaluate these claims, and the Court's Order should be reconsidered.

**2.    In Reaching Its Conclusions On Claims Four Through Six, The Court Erred By Failing To Hold An Evidentiary Hearing To Resolve The Disputed Facts Related To Mr. Fields' Contention That He Did Not Consent To Standby Counsel's Role In Court Conferences**

Mr. Fields respectfully submits that the Court erred in denying his Fourth, Fifth, and Sixth Claims by failing to hold an evidentiary hearing concerning Mr. Fields' exclusion from bench and chamber conferences in violation of his Fifth, Sixth, and Eighth Amendment constitutional rights. § 2255 Motion at 69-92; Reply at 35-41. During trial, despite his *pro se* representation, Mr. Fields did not participate in a single chambers conference or any bench conference held in the Jury's presence. In his § 2255 Motion, Mr. Fields' provided a sworn statement expressly disputing that he consented to, or acquiesced in, standby counsel's participation in these conferences in lieu of himself. *See* § 2255 Motion at 70. This fact, if true, would entitle Fields to relief because, as this Court agreed, standby counsel's participation in these conferences without Mr. Fields' consent would violate his rights under *Farretta v. California*, 422 U.S. 806 (1975), and its progeny. Order at 33. Despite this agreement, the Court finds that Mr. Fields' rights were not violated because he did not object to his exclusion. Order at 43-44. Mr. Fields, however contends that he understood the Court to have ordered him not to participate in bench or chamber conferences. *See* § 2255 Motion at 70-79. Based on these disputed facts, the Court should have granted discovery and an evidentiary hearing to determine the extent of Mr. Fields' acquiescence to standby counsel and Mr. Fields' subjective understanding of the Court's order denying his right to personally participate in these critical conferences. *See Frantz v. Hazey*, 533 F.3d 724, 744 (9th Cir. 2008) (granting evidentiary

hearing to determine if movant's *Faretta* rights had been violated due to *pro se* defendants' exclusion from chamber conferences).   Accordingly, the Court's resolution of these disputed facts without an evidentiary hearing requires that the Court's Order be reconsidered and vacated.

> **3.      In Reaching Its Conclusions On Claims  Eight And Nine, The Court Erred By Failing To Hold an Evidentiary Hearing Concerning Mr. Fields' Factual Allegations Concerning The Abridgment Of His Rights To Exercise Peremptory Challenges And To Be Tried By A Fair And Impartial Jury**

Mr. Fields' Eighth and Ninth Claims alleged that standby counsel's failure to exercise a peremptory challenge against a juror Mr. Fields sought to strike (Mr. Jimmy Ansay) violated his Fifth, Sixth, and Eighth Amendment rights to due process and a fair and impartial jury.  § 2255 Motion at 94-103; Reply at 43-46.  In its Order, the Court acknowledged Mr. Fields' right to self-representation and recognized that control of *voir dire* is a "critical function" in a trial, hereby indicating that *voir dire* was among the functions over which Mr. Fields was entitled to exercise control in representing himself.  Order at 48-49.  The Court does not dispute that Mr.  Fields' constitutional rights were violated if Mr. Fields' standby counsel "overruled" him in exercising a peremptory charge, or a juror was improperly seated as a result.  Nor does the Court dispute that such a violation would constitute a structural error and is insusceptible to harmless error analysis.  *See Knox v. Collins*, 928 F.2d 657, 660-61 (5th Cir. 1991); *Swain v. Alabama*, 380 U.S. 202, 219 (1965); Reply at 43 n.6; Order at 48-49.  The Court, however, concludes that Mr. Fields controlled the exercise of his peremptory charges, relying heavily upon a document entitled "Defendant's Peremptory Challenges" (Dkt. No. 317), which was signed by Mr. Fields and which did not name the objectionable juror.  The Court reasoned that Mr. Fields failed to object on the record to Mr. Ansay's empanelment in denying these claims.  Further, the Court held that "even if standby counsel effectively controlled the decision not to strike Mr. Ansay . . . [Mr. Fields] acquiesced to standby counsel's participation and, therefore, waived his

Sixth Amendment right to self-representation on this issue." Order at 50. Accordingly, in concluding that there is no violation of Mr. Fields' constitutional rights, the Court relies on its own recollection of several factual disputes that should have been the subject of discovery or an evidentiary hearing before they were decided on the merits.

Mr. Fields respectfully submits that the Court erred by resolving disputed facts without an evidentiary hearing. The Order does not address Mr. Fields' detailed factual allegations with regard to Mr. Ansay (including, *inter alia*, Mr. Ansay's *voir dire* questionnaire answers and Mr. Ansay's observed demeanor in court) or Mr. Fields' description of how standby counsel in fact conducted and controlled the *voir dire* process. § 2255 Motion at 95. Instead, the Court relied substantially on Dkt. No. 317 ostensibly listing peremptory challenges and evincing a signature. Order at 49. In doing so, the Court fails to consider Mr. Fields' factual contention that standby counsel forced Mr. Fields to accept Mr. Ansay as a juror (a fact to which Dkt. No. 317 does not speak to). Nor does the Order address the critical factual allegations that the names listed in Dkt. No. 317 were in standby counsel's handwriting, not the handwriting of Mr. Fields. Reply at 45. These disputed facts are critical to resolution of Mr. Fields' allegation that standby counsel forced Mr. Fields' decision to empanel the jury, in violation of his *Farretta* right. The Court erred when it dismissed all of these facts and made a factual finding based on a single document. The resolution of this factual dispute should have been accomplished by means of an evidentiary hearing and, as such, the Order should be reconsidered.

Moreover, Mr. Fields respectfully submits that the Court erred in finding that he acquiesced to standby counsel's role in the jury selection process. Order at 50. In so finding, the Court disregards Mr. Fields' "unambiguous request that 'standby counsel be silenced,'" *United States v. Lorick*, 753 F.2d 1295, 1299 (4th Cir. 1985), when he asserted his rights to self-representation – including at *voir dire* – because he believed that standby counsel were actually

working against him and conspiring with the prosecution.  § 2255 Motion at 97; Reply at 45-46.

The Court's finding appears to be based on the Court's own observation that Mr. Fields generally

allowed standby counsel to participate in "certain aspects of the jury selection process" without

consideration of any of the factual allegations set forth in Mr. Fields' § 2255 Motion.  Order at

50 n.6.  Mr. Fields contends that he did not acquiesce to standby counsel's representation in

asserting his peremptory challenges, and whether he did so is a vigorously disputed question of

fact.  *See* Gov't Response at 23-25; Reply at 43-44.  Accordingly, Mr. Fields respectfully

submits that the Court erred by deciding this issue without affording Mr. Fields an evidentiary

hearing.

> **4.      In Reaching Its Conclusions On Claims Ten and Eleven, The
> Court Erred By Failing To Hold an Evidentiary Hearing To
> Resolve The Disputed Fact That Mr. Fields' Presence At The
> Chambers Conference Would Have Contributed To The
> Fairness Of The Procedure**

Mr. Fields respectfully submits that the Court erred in denying Mr. Fields Tenth

and Eleventh Claims pertaining to his right to attend the chamber conference held to discuss the

Court's response to a jury note and his related ineffective assistance of counsel claim.  § 2255

Motion at 103-09; Reply at 46-49.  The Court does not dispute that Mr. Fields was excluded

from such conferences or that his counsel did not object to such exclusion.  Instead the Court

concludes, apparently based on its own recollection, that the "only matter discussed in the

conference involved the Court's response as to whether the jury was in fact deadlocked" (Order

at 53), and that Mr. Fields' "absence from the chambers conference neither compromised nor

otherwise frustrated the fundamental fairness of the trial proceedings."  Order at 54.  The Court

further denies Mr. Fields' ineffective assistance of counsel claim because Mr. Fields "fails to

show how his inclusion in the chambers conference would have led to a different outcome in the

jury's deliberation."  Order at 54.  Mr. Fields respectfully submits that the record does not

contain sufficient evidence to support the Court's finding.   Indeed, because Mr. Fields was excluded from the conference, Mr. Fields is entitled to discovery and a hearing on the issue of what occurred during the chambers conference.   As such, Mr. Fields respectfully submits that the Court erred in denying Mr. Fields the opportunity to develop facts pertinent to Claims Ten and Eleven.

**5.      In Reaching Its Conclusions On Claim Fourteen, The Court Erred By Relying On Its Subjective Analysis Rather Than Holding An Evidentiary Hearing Concerning Mr. Fields' Waiver Of His Right To Testify At Trial**

Mr. Fields' Fourteenth Claim alleged that he did not knowingly and voluntarily waive his right to testify in violation of his Fifth, Sixth, and Eighth Amendment rights.  § 2255 Motion at 118-23; Reply 54-57; Order at 62-65.  Mr. Fields argued, *inter alia*, that the Court erred by failing to directly address Mr. Fields regarding his right to testify, despite his *pro se* representation and instead asked standby counsel outside Mr. Fields' presence whether he would testify.  § 2255 Motion at 118-23.  Mr. Fields alleged that he wanted to testify, but did not do so because his standby counsel erroneously advised him that testifying would require him to take the stand and formally examine himself by asking himself questions and then answering them for the jury.  § 2255 Motion at 120.  Mr. Fields further asserted that he expressed his desire to exercise his constitutional right to testify and through his trial performance, and that he notified the Court of his disagreements with standby counsel.  § 2255 Motion at 122; Reply at 54.  Rather than addressing the factual allegations set forth in the § 2255 Motion, the Court denies Mr. Fields' Fourteenth Claim, holding that "the trial court had no duty to inform [Mr. Fields] of his right to testify and [Mr. Fields] effectively waived that right."  Order at 64-65.  Additionally, despite Mr. Fields' factual allegation to the contrary, the Court concluded that Fields' "conduct is

more suggestive that he did not want to testify under oath and sought instead to place his story in front of the jury through his examination of witnesses." Order at 64.

By so holding, however, Mr. Fields respectfully submits that the Court's Order failed to address facts material to Mr. Fields' claim and resolves factual disputes in favor of the Government without the benefit of an evidentiary hearing. The Order does not address the factual allegations regarding standby counsel's incorrect advice that in order to testify, Mr. Fields would be required to take the stand and examine himself through a traditional question and answer format – as opposed to testifying in narrative format or in response to questions read by standby counsel. § 2255 Motion at 118-19; Reply at 54, 57. The Order also does not address the fact that Mr. Fields did not wish to present his testimony in the awkward self-examination question and answer format described to him by standby counsel. § 2255 Motion at 118-19. Such facts, if true, would provide grounds for relief from his conviction and sentence because they demonstrate Mr. Fields did not knowingly and voluntarily waive his right to testify. Accordingly, Mr. Fields respectfully submits that the Court should have allowed Mr. Fields an evidentiary hearing on these claims.

