IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION

|  |  |
|---|---|
| SHERMAN LAMONT FIELDS,<br><br>    Movant,<br><br>  -*against*-<br><br>UNITED STATES OF AMERICA,<br><br>    Respondent. | CIVIL No. W-09-CV-009<br><br>CRIMINAL No. W-01-CR-164<br><br>**\*THIS IS A CAPITAL CASE**<br>*Oral Argument Requested* |

**SHERMAN LAMONT FIELDS' REPLY IN FURTHER SUPPORT OF HIS MOTIONS
FOR RECONSIDERATION (DOCKET NOS. 337, 338, 340, 345)**

Law Office of Alsept & Ellis
621 SW Morrison St., Ste 1025
Portland, OR  97205
Tel:  (206) 218-7076

Cadwalader, Wickersham & Taft, LLP
One World Financial Center
New York, NY  10281
Tel:  212-504-6000
Fax:  212-504-6666

*Attorneys for Mr. Fields*

Pursuant to Rule 59(e) of the Federal Rules of Civil Procedure, Defendant Sherman Lamont Fields ("Mr. Fields"), by counsel, hereby replies to the Government's Response to Movant's Rule 59(e) Motion and Other Post-Conviction Relief [Docket No. 360]. ("Government's Response" or "GR").[1] As set forth in Mr. Fields' Reconsiderations Motions and for the reasons stated below, the Order should be vacated, altered, or amended in its entirety.

## PRELIMINARY STATEMENT

Mr. Fields' Rule 59(e) Motion described numerous manifest errors in the Court's September 25, 2012 Order [Docket No. 334] (the "Order") that denied in its entirety Mr. Fields' § 2255 Motion and related motions. Specifically, Mr. Fields established that the Court incorrectly decided numerous new factual disputes against him, each of which if resolved in his favor would entitle him to judicial relief, while simultaneously denying him the procedural opportunity for discovery and an evidentiary hearing to develop and evaluate his claims. Mr. Fields presented numerous well-supported factual allegations that the Court decided without the benefit of these procedural safeguards. Each of the fourteen specific examples of reversible error raised in the Rule 59(e) Motion should have been subject to further discovery and any factual disputes resolved by the Court through an evidentiary hearing. Instead, the Order incorrectly reached numerous conclusions of both fact and law based on unsupported and conclusory factual

---

[1]    This brief is in further support of and addresses the Government's arguments concerning: (i) Sherman Lamont Fields' Motion to Vacate, Alter or Amend the Court's Order Denying His Motion for a New Trial and to Vacate, Set Aside and Correct Conviction and Death Sentence, and for Relief from Judgment, Made Pursuant to 28 U.S.C. § 2255 or Rule 33 of the Federal Rules of Criminal Procedure (Docket No. 318) ("Rule 59(e) Motion" or "Br.") [Docket No. 340]; (ii) Motion for Reconsideration of the Denial of Movant Sherman Lamont Fields' Motion for Leave to Production of Physical/Biological Evidence for Defense Examination and Possible DNA Testing (Docket No. 327) ("DNA Reconsideration Motion") [Docket No. 337]; (iii) Motion for Reconsideration of the Denial of Movant Sherman Lamont Fields' Motion for Authorization of Funds for Expert Assistance (Docket No. 329) ("Expert Reconsideration Motion") [Docket No. 338]; and (iv) Motion for Reconsideration of the Denial of Movant Sherman Lamont Fields' First Motion for Discovery (Docket No. 330) ("Discovery Reconsideration Motion") [Docket No. 345](collectively, the "Reconsideration Motions"), all filed on October 23, 2012.

allegations by the Government, and its own recollection and speculation, effectively rendering the Court a witness to these proceedings.  The Court's Order erroneously concludes that Mr. Fields' § 2255 Motion failed to present adequate factual support, while simultaneously denying Mr. Fields' requests for discovery and an evidentiary hearing to develop and present further factual support for his claims.  The liberal standard for granting an evidentiary hearing in § 2255 proceedings demands that Mr. Fields be granted this opportunity, and the Court's failure to do so is a manifest error of law necessitating reconsideration and reversal of the Order.

The Government's Response does not dispute the liberal standard to be applied in granting Mr. Fields an evidentiary hearing.  Indeed, the Government's Response highlights the need for just that proceeding.  After nearly three months since the Court first ordered the Government to respond, one would have expected the Government to submit coherent and direct responses to the specific arguments presented in Mr. Fields' Rule 59(e) Motion.  Instead, the Government merely restates the findings of the Court's Order without providing any evidence to contradict Mr. Fields' assertions.  The Government fails to refute any of the grounds upon which Mr. Fields seeks reconsideration.  The Government simply ignores most of them.  Accordingly, the Government's Response does not effectively rebut the Reconsideration Motions and they all should be granted.

Mr. Fields' Rule 59(e) Motion also established that the Court further erred by denying his right to a Certificate of Appealability ("COA").  The Government's Response incorrectly states the standard for granting a COA by asserting that Mr. Fields has "failed to make a substantial showing of the denial of a constitutional right."  GR at 15.  To the contrary, Mr. Fields has demonstrated that a "reasonable jurist" could decide the issues raised in his § 2255 Motion differently, and that any doubt must be resolved in his favor, which entitles him to a COA under the applicable legal standard.  Thus, should the Court again deny Mr. Fields'

requested relief in his Rule 59(e) Motion (and respectfully, it should not), the Court should issue a COA.

In addition to the Rule 59(e) Motion, Mr. Fields demonstrated in the other Reconsideration Motions that sufficient grounds exist for reconsideration of the Court's Order denying his (i) DNA Motion, (ii) Discovery Motion, and (iii) Expert Motion.[2] The Government's Response is equally deficient in addressing these related Reconsideration Motions by providing no substantive facts or counter-arguments, relying instead on the factual findings in the Order that Mr. Fields disputes. The Government's Response to these motions fails for the following reasons, as set forth in more detail below:

- *DNA Reconsideration Motion*: Mr. Fields established that he is entitled to access to, and DNA testing of, certain specific physical and biological material pursuant to the Innocence Protection Act ("IPA"). Beyond the obvious benefits of DNA testing in proving guilt or innocence, Mr. Fields established the relevance of these materials to his actual innocence claims and that he more than satisfies the requirements of the IPA. Mr. Fields has also agreed that any testing will be conducted at his own expense, eliminating any cost concerns the Government or the Court may have. Mr. Fields' DNA Reconsideration Motion should be granted on these grounds alone. The Court's denial of Mr. Fields' fundamental right to test these materials worked a manifest injustice warranting reversal of the Order. The Government's Response does not adequately address, let alone refute, these arguments.

- *Discovery Reconsideration Motion*: Mr. Fields demonstrated that the Court erred in denying his right to discovery in this matter. The Court decided numerous

---

[2]    With his § 2255 Motion, Mr. Fields also moved the Court for discovery and for the appointment of experts, including (1) Motion for Leave to Compel Production of Physical/Biological Evidence for Defense Examination and Possible DNA Testing, dated August 11, 2010 ("DNA Motion") [Docket No. 327]; (2) Motion for Authorization of Funds for Expert Assistance, dated August 23, 2010 ("Expert Motion") [Docket No. 329] (filed under Seal); and (3) Fields' First Motion for Discovery, dated August 23, 210 ("Discovery Motion") [Docket No. 330]. The Order also denied these motions and Mr. Fields filed motions for reconsideration of the Order as it pertains to these motions.

Appendices and Exhibits referenced herein, unless otherwise noted, are attached to the § 2555 Motion and referenced in Mr. Fields' Reply to the Government's Response to His Motion for a New Trial and To Vacate, Set Aside and Correct Conviction and Death Sentence, and for Relief from Judgment, Made Pursuant to 28 U.S.C. § 2255 or Rule 33 of the Federal Rules of Criminal Procedure, dated August 23, 2010 [Docket No. 331]. References to the Trial Transcript are in the form "TT at __".

factual disputes without allowing Mr. Fields the narrowly tailored discovery that would directly substantiate his § 2255 claims.  Mr. Fields provided an itemized list of § 2255 claims and factual allegations that would be supported by further discovery.   The Court's denial of the Discovery Motion was in error and reconsideration should be granted.   The Government's Response does not adequately address, let alone refute, these arguments.

- *Expert Reconsideration Motion*:  Mr. Fields established that the Court erred in denying his request for funds for a trauma expert. Mr. Fields demonstrated that a trauma expert is reasonably necessary to provide analysis that is distinct from Mr. Fields' current expert.  A trauma expert is required here because the Court's Order overlooked evidence highlighting the effects of trauma and discounted the findings of Dr. Woods which a trauma expert would help clarify and develop. The Court's denial of the Expert Motion was clear legal error and inconsistent with case law, requiring correction through the grant of reconsideration.  The Government's Response does not adequately address, let alone refute, these arguments.

Mr. Fields has consistently and repeatedly established though his § 2255 Motion and related filings that his conviction and sentence were not the result of a constitutionally valid process.  He has consistently maintained that he is innocent of the crime for which he was sentenced to death.  As just a few examples demonstrate, serious systemic failures led to critical constitutional errors undermining the integrity of Mr. Fields' trial including, without limitation: (i) trial counsel's ineffective assistance and failure to adequately investigate Mr. Fields' case in the two years preceding trial which, combined with Mr. Fields' Posttraumatic Stress Disorder ("PTSD") and Atypical Bipolar Disorder, led to an attorney-client relationship so riddled with distrust that Mr. Fields came to believe his counsel was conspiring with the Government to kill him, (ii) the Court's decision to allow a mentally incompetent defendant to proceed *pro se* without conducting an adequate mental health evaluation, (iii) detaining a *pro se* defendant in a cell that was constantly lit and noisy, causing sleep deprivation, and requiring Mr. Fields to wear a stun belt at trial (without conducting an adequate hearing on the matter)—two failures which aggravated the effects of Mr. Fields' mental illness, (iv) denying Mr. Fields his fundamental right to participate in bench and chambers conferences while he represented himself *pro se*, (v)

-4-

the Government's eliciting incredible testimony from unreliable witnesses who were never subjected to cross-examination by competent counsel (including seven jailhouse "snitch" witnesses and two individuals who Mr. Fields contends actually committed the crime), (vi) the trial team's admitted and unexcused failure to develop and prepare persuasive and readily available mitigation evidence to present to the jury, (vii) the Government's presentation of, and trial counsel's failure to rebut, the unscientific and unconstitutional opinions of Dr. Richard Coons concerning Mr. Fields' future dangerousness (a purported "expert" whose methodology is so idiosyncratic and unreliable that the Texas Court of Criminal Appeals has recently determined his opinions are inadmissible pursuant to Texas Rule of Evidence 702) and (viii) the Court's denial of Mr. Fields' § 2255 Motion on the basis that, *inter alia*, Mr. Fields failed to provide adequate factual support while simultaneously denying him access to discovery and an evidentiary hearing to develop and evaluate those factual claims.

Each of these systemic failures is not only fatal to Mr. Fields, but also jeopardizes the integrity of the federal judicial system by allowing the United States Government to take the life of a U.S. citizen without adequate process or the protections of the basic constitutional safeguards presumed to be afforded to defendants in federal criminal trials. If the Court does not reconsider its Order and grant Mr. Fields' discovery and an evidentiary hearings, its Order may be the last in this series of fundamental failures. Accordingly, for the reasons stated in Mr. Fields' Reconsideration Motions, the Court should grant reconsideration and vacate, amend, or alter the Order.

