United States District Court
Western District of Texas
Waco Division

United States of America,
    Plaintiff,

v.

(1) Sherman Lamont Fields,
    Defendant.

No. 6:01-CR-164-ADA

**Government's Sentencing Memorandum**

This Court is set to resentence Sherman Fields on five counts of conviction arising from a crime spree that included his escape from federal custody to murder his girlfriend and a carjacking during which he brandished a weapon. This Court has the authority to impose a life sentence and should do so. The parties have agreed that a life sentence is appropriate, and the statutory sentencing factors support a life sentence. *See* 18 U.S.C. § 3553(a); Joint Advisory 9-10, ECF No. 409.

**Background**

**I.     Fields escaped from federal custody to murder his former girlfriend.**

The series of crimes for which Fields will be resentenced began with his escape from federal custody in November 2001. *United States v. Fields*, 483 F.3d 313, 323-24 (5th Cir. 2007); PSR ¶¶ 8-49. Fields had been in custody on several firearms charges: possession of a firearm by a convicted felon, possession of ammunition by a convicted felon, and possession of a firearm with an obliterated serial number. PSR ¶¶ 8, 98.[1]

While in custody, Fields became angry that one of his girlfriends, Suncerey "Shining Star" Coleman, was seeing other men. *Fields*, 483 F.3d at 323. One cellmate described him as "obsessive and crazy" about Coleman and testified about how Fields told her that he would "spray" (shoot) and "bust a cap" in her for seeing other men. PSR ¶ 22; Trial Tr. vol. 10, 1222-24, 1226, ECF No. 242. Another cellmate recounted how Fields became upset during a phone

---

[1] He eventually pleaded guilty to those charges and was sentenced to a total prison term of 151 months. *Id.* ¶ 98.

call with Coleman and said he would "escape and get out and smoke her" (shoot her). PSR ¶ 23; Trial Tr. vol. 10, 1206-07, 1210, ECF No. 242. In the week leading up to his escape, Fields used a pay phone to call Coleman over 200 times. Trial Tr. vol. 12, 1864, ECF No. 244.[2]

Fields escaped using a fire-escape key that a correctional officer gave him in exchange for Fields's promise to pay $5,000. PSR ¶¶ 9-10.[3] Fields met an accomplice who provided him with a motel room, a red GrandAm, and a handgun. *Id.* ¶ 30; Trial Tr. vol. 13, 1815, ECF No 243. Fields told this accomplice that he was going to "fuck Shining Star off." PSR ¶ 32.

Hours after escaping, Fields found Coleman, who was with her newborn baby in the neonatal intensive-care unit at Hillcrest Baptist Medical Center. *Id.* ¶¶ 11-12, 34, 47. Coleman left the hospital with Fields. *Id.* ¶¶ 12, 47. Fields would later tell another inmate that, although he had escaped to kill her, he persuaded her that everything was fine. *Id.* ¶ 48. She never returned to pick up her baby. *Id.* ¶¶ 13, 47.

Instead, according to Fields's own admissions, he drove Coleman to a remote area. *Id.* ¶¶ 38, 48-49. Although Fields gave various accounts of his sexual contact with Coleman there, he admitted at least once that he raped her. PSR ¶ 17; Trial Tr. vol. 10, 1426-27, ECF No. 242. He later recounted how Coleman begged him to take her back to the hospital. Trial Tr. vol.12, 1773-74, ECF No. 244. He also told several different people—never showing emotion—that when he thought about Coleman having a baby with someone else, he shot her. PSR ¶ 17; Trial Tr. vol. 10, 1380-81, 1429, ECF No. 242; Trial Tr. vol. 11, 1599-1600, ECF No. 243. He explained that after he shot her in the head, he heard her moaning and blood bubbling in her throat, so he decided to shoot her again. PSR ¶¶ 38, 48-49. Fields told another inmate that he had showed Coleman "six gun love." Trial Tr. vol. 11, 1480, ECF No. 243.