### 6.    In Reaching Its Conclusions On Claim Fifteen, The Court Erred By Failing To Hold An Evidentiary Hearing Concerning Mr. Fields' Claim Of Actual Innocence

Mr. Fields' Fifteenth Claim set forth specific factual allegations supporting his actual innocence of the murder of Suncerey Coleman. § 2255 Motion at 124-37; Reply at 57-70. The § 2255 Motion sets forth gaping evidentiary holes, contradictions, and inconsistencies in the Government's presentation at trial, all of which establish that a discovery hearing is necessary to provide Mr. Fields the opportunity to prove that the evidence establishes his innocence. Additionally, through his DNA Motion, Mr. Fields separately moved this Court for discovery of

all biological materials so that they could be subject to DNA testing.[2]  *See* Dkt. No. 327.  In its

Order, however, the Court failed to acknowledge *any* of these infirmities and refused to examine

the viability of Mr. Fields' actual innocence claim.  *See generally* Order at 65-67.  Indeed, the

Court concluded, among other things, that Mr. Fields "fails to show how any new DNA or

forensic testing would constitute direct evidence of his innocence."  Order at 67.  Mr. Fields

respectfully submits that the Court erred in denying his Fifteenth Claim based on a lack of

evidence, including DNA evidence, while refusing to grant Mr. Fields access to DNA testing or

an evidentiary hearing to demonstrate his claims.  Mr. Fields respectfully submits that the Court

should have, at the very least, permitted Mr. Fields the opportunity for adequate discovery to

further develop the facts set forth below in the § 2255 Motion, and granted an evidentiary

hearing to resolve any disputed facts.

### a.    Forensic Evidence

In his § 2255 Motion, Mr. Fields presented numerous examples of situations

where the forensic evidence could establish his innocence by contradicting the unreliable nature

of the testimony proffered against him.  § 2255 Motion at 125-29; Reply at 59-60.  Mr. Fields

moved for discovery concerning these facts, a motion which this Court denied.  In so doing, the

Court ignored numerous factual allegations set forth in the § 2255 Motion including, *inter alia*:

- Shalaykea Scroggins ("Scroggins") testified that Mr. Fields had blood on his clothes and shoes the night of Coleman's death.  However, the red Grand Am that Mr. Fields was driving, which was forensically examined and tested, produced no inculpatory evidence linking Mr. Fields to the crime.  § 2255 Motion at 125-26; Reply at 59-60.

---

[2]    Fields has separately moved for reconsideration of the Court's denial of his two discovery motions. *See* Motion for Reconsideration of the Denial of Movant Sherman Lamont Fields' First Motion for Discovery (Dkt. No. 330) and Motion for Reconsideration of the Denial of Movant Sherman Lamont Fields' Motion for Leave to Compel Production of Physical/Biological Evidence for Defense Examination and Possible DNA Testing (Docket No. 327).

- The area where Coleman's body was located was covered in huge thorns that would have left cuts on anyone in that area, yet Mr. Fields, who was wearing shorts that night, was uninjured.  § 2255 Motion at 126; Reply at 60.

- The blue Jaguar that the Government told the jury Edward Outley III ("Outley") and Scroggins were driving the evening of the murder actually had been wrecked and totaled in 1998.  § 2255 Motion at 126; Reply at 60.

- The gold Jaguar that Outley and Scroggins were actually driving the evening of the murder was never forensically tested because Outley and Scroggins conspired to hide the car by falsely telling investigators that they were in a blue, rather than gold vehicle.  § 2255 Motion at 126; Reply at 60.

- The detective who took buccal swabs and a blood sample from Mr. Fields the night he was arrested falsely claimed to have found Mr. Fields' blood on a .22 caliber gun, but Mr. Fields had no injuries that would have left his blood on that weapon that night.  § 2255 Motion at 127.

### b.    False Testimony

The Order also fails to address facts alleged by Mr. Fields demonstrating that two critical Government witnesses offered patently false testimony at trial.  Mr. Fields also moved for discovery on these claims, which the court denied.  For example:

- ***Scroggins***.  Mr. Fields asserted in his § 2255 Motion that Scroggins' testimony was demonstrably false and inconsistent.  The Court did not address these facts, which include, without limitation:

  - Scroggins provided two different alibis for her whereabouts the night of the murder.  § 2255 Motion at 127; Reply at 62.

  - Scroggins told at least three different and irreconcilable stories about what Mr. Fields purportedly told her about the murder.  § 2255 Motion at 127; Reply at 62.

  - Scroggins' testimony was false and unreliable as to the timing of her knowledge of Ms. Coleman's disappearance and whether Mr. Fields called her the night of the murder and what he allegedly said (*i.e.*, no phone records of this alleged phone call).  § 2255 Motion at 127-28; Reply at 62-63.

- ***Outley***. Outley's testimony also was highly unreliable. Mr. Fields provided a number of examples of false and inconsistent testimony that the Court ignored. These include, without limitation:

  ➢ Outley falsely claimed that he gave a gun to Alberta Hampton ("Hampton"). However, Hampton denied ever seeing the gun and Outley later recounted this claim in a letter to Mr. Fields' attorney. § 2255 Motion at 128.

  ➢ Outley provided multiple inconsistent and false statements as to his whereabouts the night of the murder. § 2255 Motion at 128; Reply at 63.

  ➢ Outley inconsistently claimed both that Mr. Fields called him and that he called Mr. Fields to confess/prompt a confession about the murder. § 2255 Motion at 128; Reply at 63.

  ➢ Outley falsely claimed that the Government did not make him any promises in return for his testimony. Much to the contrary he was granted full immunity. § 2255 Motion at 128-29; Reply at 63. As Mr. Fields described in his Petition, Outley gave false testimony because he believed that he would be prosecuted for murder if he did not allege that someone else committed the crime. § 2255 Motion at 129 (*citing* Appendix J (Affidavit of Edward Outley III) ("Outley Affidavit")); Reply at 63.

### c. Jailhouse "Snitch" Testimony

Mr. Fields presented ample evidence and allegations that the jailhouse testimony of a number of witnesses was false and unreliable, contrary to the Court's suggestion that the § 2255 Motion "provides no corroborating evidence to support his allegations that various Government witnesses gave false testimony at trial." Order at 67. Such evidence and allegations, which the Court does not address (and for which the Court denied Mr. Fields' request for discovery), include, *inter alia*:

- Jerry Reed alleged that Mr. Fields confessed to him, but the evidence suggests that Scroggins fed this information to Christian "Chae" Walker, who had been in custody with Reed. § 2255 Motion at 130; Reply at 64.

- Prior to trial Christian Walker testified three times that Mr. Fields never confessed to him, but Christian Walker changed his story after

corresponding with Scroggins and falsely testified at trial that Mr. Fields confessed to him.  § 2255 Motion at 130.

- Alvin "Bird" Walker is willing to testify at an evidentiary hearing that Christian Walker's testimony at trial that Bird threw the .32 caliber gun used to kill the victim into a river was false.  § 2255 Motion at 131.

- Dominique Tubbs and Christopher Quigley, who were incarcerated in the same drug case, both falsely claimed to have heard Mr. Fields threaten to kill the victim over the phone and upon information and belief obtained the information they used to testify falsely against Mr. Fields through Detective Steve January who coached them to testify accordingly.  § 2255 Motion at 131.

- Homero DeLeon ("DeLeon") falsely claimed in a letter to the Government that Mr. Fields confessed to him because DeLeon was not on the Government's witness list – a list which did not exist at the time.  DeLeon received this information through his incarceration at the same facility as Walker.  DeLeon provided false testimony at trial having been coached by Government agents and/or attorneys prior to testifying against Mr. Fields.  § 2255 Motion at 132; Reply at 65.

### d.    Other Evidence

The Order also failed to address factual allegations revealing the falsity of accusations made by Tammy Edwards and former U.S. Marshal McNamara, including, *inter alia*, the following:

- Although Edwards purportedly "identified" Mr. Fields from a photo array as her carjacker on November 27, 2001, she failed to identify Mr. Fields as her carjacker on or about November 15th when the police had twice shown her a single photograph of Mr. Fields.  § 2255 Motion at 132-33.

- McNamara falsely testified that when Mr. Fields was arrested, Mr. Fields told McNamara that he had a .22 caliber gun and where to find it.  § 2255 Motion at 133.

Mr. Fields respectfully submits that the Court's denial of discovery and an evidentiary hearing on these and numerous other factual allegations in his petition was in error, and requests that the Court reconsider its Order concerning Mr. Fields' Fifteenth Claim.

**7.    In Reaching Its Conclusions On Claim Sixteen, The Court Erred By Failing To Hold An Evidentiary Hearing Concerning The Government's Presentation Of Evidence And Testimony That It Knew Or Should Have Known To Be False**

In the Sixteenth Claim of the § 2255 Motion, Mr. Fields asserted that the Government relied almost exclusively on testimony that it knew or should have known to be false. § 2255 Motion at 135-37; Reply at 70-71. The Court, in its Order, acknowledges convictions obtained through the knowing use of perjured testimony are fundamentally unfair. *See* Order at 68 (*citing* among others, *Napue v. Illinois*, 360 U.S. 264, 269 (1959)). Instead of permitting Mr. Fields an opportunity to develop factual support for this claim through discovery and an evidentiary hearing, however, the Court denies the claim concluding that Mr. Fields "has failed to establish that the testimony in question was actually false" and that Mr. Fields failed to "convince the Court that the Government knowingly used any such false or perjured testimony to obtain a guilty verdict." Order at 69-70. Mr. Fields respectfully submits that the Court's ruling here is particularly improper because the Court summarily denied Mr. Fields' request for discovery and an evidentiary hearing required to develop the factual record that would have demonstrated his claims, yet denied this claim based on a failure to put forth such evidence.