**ARGUMENT**

I.    **THE GOVERNMENT FAILS TO REFUTE THAT THE COURT COMMITTED LEGAL ERROR BY ENGAGING IN A SUBSTANTIVE ANALYSIS OF MR. FIELDS' CLAIMS WITHOUT ALLOWING MR. FIELDS THE PROCEDURAL OPPORTUNITY FOR FACTUAL DEVELOPMENT THROUGH DISCOVERY AND AN EVIDENTIARY HEARING**

Mr. Fields' Rule 59(e) Motion raised no less than fourteen specific examples of manifest error in the Order's denial of forty-nine claims raised in his § 2255 Motion. Mr. Fields established that, at a minimum, the numerous newly developed factual issues presented in his § 2255 Motion entitle him to discovery and an evidentiary hearing to prove his post-conviction claims. *See* 28 U.S.C. § 2255(b) ("*Unless* the motion and the files and the records of the case conclusively show that the prisoner is entitled to no relief, *the court shall* cause notice thereof to be served upon the United States Attorney, *grant a prompt hearing thereon*, determine the issues and make findings of fact and conclusions of law with respect thereto") (emphasis added). Mr. Fields also demonstrated that Congress, based on the legislative history of 28 U.S.C. § 2255, intended evidentiary hearings to be liberally granted in § 2255 proceedings and that cases interpreting *habeas* statutes support granting an evidentiary hearing for § 2255 motions. Br. at 5-7; *see also Stead v. United States*, 67 F. Supp. 2d 1064, 1074 n.5 (D.S.D. 1999) ("Although the AEDPA modified, to some extent, the [*Townsend v. Sain*, 372 U.S. 293 (1963)] standard for obtaining evidentiary hearings in 28 U.S.C. § 2254 cases, Congress made no parallel changes in § 2255 practice and evidently chose to leave intact the *Townsend* standard and to create a discrepancy between the right to a hearing in § 2254 and § 2255 cases"); *Massaro v. United States*, 538 U.S. 500, 505-06 (2003). Moreover, Mr. Fields established that the very case law on which the Order relies supports granting an evidentiary hearing. Br. at 7-8; Order at 86, 95-100 (*citing United States v. Bourgeois*, 2011 WL 1930684, at **20 nn.22-23, 55 (S.D. Tex. May 19,

2011) (in which the Court "liberally allowed [movant] to prepare the factual basis for his post-judgment claims *through expert and investigative assistance*" allowing the parties to "develo[p] a rich factual record through the *submission of written interrogatories, declarations, and record documents*," through no less than twenty-six witnesses during *a week-long evidentiary hearing*, eleven during deposition) (emphasis added). Indeed, a district court's failure to grant an evidentiary hearing is grounds for reversal and remand where a section 2255 petitioner has raised issues of fact and the trial record does not "conclusively" demonstrate that relief is unwarranted. *See Sinisterra v. United States*, 600 F.3d 900, 907 (8th Cir. 2010) (remanding to district court to hold an evidentiary hearing because "record does not affirmatively refute the factual assertions upon which [petitioner's] claim is based"); *Nelson v. United States*, 297 Fed. Appx. 563, 565 (8th Cir. 2008) (Unpublished) ("fair and just determination of [claims] required an evidentiary hearing").

In response, the Government does not dispute, and therefore concedes, the liberal standard for granting an evidentiary hearing in § 2255 proceedings. In fact, the Government's Response fails to address the central issues presented by Mr. Fields' Reconsideration Motions: that the Court resolved numerous factual disputes against Mr. Fields without the benefit of discovery or an evidentiary hearing, and that failing to provide Mr. Fields these procedural safeguards constitutes a manifest error of law requiring reconsideration pursuant to Rule 59(e). Instead of addressing Mr. Fields' central arguments, the Government merely reiterates the text of the Order and ignores the numerous factual and procedural grounds that warrant reconsideration of the Order. Further, the Government wrongfully mischaracterizes Mr. Fields' Rule 59(e) Motion as an attempt to "rehash" evidence previously rejected by the Court. *See* GR at 2-3. Mr. Fields cannot rehash evidence that the Court failed to properly consider through discovery and an evidentiary hearing in the first instance. Accordingly, Mr. Fields respectfully submits that his

Rule 59(e) Motion should be granted and that the Court should vacate its Order denying the

§ 2255 Motion, allow discovery, and grant an evidentiary hearing or alternative means of factual

development in order that a factual record can be developed as to Mr. Fields' claims.

**II.    THE GOVERNMENT'S RESPONSE FAILS TO REFUTE ANY OF THE SPECIFIC EXAMPLES OF THE COURT'S WRONGFUL USE OF SUBJECTIVE ANALYSIS OR THE COURT'S PERSONAL RECOLLECTION OF EXTRA-RECORD EVENTS**

**1.    Ground One:  The Government Fails To Refute That, In Reaching Its Conclusions On Claims One Through Three, The Court Erred By Failing To Conduct An Evidentiary Hearing Concerning Mr. Fields' Mental Health Claims And By Inappropriately Relying On Subjective Analysis And Personal Recollection**

Mr. Fields' Rule 59(e) Motion demonstrated that the Court erred by denying his

First, Second, and Third Claims asserting violations of his constitutional rights under the Fifth,

Sixth and Eighth Amendments, when the Court permitted Mr. Fields to waive counsel and

proceed *pro se* without an adequate investigation into his competency.  Br. at 8-16; § 2255

Motion at 30-69; § 2255 Reply at 8-35.  Mr. Fields' § 2255 Motion presented the affidavit of Dr.

George Woods, who concluded that Mr. Fields was "unable to carry out the basic tasks necessary

to present his own defense without assistance of counsel."  Appendix B, Declaration of George

Woods ("Woods' Declaration") ¶ 110.  Mr. Fields also demonstrated that the Court committed

legal error by, *inter alia,* (i) concluding that Dr. Stephen Mark's brief and uninformed thirty-

minute evaluation was sufficient to determine Mr. Fields' competency to waive counsel; (ii) by

relying on the Court's own subjective observations of Mr. Fields' demeanor and conduct in the

courtroom and Mr. Fields' pleadings; (iii) relying on trial counsel's lay opinion of Mr. Fields'

competence; and (iv) ignoring Dr. Woods' opinion without an adequate hearing.  *See* Br. at 8-13.

Mr. Fields demonstrated that the Court's failure to grant discovery and an evidentiary hearing to

evaluate Mr. Fields' competency to proceed *pro se* during the guilt phase of trial was a manifest error of law requiring reconsideration pursuant to Rule 59(e). *Id.* at 11-12.

In response, the Government does not offer any legal justification for the Court's resolution of the factual dispute concerning Mr. Fields' competency without an evidentiary hearing. Rather, the Government baldly contends that "the Court followed proper procedures," by having Mr. Fields "examined," and that the one-minute competency hearing based on a thirty-minute physician interview was "an extensive inquiry" conducted before trial. GR at 4. The Government further relies on "numerous letters and notices" that Mr. Fields filed prior to his guilty plea in a separate proceeding—nearly two years before trial—as evidence of his competence to waive his right to representation. *Id.* The Government further argues that Dr. Woods' declaration should not be credited and instead urges the Court to rely on unsupported evidence and the historical recollection of "the people that were there, including several mental health experts, the attorneys, the Court, and [Mr. Fields] himself." *Id.* at 4-5.

The Government's contentions, however, miss the point and are contrary to applicable law. Specifically, the Government's assertion that Dr. Woods' Declaration should be disregarded is without any factual or procedural basis, and is directly contrary to the liberal standard governing evidentiary hearings in § 2255 proceedings. Based on a review of Mr. Fields' medical records and an extensive interview, Dr. Woods definitively concluded, *inter alia*, that the "symptoms of Mr. Fields' mental disease . . . rendered him unable to carry out the basic tasks necessary to present his own defense without the assistance of counsel." Br. at 8-10 (*citing* Appendix B, Woods' Declaration ¶ 110). Dr. Woods' diagnoses is precisely the type of new evidence that Mr. Fields is entitled to present at an evidentiary hearing on a § 2255 Motion. The Court's failure to grant such a hearing, while resolving this critical issue of disputed fact against Mr. Fields, constitutes a manifest error of law requiring reconsideration pursuant to Rule 59(e).

*See* Br. at 4 (*quoting Manning v. United States*, 2012 WL 640056, at *1 (W.D. Tex. Feb. 27, 2012) (holding Rule 59(e) motions are appropriate """"to correct manifest errors of law or to present newly discovered evidence""") (citations omitted)).   The Government's Response completely side-steps this issue.

Similarly, the Government's reliance on Dr. Mark's evaluation is misplaced.  *See* GR at 4; Order at 24-26.  As an initial matter, Dr. Woods is the only psychiatrist who had an adequate opportunity to diagnose Mr. Fields based on an extensive interview and review of relevant background materials, and he completely disagrees with Dr. Mark's uninformed diagnosis.  *See generally* Br. at 9-10; Appendix B, Woods' Declaration.  Additionally, Mr. Fields established that Dr. Mark's opinion is not reliable because trial counsel failed to cross-examine Dr. Mark at the competency hearing and failed to provide Dr. Mark with critical information regarding Mr. Fields' medical history.  Br. at 12.  Accordingly, Dr. Mark reached his conclusions without the benefit of Mr. Fields' highly relevant historical psychiatric records.  *Id.*  In the context of a § 2255 proceeding, this type of categorical disagreement by experts regarding a constitutional claim as fundamental as a defendant's competency to waive counsel and proceed *pro se* requires discovery and an evidentiary hearing to resolve.  The Government's Response provides no justification for the Court's refusal to provide these procedural safeguards before resolving this factual dispute.  The Court's failure to grant a hearing on this issue alone requires reconsideration of the Order.

Additionally, the Government's Response neither addresses nor refutes Mr. Fields' demonstration that the Order improperly relies on subjective determinations that are prohibited as lay opinions of a defendant's competency.  *See* Br. at 9-11 (*citing Hull v. Freeman*, 932 F.2d 159, 168 (3d Cir. 1991) (finding that trial counsel are "wholly unqualified to judge the competency of their clients"); § 2255 Reply at 15 (*citing Bruce v. Estelle,* 536 F.2d 1051, 1059

(5th Cir. 1976) ("the existence of even a severe psychiatric defect is not always apparent to laymen")). Accordingly, the Government has effectively conceded the point. For this additional reason, the Order requires reconsideration pursuant to Rule 59(e). *See Nelson*, 297 Fed. Appx. at 565 (remanding to district court for evidentiary hearing to resolve factual issues where "Government's response to the original § 2255 motion informed the district court that such a hearing was necessary").

      **2.**       **Ground Two: The Government Fails to Refute That, In Reaching Its Conclusions On Claims Four Through Six, The Court Erred By Failing To Hold An Evidentiary Hearing To Resolve The Disputed Facts Related To Mr. Fields' Contention That He Did Not Consent To Standby Counsel's Role In Court Conferences**

Mr. Fields' Rule 59(e) Motion established that the Court erred in denying his Fourth, Fifth, and Sixth Claims without an evidentiary hearing to resolve the factual disputes concerning Mr. Fields' exclusion from bench and chamber conferences in violation of his Fifth, Sixth and Eighth Amendment constitutional rights. Br. at 13-14. Mr. Fields established that he did not consent to, nor acquiesce in, standby counsel's participation in bench and chambers conferences without him present. *Id.* at 13. Further, Mr. Fields demonstrated that he objected to his standby counsel's participation, but that the Court had ordered his compliance with this procedure. *Id.* As such, Mr. Fields demonstrated that standby counsel's participation in these conferences violated his *Faretta* rights. *Id.* at 13-14; *see Faretta v. California*, 422 U.S. 806 (1975).

In response, the Government provides no justification for the Court's failure to grant an evidentiary hearing to resolve this critical factual dispute. Rather, the Government ignores the evidence Mr. Fields presented in his Rule 59(e) Motion and baldly reiterates the erroneous findings in the Order contending that Mr. Fields "acquiesced to the procedure that was

used" because he "never objected when the issue was discussed" and "utilized the procedure of his stand-by counsel—reporting to him after a bench and chamber conference[.]"  GR. at 5. However, the Government does not provide (and the record does not reflect) any evidence contradicting Mr. Fields' factual allegations indicating his reasonable understanding that the Court mandated this unconstitutional bench and chamber conference procedure.  Pursuant to § 2255, at a minimum, the Court should have permitted Mr. Fields to conduct discovery and hold an evidentiary hearing to resolve this disputed factual issue.  The Court's resolution of these disputed facts without discovery or an evidentiary hearing constitutes a manifest legal error requiring reconsideration pursuant to Rule 59(e).  The Government's Response does not address, let alone refute, this argument.  As such, the Order  should be vacated.