---

[2] The trial transcript is available under docket entries 233 through 250. The page numbers listed appear in the upper right-hand corner of the trial transcript and correspond to the page numbers of the appellate record from Fields's direct appeal of his conviction.

[3] The correctional officer was sentenced to a four-year prison term for his role. *Id.* at 2.

**Gov't Sentencing Mem.**                                                                              **2**

Fields dragged Coleman by her feet to a wooded area and left her. PSR ¶¶ 25, 38; Trial Tr. vol. 12, 1773-74, ECF No. 244. Coleman's body was found weeks later. PSR ¶ 25. She had been "subject[ed] to animal predation." *Fields*, 483 F.3d at 354. The bullets recovered from her body were consistent a handgun obtained by one of Fields's accomplices. PSR ¶¶ 30, 42-43; Trial Tr. 12, 1766-67, 1815, ECF No. 244.

**II.      Fields attempted to evade capture, including by carjacking a different vehicle.**

After the murder, Fields disposed of anything linking him to it. He went back to the motel room, changed, and asked an accomplice to dispose of the clothes he had been wearing. PSR ¶ 33; Trial Tr. vol. 11, 1601-03, ECF No. 243. He explained to the accomplice that he had killed Coleman and that blood had spattered on him. Trial Tr. vol. 11, 1601-03, ECF No. 243. He had the handgun he used to murder Coleman thrown into a river and obtained another one—a Ruger .22-caliber. Trial Tr. vol. 12, 1766-67, 1769, ECF No. 244; PSR ¶¶ 39-40. Another link remained, however: He had been seen in the red Grand Am leaving the hospital with Coleman. PSR ¶ 12.

About a week after the murder, an employee of Hillcrest Memorial Hospital parked in an employee lot there and was getting out of her car when Fields approached her. *Id.* ¶¶ 18-20. Fields told her to get back in, but she resisted. *Id.* ¶ 18. He grabbed her throat with his left hand. *Id.* With his right, he pulled out a handgun. *Id.* As she tried to push away, Fields yelled at her to give him the car. *Id.* She was able to wrest herself free and ran toward the hospital. *Id.* Fields drove away in her car. *Id.*

Fields remained at large for nine more days. *Id.* ¶¶ 18, 26-29. Late one night, he started beating on the back door of an apartment and pushed inside, saying "the Feds" were after him and were all over the place. *Id.* ¶ 26-27. One of the apartment's occupants was able to leave and contact authorities, who closed in and apprehended Fields. *Id.* ¶ 26. Inside the apartment, authorities found the Ruger pistol and keys to the carjacking victim's vehicle. *Id.* ¶ 29.

**Gov't Sentencing Mem.**                                                                                      **3**

**III.    A jury convicted Fields and found beyond a reasonable doubt that Fields murdered Coleman and would present a continuing threat.**

A jury convicted Fields on seven counts, five of which are involved in the upcoming resentencing. The following chart shows the nature of each charge and the prison term imposed by Judge Smith at the original sentencing:

| Count | Offense | Original Sentence |
|---|---|---|
| One | conspiring to escape from federal custody and to possess contraband in prison, 18 U.S.C. §§ 371, 751, 1791 | 60 months (concurrent with Counts Two, Four, and Six) |
| Two | escaping from federal custody, 18 U.S.C. § 751 | 60 months (concurrent with Counts One, Four, and Six) |
| Three (vacated) | using and carrying a firearm during and in relation to escape from federal custody and conspiracy to escape from federal custody, both crimes of violence, resulting in the intentional murder of Coleman, 18 U.S.C. § 924(c), (j) | death |
| Four | carjacking, 18 U.S.C. § 2119 | 115 months (concurrent with Counts One, Two, and Six) |
| Five | using, carrying, and brandishing a firearm during and in relation to carjacking, a crime of violence, 18 U.S.C. § 924(c) | 25 years (consecutive to Counts One, Two, Four, Six, and Seven) |
| Six | unlawful firearm (Ruger .22-caliber) possession by a felon, 18 U.S.C. § 922(g) | 115 months (concurrent with Counts Two, Four, and Six) |
| Seven (vacated) | using and carrying a firearm (Ruger .22-caliber) during and in relation to escape from federal custody, a crime of violence, 18 U.S.C. § 924(c) | 25 years (consecutive to Counts One, Two, Four, and Six) |

*Fields*, 483 F.3d at 324; 2d Superseding Indictment 1-13, ECF No. 57; Judgment 2, ECF No. 230. These prison terms ran consecutive to Fields's separate sentence for the charges he had been in custody for when he escaped. Judgment 2, ECF No. 230; PSR ¶ 98.