The same facts the Order failed to address pursuant to Mr. Fields' Fifteenth Claim render the Court's analysis of his Sixteenth Claim equally inadequate. *See supra* Point II.B.6. Indeed, the Government knew or should have known that the testimony of Mr. Outley and Ms. Scroggins, two critical witnesses in the case against Mr. Fields, was not only unreliable, but also littered with falsehoods including, *inter alia*, that:

- The gold Jaguar driven by Scroggins and Outley the night of the murder was never forensically examined or tested because Scroggins and Outley conspired to hide the vehicle by telling investigators the car was blue rather than gold. § 2255 Motion at 126; Reply at 60.

- The blue Jaguar that the Government told the jury Outley and Scroggins were driving the evening of the murder had in fact been wrecked and totaled in 1998. § 2255 Motion at 126; Reply at 60.

- Outley falsely claimed that the Government gave him no promises in return for his testimony when he was granted full immunity. *Id.* at 128-29; *see also infra* Point II.B.9, Claims Eighteen through Twenty for full analysis of this point.

- Homero DeLeon falsely claimed in a letter to the Government that Mr. Fields confessed to him because DeLeon was not on the Government's witness list, which did not exist at the time. DeLeon received this information through his incarceration at the same facility as Walker. DeLeon provided false testimony at trial having been coached by Government agents and/or attorneys prior to testifying against Mr. Fields. § 2255 Motion at 132; Reply at 65.

- Although Edwards purportedly "identified" Mr. Fields as her carjacker on November 27, 2001, from a photo array, Edwards failed to identify Mr. Fields as her carjacker on or about November 15th when the police had *twice* shown her a single photograph of Mr. Fields. § 2255 Motion at 132-33.

Accordingly, the Court's failure to grant an evidentiary hearing to further develop these and other facts that would have demonstrated that the Government knew or should have known the testimony offered at trial to be false constituted reversible error with respect to Mr. Fields' Sixteenth Claim. Here, the Court denied Mr. Fields the opportunity to develop necessary facts, yet denied the claim for failure to develop such facts, rendering its denial fundamentally unfair.

8. **In Reaching Its Conclusions On Claim Seventeen, The Court Erred By Failing To Hold An Evidentiary Hearing To Resolve Factual Disputes Regarding The Failure Of Counsel To Conduct An Adequate Pre-Trial Investigation Related To The Facts Of The Charged Homicide**

Mr. Fields' Seventeenth Claim alleged that he was denied his rights to effective assistance of counsel in violation of the Fifth, Sixth, and Eighth Amendments as a result of counsels' failure to conduct a competent investigation into the facts of the charged homicide. § 2255 Motion at 137-47; Reply at 71-74. In this regard, Mr. Fields alleges facts demonstrating

that his trial counsel failed to interview crucial witnesses and failed to conduct sufficient independent investigation. Specifically, Mr. Fields asserted that his counsel failed, *inter alia*, to interview Ms. Renee "Na-Na" Alberta Hampton, who would have provided testimony "supporting Fields' defense that Scroggins was the actual killer." § 2255 Motion at 138. When Ms. Hampton refused to speak to the defense investigator, Don Youngblood, counsel failed to subpoena Ms. Hampton. § 2255 Motion at 138-39. Similarly, counsel did not interview Edward Outley III, whom Mr. Fields asserted was an accomplice to the actual killer, Shalaykea Scroggins, nor did counsel interview Debra Alexander, a witness whom the Government identified as corroborating Mr. Fields' defense that Scroggins was the actual killer. § 2255 Motion at 138-39. These witnesses could have provided powerful support to Mr. Fields' defense and these failures constitute ineffective assistance of counsel. *Bryant v. Scott*, 28 F.3d 1411, 1415 (5th Cir. 1994) (failure to investigate crucial witness may constitute inadequate performance) (*citing Gray v. Lucas*, 677 F.2d 1086, 1093 n.5 (5th Cir. 1982)). Additionally, Mr. Fields alleged that during the two years prior to trial, Fields' counsel interviewed only four of the fifty-nine witnesses who eventually testified on behalf of the Government – fewer than 7% of the Government's witnesses. § 2255 Motion at 137. None of these facts were contested by the Government.

In denying this claim, the Court reasoned that "assessing counsel's performance is difficult and determining whether the defendant was prejudiced is near impossible" and as such the "court must assume that counsel satisfied that duty and that any investigation complied with the prevailing professional norms." Order at 71. Relying on *Moore v. Quarterman*, 534 F.3d 454 (5th Cir. 2008), the Court described Mr. Fields' assertions regarding the content of Ms. Hampton's, Ms. Alexander's, and Mr. Outley's testimony to be "speculative" and "conclusory allegations" that "fail[] to establish how any of these interviews would have uncovered favorable

testimony." Order at 72-73. The Court also found it "important" that Mr. Fields "ultimately chose to represent himself at trial and, therefore, had control as to who to call to the stand as a witness" and "never sought a continuance with the Court in order to interview and possibly subpoena witnesses who could offer favorable testimony to his case." Order at 73.

Mr. Fields respectfully submits that the Court erred when it ruled on this claim without the benefit of an evidentiary hearing. An evidentiary hearing would provide further fact development and uncover critical testimony from: (i) a "potential eyewitness to the murder" (Order at 72), (ii) a witness alleged to be an accomplice to the actual killer, and (iii) a witness whom the Government itself identified as corroborating Mr. Fields' testimony that Scroggins was the actual killer. *See* § 2255 Motion at 138-39, 141; Reply at 73. Citing *Moore*, the Court denies Mr. Fields' relief with regard to Claim Seventeen because Mr. Fields, in the Court's view, did not supply "specific facts" about such testimony. Order at 72. *Moore*, however, supports Mr. Fields' request for discovery and an evidentiary hearing. Unlike Mr. Fields, the movant in *Moore* was granted an evidentiary hearing where he could have, but did not, call the witnesses he claimed his counsel ineffectively failed to interview during their pre-trial investigation. Only after *Moore* was provided an opportunity to develop specific facts at a hearing, but failed to do so, did the court rule that his claims were too speculative. As the Fifth Circuit noted in *Moore*:

> In particular, [Moore] argues that his trial counsel failed to investigate adequately the facts surrounding the shooting. Moore claims that his lawyer should have questioned Josie Wilford and Darlene Hopkins, who were at the club before the shooting, and Edmond Davis, who could have testified that Clark and Boyd were armed that night.
>
> \*   \*   \*
>
> When he made his [ineffective assistance of counsel] claim in his state *habeas* application, the court held an evidentiary hearing. Moore failed to provide *any evidence at all* regarding the thought process underlying his trial counsel's decisionmaking. He made no

-26-

> effort to inquire of his attorney as to what steps were taken to investigate the shooting, so we do not know whether the counsel made a strategic decision not to speak with these witnesses or what might have been the basis of that decision.
>
> *     *     *
>
> We also do not know what Wilford, Hopkins, or Davis would have testified to, because Moore did not call them during that evidentiary hearing. He argues that they would have said something favorable, but we do not know that, and, for all we know, neither does Moore.  This complete failure to present *any* evidence strongly argues against Moore's present claims that his trial counsel's decisions were not objectively reasonable or that he was prejudiced.

*Moore*, 534 F.3d at 467-68.

Here, Mr. Fields requested an evidentiary hearing to develop this factual record, a request the Court denied.  Without such a hearing, the Court's reliance on *Moore* in holding that Mr. Fields' factual allegations are too speculative to grant relief is inapposite, and denying his claim based on a lack of evidence is fundamentally unfair.  Mr. Fields has consistently asserted that he will demonstrate his factual allegations through discovery and an evidentiary hearing, in the event the Court allows him to do so.

Further, Mr. Fields respectfully submits that the Court's observation that Mr. Fields "had control as to who to call to the stand as a witness" and its suggestion that Mr. Fields could have "sought a continuance with the Court in order to interview and possibly subpoena witnesses who could offer favorable testimony to his case" cannot justify denial of this claim. Order at 73.  The Court itself foreclosed such a continuance at trial when it instructed Mr. Fields:

> Well, Mr. Fields, as Mr. Swanton pointed out, he and Mr. Peterson have been working on your behalf in this case for approximately two years. . . . If other attorneys were appointed to represent you, there would be a lengthy delay, and as I told you the last time we were here, that's not going to happen. . . .

-27-

Reply at 72-73 (*citing* TT at 14). Accordingly, Mr. Fields is entitled to discovery and a hearing for this very purpose – to discover the quality and content of Ms. Hampton's potential eye-witness testimony, among other favorable evidence supporting his claims, which his trial counsel failed to do and the Court precluded him from doing at trial.

Mr. Fields respectfully submits that the Court also erred by failing to address the factual dispute between Fields and the Government regarding whether trial counsel inappropriately relied on "open-file" discovery in lieu of conducting an appropriate investigation. Mr. Fields alleged that counsel's records indicated that the investigation into seventy-three of the 120 witnesses on the Government's witness list was limited to document review – fifty-four of these witnesses actually testified against Fields. § 2255 Motion at 144. In response, the Government merely pointed to two "formal discovery motion[s]" that were, in turn, a motion requesting open-file discovery and a request for records of prior offenses and other files, neither of which sought anything beyond open-file discovery. *See* Gov't Response at 41; Gov't Response Exhibits 7-8. This reliance on open-file discovery falls well below an objective standard of reasonableness. *See Bryant*, 28 F.3d at 1418 (investigation deficient where counsel "restricted his pretrial investigation to discussions with [defendant], review of the indictment against [defendant], and examination of the prosecutor's file"); *Anderson v. Johnson*, 338 F.3d 382, 392 (5th Cir. 2003) (investigation deficient where counsel relied "exclusively on the investigative work of the State and based his own pretrial 'investigation' on assumptions divined from a review of the State's files"); *Crandell v. Bunnell*, 144 F.3d 1213, 1217-18 (9th Cir. 1998) (attorney's "incompetency, however, lay in his failure to seek formal discovery, to investigate the crime, to interview witnesses and to develop a working relationship with" the client), *overruled on other grounds by Schell v. Witek*, 218 F.3d 1017 (9th Cir. 2000). Accordingly, Mr.

Fields is entitled to discovery and a hearing to discover the extent to which counsel relied on open-file discovery to the exclusion of an adequate investigation in his defense.