3.    **Ground Three:  The Government Fails to Refute That In Reaching Its Conclusions On Claims Eight And Nine, The Court Erred By Failing To Hold an Evidentiary Hearing Concerning Mr. Fields' Factual Allegations Concerning The Abridgment Of His Rights To Exercise Peremptory Challenges And To Be Tried By A Fair And Impartial Jury**

Mr. Fields' Rule 59(e) Motion established that the Court erred by denying his Eighth and Ninth Claims that asserted violations to his Fifth, Sixth, and Eight Amendment rights when Mr. Fields' standby counsel overruled his objections by failing to use a peremptory challenge against juror James Ansay.  Br. at 14-16; § 2255 Motion at 94-103; § 2255 Reply at 43-46.  Mr. Fields established that his standby counsel silenced his objections and forced Mr. Fields to accept Mr. Ansay's impanelment, and that this factual dispute should have been resolved by an evidentiary hearing.  Br. at 14-15; § 2255 Motion at 94-103; § 2255 Reply at 43-46.  Specifically, Mr. Fields demonstrated that standby counsel prevented him from objecting to Mr. Ansay's impanelment and that the document listing his peremptory challenges (Docket No. 317) was drafted by standby counsel, not Mr. Fields.  Br. at 14-15.  Moreover, Mr. Fields

established that after invoking his right to self-representation, he was not required to object to every one of standby counsel's unconstitutional impositions to preserve his objection to Mr. Ansay's impanelment. *See Frantz v. Hazey*, 533 F.3d 724, 744 (9th Cir. 2008) (*citing McKaskle v. Wiggins*, 465 U.S. 168, 178 (1984)); § 2255 Reply at 45-46. These facts, if true, establish that impaneling Mr. Ansay constitutes structural error. *See Knox v. Collins*, 928 F.2d 657, 660-61 (5th Cir. 1991); *Swain v. Alabama*, 380 U.S. 202, 219 (1965). Accordingly, Mr. Fields demonstrated that the Court should have granted an evidentiary hearing to resolve this factual dispute.

Once again, the Government's Response fails to justify the Court's procedural deficiency in denying an evidentiary hearing. Rather, the Government reiterates the very factual findings from the Order that Mr. Fields disputes: that he "never objected to the impaneling of Mr. Ansay" and that he "signed a document entitled 'Defendant's Preemptory [*sic*] Challenges.'" GR at 6. Accordingly, the Government's Response highlights the Order's manifest error of law by ignoring the factual dispute concerning whether standby counsel silenced his objections and forced Mr. Fields to accept Mr. Ansay, including, without limitation, the allegation that the peremptory challenges document the Government relies on was drafted by standby counsel, not Mr. Fields. Br. at 15-16; § 2255 Reply at 45-46. Additionally, the Government's Response does not contest (and therefore concedes) that the Order improperly relies on the Court's subjective observation that Mr. Fields allegedly relied on standby counsel to participate in certain aspects of jury selection; a fact that Mr. Fields vehemently disputes and is directly refuted by his § 2255 Motion. *See* Br. at 16 (*citing* Order at 50 n.6); *see also* Order at 48-49. These disputes require resolution by an evidentiary hearing, and the Government's Response offers no argument to the contrary. Thus, Mr. Fields respectfully submits that the Court erred in deciding these claims

without discovery and an evidentiary hearing, and the Order should be vacated, altered or amended.

**4.**      **Ground Four:   The Government Fails To Refute That, In Reaching Its Conclusions On Claims Ten and Eleven, The Court Erred By Failing To Hold An Evidentiary Hearing To Resolve The Disputed Fact That Mr. Fields' Presence At The Chambers Conference Would Have Contributed To The Fairness Of The Procedure**

Mr. Fields' Rule 59(e) Motion established that the Court erred in denying his Tenth and Eleventh Claims without discovery and an evidentiary hearing concerning his right to attend chambers conference held to discuss the Court's response to a jury note and the associated ineffective assistance of counsel claim.  *See* Br. at 16-17; § 2255 Motion at 103-09; § 2255 Reply at 46-49.  Specifically, Mr. Fields established that the Court improperly relied solely on its own extra-record recollection of the matters discussed in chambers in resolving this factual dispute. *See* Br. at 16-17.

Once again, the Government's Response only serves to highlight the error.  The Government cites the Order for the Court's recollection that "[t]he [only] matter discussed in the conference involved the Court's response as to whether the jury was in fact deadlocked" and that Mr. Fields' absence did not compromise the fundamental fairness of the trial.  GR at 6; Order at 53-54.  The Government does not refute that the Court resolved factual disputes raised by Mr. Fields' claim without an evidentiary hearing.  Nor does the Government dispute that the record is insufficient to support the Court's conclusion.  *See* Br. at 16-17.  The Government has not provided a declaration, affidavit, or any evidentiary support for the Court's conclusion.  Accordingly, the Government's Response does not refute Mr. Fields' assertion that the Court's denial of his claims without the opportunity to develop facts pertinent to this claim constitutes manifest error of law and requires reconsideration.

**5.    Ground Five:   The Government Fails to Refute That, In Reaching Its Conclusions On Claim Fourteen, The Court Erred By Relying On Its Subjective Analysis Rather Than Holding An Evidentiary Hearing Concerning Mr. Fields' Waiver Of His Right To Testify At Trial**

Mr. Fields' Rule 59(e) Motion established that the Court erred by denying his Fourteenth Claim, without discovery or an evidentiary hearing, that alleged he did not knowingly and voluntarily waive his right to testify in violation of the Fifth, Sixth, and Eighth Amendments. Br. at 17-18.  Mr. Fields alleged facts demonstrating that he wanted to testify at trial, but did not because his standby counsel erroneously advised that testifying would require him to take the stand and formally examine himself by asking questions and then answering them for the jury. *Id.*; § 2255 Motion at 121-23.  Mr. Fields further demonstrated that these facts, if true, would provide grounds for relief from his conviction because they demonstrate that Mr. Fields did not knowingly and voluntarily waive his right to testify.  Br. at 18.

Rather than offering any legal justification for the Court's failure to grant discovery and an evidentiary hearing concerning these factual disputes, the Government's Response attempts to refute these factual allegations by citation to irrelevant events in a different proceeding.  GR at 7.  Specifically, the Government cites a collateral proceeding held nearly two years prior to trial to support their contention that Mr. Fields "was well aware of his right to testify and chose not to." *Id.*  It is beyond legitimate dispute that Mr. Fields being appraised of his rights in another proceeding two years before trial does not support a finding that he knowingly and voluntarily waived his right to testify in this proceeding below.  The Government cites no authority for its position.

Additionally, the Government's bald proclamation that Mr. Fields "has presented nothing to rebut the presumption that he waived his right to testify through his silence" is unsupported by fact or law. *Id.*  First, such a statement ignores Mr. Fields' factual assertions in

his § 2255 Motion to the contrary.  Br. at 17; § 2255 Motion at 118-23 (*citing e.g.*, TT at 1676:4-5).  Second, the Government offers no support for its assertion that a *pro se* defendant can be presumed to waive a fundamental right through silence.  GR at 7.  Indeed, as demonstrated in Fields' § 2255 Motion, the Fifth Circuit has recommended a colloquy between the Court and a *pro se* defendant concerning the right to testify as "a model of appropriate judicial concern for the constitutional rights of a criminal defendant."  *Hollenbeck v. Estelle*, 672 F.2d 451, 452 (5th Cir. 1982); § 2255 Motion at 120.  The Government offers no legal support indicating that such a waiver can be presumed through silence.

The Government's Response underscores that the factual dispute at issue warrants discovery and an evidentiary hearing.  The Government does not dispute that the Order fails to address Mr. Fields' factual allegations that standby counsel provided Mr. Fields incorrect advice concerning the format of his testimony and that Mr. Fields did not wish to present testimony in the awkward, yet incorrect, manner described to him by standby counsel.  *See* Br. at 17-18; § 2255 Motion at 118-20; § 2255 Reply at 54-57.  Nor does the Government dispute that the Court made factual conclusions regarding Mr. Fields' intent to exercise his Sixth Amendment right to testify, without the benefit of discovery or an evidentiary hearing.  *See* Br. at 18; § 2255 Motion 120-23; § 2255 Reply at 54-57.  For example, Mr. Fields demonstrated that he expressed his desire to testify throughout his trial performance. Br. at 17.  The Government's response that the Court "could easily determine" that Mr. Fields sought to testify without subjecting himself to cross-examination both concedes Mr. Fields' underlying point—*i.e.*, that he wanted to testify—but further indicates that the record does not affirmatively refute Mr. Fields' Claims and that the Court therefore erred in making findings of fact without an evidentiary hearing to resolve whether Mr. Fields knowingly and voluntarily waived his right to testify.  *See Sinisterra*, 600 F.3d at 907 (remanding to district court to hold an evidentiary hearing because "record does not

affirmatively refute the factual assertions upon which [petitioner's] claim is based"); *Nelson*, 297 Fed. Appx. at 565 (government's response to § 2255 motion should have informed district court that "fair and just determination of [claims] required an evidentiary hearing").    The Government's reliance on an collateral proceeding to support waiver of Mr. Fields' rights is irrelevant to his waiver of his right to testify in this proceeding.    Accordingly, the Court should vacate, alter, or amend its Order, and grant Mr. Fields discovery and an evidentiary hearing.

> **6.      Ground Six:    The Government Fails to Refute That, In Reaching Its Conclusions On Claim Fifteen, The Court Erred By Failing To Hold An Evidentiary Hearing Concerning Mr. Fields' Claim Of Actual Innocence**

Mr. Fields' Rule 59(e) Motion established that the Court erred by denying his Fifteenth Claim of actual innocence without affording him the opportunity for discovery and an evidentiary hearing to develop and prove his claim.  Br. at 18-22; § 2255 Motion at 124-35; § 2255 Reply at 57-70.   Mr. Fields demonstrated that the Court did not examine numerous evidentiary infirmities and inconsistencies in the prosecution's case, and failed to consider the viability of any of Mr. Fields' actual innocence claims.  *Id.*  Specifically, Mr. Fields identified several examples of evidentiary infirmities that establish the need for a hearing to provide an opportunity for Mr. Fields to prove his innocence including, without limitation: (i) forensic evidence that contradicts unreliable witness statements, (ii) evidence of false testimony by critical Government witnesses, and (iii) evidence that jailhouse "snitch" witness testimony was false and unreliable.  Br. at 19-22.  Most significantly, Mr. Fields demonstrated that the Court erred in denying this claim based on a lack of evidence, including discovery and DNA evidence,

while simultaneously refusing to grant Mr. Fields the opportunity to develop such evidence through DNA testing.[3]  Br. at 18-19.

In response, the Government summarily contends that Mr. Fields fails to support his actual innocence claim with any new evidence and that he failed to establish the standard of proof under *Herrera*.  GR at 7-8.  Both contentions are misplaced.  The Government's Response simply ignores the overwhelming proof Mr. Fields proffered in support of his allegations.  The Government also fails to address the Court's denial of Mr. Fields' request for discovery, including DNA testing, to further develop this and other new evidence and the Court's denial of an evidentiary hearing to resolve any disputed facts related to his innocence claims.  *See* Br. at 18-19; DNA Reconsideration Motion at 9-10. Specifically, Mr. Fields requested and the Court summarily denied discovery of DNA and other biological evidence—to be conducted at Mr. Fields own expense—despite Mr. Fields' identification of numerous facts that such discovery would help establish.  *See also infra* Section V.  This discovery would provide new evidence to refute the unreliable testimony offered at trial, including testimony given by key prosecution witnesses Ms. Scroggins and Mr. Outley, certain jailhouse "snitch" testimony, and the testimony of Ms. Tammy Edwards and former U.S. Marshal McNamara.  Br. at 20-22; § 2255 Motion at 127-33.  Each of the factual examples identified in the Rule 59(e) Motion and detailed in the § 2255 Motion—many of which were taken from the Government's own witnesses—meet the *Herrera* standard.  Br. at 18-22; § 2255 Motion at 124-35.  Regardless, the Government's Response does not address Mr. Fields' contention that the Court's denial of Mr. Fields' actual innocence claims without resolving these disputed factual issues through discovery and an

---

[3]  Mr. Fields has separately moved for reconsideration of the Court's denial of his two discovery motions, including a motion for DNA testing, which are addressed in Sections IV and V below.

evidentiary hearing was in error.  *See* Br. at 18-22.  Accordingly, the Court should vacate the Order and grant discovery and an evidentiary hearing.