Before sentencing, the court had conducted a separate penalty phase to determine whether the jury would recommend the death penalty, as it ultimately did. *Fields*, 483 F.3d at 324. During the penalty phase, the jury found beyond a reasonable doubt that Fields intentionally killed Coleman. Special Findings Form 1-2, ECF No. 207. The jury also found beyond a reasonable doubt that Fields

- had participated in attempted murders and other serious acts of violence in the past;
- would likely commit serious acts of violence in the future that would be a continuing and serious threat to the lives and safety of others;
- engaged in a continuous pattern of violent conduct;
- threatened others with violence;
- demonstrated low rehabilitative potential; and
- demonstrated lack of remorse.

*Id.* at 6-7.

Fields has made many attempts to have his convictions and sentences vacated. *See* Joint Advisory 3-4, ECF No. 409. His most recent attempt has resulted in the convictions and sentences on two counts under § 924(c), Counts Three and Seven, being vacated. *See* Order 1, ECF No. 412. He now faces resentencing on the remaining counts. *Id.* at 2.

### Argument

The parties have agreed that resentencing on all remaining counts is necessary. *See* Joint Advisory 9, ECF No. 409; *see also United States v. Davis*, 139 S. Ct. 2319, 2336 (2019); *United States v. Reece*, 938 F.3d 630, 636 (5th Cir. 2019); *United States v. Benbrook*, 119 F.3d 338, 339-40 (5th Cir. 1997). The parties have also agreed that a life sentence is appropriate on Count Five, the § 924(c) conviction for using and carrying a firearm during the carjacking. *See* Joint Advisory 9-10, ECF No. 409. Not only does this Court have the authority and discretion to impose a life sentence on Count Five, but the statutory sentencing factors support a life sentence on that count. For the same reasons, the statutory sentencing factors support the most serious possible penalties on the other remaining counts.

**Gov't Sentencing Mem.**                                                                                           **5**

**I.    In resentencing Fields, this Court should consider his criminal conduct in its entirety, including his murder of Coleman.**

Under 18 U.S.C. § 3661, "[n]o limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence." This statute "codifies the longstanding principle that sentencing courts have broad discretion to consider various kinds of information." *United States v. Watts*, 519 U.S. 148, 151 (1997). A sentencing court may therefore consider criminal behavior "even if no conviction resulted from that behavior." *Witte v. United States*, 515 U.S. 389, 397 (1995). A sentencing court may even consider criminal conduct of which the defendant was acquitted, so long as that conduct has been proved by a preponderance of the evidence. *Watts*, 519 U.S. at 157.

When that criminal conduct is sufficiently severe, it will support a substantial upward variance in a defendant's sentence. *See, e.g.*, *United States v. Hebert*, 813 F.3d 551, 561-63 (5th Cir. 2015). For example, in *Hebert*, the defendant was convicted of bank fraud, aggravated identity theft, and a civil-rights violation after he obtained and used a victim's bank information. *Id.* at 554-56. At sentencing, the district court found by a preponderance of the evidence that the defendant had murdered the victim. *Id.* at 557-59. It imposed a 92-year sentence. *Id.* at 558-59. The Fifth Circuit upheld the sentence as a reasonable upward variance from the six- to seven-year sentence that one potential guidelines calculation would have recommended. *Id.* at 561-63.[4] The Fifth Circuit explained that the district court had justified the sentence and articulated fact-specific reasons connected to the statutory sentencing factors. *Id.* at 563.