> **9.    In Reaching Its Conclusions On Claims Eighteen Through Twenty The Court Erred By Failing To Hold An Evidentiary Hearing To Resolve Factual Disputes Regarding The Government's Failure To Disclose The Details Of A Witness's Immunity Deal, Notes Prepared By A Jail-House Informant, And Other Potentially Exculpatory Material In Violation Of _Brady v. Maryland_**

Mr. Fields' Eighteenth, Nineteenth, and Twentieth Claims asserted allegations related to (i) undisclosed details regarding the breadth of Edward Lee Outley III's immunity deal, and (ii) missing and potentially exculpatory notes prepared by jail-house informant Homero DeLeon.  Mr. Fields' Eighteenth Claim asserted that the Government's failure to disclose these items constituted _Brady_ violations.  § 2255 Motion at 147-52; Reply at 74-77; Order at 79.  Mr. Fields' Nineteenth Claim focused on the Government's failure to correct Outley's material misstatements under oath about his immunity deal, despite the Government's direct knowledge of his immunity deal and documentary evidence directly contradicting Outley's testimony.  § 2255 Motion at 152-53; Reply at 77.  Mr. Fields' Twentieth Claim asserted that jailhouse informants, including DeLeon, acted as Government agents in violation of his Fifth, Sixth, and Eighth Amendment rights.  § 2255 Motion at 153-60; Reply at 78-79.  Mr. Fields respectfully submits that the Court incorrectly denied all of these claims without granting of discovery or an evidentiary hearing.

### a.    Mr. Outley's Testimony And Immunity Deal

The Court incorrectly denied Mr. Fields' Eighteenth Claim by holding that the Government fulfilled its obligations by disclosing the "January 2, 2004, letter detailing the actual immunity agreement."  Order at 76.  In his § 2255 Motion, however, Mr. Fields asserted that the Government's actual grant of immunity was broader than described in the January 2, 2004 letter.

§ 2255 Motion at 147, 151-52.  In the Government's January 2, 2004 letter to Outley's attorney, the Government guaranteed Outley derivative use immunity for testimony about any crimes, except "for perjury or otherwise making a false statement" (the "2004 Letter").  *See* Appendix J (Letter dated January 2, 2004 to Sweiger attached to Outley Affidavit).  Nonetheless, Outley's post-conviction affidavit provides evidence of Outley's receipt of "complete immunity" and his understanding that "because [he] could not be prosecuted for any crimes, [he] had to testify." § 2255 Motion at 153; Reply at 71; Appendix J (Outley Affidavit & 2004 Letter).  Outley has since stated post-conviction, under penalty of perjury, that "[t]he only reason I testified is because the Government gave me complete immunity for any charges. Thus, because I could not be prosecuted for any crimes, I had to testify[.]"  Appendix J (Outley Affidavit ¶ 4).  The Government's failure to disclose this key exculpatory grant of immunity prejudiced Mr. Fields' defense and violates his rights under *Brady*.  *See, e.g.*, *United States v. Bagley*, 473 U.S. 667, 676 (1985); *Strickler v. Greene*, 527 U.S. 263, 282 n.21 (1999) ("Our cases make clear that *Brady*'s disclosure requirements extend to materials that, whatever their other characteristics, may be used to impeach a witness").  Mr. Fields respectfully submits that the Court's denial of discovery or an evidentiary hearing concerning, *inter alia*, the scope of the Government's grant of immunity was reversible error.

Mr. Fields' Nineteenth Claim alleged that Outley's statement regarding his immunity deal was false, that the Government knew it was false and failed to correct it in violation of his Fifth, Sixth, and Eighth Amendment constitutional rights.  § 2255 Motion at 152-53; Reply at 77.  Specifically, at trial, Outley testified that "[t]he government hasn't made me any promises" (TT at 1847), despite the existence of the 2004 Letter.  In its Order, the Court finds that "Mr. Outley's vague and conclusory statements" concerning his immunity deal, which are set forth in his sworn affidavit, were insufficient evidence of "such a broad and undisclosed

-30-

immunity agreement" and that "[e]ven if a broader grant of immunity existed and the Government failed to disclose it" it was "unlikely that any prejudice ensued to" Mr. Fields. Order at 76-77. The Court concluded that Mr. Fields' questioning of Outley was "vague" and that Mr. Fields failed "to suggest that the prosecutor either directly elicited any false testimony . . . or falsely informed the jury during closing remarks that Outley received nothing in exchange for his testimony." Order at 81. Mr. Fields asked Outley directly, however, has "the [G]overnment made you any promise" and it is hard to imagine how this question could have been more clear. *See* § 2255 Motion at 151-52 (*citing* TT 1847:3-4). Despite unequivocal evidence to the contrary, including Outley's affidavit and the 2004 Letter described above, the Government allowed Outley's denial at trial to stand without correction.

Without discovery and an evidentiary hearing, the Court's finding is based on unsupported assumptions as to the scope of Outley's immunity deal and the accuracy of its description in the 2004 Letter. Outley's sworn statements are sufficient evidence of a "broad and undisclosed grant of immunity" (*see* § 2255 Motion at 151) and such sworn statements alone support a grant of discovery and an evidentiary hearing to determine the scope of Outley's immunity deal and the Government's knowledge of the falsity of Outley's testimony. Accordingly, Mr. Fields respectfully submits that the Court should have granted discovery and an evidentiary hearing as to his Eighteenth and Nineteenth Claims prior to ruling on them.

### b.    Mr. DeLeon's Handwritten Notes

Mr. Fields' Eighteenth Claim also alleged that the Government violated its *Brady* obligations when it failed to disclose ten to eleven pages of detailed notes by DeLeon, allegedly reflecting his conversations with Mr. Fields regarding the escape and homicide. *See* Appendix K (Affidavit of Rick Ojeda ("Ojeda Affidavit") ¶¶ 8-16). DeLeon himself described these notes in a post-conviction interview with Rick Ojeda, an investigator for Mr. Fields. *Id.* DeLeon stated

he did not keep a copy of the notes but sent them to the Assistant United States Attorney assigned to the case. *Id.*; § 2255 Motion at 148; Reply at 75. DeLeon provided inconsistent explanations of how he provided these notes to the AUSA after each of several conversations he had with Mr. Fields. Appendix K (Ojeda Affidavit ¶¶ 9-11).[3] The notes were not provided to Mr. Fields or his counsel. *Id.* ¶¶ 15-16. DeLeon stated that the notes reflected Mr. Fields' statements that he escaped from prison by crawling through a vent and that he then "carjacked" an "old lady" so that he could get to the hospital, facts that were inconsistent with both DeLeon's testimony at trial, as well as all of the other testimony and evidence. *Id.* ¶ 13.

Despite the sharp inconsistencies between DeLeon's notes – as they were described by DeLeon – and his trial testimony, the Court found that the notes "would largely corroborate Mr. DeLeon's compelling testimony" and that Mr. Fields' inability to use the notes to impeach this key witness's testimony at trial would have been unlikely to prejudice Mr. Fields. Order at 79. Notably, the Court's conclusion that the absence of these notes would not prejudice Mr. Fields was formulated without access to the notes at issue. Accordingly, Mr. Fields respectfully submits that the Court erred by making factual conclusions related to the content of the missing notes, without ever having read or reviewed the notes themselves. DeLeon's notes, as described by DeLeon himself, were clearly exculpatory in nature and would have served Mr. Fields during his cross-examination of DeLeon. *See Strickler*, 527 U.S. at 282 n.21 ("Our cases make clear that *Brady*'s disclosure requirements extend to materials that, whatever their other characteristics, may be used to impeach a witness"). The Court should have granted discovery and an evidentiary hearing to determine the content of Mr. DeLeon's notes,

---

[3] Mr. Fields does not concede, and indeed denies, that any such conversations took place between him and DeLeon.

rather than relying on speculation about the content of the notes in making its factual conclusions.

The Court also denied Mr. Fields' Twentieth Claim asserting that DeLeon acted as a government agent by communicating with Mr. Fields after communicating with the Government, as would be demonstrated in the missing notes, in violation of Mr. Fields' Sixth Amendment rights.    The Order acknowledges, as Mr. Fields argued, that "the knowing exploitation by the Government of an opportunity to confront the accused without counsel being present is as much a breach of the Government's obligations not to circumvent the right to the assistance of counsel as is the intentional creation of such an opportunity."  Order at 83 (citations omitted).  The Order also acknowledges DeLeon's previous cooperation with the Government, however, the Court still found "no evidence demonstrating that the Government directed or otherwise knowingly exploited DeLeon."  Order at 84.  The Court further opines that Mr. Fields "failed to show that Mr. DeLeon or any other jailhouse informant involved in this case, deliberately elicited information from [Mr. Fields] as a government agent."  Order at 84-85.

The Order, however, did not address Mr. Fields' need for discovery to establish when Mr. DeLeon's initial contact with the prosecution occurred to assess if he acted as a Government agent.  The Court acknowledged that Fields' investigator, former FBI Agent Rick Ojeda, stated in his interview affidavit that DeLeon "may have approached government officials during the course of his communications with [Mr. Fields]" (Order at 84 n.10), but concluded that DeLeon "approached government authorities after his meetings with [Mr. Fields]."  Order at 84; *see also* Appendix K (Ojeda Affidavit ¶¶ 9-10, 18).  Accordingly, the Court resolved this disputed factual allegation without discovery, an evidentiary hearing, or access to the notes on which the dispute is premised.  Mr. Fields respectfully submits the Order was in error.