> **7.    Ground Seven:  The Government Fails to Refute That, In Reaching Its Conclusions On Claim Sixteen, The Court Erred By Failing To Hold An Evidentiary Hearing Concerning The Government's Presentation Of Evidence And Testimony That It Knew Or Should Have Known To Be False**

Mr. Fields' Rule 59(e) Motion established that the Court erred by denying Mr. Fields' Sixteenth Claim asserting that the Government relied on testimony that it knew or should have known to be false.  *See* Br. at 23-24; § 2255 Motion at 135-37; § 2255 Reply 70-71.  Mr. Fields established that the Court erred when it concluded that he failed to prove his allegation that the Government used false or perjured testimony to obtain a guilty verdict without granting discovery or an evidentiary hearing to permit Mr. Fields to develop his factual allegations.  Br. at 23-24 (*citing* Order at 69-70).  Mr. Fields demonstrated that this claim of error is particularly improper because the Court ruled against him on the basis that he had not presented sufficient evidence to prove his claims, yet the Court denied him the procedural opportunity to gather additional evidence through discovery and an evidentiary hearing.  Br. at 23-24.

Once again, the Government's Response only amplifies the error by arguing that Mr. Fields "had ample opportunity to cross-examine the witnesses and attempt to discredit their respective testimony" and that there is no evidence the Government presented false testimony.  Both arguments are misplaced.  GR at 8.  As an initial matter, Mr. Fields' Rule 59(e) Motion asserts that the Court committed manifest error of law by denying Mr. Fields the opportunity to develop new evidence supporting his constitutional claims of error in connection with his § 2255 Motion.  Br. at 23-24.  Accordingly, Mr. Fields' opportunity to cross-examine witnesses at trial is irrelevant.

Moreover, Mr. Fields' Rule 59(e) Motion set forth ample evidence that the Government presented false testimony, none of which the Government's Response attempts to address or refute. *See* Br. at 23-24. At this stage, Mr. Fields cannot be required to prove the falsity of the Government's evidence; rather, he is entitled to an evidentiary hearing "unless 'the motion and the files and records of the case conclusively show that he is entitled to no relief.'" *Sinisterra*, 600 F.3d at 906 (citation omitted). In *Sinisterra*, the Eight Circuit reversed the district court's denial of an evidentiary hearing because the section 2255 petitioner had sufficiently plead—and the record did not conclusively refute—that counsel was ineffective for inadequately investigating and presenting mitigation evidence, including mental health and capacity evidence. *Id.* at 906-07. The court observed that whether such claims could be substantiated required an evidentiary hearing. *Id.* at 908.

Here, like *Sinisterra,* Mr. Fields has supported his § 2255 Motion with pleadings and arguments that require an evidentiary hearing to substantiate. Indeed, he has gone further and established facts concerning the falsity of testimony, without formal discovery. For example, testimony and evidence derived from Government witnesses Mr. Outley and Ms. Scroggins was demonstrably false, necessitating an evidentiary hearing, including:

- Ms. Scroggins and Mr. Outley falsely told investigators that the Jaguar they drove on the night of the murder was blue, rather than gold, with the result that it has never been forensically examined or tested. In fact, the blue Jaguar they claimed to have been driving on the night of the murder had been wrecked and totaled in 1998. Br. at 23-24; § 2255 Motion at 126.

- Mr. Outley falsely testified that the Government gave him no promises in return for his prosecution, when in fact he was granted full immunity. Br. at 24; § 2255 Motion at 128-29.

- Mr. Homero DeLeon falsely claimed in a letter to the Government that Mr. Fields confessed to him, and provided additional false testimony at trial. Br. at 24; § 2255 Motion at 131-32.

- Ms. Tammy Edwards purportedly identified Mr. Fields in a photo array as her carjacker on November 27, 2001, but weeks before that, on or about November 15, 2001, Edwards failed to identify Mr. Fields as her carjacker despite being twice shown his photograph by police. Br. at 24; § 2255 Motion at 132-33.

This evidence and other related evidence that could be further developed through discovery and an evidentiary hearing support Mr. Fields' claim to actual innocence and discredits key Government evidence the jury relied upon to reach a guilty verdict. As such, this is evidence that the Government knew or should have known to be false. Br. at 23-24. The Government's failure to challenge the evidence Mr. Fields presents in any meaningful manner is suggestive of the falsity of the prosecution evidence. This is precisely the type of evidence that Mr. Fields is entitled to develop through discovery and an evidentiary hearing. *Id.* Thus, the Government's assertions only serve to underscore the need for reconsideration of the Order and to grant discovery and an evidentiary hearing concerning these claims.

8. **Ground Eight: The Government Fails To Refute That, In Reaching Its Conclusions On Claim Seventeen, The Court Erred By Failing To Hold An Evidentiary Hearing To Resolve Factual Disputes Regarding The Failure Of Counsel To Conduct An Adequate Pre-Trial Investigation Related To The Facts Of The Charged Homicide**

Mr. Fields' Rule 59(e) Motion demonstrated that the Court should have granted Mr. Fields' requests for discovery and an evidentiary hearing to further develop the factual record in support of his Seventeenth Claim concerning counsel's failure to conduct a competent investigation into the facts of the charged homicide as required by the Fifth, Sixth and Eighth Amendments. *See* Br. at 24-29. Specifically, Mr. Fields demonstrated that trial counsel, during their two-year pretrial representation of Mr. Fields, failed to interview critical witnesses including a potential eye-witness and corroborating witness who could have supported Mr. Fields' defense. *See* Br. at 24-25; § 2255 Motion at 137-47; § 2255 Reply at 71-74.

-21-

Additionally, Mr. Fields demonstrated that counsel interviewed only four of the fifty-nine witnesses who eventually testified on behalf of the Government (fewer than 7% of the testifying witnesses). *See* Br. at 25; § 2255 Motion at 141-44; § 2255 Reply at 71-73. Mr. Fields further presented facts demonstrating that counsel relied solely on document review in connection with preparation to examine seventy-three of the 120 witnesses on the Government's witness list. *See* Br. at 28-29. Mr. Fields also demonstrated that the Court's denial of Mr. Fields' claim as "speculative," while simultaneously denying discovery and an evidentiary hearing, constituted constitutional error and was contrary to the very Fifth Circuit case law relied upon by the Court. *See id.* at 25-27 (*citing Moore v. Quaterman*, 534 F.3d 454, 467-68 (5th Cir. 2008)).

The Government's Response highlights the need for discovery and a hearing on these issues. The Government does not dispute Mr. Fields' (i) description of counsel's deficient investigation (*see* Br. at 24-25); (ii) assertion that the Court's reliance on *Moore v. Quaterman* was inapposite, given the fact that the defendant in *Moore* was granted an extensive evidentiary hearing (*see* Br. at 25-27); or (iii) that the Court failed to address the factual dispute of whether counsel inappropriately relied on "open-file" discovery in lieu of conducting an appropriate investigation (*see* Br. at 28-29). Rather, the Government argues that Fields merely "speculates" as to what these witnesses would have said, that Mr. Fields "maintained control of who to call at trial" and that Mr. Fields "never asked for a continuance." GR at 8. These assertions are irrelevant and mischaracterize the factual record.

First, Mr. Fields cannot compel testimony from critical Government witnesses to further develop the factual record in support of his Claims concerning counsel's failure to conduct a competent investigation into the facts of the charged homicide because the Court failed to provide Fields with discovery and a hearing. Indeed, the Court's denial of Mr. Fields' Claim as "speculative" is one of the manifest errors the present motion is intended to address.

Likewise, the Government's assertion that Mr. Fields "merely speculates what witnesses might have testified to if called" is misplaced and further demonstrates that an evidentiary hearing is necessary to determine whether Mr. Fields' standby counsel adequately conducted a pretrial investigation.  *See Nelson*, 297 Fed. Appx. at 565 ("issues regarding the ineffectiveness of counsel often require a hearing to consider evidence not disclosed on the face of the trial record"); *Sinisterra*, 600 F.3d at 907 (remanding to district court to hold an evidentiary hearing because "record does not affirmatively refute the factual assertions upon which [petitioner's] claim is based").

Second, the record is clear that Mr. Fields requested to proceed *pro se* on the eve of trial.  *See* Br. at 27-28; § 2255 Motion at 137-43; § 2255 Reply at 72-73.  Mr. Fields' claims here pertain to his appointed counsel's deficiencies in the two years prior to trial.  Accordingly, the Government's claim that Mr. Fields maintained control at trial are both false and irrelevant to the issue.  Finally, the record is clear that by the time Mr. Fields was allowed to proceed *pro se*, the Court would not allow any continuance of trial:

> Well, Mr. Fields, as Mr. Swanton pointed out, he and Mr. Peterson have been working on your behalf in this case for approximately two years. . . . If other attorneys were appointed to represent you, there would be a lengthy delay, and as I told you the last time we were here, that's not going to happen. . . .

Br. at 27; § 2255 Reply at 72-73 (*citing* TT at 14).

The Government's perfunctory summary of the Order and mischaracterization of the record insufficiently rebut Mr. Fields' claim.  Accordingly, the Court should reconsider its Order, grant Mr. Fields discovery and evidentiary hearing on these issues.

9. **Ground Nine: The Government Fails To Refute That, In Reaching Its Conclusions On Claims Eighteen Through Twenty, The Court Erred By Failing To Hold An Evidentiary Hearing To Resolve Factual Disputes Regarding The Government's Failure To Disclose The Details Of A Witness's Immunity Deal, Notes Prepared By A Jailhouse Informant, And Other Potentially Exculpatory Material In Violation Of *Brady v. Maryland*** 

Mr. Fields' Rule 59(e) Motion demonstrated that the Court erred by denying Mr. Fields discovery and an evidentiary hearing with respect to his Eighteenth, Nineteenth, and Twentieth Claims. Br. at 29-33; § 2255 Motion at 147-52. Specifically, Mr. Fields demonstrated that the Court's denial of Mr. Fields' claims concerning (i) the Government's failure to disclose the scope of immunity granted to Edward Lee Outley III, a critical prosecution witness; (ii) the Government's failure to correct Mr. Outley's material misstatements under oath concerning his immunity deal; and (iii) factual allegations concerning the Government's use of jailhouse informants, including Mr. Homer DeLeon, violated Mr. Fields' Fifth, Sixth, and Eighth Amendment Rights. *Id.* In response, the Government does nothing more than reiterate the findings of the Order, which Mr. Fields respectfully asserts are incorrect and improper without an evidentiary hearing. *See* GR at 9-10.

a. **The Government Does Not Sufficiently Dispute Mr. Fields' Allegations Concerning Mr. Outley's Testimony And Immunity Deal**

The Government contends that Mr. Fields could have probed the scope of Mr. Outley's immunity during his cross-examination, taking issue with the manner in which Mr. Fields asked his questions. GR at 9-10. The Government attempts to divert attention from its failure to disclose the scope of Mr. Outley's immunity, by asserting that "[s]everal witnesses provided testimony that supported [Mr. Fields'] conviction" and there is "no evidence that the Government either directly or indirectly elicited false testimony." *Id.*

The Government's conclusory assertion ignores Mr. Fields' evidentiary support and mischaracterizes the record. As an initial matter, Mr. Fields could not have cross-examined Mr. Outley on this point because he did not learn of the inaccuracy between the Government's letter granting immunity and Mr. Outley's admission of a broader immunity until after trial. Br. at 29-31; *compare* Appendix J, Affidavit of Edward Outley III ("Outley Affidavit") ¶ 4 *with* Letter dated January 2, 2004 to Sweiger attached to Outley Affidavit. As such, the Government's argument about Mr. Fields' ability to cross-examine Mr. Outley at trial is irrelevant. Additionally, in an attempt to minimize the clear factual dispute concerning whether Mr. Outley misrepresented the scope of his immunity at trial, the Government argues that Mr. Fields' cross-examination question to Mr. Outley was unclear. Specifically, the Government argues that the question "[d]id the Government make you any promises?" is unclear and that "[t]here is no way to determine what [Mr. Fields] meant by the question or what Mr. Outley thought 'promises' meant." GR at 9. The Government is wrong. As demonstrated by Mr. Fields' Rule 59(e) Motion, an easy and reliable way to make such a determination is to grant Mr. Fields discovery and an evidentiary hearing where competent counsel can subject Outley to an examination under oath. *See* Br. at 29-31.