Just as the district court in *Hebert* considered the murder in that case, this Court can and should consider Fields's murder of Coleman in sentencing him on the remaining counts. The evidence at trial, the evidence presented in the presentence report, and the jury's verdict all support

---

[4] An alternative guideline calculation resulted in a recommendation of life imprisonment, but the Fifth Circuit upheld the sentence as a variance even assuming the much lower recommendation was correct. *Id.* at 556, 561-63.

**Gov't Sentencing Mem.**                                                                 **6**

a finding that Fields escaped to murder Coleman, succeeded in doing so, and then carjacked another woman as part of his effort to evade capture. *See supra* pp. 1-3.

## II. The sentencing factors in 18 U.S.C. § 3553(a) support a life sentence.

To justify a substantial upward variance, a district court "must more thoroughly articulate its reasons" than when it imposes a sentence recommended by the guidelines. *Hebert*, 813 F.3d at 562. Those reasons should be consistent with the sentencing factors in 18 U.S.C. § 3553(a). *Id.* The facts in this case, viewed in light of the § 3553(a) sentencing factors, support a life sentence on Count Five and statutory-maximum sentences on the other remaining counts.

### A. The nature, circumstances, and seriousness of the offense and the need to provide just punishment and promote respect for the law, § 3553(a)(1) and (2)(A).

The remaining counts of conviction stem from a crime spree centered on murder. Fields escaped to murder Coleman. *See supra* pp. 1-3. He committed the murder during escape, a continuing offense, *see United States v. Bailey*, 444 U.S. 394, 413 (1980). After murdering Coleman, he replaced the vehicle he used to transport Coleman by obtaining a handgun and using it to carjack another vehicle. PSR ¶¶ 12, 18, 39-40. The nature, circumstances, and seriousness of Fields's crimes therefore support the most serious available punishment.

### B. The history and characteristics of the defendant, § 3553(a)(1).

Fields's history and characteristics support imposing the most serious available punishment. Fields has a history of violence and gun crime. *Id.* ¶¶ 97-98. He attempted to murder a man in a drive-by shooting in 1991. *Id.* ¶ 97. About a year after completing his sentence for that attempted murder, he was back in detention for unlawful firearm and ammunition possession— until he escaped to murder Coleman. *Id.* ¶¶ 97-98. Not only did he use guns to murder Coleman and to commit carjacking, but the evidence at trial showed that he considered murdering a female accomplice who helped him after he escaped. Trial Tr. vol. 11, 1581-83, 1666-67, ECF No. 243; Trial Tr. vol. 12, 1774, ECF No. 244. All this evidence supported the jury's finding beyond a reasonable doubt that Fields had engaged in a continuous pattern of violent conduct and threatened others with violence. Special Findings Form 6-7, ECF No. 207.

**Gov't Sentencing Mem.**                                                                 **7**

Fields also has a record in prison of violence and other misconduct. He has been disciplined for threatening bodily harm, assault, possessing a dangerous weapon, disruptive conduct, refusing to obey an order, and engaging in sexual acts. PSR ¶¶ 113-19. In several instances, he has directed his misconduct at prison staff. *Id.* ¶¶ 114, 118, 119.

> **C.    The need to afford adequate deterrence and to protect the public, § 3553(a)(2)(B)-(C).**

The most serious available punishment will best deter Fields and protect the public. Fields's pattern of violent crime and prison misconduct supports the jury's finding that he would be likely to commit serious acts of violence in the future and has demonstrated low rehabilitative potential. Special Findings Form 6-7, ECF No. 207. Fields has never shown remorse, *see id.*[5]

> **D.    The kinds of sentences available, the sentencing range established by the guidelines, and the need to avoid unwarranted sentence disparities, § 3553(a)(4)-(6).**