**10.    In Reaching Its Conclusion On Claims Twenty-One through Twenty-Eight, The Court Erred By Failing To Order Discovery And To Conduct An Evidentiary Hearing.    In Addition, This Court Improperly Reframed The Claim As Involving The Failure To Present Evidence, Rather Than The Failure To Conduct A Competent Investigation**

Mr. Fields' Twenty-First through Twenty-Eighth Claims asserted that he received ineffective assistance of counsel because counsel failed to conduct a competent penalty phase investigation.  § 2255 Motion at 161-265; Reply at 79-145.  Mr. Fields alleged, *inter alia*, that defense counsel failed to:

(1) obtain all of the relevant multigenerational social history records of Fields' family members and caretakers (*see, e.g.,* § 2255 Motion at 165-70; Reply at 86-88; Exhibit 116; Appendices A, H, Q);

(2) interview historical witnesses and collect and review historical documents (*see, e.g.,* § 2255 Motion at 170-75; Reply at 88-93; Exhibits 1-5, 8-9, 28, 30-31, 34-35, 38, 116; Appendices B, H);

(3) interview available family-members for mitigation evidence (*see, e.g.,* § 2255 Motion at 93-97; Reply at 88-93; Appendices H, M-O, Q-U);

(4) investigate and present evidence of the abject poverty of Fields' family (*see, e.g.,* § 2255 Motion at 179-183; Reply at 98-102; Exhibits 99-104; Appendices B, M, O-P, R, U);

(5) investigate and present evidence of the neglect of Fields' family and caretakers (*see, e.g.,* § 2255 Motion at 184-89; Reply at 102-08; Exhibits 12; Appendices L, O, Q, R, U);

(6) investigate and present evidence of the extent of abuse experienced by Fields in his formative years  (*see, e.g.,* § 2255 Motion at 184-85; Reply at 108-13; Appendices B, O, R, U);

(7) investigate and document trauma in Fields' life history (*see, e.g.,* § 2255 Motion at 195-206; Reply at 113-24; Exhibits 42, 117; Appendices B, H, L, M, O, Q, R);

(8) investigate Fields' mental illness and multigenerational history of mental illness in Fields' family (*see, e.g.,* § 2255 Motion at 206-07; Reply at 125-32; Exhibits 74, 75, 77; Appendix B);

(9) investigate potential brain damage and dysfunction (*see, e.g.,* § 2255 Motion at 207-09; Reply at 132-33; Exhibit 117; Appendices A, H); and

(10) obtain all documents and interview readily available witnesses about Fields' history of incarceration (*see, e.g.,* § 2255 Motion at 209-10; Reply at 134-35).

In support of his claims, the § 2255 Motion provided forty-eight exhibits and twenty appendices containing nearly 400 pages of mitigation evidence that trial counsel should have, but did not, develop and present to the jury. This post-conviction record was developed without the benefit of formal discovery. Although Mr. Fields moved for discovery, appointment of an expert, and an evidentiary hearing to further develop this factual record and prove the allegations in his § 2255 Motion, the Court denied these requests. *See* Order at 136-37; § 2255 Motion at 287; Reply at 136-37.

The Court denies each of Mr. Fields mitigation claims. The Order finds that Mr. Fields "cannot establish that [trial] counsel's performance was deficient and/or prejudicial" because the testimony of Mr. Fields' mitigation specialist "outlines" Mr. Fields' mitigation related history. Order at 93. The Order states that the additional evidence presented by Mr. Fields' § 2255 Motion "would have duplicated or otherwise substantiated the mitigation evidence submitted at trial." Order at 94. The Court also finds that the Jury's "Special Findings" reflect (in the Court's opinion) defense counsel's success in proving that certain categories of mitigation existed.[4] Order at 95. Significantly, the Court recognizes that evidence

---

[4]    The Court notes that twelve jurors found that Mr. Fields "has lived most of his life without having a significant father figure;" "suffered from physical abuse during his formative years;" "suffered from emotional abuse during his formative years;" "suffered from parental neglect during his formative years;" "is the product of an impoverished background which impaired or hampered his integration into the social and economic mainstream of society;" has a mother who "has a history of criminal behavior and incarceration;" "was exposed to the violent deaths of family members, loved ones, and friends during his formative years." Order at 95. Additionally, seven jurors found that Mr. Fields "grew up in an atmosphere of violence and fear, which misshaped his perception as to the acceptability or necessity of violent conduct" *S*ee Order at 95.

regarding "any mental illness suffered by [Mr. Fields] or the genetic predisposition to mental illness based on his family history could have been mitigating if true[,]" (Order at 97) and the Court "agrees that there is a relative paucity of evidence regarding [Mr. Fields'] history of mental illness and his family's history of mental illness" in the record. Order at 98. However, the Court concludes that evidence of mental illness is "double-edged" and may have militated toward finding that Mr. Fields "was a future danger to society." Order at 98. The Order also finds that Mr. Fields failed to show that trial counsel's "performance pertaining to Dr. [Richard] Coons[,]" a psychiatrist called by the Government, "and the issue of future dangerousness was deficient and/or prejudicial." Order at 111; *see also* Order at 117 (finding trial counsel's performance on the issue of future dangerousness "reasonable" and that Mr. Fields "failed to show a reasonable probability that the jury's death penalty deliberations would have changed if counsel had presented additional evidence further discrediting the theories of Dr. Coons").[5] Mr. Fields respectfully submits that the Court's conclusions are incorrect and factually deficient due, in large part, to the Court's failure to conduct an evidentiary hearing.

---

[5]  Mr. Fields' § 2255 Motion alleged that the testimony and opinions of Dr. Coons were constitutionally unreliable, in violation of Mr. Fields' Sixth and Eighth Amendment rights, and that trial counsel was ineffective by failing to adequately prepare to rebut this testimony. The § 2255 Motion set forth numerous examples of readily available impeachment materials that trial counsel could have, but did not, use to discredit Dr. Coons. Indeed, trial counsel effectively admitted that he did not adequately prepare. *See* Appendix E (Affidavit of Robert Swanton, Esq. ¶ 12) ("I was familiar with his approach to predicting future dangerousness. Thus, I did not research or review prior transcripts of Dr. Coons' Testimony"). Subsequently, two decisions of the Court of Criminal Appeals of Texas have agreed with Mr. Fields for substantially the same reasons set forth in his § 2255 Motion. *See Coble v. Texas*, 330 S.W.3d 253, 270 (Tex. Crim. App. 2010) ("[A]ppellant contends that Dr. Richard Coons's expert testimony concerning future dangerousness was not admissible under Rule 702 because it was insufficiently reliable. We agree"); *see also Gobert v. Texas*, 2011 WL 5881601, at *7 (Tex. Crim. App. Nov 23, 2011) ("We conclude that the trial judge abused his discretion in admitting Dr. Coons's opinion on future dangerousness in this case for the same reasons that we held it inadmissible in [*Coble*]. Here, as in that case, Dr. Coons provided no scientific, psychiatric, or psychological research or studies to support his idiosyncratic methodology for predicting whether a hypothetical person would commit future acts of violence"). For these same reasons, admission of Dr. Coons' testimony at Fields' trial violated his Sixth and Eighth Amendment rights requiring, at the very least, discovery and an evidentiary hearing on the claim.

As an initial matter, the Court applied an incorrect legal standard to Mr. Fields' mitigation claims. The Court reframed and misconstrued Mr. Fields' mitigation claims contesting trial counsel's failure to investigate, as claims contesting a failure to present evidence. *See* Order at 85-101; § 2255 Motion at 166. A *habeas* petitioner seeking to establish that his trial counsel's performance was deficient pursuant to *Strickland* must demonstrate that counsel's representation fell below an objective standard of reasonableness. *Strickland v. Washington*, 466 U.S. 668, 688-89 (1984). In capital cases, counsel is required to conduct an adequate investigation into potentially relevant mitigation evidence. *See Wiggins v. Smith*, 539 U.S. 510, 522 (2003) (counsel has an "'obligation to conduct a thorough investigation of the defendant's background'") (citation omitted). Trial counsel has a duty to exhaustively investigate a client's background, including his social history and mental health. *Id.*; *Hardwick v. Crosby*, 320 F.3d 1127, 1180 (11th Cir. 2002) ("[T]he most essential purpose of the sentencing proceeding [is] for defense counsel to present the jury with background mitigating information to enable the jurors to render an individualized sentence based on the particular circumstances of [petitioner's] life and the murder") (*citing Brownlee v. Haley*, 306 F.3d 1043, 1070 (11th Cir. 2002)). Moreover, a decision not to present certain categories of mitigating evidence is only as reasonable as the scope of the investigation preceding that decision. *See Wiggins,* 539 U.S. at 521 ("In this case, as in *Strickland,* petitioner's claim stems from counsel's decision to limit the scope of their investigation into potential mitigating evidence"). "In assessing the reasonableness of an attorney's investigation . . . a court must consider not only the quantum of evidence already known to counsel, but also whether the known evidence would lead a reasonable attorney to investigate further." *Id.* at 527.

In denying Mr. Fields an evidentiary hearing pertaining to trial counsel's failure to properly investigate mental health mitigation evidence, the Court cites the Fifth Circuit's

decision in *Martinez v. Quarterman*, 481 F.3d 249 (5th Cir. 2007), and suggests that such evidence was not material. *See* Order at 98. The Court's reliance on *Martinez* is inapposite. Prior to its decision in *Martinez*, the Fifth Circuit remanded the matter to the district court specifically to conduct an evidentiary hearing to determine "'whether counsel's investigation of [applicant's mental health issues] was unreasonably deficient and, if so, whether counsel's failure to investigate this condition and produce evidence relating to it amounted to ineffective assistance of counsel.'" *Martinez*, 481 F.3d at 252 (citation omitted).

Here, the expansive mitigation evidence in Mr. Fields' § 2255 Motion provides objective proof that trial counsel's investigation was woefully inadequate. The § 2255 Motion provided forty-eight exhibits and twenty appendices containing nearly 400 pages of mitigation evidence, well beyond the "outline" of mitigation evidence presented at trial. If trial counsel had conducted even a minimally competent investigation, they would have developed evidence that would have almost certainly changed the outcome of the jury's sentence. For instance, trial counsel would have developed mitigating evidence concerning Mr. Fields' mental illness and his genetic pre-disposition to mental illness based on his family history, which could have been mitigating if true. *See Porter v. McCollum*, 130 S. Ct. 447, 454 (2009) (determining that evidence of poor mental health, in addition to other mitigating evidence, could influence a jury's appraisal of defendant's moral culpability). Indeed the Court agreed with Mr. Fields that there is a "relative paucity of evidence" regarding Mr. Fields' history of mental illness, but inappropriately dismissed this deficiency arguing that mental illness could function as a "two-edged" sword, and could be used to support a claim of future dangerousness. To the contrary, had a competent investigation been conducted, counsel would have established for the jury that Mr. Fields' risk of future dangerous behavior in federal prison is near zero. Instead, trial counsel decided to present evidence of Mr. Fields' intelligence, a decision which resulted from an

inadequate investigation, and failed to counter any potential finding that Mr. Fields suffered from anti-social personality disorder which could easily be used to establish his future dangerousness. Indeed, given Mr. Fields' prior escape, his intelligence was used against him, and Mr. Fields' trial counsel allowed this by failing to fully investigate Mr. Fields' mental impairments and how they are manifested in structured versus unstructured environments.