Additionally, the Government's Response is contrary to the general presumption in favor of an evidentiary hearing unless the record conclusively shows that the movant is not entitled to relief. *See Sinisterra*, 600 F.3d at 907 (remanding to district court to hold an evidentiary hearing because "record does not affirmatively refute the factual assertions upon which [petitioner's] claim is based"); *Nelson*, 297 Fed. Appx. at 565 (government's response to § 2255 motion should have informed district court that "fair and just determination of [claims] required an evidentiary hearing"). The Court's failure to do so while resolving this dispute against Mr. Fields constitutes a manifest error of law requiring reconsideration.

**b.      The Government Fails To Refute Mr. Fields' Allegations Regarding Mr. DeLeon's Notes.**

Mr. Fields' Rule 59(e) Motion established that the Court erred by denying Mr. Fields' Eighteenth and Twentieth Claims regarding the Government's failure to disclose Mr. DeLeon's handwritten notes and whether Mr. DeLeon acted as a government agent by communicating with Mr. Fields without discovery or an evidentiary hearing.[4]  Br. at 31-33.  The Government asserts in response that "[t]here is no evidence" that Mr. DeLeon acted as a Government agent and that "the record is full of instances that show" Mr. Fields spoke to "everyone and bragged about the murder."  GR at 10.  The Government contends that Mr. Fields fails to satisfy the "materiality standard" (without stating what this standard would entail here) regarding the missing notes.  *Id.*  The Government's Response is inadequate and Mr. Fields' requested relief should be granted.

As an initial matter, the Government does not contest the existence or the content of Mr. DeLeon's notes.  The notes as Mr. DeLeon described in a post-conviction interview establish that he communicated with the Assistant United States Attorney and the information he provided in the notes was wildly inconsistent with his testimony at trial.  Br. at 31-32 (*citing* Appendix K, Affidavit of Rick Ojeda ("Ojeda Affidavit") ¶¶ 9-11).  The Government does not contest that the missing notes would be appropriate for disclosure under *Brady* nor does it dispute that these notes would be powerful impeachment material on cross-examination.  The Government also does not dispute that the Court analyzed the impact of the undisclosed notes and made factual conclusions related to the content of the missing notes without reviewing the notes and without the benefit of discovery or an evidentiary hearing.  *See* GR at 9-10.  Thus, the

---

[4]   Mr. Fields does not concede, and indeed denies, than any such conversations took place between him and Mr. DeLeon.

Government does not refute Mr. Fields' argument that the Court's denial of his Eighteenth Claim without an evidentiary hearing concerning the content of Mr. DeLeon's notes was in error.

Similarly, Mr. Fields' Rule 59(e) Motion demonstrated that the Court improperly resolved factual disputes as to whether Mr. DeLeon (and other jailhouse snitches) acted as Government agents while communicating with Mr. Fields. *See* Br. at 33; § 2255 Motion at 154-61.  In response, the Government makes conclusory assertions that there is no evidence to suggest that Mr. DeLeon acted as a Government agent.  These assertions are directly contradicted by Mr. DeLeon's post-conviction interview. *See* Br. at 33 (*citin*g Order at 84 n.10 (Mr. DeLeon "may have approached government officials during the course of his communications with [Mr. Fields]")); *see also* Appendix K, Ojeda Affidavit ¶¶ 9-10, 18.  Accordingly, the Government offers no evidence or argument to refute the claim that the Court erred by reaching its conclusion to deny Mr. Fields' claims on these issues without discovery and an evidentiary hearing.

> **10.    Ground Ten:  The Government Fails To Refute That, In Reaching Its Conclusion On Claims Twenty-One through Twenty-Eight, The Court Erred By Failing To Order Discovery And To Conduct An Evidentiary Hearing.  In Addition, This Court Improperly Reframed The Claim As Involving The Failure To Present Evidence, Rather Than The Failure To Conduct A Competent Investigation**

Mr. Fields' Rule 59(e) Motion established that the Court erred by denying Mr. Fields' Twenty-First through Twenty-Eighth Claims that asserted that he received ineffective assistance of counsel because counsel failed to conduct a competent penalty phase investigation. Br. at 34-40; § 2255 Motion at 161-265; § 2255 Reply at 79-145.  Specifically, Mr. Fields demonstrated that the Court erred by (i) applying an incorrect legal standard to Mr. Fields' mitigation claims and relied on inapposite case law in denying him the opportunity to conduct an

evidentiary hearing (Br. at 37-38); (ii) concluding that evidence of mental illness is "double-edged" in that it may have supported a finding of future dangerousness, despite also acknowledging that Mr. Fields' counsel supplied a "relative paucity of evidence of mental illness" and that mental illness or genetic disposition to mental illness could have been mitigating (*id.* at 38); (iii) failing to assess the quantum or quality of mitigation evidence known to Mr. Fields' counsel (*id.* at 39); and (iv) incorrectly concluding that trial counsel "successfully" investigated and presented mitigation evidence based on a failure to recognize that a successful mitigation case, and therefore a jury's determination of life or death, turns on the weight assigned to the mitigating factors by the jurors and not on the number of mitigating factors (*id.* at 39-40). In support of these claims, Mr. Fields' Rule 59(e) Motion demonstrates that his § 2255 Motion presented forty-eight exhibits and twenty appendices containing nearly 400 pages of mitigating evidence concerning Mr. Fields' history of abject poverty, neglect, and abuse, all of which trial counsel should have, but did not, develop to present to the jury. *See* Br. at 34-36; § 2255 Motion at 161-229; § 2255 Reply at 79-137. Mr. Fields also demonstrated that trial counsel was ineffective because they failed to adequately prepare to rebut the testimony of the Government's expert, Dr. Richard Coons, allowing this constitutionally unreliable testimony to be presented to the jury. Br. at 36.

In response, the Government incorrectly asserts that Mr. Fields "shares the responsibility for the evidence he wished to present during all phases of the trial" because Mr. Fields never indicated that he would ask standby counsel to represent him after the guilt phase of the trial. GR at 11. The Government also contends that Mr. Fields did not receive ineffective assistance of counsel by trial counsel's investigation, and if the investigation was deficient, it did not prejudice Mr. Fields. *Id.* The Government also asserts that trial counsel made an adequate

attempt to challenge the admission of Dr. Coons' testimony.  The Government's assertions fail on both the facts and the law.

First, the Government's characterization of Mr. Fields' responsibility for the insufficiency of trial counsel's mitigation investigation is contrary to the clearly established record.  Mr. Fields did not request to proceed *pro se* until the eve of trial.  For two years preceding that event, Mr. Fields was represented by counsel.  During that time, trial counsel should have developed an adequate mitigation record, but did not.  Trial counsel's mitigation specialist concedes this point testifying that Mr. Fields' trial team "did not do everything we could to defend Mr. Fields' life" and that the evidence produced in his § 2255 Motion is precisely the type of evidence that should have been discovered prior to trial, but was not.  Br. at 39; § 2255 Motion at 167; Appendix G, Affidavit of Jane Bye ("Bye Affidavit") ¶ 17.  Mr. Fields cannot be held responsible for trial counsel's failure in this regard.

Second, the Government's assertion that additional mitigation evidence would not have had any impact or could have been used against Mr. Fields is contradicted by the same overwhelming mitigation evidence.  *See* Br. at 39.  Third, the Government does not contradict Mr. Fields' assertion that, contrary to the Court's conclusion that an "outline" of a mitigation case is just as effective as a complete mitigation story, an evidentiary hearing was necessary to accurately measure the mitigating weight of the evidence discovered in the post-conviction proceeding.

Fourth, the Government's contention that trial counsel adequately challenged Dr. Coons during a *Daubert* hearing regarding the issue of future dangerousness is unsupported by the record.  GR at 12.  The Government's Response fails to address overwhelming evidence to the contrary, as asserted in Mr. Fields' § 2255 Motion and reiterated in the Rule 59(e) Motion. The Government does not challenge the numerous examples of readily available impeachment

materials that trial counsel could have, but did not, use to discredit Dr. Coons. *See* Br. at 38-39; § 2255 Reply at 137-41. Nor does the Government address trial counsel's admission that he did not adequately prepare. *See* Appendix E, Affidavit of Robert Swanton, Esq. ("Swanton Affidavit") ¶ 12 ("I was familiar with his approach to predicting future dangerousness. Thus, I did not research or review prior transcripts of Dr. Coons' Testimony"). The Government also fails to respond to two decisions of the Court of Criminal Appeals of Texas that have agreed with Mr. Fields for substantially the same reasons set forth in his § 2255 Motion. *See Coble v. Texas*, 330 S.W.3d 253, 270 (Tex. Crim. App. 2010) ("[A]ppellant contends that Dr. Richard Coons's expert testimony concerning future dangerousness was not admissible under Rule 702 because it was insufficiently reliable. We agree"); *see also Gobert v. Texas*, 2011 WL 5881601, at *7 (Tex. Crim. App. Nov. 23, 2011) ("We conclude that the trial judge abused his discretion in admitting Dr. Coons's opinion on future dangerousness in this case for the same reasons that we held it inadmissible in [*Coble*]. Here, as in [*Coble*], Dr. Coons provided no scientific, psychiatric, or psychological research or studies to support his idiosyncratic methodology for predicting whether a hypothetical person would commit future acts of violence").

As Mr. Fields asserted in the Rule 59(e) Motion and § 2255 Motion, admission of Dr. Coons' testimony at Mr. Fields' trial violated his Sixth and Eighth Amendment Rights requiring, at the very least, discovery and an evidentiary hearing on the claim. Br. at 36 n.5; § 2255 Motion at 230-56. The Government fails to address this point. Moreover, its assertion that counsel's inadequate performance in mitigating evidence of future dangerousness may have "perhaps" been based on certain facts (GR at 12) further demonstrates the need for an evidentiary hearing on Mr. Fields' claims as to the ineffectiveness of counsel in the penalty phase. *See Nelson*, 297 Fed. Appx. at 565 (government's brief in response to claims regarding

the ineffectiveness of counsel should have informed district court that "fair and just determination of [claims] required an evidentiary hearing").