The presentence report accurately explains that the maximum term on Count Five is life. PSR ¶ 140; *United States v. Sias*, 227 F.3d 244, 247 (5th Cir. 2000). The parties have agreed that the statutory minimum term on Count Five is no longer twenty-five years because without the convictions recently vacated, Count Five no longer qualifies as a second or successive conviction under § 924(c). *See* 18 U.S.C. § 924(c)(1)(C) (2000); Joint Advisory 9, ECF No. 409. Instead, because the jury convicted Fields of brandishing the firearm, the statutory minimum is a consecutive term of seven years. 18 U.S.C. § 924(c)(1)(A)(ii); 2d Superseding Indictment 11, ECF No. 57. Although the guideline sentence would therefore also be seven years, for all the reasons discussed above, the other sentencing factors support life imprisonment on this count. USSG

---

[5] For many of the reasons discussed above, a life sentence would be consistent with the need to provide Fields with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner, *see* § 3553(a)(2)(D).

§ 2K2.4; *cf. id.* cmt. n.2(B) (recognizing that a greater sentence may be appropriate). On the other counts, the most substantial punishment available is warranted for the same reasons.[6]

An upward variance would not create any "unwarranted sentence disparities among defendants with similar records," 18 U.S.C. § 3553(a)(6). Fields's escape and use of a firearm in a carjacking warrant the most serious possible punishment and therefore justify a sentence substantially longer than defendants whose escapes and carjackings are not inextricably bound up with murder.

### E.    The need to provide restitution to victims, § 3553(a)(7).

A life sentence would be consistent with the need to provide restitution to Fields's victims. Coleman's family asked for funeral expenses and a headstone. PSR ¶ 60. Fields has begun paying that restitution while in prison but still owes over $5,000. *Id.*

### III.    In imposing a life sentence, this Court should state its reasons with specificity.

A court should explain why the § 3553(a) sentencing factors support the sentence it chooses, particularly if that sentence represents an upward variance. *See* 18 U.S.C. § 3553(c)(2); *Hebert*, 813 F.3d at 562. In addition, a court can ensure in announcing the sentence that an appellate court will understand that any procedural error, such as a miscalculation of the guidelines range, would have been harmless. *See United States v. Redmond*, 965 F.3d 416, 420 (5th Cir. 2020), *cert. denied*, No. 20-6631, 2021 WL 666598 (U.S. Feb. 22, 2021). An appeals court will deem a procedural error harmless if it is convinced that the sentencing court (1) would have imposed the same sentence if it had not made the error (2) for the same reasons it gave at the sentencing. *Id.*; *Hebert*, 813 F.3d at 562. Therefore, if this Court determines after considering all the § 3553(a) sentencing factors that it would have imposed the same sentence even if the guidelines

---

[6] The government is assessing the presentence report's guidelines calculation and will submit objections by April 1, 2021. Because the statutory sentencing factors support an upward variance and the parties agree that a life sentence is appropriate, this Court should consider the correctly calculated guideline range but not treat it as dispositive.

**Gov't Sentencing Mem.**                                                                 **9**

calculation were different, then this Court may choose to state that explicitly. *See, e.g.*, *United States v. Leontaritis*, 977 F.3d 447, 452 (5th Cir. 2020).

### Conclusion

For all these reasons, this Court should sentence Fields to the most substantial punishment available on Counts One, Two, Four, and Six, and to a consecutive life sentence on Count Five.

Respectfully submitted,

Ashley C. Hoff
United States Attorney

By:    */s/ Zachary C. Richter*
Zachary C. Richter
Assistant United States Attorney
Texas Bar No. 24041773
903 San Jacinto, Suite 334
Austin, Texas  78701
(512) 916-5858 (phone)
(512) 916-5854 (fax)
Zachary.C.Richter@usdoj.gov

**Gov't Sentencing Mem.**                                                                                     **10**

## Certificate of Service

I certify that on March 31, 2021, I electronically filed this document with the Clerk of Court using the CM/ECF system.

☒   The CM/ECF system will send notification to the following CM/ECF participant(s):

Florence Italia Patti
italia.patti@fd.org

☐   I also certify that I have mailed this document by United States Postal Service to the following non-CM/ECF participant(s):

n.a.

*/s/ Zachary C. Richter*
Zachary C. Richter
Assistant United States Attorney

**Gov't Sentencing Mem.**                                                                        **11**