Confirming the point, Mr. Fields' own mitigation specialist indicated that Mr. Fields' trial team "did not do everything we could to defend Mr. Fields' life," and admitted that additional mitigation evidence discovered after trial is the type of evidence that they should have, but did not discover. *See* Appendix G (Affidavit of Jane Bye ¶ 17); Appendix H (Second Affidavit of Jane Bye ¶¶ 2-6). The Order does not assess – nor could it without an evidentiary hearing – the quantum or quality of mitigation evidence known to trial counsel. Instead, the Court assessed only the quantum and quality of mitigation evidence presented at trial. Accordingly, the Court cannot properly evaluate Mr. Fields' claims without an evidentiary hearing.

Further, contrary to the Court's conclusion, the jury's special findings do not demonstrate that counsel "successfully" investigated and presented mitigation evidence. *See* Order at 95. The jury's special findings establish the jurors' willingness to consider and assign mitigating weight to the vast majority of limited categories of mitigation trial counsel presented. As a result of deficiencies in Mr. Fields' trial counsel's investigation and presentation, the jury did not – nor did they have the opportunity to – consider the full range of constitutionally mandated mitigation evidence. Trial counsel failed to present Mr. Fields' abject poverty, neglect, history of abuse, violence, and overall chaotic environment, all of which were critical to Mr. Fields' mitigation claims and necessary and appropriate for the jury to consider. *See* § 2255 Motion at 168-210. Significantly, because federal capital cases require a unanimous verdict in

order to impose a death sentence, to prevail on his claims Mr. Fields must only demonstrate a reasonable probability that one juror would have voted for a life sentence had this undiscovered information been presented.  Here, not only did the jury find mitigating factors, but the jury was also deadlocked on a sentence until the Court issued an *Allen* charge, which jurors subsequently indicated had a coercive effect on the holdouts.  Accordingly, the jury's imposition of a death sentence was a close case at best and it is very likely that this undiscovered mitigation material would have changed at least one juror's vote.

In this regard, the Order fails to recognize that a successful mitigation case, and therefore a jury's determination of life or death, turns not on the number of mitigating factors proved, but the weight assigned to those factors by the jurors.  Because the Court did not hold an evidentiary hearing on these claims, it is impossible for it to accurately measure the mitigating weight of the evidence discovered in this post-conviction proceeding.  Accordingly, this Court incorrectly concluded that an "outline" of a mitigation case is just as effective as a complete mitigation story.  As such, Mr. Fields respectfully submits that the Court should reconsider and amend its judgment by withdrawing its opinion and directing the conduct of an evidentiary hearing.  *See Wallace v. Stewart*, 184 F.3d 1112, 1117 (9th Cir. 1999) (remanding case for an evidentiary hearing due to inadequate mitigation evidence presented at trial).

> **11.    In Reaching Its Conclusions On Claim Twenty-Nine, The Court Erred By Failing To Allow Discovery And Conduct An Evidentiary Hearing To Resolve Disputed Facts Regarding The Coercive Effect Of The Court's Additional Jury Instructions To Continue Deliberation**

Mr. Fields' Twenty-Ninth Claim alleged that post-conviction correspondence with jurors reveals that the Court's penalty-phase *Allen* charge to the jury that it must keep deliberating despite being deadlocked on a death sentence had a coercive effect on at least one juror, violating Mr. Fields' rights to a jury trial, and his Eighth Amendment right to a reliable

determination of punishment. § 2255 Motion at 265-66; Reply at 145-49. The Order denies this claim based on the grounds that this issue was already litigated on direct appeal to the Fifth Circuit. Order at 118. Mr. Fields respectfully submits that the Court erred in denying the Twenty-Ninth Claim without a hearing. Mr. Fields' claim of coercion is based on evidence unavailable at the time of Mr. Fields' direct appeal and therefore it is not barred. Reply at 146. Since direct appeal, jurors have indicated to counsel that they interpreted the Court's instruction to continue deliberation as requiring a unanimous verdict and that the instruction was coercive for at least one holdout juror. § 2255 Motion at 265-66; Reply at 146-49. Accordingly, discovery and an evidentiary hearing must be held to determine the coercive effect of the court's *Allen* charge.

> **12.    In Reaching Its Conclusions On Claims Thirty Through Thirty-Five, The Court Erred In Denying An Evidentiary Hearing With Respect To Mr. Fields' Allegations Related To Courtroom Security, And Conditions Of Pre-Trial Confinement And The Right Of Self-Representation Related To The Requirement That Mr. Fields Wear A Stun Belt Throughout The Proceeding**

Mr. Fields' Thirtieth through Thirty-Fifth Claims, address, *inter alia*, violations of his Fifth, Sixth, and Eighth Amendment rights related to the Government's requirement that Mr. Fields wear a stun belt during his *pro se* representation at trial and the conditions of his confinement during trial. § 2255 Motion at 266-73; Reply at 149-55. Mr. Fields alleged that the stun belt significantly affected his ability to conduct his own defense (§ 2255 Motion at 272), as well as his demeanor in Court (§ 2255 Motion at 273); that the trial court failed to consider least restrictive alternatives (§ 2255 Motion at 274); that the Court failed to warn him of the disadvantages of being forced to wear a stun belt during colloquy about Mr. Fields' request to proceed *pro se* (§ 2255 Motion at 269); that his effective assistance of counsel was violated when

trial counsel failed to demand a hearing and present evidence in response to the directive to wear a stun belt during trial (§ 2255 Motion at 273-74); that wearing the device during the penalty phase interfered with his ability to consult with counsel (§ 2255 Motion at 272-73); and that his right to reliable sentencing was violated by requiring Mr. Fields to wear a stun belt, where the stun belt negatively affected Mr. Fields' demeanor in Court (§ 2255 Motion at 267-68, 273).

Relying in part on the United States Marshal's Service determination that the stun belt was necessary, the Order denied these Claims finding that it did not need to make an individualized determination as to the necessity of the stun belt, and that even if it was required to do so, the error was harmless and not prejudicial.  Order at 121-22.  The Court held that Mr. Fields "fail[ed] to establish any prejudice as the stun belt because it was concealed from the jury's view and never activated during any part of the trial."  Order at 124.

The Order, however, did not address the numerous factual allegations set forth in the § 2255 Motion related to the extreme physical and psychological effects that the stun belt had on Mr. Fields.  *See* § 2255 Motion at 269, 273.  Mr. Fields' uncontested statements establish that the stun belt created a pervasive fear in him, causing him to adopt an emotionless demeanor.  § 2255 Motion at 273.  Dr. Woods' sworn declaration asserted the stun belt was among many factors that affected his ability to waive counsel and that the stun belt activated Mr. Fields' "anticipatory anxiety of his PTSD."  Appendix B (Woods Declaration ¶ 109).  Dr. Woods further opined that Mr. Fields' anxiety and paranoia "were dramatically increased by requiring him to wear a stun belt controlled by a marshal."  *Id.* ¶ 6.  Nor does the Order address the impact of the stun belt on Mr. Fields' ability to consult with standby counsel.  *See* § 2255 Motion at 272.  Mr. Fields asserted that the stun belt was visible to the jury through his shirt, a factual allegation the Order summarily dismisses.  *See* Order at 124-25, 128; Reply Br. at 150-51.  All of these factual allegations require further evidentiary development through discovery and a hearing.  Instead of

granting such discovery and a hearing, the Court denied Mr. Fields any relief on these claims based on the "fail[ure] to establish any prejudice" to Mr. Fields because of the requirement that he wear a stun belt in Court. *See* Order at 124. Mr. Fields respectfully suggests that the allegations of prejudices are clearly detailed in his § 2255 Motion, and that an evidentiary hearing is required to resolve any dispute concerning those allegations. Accordingly, the Court erred in dismissing these claims.

### 13. In Reaching Its Conclusion On Claim Thirty-Six, The Court Erred By Failing To Hold An Evidentiary Hearing On The Conditions Of Mr. Fields' Confinement And Its Effect On His Right To Self-Representation

Mr. Fields' Thirty-Sixth Claim raised Fifth, Sixth, and Eighth Amendment issues alleging that his right to self-representation was violated by his condition of confinement, including being housed in a cell where the lights were never turned off or dimmed, where the noise substantially interfered with his ability to sleep, and where he was deprived of the tools necessary to prep for trial. § 2255 Motion at 266-74. Mr. Fields alleged that his confinement only exacerbated the negative effects on his demeanor and performance caused by the stun belt he was forced to wear during trial, and his significant mental dysfunction resulting from his complex Post-Traumatic Stress Disorder and Atypical Bipolar Disorder. § 2255 Motion at 266-74.

The Order did not address any of the factual allegations in Claim Thirty-Six, denying the claim based on a lack of legal authority in support. Order at 126. None of Mr. Fields' factual allegations related to the harmful effects of his conditions of his confinement, including sleep deprivation, an inability to concentrate, memory problems, and irritability were addressed in the Order. § 2255 Motion at 18. Nor did the Order address the impact the

conditions of his confinement would have on his right to self-representation.  *See* § 2255 Motion at 266-74.

Mr. Fields respectfully submits that the Court's denial of relief without adequately addressing his factual allegations was in error.  Mr. Fields' extraordinary conditions of confinement, if accurately described, would violate Mr. Fields' *Faretta* rights to self-representation for several reasons.  *See generally Harper v. Showers*, 174 F.3d 16, 720 (5th Cir. 1999) ("Conditions designed to prevent sleep, then, might violate the Eighth Amendment").  The unusual conditions of his confinement "exacerbated his mental health impairments, causing additional negative consequences including marked distress, anxiety, feelings of lethargy, mood disorders, irritability, ruminations and intrusive thoughts, paranoia, and other symptoms[,]" none of which the Order addressed.  § 2255 Motion at 18; s*ee* Appendix B (Woods Declaration ¶¶ 107-08); Reply at 155.  Dr. Woods' explained that "[t]he conditions of Mr. Fields' confinement at the McLennan County jail exacerbated his mental disorders" and that "sleep disruption is frequently the first overt symptom of an underlying medical, neurological, or psychiatric disorder."  Appendix B (Woods Declaration ¶ 107).  Dr. Woods also found that the conditions of Mr. Fields' confinement exacerbated his post-traumatic stress disorder.  *Id.* ¶¶ 107-08.  Dr. Woods concluded that placing Mr. Fields "in a cell where he was under twenty-four-hour surveillance and subjected to continuous illumination could only increase his paranoid suspicions and hypervigilance, while further disrupting his sleep cycle and sense of autonomy and adversely affecting his cognition."  *Id.* ¶ 107.  The Order did not address any of these factual allegations in denying this claim.  The need for discovery and an evidentiary hearing on at least these issues is evident.