The Government also fails to dispute Mr. Fields' assertion of legal error. The Government's Response does not address Mr. Fields' argument that the Court erred in applying the incorrect legal standard to Mr. Fields' mitigation claims that require trial counsel to conduct an adequate investigation and exhaustively investigate a client's background. Br. at 37; *see Wiggins v. Smith*, 539 U.S. 510, 522 (2003) (counsel has an "'obligation to conduct a thorough investigation of the defendant's background'") (citation omitted); *Hardwick v. Crosby*, 320 F.3d 1127, 1180 (11th Cir. 2002) ("[T]he most essential purpose of the sentencing proceeding [is] for defense counsel to present the jury with background mitigating information to enable the jurors to render an individualized sentence based on the particular circumstances of [petitioner's] life and the murder") (*citing Brownlee v. Haley*, 306 F.3d 1043, 1070 (11th Cir. 2002)); *see also Wiggins*, 539 U.S. at 527 ("In assessing the reasonableness of an attorney's investigation . . . a court must consider not only the quantum of evidence already known to counsel, but also whether the known evidence would lead a reasonable attorney to investigate further"). Moreover, the Government's Response also does not dispute that the Court's reliance on *Martinez v. Quarterman*, 481 F.3d 249 (5th Cir. 2007), a case that was remanded to the district court for an evidentiary hearing, is inapposite. *See* Br. at 37-38. Accordingly, the Government has offered no argument to refute Mr. Fields' claim that the Order constitutes manifest error of law and should be reconsidered. *See Wallace v. Stewart*, 184 F.3d 1112, 1117-18 (9th Cir. 1999) (remanding case for an evidentiary hearing due to inadequate mitigation evidence presented at trial and affirming that "'[i]t is imperative that all relevant mitigating information be unearthed for consideration at the capital sentencing phase'") (citation omitted).

**11.**   **Ground Eleven:  The Government Fails To Refute That, In Reaching Its Conclusions On Claim Twenty-Nine, The Court Erred By Failing To Allow Discovery And Conduct An Evidentiary Hearing To Resolve Disputed Facts Regarding The Coercive Effect Of The Court's Additional Jury Instructions To Continue Deliberation**

Mr. Fields' Rule 59(e) Motion demonstrated that the Court erred in denying his Twenty-Ninth Claim because the Court's penalty-phase *Allen* charge to the jury, in the face of apparent deadlock, had a coercive effect on at least one juror and violated his right to a jury trial and his Eighth Amendment Right to reliable determination of judgment.  Br. at 40; § 2225 Motion at 265-66; § 2255 Reply at 145-49.  Mr. Fields established that the coercion was evidenced by post-conviction correspondence with jurors in connection with his § 2255 Motion.  Br. at 40-41; § 2255 Motion at 265-66; § 2255 Reply at 146-49.  The Rule 59(e) Motion also established that this evidence was not available at the time of Mr. Fields' direct appeal, and therefore this claim is not barred here.  Br. at 41.

Yet again, the Government's Response ignores the central claim Mr. Fields presents and disingenuously argues that Mr. Fields is duplicating a claim made on direct appeal.  GR at 13.  The Fifth Circuit did not consider (and indeed could not have considered) the new evidence of juror coercion, unavailable at the time of Mr. Fields' direct appeal and asserted for the first time in his § 2255 Motion.  Br. at 41; § 2255 Motion at 265-66.  Accordingly, discovery and an evidentiary hearing should be granted to determine the coercive effect of the Court's *Allen* charge and, therefore, the Order should be reconsidered.

**12.    Ground Twelve:  The Government Fails To Refute That, In Reaching Its Conclusions On Claims Thirty Through Thirty-Five, The Court Erred In Denying An Evidentiary Hearing With Respect To Mr. Fields' Allegations Related To Courtroom Security, And Conditions Of Pre-Trial Confinement, And The Right Of Self-Representation Related To The Requirement That Mr. Fields Wear A Stun Belt Throughout The Proceeding**

Mr. Fields' Rule 59(e) Motion established that the Court erred by denying Mr. Fields' Thirtieth through Thirty-Fifth Claims asserting violations of his Fifth, Sixth, and Eighth Amendment Rights.  Br. at 41-43.  Specifically, Mr. Fields established that the Court erred by denying the procedural right to discovery and an evidentiary hearing related to the Court's requiring Mr. Fields to wear a stun belt during his *pro se* representation at trial and the conditions of his confinement.  *Id.*  Mr. Fields demonstrated that the Order resolves Mr. Fields' numerous factual allegations without an evidentiary hearing, including Mr. Fields' uncontested statements pertaining to his emotional wellbeing and state of mind while wearing the stun belt and attempting to represent himself *pro se* and consult with standby counsel, as well as Dr. Woods' declaration that asserted that the stun belt activated Mr. Fields' "anticipatory anxiety of his PTSD."  Br. at 42.

In response, the Government again ignores the fact that the Court resolved numerous factual disputes without discovery and an evidentiary hearing, and wrongly contends that Mr. Fields' claim is barred because it was raised on direct appeal.  GR at 13.  The Government summarily concludes, without factual or legal basis, that Mr. Fields' counsel was not ineffective or prejudicial in failing to object to the use of the stun belt.  *Id.* at 13-14.  In so doing, the Government's Response completely ignores, and does not refute, sworn testimony presented in the § 2255 Motion by both Mr. Fields and Dr. Woods confirming that the stun belt significantly affected Mr. Fields' demeanor and ability to conduct his own defense, and the stun

belt was prejudicially visible to the jury through his shirt.  Br. at 41-42.  As the Fifth Circuit recognized, a stun belt's visibility to the jury is an important factor in whether its use is appropriate.  GR at 13 ("The Fifth Circuit concluded [that] the use of the stun belt was justified in light of . . . the Court['s] concessions in not making the stun belt visible to the jury . . .").  Accordingly, the Government offers no justification for the Court's failure to grant discovery and allow Mr. Fields to develop his factual record pertaining to the effect of the stun belt on himself and the jury.  Thus, the Court should vacate, alter or amend the Order, and grant discovery and evidentiary hearing as to Mr. Fields' Thirtieth through Thirty-Fifth Claims.

**13.    Ground Thirteen:  The Government Fails To Refute That In Reaching Its Conclusion On Claim Thirty-Six, The Court Erred By Failing To Hold An Evidentiary Hearing On The Conditions Of Mr. Fields' Confinement And Its Effect On His Right To Self-Representation**

Mr. Fields' Rule 59(e) Motion established that the Court erred by denying Mr. Fields' Thirty-Sixth Claim alleging violations of his Fifth, Sixth, and Eighth Amendment Rights to self-representation.  Br. at 43-44.  Specifically, Mr. Fields demonstrated in his Rule 59(e) Motion that the condition of his confinement, where he was kept in a noisy cell that constantly had the lights on, prevented him from sleeping, interfered with his ability to prepare for trial, and unconstitutionally exacerbated the negative effects on his demeanor and performance caused by the stun belt he was forced to wear during trial and his significant mental dysfunction caused by his Complex PTSD and Atypical Bipolar Disorder.  Br. at 43 (*citing* § 2255 Motion at 266-74).  Mr. Fields' Rule 59(e) Motion also demonstrated that the Court failed to address these facts in its Order and resolved these claims against Mr. Fields without the benefit of discovery or an evidentiary hearing.  Br. at 43-44.

In response, the Government disingenuously asserts: "[Mr. Fields] has cited no authority to support his claim that the nature of his detention adversely impacted his ability to

represent himself at trial." GR at 14. The Government is wrong. Mr. Fields submitted both factual and legal support for his claims. For example, Dr. Woods' declaration sets forth undisputed facts pertaining to the effects of Mr. Fields' unconstitutional confinement. S*ee* Appendix B, Woods' Declaration ¶¶ 107-08; § 2255 Motion at 273; § 2255 Reply at 155. Dr. Woods definitively concluded, *inter alia*, that the conditions of his confinement "exacerbated his mental health impairments", "mental disorders", and post-traumatic stress disorder. Br. at 44; Appendix B, Woods' Declaration ¶¶ 107-08. The Government's Response does not dispute that the improper conditions of an individual's confinement, particularly during *pro se* representation, may constitute a violation of his Eighth Amendment Rights. Br. at 43-44; *see generally Harper v. Showers*, 174 F.3d 716, 720 (5th Cir. 1999) ("Conditions designed to prevent sleep, then, might violate the Eighth Amendment"). The Government has not presented any evidence contradicting Mr. Fields' factual allegations nor Dr. Woods' declaration. Accordingly, the Government's Response does not refute the fact that the Court ruled against Mr. Fields on issues of disputed fact without the benefit of discovery or a hearing. As such, the Order should be reconsidered.

14.     **Ground Fourteen: The Government Fails To Refute That, In Considering Mr. Fields' Claims Thirty-Seven through Forty-One, The Court Erred By Failing To Hold An Evidentiary Hearing On The Prejudice Caused By Mr. Fields' Visible Stun Belt And Communications With The Jury Occurred Outside Mr. Fields' Presence**

Mr. Fields' Rule 59(e) Motion established that the Court erred in denying his Thirty-Seventh through Forty-First Claims which alleged that the jury's perception of heightened security measures violated various constitutional rights to a fair trial. Br. at 45-46. These heightened security measures included the use of a stun belt, increased U.S. Marshal presence in court, and the U.S. Marshals escorting jurors to their cars. Br. at 45; § 2255 Motion at 274-79;

§ 2255 Reply at 155-59.  Mr. Fields' Rule 59(e) Motion demonstrated that the Court erred in deciding these disputed factual issues against him, without granting Mr. Fields access to discovery or a hearing.  Br. at 45-46.

The Government's Response relies solely on the very unsupported findings in the Order that Mr. Fields challenges.  The Government merely reiterates the Order's findings that the security measures were reasonable and not prejudicial, and it claims that "common sense suggests that counsel wanted to avoid telling the jury that FIELDS [*sic*] was wearing the stun belt".  GR at 14-15.  The Government's failure to address any of the alleged prejudicial activity further supports Mr. Fields' request for reconsideration of the Order as it highlights the need for discovery and an evidentiary hearing.  Mr. Fields asserted facts that at least some jurors were affected by the Court's instruction regarding threats and the use of U.S. Marshals to escort jurors to their cars.  Br. at 45-46 (*citing* § 2255 Motion at 277 n.35).  The Government offers nothing to counter this assertion.  Similarly, relying on "common sense" rather than evidence to support the Court's conclusion regarding the visibility of the stun belt to the jury cannot support the Order's denial of Mr. Fields' claim.  Thus, the Court should vacate, alter or amend the Order, and grant discovery and an evidentiary hearing.

## III.    THE COURT ERRED WHEN IT DECLINED TO ISSUE A CERTIFICATE OF APPEALABILITY

Mr. Fields' Rule 59(e) Motion established that in the event the Court does not grant Mr. Fields relief from his convictions and sentence, he is entitled to a COA on issues central to proving his actual innocence and setting aside the improper imposition of the death penalty.  Br. at 46-50.  Specifically, Mr. Fields demonstrated that a COA should issue because, not only could reasonable jurists debate whether the Court properly resolved his claims, those claims deserve encouragement to proceed.  *Id.*  In that regard, the § 2255 Motion and the

Reconsideration Motions includes 117 exhibits and 345 pages of evidence demonstrating that Mr. Fields was incompetent to waive counsel and proceed *pro se*, that he received ineffective assistance of counsel, and that the Court improperly denied his claims without an evidentiary hearing, among other issues.  Br. at 47-49.

In response, the Government baldly asserts that Mr. Fields "failed to make a substantial showing of the denial of a constitutional right" because the Court "considered the record, the filings, the findings and conclusions."  GR at 15.   The Government's argument fails as a matter of law because it misstates the standard for determining the grant of a certificate of appealability.  The standard merely requires a determination of whether reasonable jurists could resolve the decided questions differently, and does not turn on the soundness of the Court's decision, the thoroughness of its review, or even the ultimate likelihood of success on the merits. *See Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003) ("A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further").

Here, Mr. Fields has made a substantial showing of the denial of a constitutional right by identifying numerous issues upon which reasonable jurists could disagree.  This is especially so considering that any doubt "'must be resolved in favor of the petitioner.'" *Maldonado v. Thaler*, 389 Fed. Appx. 399, 402 (5th Cir. 2010) (citation omitted); *Miller-El*, 537 U.S. at 327.  Mr. Fields identified, *inter alia*, hundreds of pages of documentary evidence substantiating his claim that he was incompetent to waive counsel and proceed *pro se,* as well as a copious amount of evidence, including eighteen declarations and affidavits, supporting his ineffective assistance of counsel claim based on counsel's failure to introduce mitigating evidence of his mental trauma during the penalty phase.  Br. at 8-16, 34-40; § 2255 Motion at

30-69, 161-256; § 2255 Reply at 8-35, 79-141.  This evidence would have been dispositive on the jury's death penalty deliberations, and given its sheer mass and import, reasonable jurists would undoubtedly disagree whether it supported a claim for relief pursuant to § 2255.