**14.    In Considering Mr. Fields' Claims Thirty-Seven through Forty-One, The Court Erred By Failing To Hold An Evidentiary Hearing On The Prejudice Caused By Mr. Fields' Visible Stun Belt And Communications With The Jury Occurred Outside Mr. Fields' Presence**

In his Thirty-Seventh through Forty-First Claims, Mr. Fields alleged that jury's perception of heightened security measures, including the use of a stun belt and increased U.S. Marshal presence in court, and U.S. Marshals escorting jurors to their cars in the penalty phase of trial, violated various constitutional rights to a fair trial. § 2255 Motion at 274-79; Reply at 155-59. Despite Fields' presentation of detailed factual allegations to support his claim, including allegations based on conversations with jurors, the Court noted that no evidence had been presented to support these claims. Order at 128-29.

Mr. Fields respectfully submits the Court's conclusions on these claims were made in error. The Court concludes that Mr. Fields presented no evidence regarding whether the stun belt was visible to the jury, yet summarily concluded that the stun belt was "out of the jury's view" and therefore, no prejudice could have occurred. Order at 128. Resolving the factual dispute about the stun belt's visibility against Mr. Fields, without a hearing, is fundamentally unfair and procedurally incorrect. Accordingly, the Court erred in failing to grant a hearing to determine whether the stun belt could be seen by the jury.

Similarly, the Court resolved the factual disputes related to the jury's perception of increased security in the penalty phase without an adequate evidentiary record. The Order essentially concludes that no prejudicial effect was caused by the increased security measures, including increased security after the guilty verdict was rendered including the instruction that jurors would be escorted to their cars by U.S. Marshals. Order at 128. With regard to the instruction that jurors would be escorted to their cars by U.S. Marshals, the Order acknowledges that any communication between U.S. Marshals and jurors in private is presumptively

prejudicial.    Order at 129 (*citing Remmer v. United States*, 347 U.S. 227, 229 (1954)). Nonetheless, absent any evidence or a hearing, the Court makes findings of fact that no matters pending in front of the jury were discussed when the U.S. Marshals escorted jurors to their cars. Order at 129.  Accordingly, Mr. Fields respectfully submits that the Court erred when it made such factual finding and failed to grant an evidentiary hearing to determine whether any communications occurred between the U.S. Marshals and jurors.

The Court also disregarded the factual allegation regarding a juror's report that the Court, in a conversation that occurred off-the-record and outside Mr. Fields' presence, instructed the jury to report any threats that might occur during trial or sentencing.  § 2255 Motion at 277 n.35.  Any instructions to jurors given outside the presence of Mr. Fields would be presumptively prejudicial, and entitled him to relief.  *United States v. Treatman*, 524 F.2d 320, 323 (8th Cir. 1975). Mr. Fields respectfully submits that Court erred in deciding this issue without further developing the factual record.

## III.    THE COURT ERRED WHEN IT DECLINED TO ISSUE A CERTIFICATE OF APPEALABILITY

At the conclusion of the Order, the Court, ruling *sua sponte*, declined to issue a COA, finding that Mr. Fields had failed to make a substantial showing of the denial of a constitutional right.  Mr. Fields requests that the Court reconsider its *sua sponte* ruling and grant a COA as to any and all claims for which relief is not granted on this Motion because Mr. Fields has amply demonstrated the violation of multiple constitutional rights.  Any doubt regarding the appropriateness of a COA in this case must be resolved in Mr. Fields' favor because he faces the death penalty.  *See Maldonado v. Thaler*, 389 Fed. Appx. 399, 402 (5th Cir. 2010) (*per curiam*) (Unpublished) ("'[a]ny doubt as to whether a COA should issue in a death-penalty case *must* be

resolved in favor of the petitioner'") (emphasis added; citation omitted); *Reed v. Quarterman*, 504 F.3d 465, 471 (5th Cir. 2007).

Mr. Fields has met the standard for issuance of a COA.  To obtain a COA, a petitioner must make a "substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).  "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further."  *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003); *United States v. Saenz-Lopez*, 361 Fed. Appx. 593, 594 (5th Cir. 2010) (*per curiam*) (Unpublished).  As the Fifth Circuit has made clear, a petitioner "need not show that his *habeas* petition will ultimately prevail on the merits."  *Haynes v. Quarterman*, 526 F.3d 189, 193 (5th Cir. 2008).  Instead, the petitioner need only demonstrate that "reasonable jurists could debate whether (or, for that matter, agree that) the [§ 2255 Motion] should have been resolved in a different manner."  *Slack*, 529 U.S. at 484.  "'Any doubt regarding whether to grant a COA is resolved in favor of the petitioner, and the severity of the penalty may be considered in making this determination.'"  *Haynes*, 526 F.3d at 193 (citation omitted).

Not only could reasonable jurists debate whether the Court properly resolved Mr. Fields' constitutional claims, his claims deserve encouragement to proceed.  Mr. Fields' § 2255 Motion is accompanied by 117 exhibits comprised of 345 pages of documentation.  This documentation includes exhibits demonstrating that Mr. Fields was incompetent to waive counsel and proceed *pro se*, including at least forty documents demonstrating his family mental health issues and at least twenty-two exhibits detailing Mr. Fields' prison behavior, which reveal his paranoia and other symptoms of serious mental illness.  The § 2255 Motion included numerous additional exhibits demonstrating that the penalty phase of Mr. Fields' trial was

constitutionally deficient because, among other reasons, he received ineffective assistance of counsel. These include, without limitation, approximately twenty-seven exhibits evidencing the numerous acts of devastating violence he experienced throughout his life, including suicide attempts, shootings, and serious and appalling domestic abuse, none of which were adequately presented to jury. In addition to all this information, there are 240 additional pages of appendices containing several declarations and affidavits relevant to Mr. Fields' case including, among others, four from doctors, two from mitigation specialists, nine from family members, two from Mr. Fields' prior counsel and one from a prosecutor at the trial below. Based in part on these documents, Mr. Fields filed a 289-page § 2255 Motion alleging forty-nine claims of constitutional error. Mr. Fields also filed two motions for discovery to further demonstrate his claims (which the Government did not oppose although the Court denied). Additionally, the Government filed a sixty-six page response to the § 2255 Motion, which also attached multiple exhibits. The Court issued a 137 page Order denying all relief requested by Fields. As demonstrated by this record, and illustrated more fully above, the issues described both by the present Motion, Mr. Fields' § 2255 Motion and the Court's Order are unquestionably debatable by a jurist of reason. For this reason alone, a COA should issue on all claims.

Further, Mr. Fields raised numerous constitutional claims that remain subject to debate by reasonable jurists and merit encouragement to proceed further. Among other things, Mr. Fields was denied the discovery and an evidentiary hearing required to support his claims. Courts in the Fifth Circuit routinely grant COAs where petitioners have challenged discovery rulings. *See, e.g., Reed*, 504 F.3d at 473. In *Reed*, the petitioner had requested discovery pertaining to the prosecution's contact with petitioner's cell-mate, who later testified, for the prosecution, that petitioner had confessed to the underlying crime. *Id.* at 470. The district court denied the discovery, and on appeal the Fifth Circuit granted a COA because "reasonable jurists

could debate whether the district court abused its discretion by denying Reed's discovery request." *Id.* at 473.  Here, like *Reed*, Mr. Fields has requested discovery specifically related to developing the factual record required to demonstrate his claims.  The Discovery Motion seeks discovery related to the specific claims above, in which Fields described in detail the "specific allegations" on which he sought relief, and each request in the Discovery Motion identified which of these factual disputes the specific evidence he sought would substantiate.  *Id.*.  The DNA Motion seeks production of physical and biological evidence for defense examination and possible DNA testing.  In the Motion for DNA, Fields seeks to examine biological evidence within the Government's control – at his own expense – which will likely demonstrate his actual innocence.  Despite both motions being specifically targeted to develop a factual record which, if true, would entitle Mr. Fields to *habeas* relief, both were summarily denied.  Accordingly, reasonable jurists could certainly debate whether Mr. Fields' discovery requests should have been granted.

A COA is likewise warranted here because Mr. Fields seeks to challenge the Court's denial of an evidentiary hearing.  *See, e.g.*, *United States v. Dawes*, 2012 WL 2801394, at *1 (5th Cir. July 10, 2012) (*per curiam*) (Unpublished) (granting a COA "with respect to whether the district court erred in denying Dawes's ineffective assistance claim and in refusing to conduct an evidentiary hearing to resolve disputed issues of fact").  Given the Court's failure to address critical evidence and disputed factual issues as more fully described above, reasonable jurists could disagree on the appropriateness of the Court's denial of an evidentiary hearing.  For all the reasons discussed above, reasonable jurists could debate whether an evidentiary hearing was appropriate for each of the claims of error.  As just one example, Mr. Fields asserted that he could present additional evidence and expert testimony concerning his life history and its impact on his mental capacity and well-being – a disputed issue that is central to his ineffective

assistance in the penalty phase claim and likely dispositive on the appropriateness of the death penalty. § 2255 Motion at 210-15 n.26; Reply at 84-86. As another example, Mr. Fields sought an evidentiary hearing in connection with the degree of unfair prejudice flowing from the use of a stun belt at trial – another disputed fact issue central to his claims. § 2255 Motion at 273-74, 277; Reply at 153, 155. Finally, Mr. Fields preserved his right "to more fully brief his entitlement to an evidentiary hearing at the appropriate time" (§ 2255 Motion at 287), yet was never afforded that opportunity. These are just a few illustrative examples that would cause reasonable jurists to debate the Court's denial of an evidentiary hearing.

Given the many errors of law and unresolved issues of fact described above, reasonable jurists could debate whether Mr. Fields' constitutional claims were properly resolved, and in any case could conclude that Mr. Fields has presented issues that warrant encouragement to proceed. Mr. Fields has thus made a "substantial showing of the denial of a constitutional right" justifying the issuance of a COA. *See* 28 U.S.C. § 2253(c)(2); *Miller-El*, 537 U.S. at 327.