Mr. Fields is separately entitled to a COA on the Court's denial of his requests for discovery and an evidentiary hearing.  The Order also denied Mr. Fields' request for discovery into DNA evidence, at his own expense, that is likely to prove his actual innocence, a non-controversial basis for granting a COA.  This claim alone would provoke disagreement among reasonable jurists given the significant numbers of innocence claims supported by DNA evidence.  *See, e.g., Reed v. Quarterman*, 504 F.3d  465, 473 (5th Cir. 2007) (granting COA where "reasonable jurists could debate whether the district court abused its discretion by denying Reed's discovery request").  The Court's failure to hold an evidentiary hearing concerning, *inter alia*, Mr. Fields' additional evidence and expert testimony concerning his mental health and capacity, among other things, would also raise disagreement among reasonable jurists.  Br. at 49-50.  This evidence would have been central to a number of Mr. Fields' claims, including his claim regarding counsel's failure to introduce mitigating evidence (yet another issue adversely impacting the severity of the penalty imposed).

The Government does not address, let alone refute, the assertion that "'[a]ny doubt as to whether a COA should issue in a death-penalty case must be resolved in favor of the petitioner.'"  *Maldonado*, 389 Fed. Appx. at 402 (citation omitted); Br. at 46-47.  Nor does the Government argue that reasonable jurists could not differ on the issues raised by Mr. Fields' § 2255 Motion, including his competency to waive his right to counsel and his ineffective assistance claims.  Moreover, the Government failed to address, let alone refute, that reasonable jurists could differ on Mr. Fields' requests for discovery and an evidentiary hearing.  Indeed, the Government's limited opposition to Mr. Fields' COA request fails to rebut a single argument

raised by Mr. Fields. *Compare* GR at 15 *with* Br. at 46-50.   Thus, Mr. Fields' grounds for the grant of a COA should be considered unopposed, and the Court should grant Mr. Fields a COA.

## IV.    MR. FIELDS' MOTION FOR RECONSIDERATION OF THE DENIAL OF HIS MOTION FOR LEAVE TO COMPEL PRODUCTION OF PHYSICAL/BIOLOGICAL EVIDENCE SHOULD BE GRANTED

Mr. Fields moved this Court to reconsider its Order denying access to evidence seized and for possible DNA testing. *See* DNA Reconsideration Motion at 1.   Mr. Fields established facts supporting the relevance of, and his right to, DNA evidence to this case. *Id.* at 4-7.  Mr. Fields has also represented that he will pay for the DNA testing if the Court grants his motion. *Id.* at 3.  Mr. Fields further asserted that reconsideration of the Court's wholesale denial of his DNA Motion was warranted because the denial worked a manifest injustice, due to the reasonable scope of the testing, his offer to pay for all expenses, and the fatal consequences facing Mr. Fields if such potentially exonerative relief is not granted.  Mr. Fields seeks DNA testing either as discovery in support of his § 2255 Motion or pursuant to the Innocence Protection Act (18 U.S.C. § 3600) ("IPA"). *Id.* at 4-5.

The gravamen of the Government's Response ostensibly asserts that because a jury found Mr. Fields guilty, he cannot make a sufficient showing to warrant DNA testing.  GR at 16.  Under this standard, no post-conviction petitioner would ever be entitled to DNA testing. Mr. Fields seeks access to DNA evidence arguing that it will prove his innocence, thereby exposing the faulty foundation upon which the Government secured his conviction.  If the Government truly is convinced that Mr. Fields is guilty, the Government should welcome DNA testing, rather than oppose it.  Mr. Fields seeks to locate and test biological material recovered from the scene of the murder for the first time.  The necessity for a meaningful opportunity to obtain post-conviction DNA testing should not be in dispute.

The Supreme Court observed that DNA evidence can be of "central importance" to post-conviction litigation. *House v. Bell*, 547 U.S. 518, 540 (2006) (finding that DNA evidence that casts doubt on identity likewise casts doubt on motive, and thus the facts the jury would have considered when determining sentencing would have been altered). DNA testing has revolutionized our ability to solve crimes accurately, convict the guilty, and exonerate the innocent, further improving the criminal justice system's capacity to identify and rectify wrongful convictions. It has provided scientific proof that our system convicts and sentences innocent people and that wrongful convictions are not isolated or rare events. Most importantly, DNA testing has opened a window into wrongful convictions to permit study of the causes and propose remedies to minimize the chances of convicting additional innocent people. In cases in which DNA exonerations occur—like the case here—the records almost invariably include disputed evidence of one or more of the following factors: mistaken eyewitness identifications, false confessions, false testimony by informant witnesses, ineffective defense counsel, police misconduct, and prosecutorial misconduct. *See, e.g.*, § 2255 Motion at 124-33. DNA tests routinely prove the perpetrator of a homicide, and when conducted post-trial, DNA tests can undermine evidence previously thought to be convincing or overwhelming. *See United States v. McDonald*, 641 F.3d 596, 605 (4th Cir. 2011) (federal capital defendant convicted for 1970 murders of his pregnant wife and their two young daughters granted relief based on DNA testing of hair lodged under daughter's fingernail establishing that his daughter Kristen defended herself against a separate attacker—not the wrongfully convicted defendant). There can be no reasonable argument that the DNA should have remained untested.

The IPA mandates that a court must order DNA testing if the court finds that the proposed DNA testing may produce new evidence raising a reasonable probability that the applicant did not commit the offense. *See* 18 U.S.C. § 3600(a)(8)(A)-(B). The IPA requires a

district court to make a reasonable probability determination akin to that conducted under *Brady v. Maryland,* 373 U.S. 83 (1963). *See* 18 U.S.C. § 3600(a)(8)(B). A defendant's due process rights are violated under *Brady* if evidence suppressed by the government is both "favorable to an accused" and "material" to guilt or punishment. 373 U.S. at 87. "'Evidence is material [under *Brady*] only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.'" *Pennsylvania v. Ritchie*, 480 U.S. 39, 57 (1987) (citation omitted).

Similarly, an applicant is entitled to DNA testing under the IPA if he can show that new evidence "raise[s] a reasonable probability that the applicant did not commit the offense." 18 U.S.C. § 3600(a)(8)(B). In essence, the IPA requires a trial court to conduct a materiality assessment. Under case law, "the question of materiality and the possible effect of the withheld evidence on the verdict[] is a mixed question of fact and law." *Bowen v. Maynard*, 799 F.2d 593, 610 (10th Cir. 1986). Moreover, Rule 6 of the Federal Rules of Procedure governing *Habeas Corpus* § 2255 cases states: "Leave of Court Required. A judge may, for good cause, authorize a party to conduct discovery under the Federal Rules of Civil Procedure" or in accordance with the practices and principles of law. Rule 6(a), Fed. R. Governing Section 2254 and 2255 Cases.

Mr. Fields easily satisfies the IPA's criteria:.

- First, only currently incarcerated felons, such as Mr. Fields, including those sentenced to death, may request DNA testing. 18 U.S.C. § 3600(a).

- Second, Mr. Fields has asserted that he is actually innocent. 18 U.S.C. § 3600(a)(1); *see* § 2255 Motion at 124.

- Third, Mr. Fields' motion for testing is made to this Court, the trial court "that entered the judgment of conviction." 18 U.S.C. § 3600(a).

- Fourth, the chain of custody attributable to the biological evidence at issue is intact, "to ensure that [the evidence to be tested] has not been

-41-

substituted, contaminated, tampered with, replaced, or altered in any [material] respect . . . ."  18 U.S.C. § 3600(a)(4).

- Fifth, testing is precluded where the identity of the perpetrator was not an issue at trial—here, the identity of the killer was the sole issue at trial.  18 U.S.C. § 3600(a)(7).

- Sixth, Mr. Fields asserts that the physical evidence to be tested must be material to the issue of the perpetrator's identity.  18 U.S.C. § 3600(a)(8).  Biological material found on the victim's body when it was recovered is undeniably material to the identity of her killer.  However, if the Government is concerned about the testing of biological material that is not material, then this Court should permit Mr. Fields to examine the seized evidence for the presence of biological material with leave to later ask this Court for permission to conduct DNA tests.

- Seventh, Mr. Fields has asserted and the Court should find that DNA test results may "raise a reasonable probability" that the applicant is innocent of the charged offense.  18 U.S.C. § 3600(a)(6)(B), (8)(B); *see Richardson v. Superior Ct.*, 183 P.3d 1199, 1205 (Cal. 2008) (*citing Strickland v. Washington*, 466 U.S. 668, 694 (1984), and holding that "reasonable probability" in this context refers to "a reasonable chance and not merely an abstract possibility [] that the defendant would have obtained a more favorable result [at trial]"); *but see Anderson v. Delaware*, 831 A.2d 858, 866-67 & nn.17, 21 (Del. 2003) (noting that some states have adopted more lenient standards than "reasonable probability").  This criterion ensures that access to evidence after trial is no greater than access to evidence before trial. *Kyles v. Whitley*, 514 U.S. 419, 434 (1995).  If Mr. Fields, through counsel, had sought DNA testing prior to trial, such a motion would obviously be granted.

- Eighth, DNA testing may occur only if no testing was conducted previously, or if improved testing procedures have become available.  18 U.S.C. § 3600(a)(3).  The statute resolves questions of notice, § 3600(b), selection of laboratory, 18 U.S.C. § 3600(c)(1)-(2), testing technology employed, 18 U.S.C. § 3600(a)(5), payment of costs, 18 U.S.C. § 3600(c)(3), and disclosure of results, 18 U.S.C. § 3600(e).  Mr. Fields seeks to test evidence for the first time.

Because Mr. Fields satisfies the IPA standards, this Court should grant his motion on these grounds alone.

Moreover, any concerns that the Government or the Court may have with DNA testing can be easily eliminated.  Mr. Fields has already stated his intent to pay for any forensic

examination DNA testing, eliminating any concern that this testing will cost taxpayers. *See* DNA Reconsideration Motion at 3; DNA Motion at 11. Mr. Fields will also identify only potentially relevant evidence and will agree to appropriate chain-of-custody stipulations and reasonable restrictions on the examination and testing of those items. If the Government is instead concerned about the qualifications or integrity of the scientists conducting the tests, then testing ordered under the IPA removes those concerns. Accordingly, the Court should reconsider the Order and direct the Government to permit Mr. Fields to examine and test the evidence seized in the case.

## V.    MR. FIELDS' MOTION FOR RECONSIDERATION OF HIS DISCOVERY MOTION SHOULD BE GRANTED

Mr. Fields' Discovery Reconsideration Motion established that the Court erred in its denying his request for discovery. Mr. Fields' Discovery Motion demonstrated his entitlement to narrowly tailored discovery that would directly substantiate his § 2255 claims, itemizing which claim or claims would be supported for each discovery request. *See generally* Discovery Reconsideration Motion at 4-6; Discovery Motion at 2-8; *see also Bracy v. Gramley*, 520 U.S. 899, 908-09 (1997) (ordering discovery on claims and facts which "'may, if the facts are fully developed, be able to demonstrate that he is [] entitled to relief'") (citation omitted). Mr. Fields' Discovery Reconsideration Motion further directed the Court's attention to misapplications and misinterpretations of law constituting clear legal error and manifest injustice. Discovery Reconsideration Motion at 8-10.