## IV. THE COURT'S IMPROPER SUBSTITUTION OF ITS SUBJECTIVE OPINION AND PERSONAL RECOLLECTION OF EXTRA-RECORD EVENTS REQUIRES RECUSAL AND REASSIGNMENT

### A. The Court Should Recuse Itself Pursuant To 28 U.S.C. § 455

Mr. Fields respectfully requests that the Court recuse itself pursuant to 28 U.S.C. § 455 for purposes of consideration of his Rule 59(e) motion. Section 455(a) requires recusal "in any proceeding in which [a judge's] impartiality might reasonably be questioned." 28 U.S.C. § 455(a). Section 455(b)(1) requires recusal where a judge "has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding." 28 U.S.C. § 455(b)(1). Section 455(b)(5)(iv) requires recusal where a judge is "likely to be a material witness in the proceeding." 28 U.S.C. § 455(b)(5)(iv).

When a judge has become biased due to "facts learned or events occurring in the course of proceedings," he must recuse himself if he displays "such a high degree of favoritism or antagonism [toward a party] as to make fair judgment impossible." *Liteky v. United States*, 510 U.S. 540, 555 (1994). When a judge has become biased due to facts outside of a judicial proceeding, such as off-the-record or *ex-parte* communications, a judge must recuse himself if "a reasonable and objective person, knowing all of the facts would harbor doubts concerning the judge's partiality." *United States v. Jordan*, 49 F.3d 152, 155 (5th Cir. 1995); *Edgar v. K.L.*, 93 F.3d 256, 259-61 (7th Cir. 1996) (*per curiam*); *see In re Faulkner*, 856 F.2d 716, 721 (5th Cir. 1988) (requiring recusal where the judge "has, at least through his personal conversations . . . 'personal knowledge of disputed evidentiary facts concerning the proceeding' sufficient to disqualify him, under section 455(b)(1), from presiding further over this case"). In determining whether recusal is proper, the Court must consider how the facts would appear to a "well-informed, thoughtful and objective observer, rather than the hypersensitive, cynical, and suspicious person." *Jordan*, 49 F.3d at 156; *see Liljeberg v. Health Servs. Acq. Corp.*, 486 U.S. 847, 860 (1988). Recusal "must be guided, not by comparison to similar situations addressed by prior jurisprudence, but rather by an independent examination of the facts and circumstances of the particular claim[,]" *United States v. Bremers*, 195 F.3d 221, 226 (5th Cir. 1999) (*citing Jordan*, 49 F.3d at 157), however, where close, the balance must tip in favor of recusal. *See Patterson v. Mobil Oil Corp.*, 335 F.3d 476, 484-85 (5th Cir. 2003).

Here, Mr. Fields respectfully submits that the Court's knowledge will likely cause the Court to be a material witness in this proceeding and the Court's "'partiality might reasonably be questioned' by a reasonable observer" in deciding this Rule 59(e) motion. *In re Faulkner*, 856 F.2d at 721. The Order interjected subjective impressions concerning Mr. Fields' "demeanor before the Court" and his "filing of coherent pleadings" to assess one of the most

significant factual issues presented in the § 2255 Motion – Mr. Fields' mental competency to waive his right to counsel and proceed to trial *pro se*. Order at 23, 26; *see supra* Point II.B.1. Here, without an evidentiary hearing, the Court interjected its own subjective analysis in favor of the analysis done by Dr. Woods, who is the only medical professional to adequately evaluate Mr. Fields' competency to waive counsel and proceed *pro se*, and who concluded after a proper medical evaluation that Mr. Fields was not competent to do so. *See, e.g.*, § 2255 Motion at 15-16, 33-34, 41-42; Appendix B (Woods Declaration ¶¶ 107-11). Accordingly, not only would a well-informed and thoughtful observer reasonably question the Court's impartiality requiring recusal pursuant to §455(a), but the Court has also placed its personal knowledge of disputed evidentiary facts at issue concerning the proceeding, requiring recusal pursuant to § 455(b)(1). Given the compelling evidence of Mr. Fields' incompetency to waive counsel and proceed *pro se* presented in his § 2255 Motion, the lack of contrary evidence provided by the Government in response, and the life or death consequence of the Court's decision, the Court's ruling on the issue of competency without an evidentiary hearing would cause a reasonable observer to conclude that the Court showed "such a high degree of favoritism or antagonism [toward a party] as to make fair judgment impossible." *Liteky*, 510 U.S. at 555. As such, recusal is required.[6]

The Order also relies on other extra-record evidence, derived solely from the Court's recollection, in resolving disputed factual issues. For example, the Court recounted the substance of off-the-record bench conferences held during trial in which the Judge was one of a few limited witnesses. *See supra* Point II.B.2; *see also Edgar,* 93 F.3d at 259 ("Off-the-record briefings in chambers . . . leave no trace in the record – and . . . the judge has forbidden any

---

[6]    Additionally, the Court's *sua sponte* refusal to grant a COA, despite Mr. Fields making a substantial showing of the violation of several constitutional rights, as discussed above, would also cause a well-informed and thoughtful observer to reasonably question the Court's impartiality.

attempt at reconstruction.  What information passed to the judge, and how reliable it may have been, are now unknowable.  This is 'personal' knowledge").  Similarly, the Court denied Mr. Fields' claims pertaining to the improper security measures employed at trial by resolving factual disputes regarding, among others, the evaluation of the need for increased security measures such as the stun belt (*see supra* Point II.B.12); increased security after the guilt phase (*id.*); escorting jurors to their car (*id.*); and observations of and/or direct communications with jurors outside of the trial proceeding (*id.*).  As such, not only has the Court placed its personal knowledge of disputed evidentiary facts at issue in resolving these claims, requiring recusal pursuant to § 455(b)(1), but the Court has also rendered itself likely to be a material witness in these proceedings in the event of an evidentiary hearing, requiring recusal pursuant to § 455(b)(5)(iv).  Accordingly, recusal is required because "a reasonable and objective person, knowing all of the facts would harbor doubts concerning the judge's partiality." *Jordan*, 49 F.3d at 155; *see In re Faulkner*, 856 F.2d at 721 (recusal required where judge through conversations has "'personal knowledge of disputed evidentiary facts concerning the proceeding' sufficient to disqualify him").

### B.    The Court's Failure To Recuse Itself Will Violate Mr. Fields' Due Process Rights

The Fifth Amendment's due process clause mandates a "fair trial in a fair tribunal" for every defendant.  *In re Murchison*, 349 U.S. 133, 136 (1955).  A judge violates a defendant's due process rights if he is biased against the defendant or has an interest in the outcome of the case.  *Bracy v. Gramley*, 520 U.S. 899, 904-05 (1997).  Even where a judge has no actual bias, but a bias may be apparent, a judge must recuse to avoid offending due process.  *Aetna Life Ins. Co. v. Lavoie*, 475 U.S. 813, 825 (1986);.  Due process "requires a judge to step aside when a reasonable judge would find it necessary to do so." *United States v. Couch*, 896

F.2d 78, 82 (5th Cir. 1990); *see Lyell v. Renico*, 470 F.3d 1177, 1186-89 (6th Cir. 2006) (conditionally granting a *habeas* writ on due process grounds where judge had evinced bias during trial). The United States Supreme Court expanded the protections of due process where proceedings are tainted by actual or apparent bias, explaining that "[i]n defining these standards the Court has asked whether, 'under a realistic appraisal of psychological tendencies and human weakness,' the interest 'poses such a risk of actual bias or prejudgment that the practice must be forbidden if the guarantee of due process is to be adequately implemented.'" *Caperton v. A.T. Massey Coal Co.*, 556 U.S. 868, 883-84 (2009) (*quoting Withrow v. Larkin*, 421 U.S. 35, 47 (1975)).

As described in detail in Point II, this Court has denied Mr. Fields' request for discovery or an evidentiary hearing, despite the overwhelming evidence presented in support of the § 2255 Motion. The Court's denial of his § 2255 Motion has caused a manifest injustice against Mr. Fields. Where, like here, the Court denies relief in the face of overwhelming evidence, "'the probability of actual bias on the part of the judge or decisionmaker is too high to be constitutionally tolerable.'" *Caperton*, 556 U.S. at 872 (*quoting Withrow*, 421 U.S. at 47). The Court must therefore recuse itself.

## CONCLUSION

The need to ensure constitutionally reliable decisions in the context of death penalty cases is undisputable, and weighs in favor of granting a motion to alter or amend a judgment where, as here, there is any possibility that an incorrect legal standard has been applied. As set forth above, Mr. Fields respectfully submits that this Court applied an incorrect standard when it substantively analyzed and resolved disputed factual issues without the benefit

of discovery or an evidentiary hearing.  For the forgoing reasons, Mr. Fields respectfully requests that the Court provide the following relief:

1.    Enter an Order of Disqualification and Recusal and any other necessary order so that this matter is assigned to another Judge;

2.    Order the Government to respond to this Motion;

3.    Permit Mr. Fields to file a Reply Brief;

4.    Entertain oral argument on this Motion;

5.    Grant Mr. Fields' request for leave to develop facts supporting his claims by conducting discovery;

6.    Following Discovery, grant Mr. Fields leave to an evidentiary hearing to resolve any outstanding factual disputes;

7.    Alter or Amend the Court's Judgment to award relief to Mr. Fields by vacating his convictions or sentences on each of the grounds described in the § 2255 Motion; and

8.    Grant such other relief that the Court should find necessary in the interests of justice.

Should the Court not grant Mr. Fields relief from his convictions and sentence, then Mr. Fields requests that the Court award a Certificate of Appealability to all the claims set forth in his § 2255 Motion.

Dated:      October 23, 2012

Respectfully Submitted,


/s/ Jeffrey E. Ellis

Jeffrey Ellis
Attorney at Law
Law Office of Alsept & Ellis
621 SW Morrison St., Ste 1025
Portland, OR  97205
Tel:  (206) 218-7076
Email:  JeffreyErwinEllis@gmail.com

Peter J. Isajiw
*Pro Hac Vice* Admission Pending
Cadwalader, Wickersham & Taft, LLP
One World Financial Center
New York, NY  10281
Tel:  212-504-6000
Fax:  212-504-6666
Email:  Peter.Isajiw@cwt.com

*Attorneys for Mr. Fields*

## **CERTIFICATE OF SERVICE**

I, Jeffrey E. Ellis, hereby certify that on October 23, 2012, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following attorneys of record in the above-entitled case:

**Gregory S. Gloff**
Assistant United States Attorney
800 Franklin Ave., Ste 280
Waco, TX  76701
Email:  Greg.Gloff@usdoj.gov

/s/ Jeffrey E. Ellis
Jeffrey E. Ellis
Attorney at Law