In response to Mr. Fields' Discovery Reconsideration Motion, the Government does not seriously dispute the merits of Mr. Fields' request for discovery. Rather, the Government summarily claims that Mr. Fields "has failed to demonstrate that any of his requests will yield evidence to support any grounds for his relief." GR at 15. To the contrary, Mr. Fields

has amply demonstrated that his discovery requests are narrowly drawn to support "specific allegations," and are likely to yield evidence which would support those claims for relief. *See Reed*, 504 F.3d at 473 (*citing Bracy*, 520 U.S. at 908-09); Discovery Reconsideration Motion at 4-6; Discovery Motion at 2-8. Some of Mr. Fields' specific allegations warranting the grant of discovery include, *inter alia*: (i) the insufficiency of Dr. Stephen Mark's examination; (ii) Mr. Fields' improper exclusion from a chamber conference, which frustrated the fairness of the trial and denied Mr. Fields his right to defend himself; (iii) evidence pertaining to purported conversations between Mr. Fields and Mr. DeLeon, a Government informant; (iv) Mr. Fields' allegations concerning the Court-imposed stun belt he was forced to wear, including information pertaining directly to the model, its operation at trial and its visibility and impact on jurors at trial; and (v) the Court's *ex parte* discussions with jurors regarding security measures. Discovery Reconsideration Motion at 4-6; Discovery Motion at 2-3, 6-8. Mr. Fields' Discovery Motion and Discovery Reconsideration Motion provided detailed evidence supporting each claim garnered without the benefit of formal discovery. Discovery Reconsideration Motion at 4-6; Discovery Motion at 2-8. The Court did not address any of these allegations specifically in its Order denying discovery and the Government has failed to substantively respond to these grounds. *See generally* Order at 15-16. Thus, the Government has not offered any opposition to Mr. Fields' assertions that the Court's Order denying his discovery requests should be vacated.

Further, the Government concedes, through its failure to substantively respond, that Mr. Fields is entitled to exculpatory material. *Compare* Discovery Reconsideration Motion at 7-8 *with* GR at 15. The Government does not contest its continuing duty to provide exculpatory material post-conviction nor its impact in vindicating *Brady* claims post-conviction. *See Whitlock v. Bruggemann*, 682 F.3d 567, 588 (7th Cir. 2012); *see also Imbler v. Pachtman*, 424 U.S. 409, 427 n.25 (1976); *Thomas v. Goldsmith*, 979 F.2d 746, 749-50 (9th Cir. 1992). The

Government continues to rebuff its legal obligations through its failure to respond as to whether exculpatory materials exist.   The Court's unexplained denial of discovery of exculpatory materials was clear legal error absolving the Government of complying with its continued obligations.   Accordingly, the Court should vacate the Order and grant Mr. Fields the right to exculpatory material.

The Government also concedes, through its failure to substantively respond, that the Court's denial of the Discovery Motion was clear legal error and worked a manifest injustice on Mr. Fields.   Mr. Fields' Discovery Reconsideration Motion established that the grant of reconsideration is warranted because the Court's wholesale denial of Mr. Fields' specific, itemized discovery requests was clear legal error under the standards of *Bracy* and *Harris*, and Fifth Circuit precedent in *Perillo*, *Goodwin*, and *Reed*.   *See* Discovery Reconsideration Motion at 8-10; *see also In re Transtexas Gas Corp.*, 303 F.3d 571, 581 (5th Cir. 2002) (a motion for reconsideration "is properly invoked 'to correct manifest errors of law'") (citation omitted).   As the Discovery Reconsideration Motion provided, Mr. Fields' identification of sources of key information and the Court's summary denial of exculpatory material, all of which may substantiate Mr. Fields' well-pled claims, and in some cases refute the Court's reliance solely on its own recollection of events rather than substantive evidence, constitute a manifest error of law. *See* Discovery Reconsideration Motion at 9 (*citing* Court's reliance on its own memory of an off-the-record chamber conference and the substance of *ex parte* communications with jurors). Accordingly, Mr. Fields' Discovery Reconsideration Motion should be granted in its entirety.

## VI.    MR. FIELDS' MOTION FOR RECONSIDERATION OF THE DENIAL OF HIS MOTION FOR AUTHORIZATION OF FUNDS FOR EXPERT ASSISTANCE SHOULD BE GRANTED

Mr. Fields established that the Court erred in its decision to deny Mr. Fields' Expert Reconsideration Motion.  *See generally* Expert Reconsideration Motion at 2-8.  Mr. Fields demonstrated that although Dr. Woods' declaration is persuasive and provides critical analysis pertaining to Mr. Fields' health symptoms and behavior, it did not provide a full assessment of Mr. Fields' trauma history and other history of mental disease and associated symptoms.  *Id.* at 2-3.  Mr. Fields established that a trauma expert is "reasonably necessary" here and should be authorized under 18 U.S.C. § 3599 to (i) ensure a competent and thorough investigation is conducted (Expert Reconsideration Motion, Ex. A (Wayland Decl.) ¶¶ 12, 13 [Docket No. 338-1]); (ii) detail the symptoms of trauma often mistaken for anti-social personality disorder; and (iii) add significant facts that are material to this case, including balance and context to Dr. Woods' opinion.  Expert Reconsideration Motion at 4-6.  Mr. Fields further established that trial counsel's mitigation investigation and penalty phase presentation was deficient, and a trauma expert is necessary to rectify these errors.  *Id.* at 3-4.

The Government's non-substantive response merely reiterates the Order and claims such an expert is not necessary here.  The Government is wrong.  A trauma expert is critically important to clarify disputed factual allegations asserted in Mr. Fields' § 2255 Motion.  *See* Expert Reconsideration Motion at 6.  These factual allegations include Mr. Fields' ineffective assistance of counsel claims pertaining to deficiencies in the development and presentation of evidence pertaining to his PTSD, mental illness, and the traumatic events in his life, including witnessing the death of close relatives and friends.  *See* Expert Reconsideration Motion, Ex. B (Chart) [Docket No. 338].  After reviewing newly discovered evidence post-conviction, Mr. Fields' mitigation specialist confirmed that "this was exactly the type of

information that I was attempting to uncover." Appendix H, Second Affidavit of Jane Bye ("Second Bye Affidavit") ¶ 6. Granting funds for a trauma expert permits Mr. Fields the procedural right to develop critical mitigation evidence—overlooked, underdeveloped, and not introduced at trial—and provides Mr. Fields the procedural right to fully develop and clarify these claims.

The Governments' Response does not address these grounds and completely ignores the numerous factual disputes at issue, including Mr. Fields' clear mental illness and PTSD, as well as a trauma expert's role in developing critical mitigating evidence not presented at trial. § 2255 Motion at 23, 27, 57, 221-23; *see also Williams v. Taylor*, 529 U.S. 362, 370-71 (2000). With respect to Dr. Woods, the Government concedes that he specializes only in "psychiatry and neuropsychiatry" (GR at 16), not in the "[i]nvestigation of traumatic events and other highly sensitive life experiences[.]" Expert Reconsideration Motion at 5. As Mr. Fields established, a trauma expert would aid in the understanding of Dr. Woods' conclusions, and to the extent that the Court did not consider or credit Dr. Woods' conclusions, Mr. Fields should be permitted the opportunity to provide distinct analysis in support of his claims. Because of the unique training and perspective of a trauma expert and the dispositive impact that such an expert could have on a capital punishment case, Dr. Woods cannot substitute for a properly qualified trauma expert. *See* Expert Reconsideration Motion, Ex. A (Wayland Decl.). Accordingly, the Order should be reconsidered to overcome the manifest injustice thrust on Mr. Fields by receiving capital punishment despite overwhelming evidence of unexplored and undeveloped mitigation evidence arising from his § 2255 claims. *See Manning*, 2012 WL 640056, at *3.

## VII.    MR. FIELDS' ADDITIONAL GROUNDS FOR RELIEF SHOULD BE GRANTED

Although Mr. Fields' Rule 59(e) Motion did not directly address his request for a new trial as asserted in his § 2255 Motion, the Government's Response nonetheless asserts that his motion for a new trial should be denied.  *See* GR at 15.  Mr. Fields respectfully asserts that discovery and an evidentiary hearing should be granted to make determinations essential to proving the Claims in his § 2555 Motion, including his request for a  new trial.

The Government further contends that the Court should deny Mr. Fields' request for the Court's recusal and reassignment of this matter.  GR at 16.  Mr. Fields' Rule 59(e) Motion established that the Court's knowledge would likely cause the Court to be a material witness in this proceeding and that the Court's ""'"partiality might reasonably be questioned" by a reasonable observer'" in deciding his Rule 59(e) Motion.  Br. at 51 (*quoting In re Faulkner*, 856 F.2d 716, 721 (5th Cir. 1988)).  Mr. Fields based his request on the Court's reliance on extra-record evidence, derived solely from the Court's recollection, including the substance of off-the-record bench conferences held during trial, improper security measures employed at trial, and the Court's observations and/or direct communications with jurors outside of the trial proceedings.  *See* Br. at 52-53; *see supra* Sections II.2, 4, 12, 14.  Mr. Fields also asserted that the Court's failure to recuse itself will violate Mr. Fields' due process rights.  *See* Br. at 53-54; *see also United States v. Couch*, 896 F.2d 78, 82 (5th Cir. 1990) (Due process "requires a judge to step aside when a reasonable judge would find it necessary to do so").

In Response, the Government seems to be unaware that the Court denied Mr. Fields' initial request for recusal in its Order requiring the Government to respond and permitting Mr. Fields to submit this Reply.  *See* Order at 5.  However, in light of the Government's limited response to the Rule 59(e) Motion and Mr. Fields' assertion of facts warranting the Court's

recusal and reassignment of this matter, to the extent that Mr. Fields' Rule 59(e) Motion and this Reply can be construed to request further consideration of his motion for recusal and reconsideration, Mr. Fields respectfully asserts that the Motion should be granted.

**CONCLUSION**

The need to ensure constitutionally reliable decisions in the context of death penalty cases is undisputable, and weighs in favor of granting a motion to alter or amend a judgment where, as here, there is any possibility that an incorrect legal standard has been applied. As set forth above, and has been consistently set forth in Mr. Fields' Rule 59(e) Motion and § 2255 Motion, Mr. Fields' conviction and death sentence result from a series of fundamental failures in the systems designed to protect his constitutional rights and the integrity of the federal judicial system. Mr. Fields' conviction and death sentence are not the result of a constitutionally valid trial. Mr. Fields respectfully submits that this Court applied an incorrect standard when it substantively analyzed and resolved disputed factual issues without the benefit of discovery or an evidentiary hearing. Unless this Court vacates, alters or amends the Order, and grants Mr. Fields a new trial, or alternatively discovery and an evidentiary hearing, this culmination of systematic failures will undermine the integrity and uniformity of the federal justice system and cost Mr. Fields his life. For the forgoing reasons, Mr. Fields respectfully requests that the Court grant his Rule 59(e) Motion and other Reconsideration Motions. Should the Court not grant Mr. Fields relief from his convictions and sentence, then Mr. Fields requests that the Court award a Certificate of Appealability to all the claims set forth in his § 2255 Motion.

Dated:      March 18, 2013

Respectfully Submitted,


/s/ Jeffrey E. Ellis

Jeffrey Ellis
Attorney at Law
Law Office of Alsept & Ellis
621 SW Morrison St., Ste 1025
Portland, OR  97205
Tel:  (206) 218-7076
Email:  JeffreyErwinEllis@gmail.com

Peter J. Isajiw
Admitted *Pro Hac Vice*
Cadwalader, Wickersham & Taft, LLP
One World Financial Center
New York, NY  10281
Tel:  212-504-6000
Fax:  212-504-6666
Email:  Peter.Isajiw@cwt.com

*Attorneys for Mr. Fields*

## <u>CERTIFICATE OF SERVICE</u>

I, Jeffrey E. Ellis, hereby certify that on March 18, 2013, I electronically filed the

foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of

such filing to the following attorneys of record in the above-entitled case:

**Gregory S. Gloff**
Assistant United States Attorney
800 Franklin Ave., Ste 280
Waco, TX  76701
Email:  Greg.Gloff@usdoj.gov


/s/ Jeffrey E. Ellis
Jeffrey E. Ellis
Attorney at Law