IN THE UNITED STATES COURT OF APPEALS FOR THE FIFTH CIRCUIT

SHERMAN LAMONT FIELDS



v.

USDC No. 6:01-CR-164-1
No. 25-50368

UNITED STATES OF AMERICA

MOTION FOR A CERTIFICATE OF APPEALABILITY;
MOTION PURSUANT TO THE RELATION BACK DOCTRINE;
AND/OR MOTION PURSUANT TO RULE 60(b)(3) and (d).

Sherman Fields
#15651-180
USP LEE
P.O. Box 305
Jonesville, VA
24263

PARTIES

Sherman Fields
#15651-180
USP LEE
P.O. Box 305
Jonesville, VA
24263
Defendant


Zachary Carl Richter
U.S. Attorney's Office
Western Dist. of Texas
903 San Jacinto, Suite 334
Austin, Texas 78701
(512) 370-1254
Fax (202) 916-5854
Email: Zachary.C.Richter@usdoj.gov
AUSA

i

# TABLE OF CONTENTS

List of Parties . . . i

TABLE OF CONTENTS . . . ii-iii

TABLE OF AUTHORITIES . . . iv-x

JURISDICTION . . . 1

RULE 60(b)(3) and (6) STATEMENT . . . 1

C.O.A. STATEMENT . . . 1-2

RELATION BACK STATEMENT . . . 2-3

CONSTITUTIONAL PROVISIONS INVOLVED . . . 3-4

STATEMENT OF CASE . . . 5-8

REASON(s) FOR GRANTING THE MOTION:

1). Mr. Fields is Actually innocent . . . 8-15

2). Perjury / Suborning Perjury violated Mr. Fields rights . . . 15-18

3). Prosecutorial Misconduct denied Mr. Fields a fair trial . . . 18-19

4). Fraud on the Court and Jury . . . 20-22

5). Vacated Counts of Conviction prejudiced Mr. Fields . . . 22-24

6). Brady violations violated Fields Constitutional Rights . . . 24-29

ii

7). Judicial Bias at trial and on appeal violates the U.S. Constitution...29-37

8). The 5th Circuits refusal to entertain anything Fields file violated the First Amendment right to Petition the government, the Fifth and Fourteenth Amendments Due Process Clause, and Article I, section 9, Clause 2 of the U.S. Constitution...37-42

9). The Antiterrorism and Effective Death Penalty Act is Illegal and Antithetical to the United States Constitution... 42-48

Conclusion ... ... ... 49

# TABLE OF AUTHORITIES

Abu Ali Abdur' Rahman v. Ricky Bell, 154 L.Ed.2d 501, 537 U.S. 88 (2002) ...21-22

Adams v. U.S. ex rel. McCann, 317 U.S. 269, 275 (1942)...32

Allen v. Chicago Transit Auth., 317 F.3d 696, 703 (7th Cir 2003)..20

Andrade v. Chojnacki, 388 F.3d 448 (July 14, 2003)...29

Arizona v. Fulminate, 499 U.S. at 306 (1991)...33

Bank of Nova Scotia v. United States, 487 U.S. 250, 108, S.Ct. 2369, 101 L.Ed.2d 228 (1988)...49

Barefoot v. Estelle, 463 U.S. 880, 893 (1983)...2

Barker v. Wingo, 407 U.S. 514 (1972)...39

Betts v. Brady, 316 U.S. 455, 476 (1942)...33

Boumediene v. Bush, 128 S.Ct. at 2270 (2008)...41

Bracy v. Schomig, 286 F.3d at 410-11...37

Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963)...25

Buck v. Davis, 580 U.S. ___, 137 S.Ct. 759, 773-75 (2017)...1

Chamberlain v. Ericksen, 744 F.2d 628, 630 (8th Cir 1984), cert. denied, 470 U.S. 1008, 84 L.Ed.2d 387, 106 S.Ct. 1368 (1985)..38, 40-41

Chambers v. NASCO, Inc., 501 U.S. 32, 44, 115 L.Ed.2d 27, 111 S.Ct. 2123 (1991)...21

Chapman v. California, 386 U.S. 18, 22, 87 S.Ct. 824, 827, 17 L.Ed.2d 705 (1967)...18, 33

Chicago Tribune Co. v. Bridgestone/Firestone, Inc., 262 F.3d 1304, 1309 (11th Cir 2001)...35

Clark v. Quarterman, 457 F.3d 441, 443 (5th Cir 2006)...35, 36

Cleveland Demolition Co. v. Azcon Scrap Corp., A Div. of Gold Fields Am. Indus., 827 F.2d 984, 986 (4th Cir 1987)...22

Coleman v. Thompson, 501 U.S. 722, 758-62 (1991)...48

County of Sacramento v. Lewis, 523 U.S. 833, 846-847, 118 S.ct. 1708, 140 L.Ed. 2d 1043 (1998) ... 46

Curran v. Delaware, 259 F.2d 707, 712-713 (3d Cir. 1958) ... 16

Darden v. Wainwright, 477 U.S. 168, 91 L.Ed. 2d 144, 106 S.ct. 2464 (1986) ... 19

Donnelly v. Dechristoforo, 416 U.S. 637, 643, 94 S.ct. 1868, 40 L.Ed. 2d 431 (1974) ... 19

Nuest v. Singletary, 967 F.2d 472, 482 (11th Cir. 1992), vacated on other grounds, 507 U.S. 113 S.ct. 1940, 123 L.Ed. 2d 647 (1993) ... 14

Faretta v. California, 422 U.S. at 819-820, 95 S.ct. 2525 (1975) ... 39, 40

Fields v. United States, 552 U.S. 1144 (2008) ... 5

Fields v. United States, 135 S.ct. 2803 (2015) ... 6

Fields v. Warden, 2:16-cv-00418 ... 6

Frederick v. Kirby Tankships, inc., 205 F.3d at 1282 (11th Cir 2000) ... 20

Furman v. Georgia, (1972) 408 U.S. 238, 33 L.Ed. 2d 346, 92 S.ct. 2726 ... 45

Gannett Co. v. DePasquale, 443 U.S. 368, 382, n.10, 99 S.ct. 2898, 61 L.Ed. 2d 608 (1979) ... 39

Gardens v. Stephens, Sup. Ct. # 13-546 (2013), cert. pending (5th Cir. 8/2/13) ... 14

Giglio v. United States, 405, 150, 92 S.ct. 763, 766, 31 L.Ed. 2d 104 (1972) ... 18

Gonzalez v. Crosby, 545 U.S. at 535 ... 1

Gonzalez v. United States, 553 U.S. at 257 (2008) ... 41

Gordon v. Braxton, 780 F.3d 196, 202 (4th Cir. 2015) ... 9, 39

Great Coastal Express, 675 F.2d at 1357 ... 22

Hazel-Atlas Glass Co. v. Hartford-Empire Co., 322 U.S. 238, 88 L.Ed 1250, 64 S.ct. 997 (1944) ... 21

Herrera v. Collins, 506 U.S. 390, 404, 113 S.ct 853, 122 L.Ed. 2d 203 (1993) ... 9

H.K. Porter Co., Inc. v. Goodyear Tire & Rubber Co., 536 F.2d 1115, 1118-19 (6th Cir. 1976) ... 22

House v. Bell, 547 U.S. at 537-38, 126 S.ct. 2064 (2006) ... 10,14

In re Davis, No. CV-409-130 (8/24/2010) ... 14

In re Dorey, 590 B.R. 706 (Aug. 17, 2018) ... 39

In re Genesys Data Techs, Inc., 204 F.3d 124, 130 (4th Cir. 2000) ... 22

Jones v. Hendrix, 599 U.S. ___ (2023) ... 7, 41

Kimmelman v. Morrison, 477 U.S. 365, 377 (1986) ... 32

Kuhlman v. Wilson, 477 U.S. at 454 & n.17, 106 S.ct. at 2627 + n.17 ... 9

Kyles v. Whitley, 514 U.S. 419, 435, 131 L.Ed. 2d 490, 115 S.ct. 155 (1995) ... 16, 29

Langford v. Rite Aid of Ala., Inc., 231 F.3d 1308, 1312 (11th Cir 2000) ... 20

Liljeberg v. Health Services Acquisition Corp., 486 U.S. 847, 863-864 (1988) ... 2, 22, 34

Lockhart v. McCree, 476 U.S. 162, 106 S.ct. 1758, 1762-64, 90 L.Ed. 2d 137 (1986) ... 23

Long v. Butler, 809 F.3d 299 (2015) ... 18

Lowenfield v. Phelps, 484 U.S. 231, 241, 98 L.Ed. 2d 568, 108, S.ct. 546 (1988) ... 24

Luna v. Beto, 391 F.3d 329, 332 (5th Cir. 1967) ... 16

Maldonado v. Thaler, 625 F.3d 229, 236 (5th Cir. 2010) ... 35

Marbury v. Madison, 5 U.S. 137 1cranch 137, 176, 2 L.Ed. 60 (1803) ... 43, 45

Mayle v. Felix, 545 U.S. at 656, 125 S.ct. 2562 (2005) ... 4

McCoy v. Louisiana, 138 S.ct. 1500 (2018) ... 31, 32, 36, 39

vi

McQuiggin v. Perkins, 569 U.S. 383, 386, 133 S.ct. 1924, 185. L.ed. 2d 1019 (2013) . . . 9

Miller El v. Cockrell, 537 U.S. 322, 335-38 (2003) . . . 2

Mobley v. Head, 306 F.3d 1096, 1100-1105 (CA11 2002) . . . 21

Mooney v. Holohan, 294 U.S. 103, 113 (1935) . . . 15

Morrison v. Olson, 487 U.S. 654, 699 (1988) . . . 47

Napue v. Illinois, 360 U.S. 264, 269, 3 L.ed. 2d 1217, 79 S.ct. 1173 (1959) . . . 16, 17, 18, 36

Neder v. United States, 527 U.S. 1, 25, 119 S.ct. 1827, 1841, 144 L.ed. 2d 35 (1999) . . . 20, 21

New York v. Hill, 528 U.S. 110, 115 (2000) . . . 40

Palmore v. Sidoti, 466 U.S. 429, 433, 80 L.ed. 2d 421, 104 S.ct. 1879 (1984) . . . 34

Patterson v. New York, 432 U.S. 197, 202 (1977) . . . 40

People v. Savvides, 136 N.E. 2d 853, 855, 1. N.Y. 2d 554, 154 N.Y.S. 2d 885 (N.Y. 1956) . . . 17, 18

Pfizer inc. v. Int'l Rectifier Corp., 538 F.2d 180, 195 (8th cir. 1976) cert. denied, 429 U.S. 1040, 97 S.ct. 738, 50 L.ed. 2d 751 (1977) . . . 22

Pippin v. Dretke, 434 F.3d 782, 787 (5th cir. 2005) . . . 36

Powell v. Alabama, 287 U.S. 45, 69 (1932) . . . 31-32, 46

Price v. Johnson, 334 U.S. 266, 68 S.ct. 1049, 92 L.ed. 1356 (1948) . . . 38, 40

Pyle v. Kansas, 317 U.S. 213, 87 L.ed. 214, 63 S.ct. 177 (1942) . . . 16

Rosales v. Dretke, 133 F. App'x 135, 137 (5th cir. 2005) . . . 2

Rosier v. Ford Motor Co., 573 F.2d 1332, 1338 (5th Ct. 1978) . . . 21

Salazar v. Buono, 559 U.S. 700, 723 (2010) . . . 41

Sawyer v. Whitley, 505 U.S. 333, 120 L.ed. 2d 269, 112 S.ct. 2514 (1992) . . . 49

Schlup v. Delo, 513 U.S. 298, 314-16, 130 L.ed. 2d 808, 115 S.ct. 851 (1995) . . . 9, 10, 14

Scutier v. Paige, 808 F.2d at 794 (11th cir. 1987) . . . 20-21

Sherman L. Fields v. John Gilley, No. 22-7262 (7th cir. 11/13/24) . . . 7

Simmons v. United States, 390 U.S. 377, 394 (1968) ... 33

Slack v. McDaniel, 529 U.S. 473, 484 (2000) ... 2

Smith v. Black, 904 F.2d 950, 967 (5th cir. 1990), vacated, 503 U.S. 930, 112 s.ct. 1463, 117 L.ed. 2d 609 (1992) ... 28

Smith v. Kemp, 715 F.2d 1459, 1463 (11th cir) cert. denied 464 U.S. 1003, 104 s.ct. 510, 78 L.ed. 2d 699 (1983) ... 36

Socto v. Davis, 672 F. App'x 342, 346 (5th cir. 2016) ... 2

Stockton v. Virginia, 852 F.2d 740, 749 (4th cic 1988), cert. denied, 489 U.S. 1071, 103 L.ed. 2d 827, 109 s.ct. 1354 (1989) ... 17

Strickland v. Washington, 466 U.S. 668, 685 (1984) ... 32

Stringer v. Black, 503 U.S. 222, 112 s.ct. 1130, 117 L.ed. 2d 367 (1992) ... 28

Sullivan v. Louisiana, 508 U.S. at 279 (1995) ... 33

Supreme Auto Transp. LLC v. Accelor Mittal USA inc., 902 F.3d 735, 741 (7th cir. 2018) ... 3

Tennard v. Drethe, 542 U.S. 274, 282-83 (2004) ... 2

Thomas v. Gen. Motors Acceptance Corp, 288 F.3d 305, 306-07 (7th cir. 2000) ... 20

United States v. Agurs, 427 U.S. 97, 103, 96 s.ct. 2392, 49 L.ed. 2d 342 (1976) ... 17

United States v. Antonen Fireworks Co., 155 F.2d 631, 661 (CA2) (Frank, J. dissenting) cert. denied 329 U.S. 742, 67 s.ct. 49, 91 L.ed. 640 (1946) ... 19

United States v. Auten, 632 F.2d 478, 481 (5th cir. 1980) ... 25

United States v. Bagley, 473 U.S. 667, 668, 87 L.ed. 2d 481 405 s.ct. 3375 (1985) ... 17, 25

United States v. Como, 53 F.3d 87, 90 (5th cir. 1995) ... 27

United States v. Cronic, 466 U.S. 648, 653 (1984) ... 32

United States v. Davis, 139 S.ct. 2319 (2019) ... 41

United States v. Fields, 483 F.3d 313 (5th cir. 2007) ... 5

United States v. Fields, No. 13-70025 (2014) ... 33

United States v. Fields, 761 F.3d 443 (5th cir. 2014) ... 6

United States v. Fields, No. 6:01-cr-164 (W.D. Tex June 15, 2020) ... 7

United States v. Fields, No. 6:01-cr-164 (W.D. Tex Jan 11, 2021) ... 7

United States v. Fields, No. 6:01-cr-164 (W.D. Tex Apr 8, 2021) ... 7

United States v. Hasson, 333 F.3d at 1270-71 ... 20

United States v. Lankford, 838 F.2d 1351, 1355 (5th cir. 1988) ... 25

United States v. Mechanik, 475 U.S. 66 (1986) ... 19

United States v. Orosaelas-Rodriguez, 12 F.3d 1339, 1349 (5th cir. 1994) .. 21

United States v. Valentine, 820 F.2d 565, 570 (2d cir. 1987) ... 17

United States v. Walters, 351 F.3d 159, 169 (5th cir. 2003) ... 25

Wolberg v. Israel, 766 F.2d 1071, 1078 (7th cir.) (Posner J.) cert. denied,
                    474 U.S. 1031 (1985) ... 49

Wledca v. Thomas, 671 F.2d 713, 717 n.1 (2d 1982) ... 16

Williams v. Taylor, 529 U.S. 367, 405, 120 S.ct. 1495, 146 L.Ed. 2d
                    48 (2006) ... 36

Winston v. Pearson (Winston II) 683 F.3d at 496 ... 9, 39

Witherspoon v. Illinois, 391 U.S. 510, 88 S.ct. 1770, 1774-75, 20 L.Ed.
                    2d 582, 593 (1968) ... 23

Young v. Dretke, 356 F.3d 616, 673 (5th cir. 2004) ... 36

STATUTES AND RULES

28 U.S.C. § 2253 (c)(1)(b) ... 1

18 U.S.C. § 3595 (c)(2)(a) ... 23

28 U.S.C. § 2254 (e)(1) ... 37

Fed R. Civ. P. 15(c)(2) ... 1, 42

ix

Fed. R. Civ. P. 15(c)(2)....2

Fed. R. Crim. P. 52(a)... 33

Fed. R. Civ. P. 60(b)(3)(6).... passim


OTHER AUTHORITIES


U.S. Const. pmbl ... 48

U.S. Const. Art. III § 1 ... 21


4 Blackstone, commentaries on the law of England * 201 ...40


B. Garrett, convicting the innocent: where Criminal Prosecutions go wrong... 24


Gross, Jacoby, Matheson, Montgomery + Patil, exonerations in the United States 1989 through 2003, 95 J. crim. L+C 523, 531-533 (2005)... 23


Gross + O'Brien, Frequency and predictors of false conviction 5 J. Empirical L. Studies 927-956-957 (2008) ... 23


Amar, Neo-Federalist Article III, note 101 at 768-70 ... 48


Senator Hubert Humphrey, Address at the Democratic National Convention (July 14, 1948) ... 48


http://www.innocenceproject.org/content/Cameron_Todd_willingham_Posthumous_Pardon_Filing_Documents.php  46

x

MOTION PURSUANT TO RULE 60 (b)
AND/OR MOTION FOR C.O.A.

Sherman Fields respectfully moves to file this motion pursuant to RULE 60(b) and/or Motion for C.O.A. (Certificate of Appealability).

## STATEMENT OF JURISDICTION

This Court has Jurisdiction to consider the issues pursuant to its authority to grant relief under RULE 60 (b) (3) and (6) and/or 28 U.S.C. § 2253 (c)(1)(B) and/or The Relation Back Doctrine.

## RULE 60(B)(3)+(6) STATEMENT

On motion and Just terms the Court may relieve a party or its legal representative from a final Judgment, order, or proceeding for "fraud, misrepresentation or misconduct by an opposing party" or for "any other reason that Justifies relief"

## C.O.A. STATEMENT

The instant application seeks a C.O.A pursuant to 28 U.S.C. § 2253 (c)(1)(b) and/or The Relation back doctrine. because the Correctness of the District Courts' disposition on the merits of Mr. Fields' Original §2255 reviewed with the Unconstitutional reason why Mr. Fields wasn't allowed to present the evidence herein to correct that disposition (even though the evidence was timely presented) are at least "debatable" amongst Jurists of reason. See Buck v. Davis, 580 U.S. ___, 137 S.ct. 759, 773-75 (2017) (reiterating governing standard for issuance of C.O.A); Tennard v.

Drethe, 542 U.S. 274, 282-83 (2004); Miller El v. Cockrell, 537 U.S. 322, 335-38 (2003); Slack v. McDaniel, 529 U.S. 473, 484 (2000) (quoting Barefoot v. Estelle, 463 U.S. 880, 893 (1983)): See also Sotto v. Davis, 672 F. App'x 342, 346 (5th Cir. 2016) (defendant must demonstrate that "reasonable Jurists could debate whether (or, for that matter, ble Jurists could debate whether (or, for that matter,

agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further'"); See also Rosales v. Drethe, 133 F. App'x 135, 137 (5th Cir. 2005). This Petition makes a "substantial Showing of Denial of a Constitutional Right" - and sufficiently alleges Constitutional Claims warranting a Certificate of Appealability.

<u>RELATION BACK STATEMENT</u>

"A claim is not 'adJudicated on the merits' when the Court makes its decision "on a materially incomplete record . . . . [A] record may be materially incomplete 'when a [] court unreasonably refuses to permit further development of the facts' of a claim" (quoting Winston v. Pearson (Winston II) 683 F.3d at 496); See also Gordon v. Braxton, 780 F.3d 196, 202 (4th Cir. 2015). That is precisely the case we have here.

This motion 'relates back' because the claims asserted 'arose out of the conduct, transaction, or occurrence attempted to be set forth in the original pleading.'" Mayle v. Felix, 545 U.S. at 656, 125 S.ct. 2562 (2005) (quoting Fed R. Civ. P. 15 (c)(2)). Even where an amendment "invoke[s] a legal theory not suggested by the original complaint and relie[s] on facts not originally asserted",

relation back is in order "[S]o long as the [original] and Amended petitions State claims that are tied to a common core of operative facts." Id at 659, 664, 125 S.Ct. 2562. Indeed "[E]ven 'significant' changes to a complaint can 'relate back' so long as the defendant had fair notice of the substance of the new allegations from the outset". Supreme Auto Transp., LLC v. Arcelor Mittal USA, inc., 902 F.3d 735, 741 (7th cir. 2018). The government had "fair notice" (see Statement of Case infra). This motion is ripe for RULE 60(b), C.O.A. and/or the Relation Back Doctrine.

RELEVANT CONSTITUTIONAL AND STATUTORY PROVISIONS

This motion involves the following provisions of the United States Constitution:

Article III, section 2 of the U.S. Const. provides in relevant part:

~~legislative~~ The Judicial Power shall extend to all cases, in law and equity, arising under this constitution, the laws of the United States, and Treaties made, or which shall be made, under their Authority; — to all cases to which the United States shall be a party.

The First Amendment to the U.S. Const. provides in relevant part:

Congress shall make no law prohibiting the free exercise thereof, to petition the government for a redress of grievances.

The Fifth Amendment to the U.S. Const. provides in relevant part:

...No person shall be deprived of life, liberty or property, without due process of law....

The Sixth Amendment to the U.S. Const. provides in relevant part:

In all criminal prosecutions, the accused shall have the assistance of counsel for his defense.

The Eighth Amendment to the U.S. Const. provides in relevant part:

Cruel and Unusual Punishments shall not be inflicted.

The Ninth Amendment to the U.S. Const. provides in relevant part:

The enumeration in the Constitution of certain rights shall not be construed to deny or disparage others retained by the people.

The Fourteenth Amendment to the U.S. Const. provides in relevant part:

No state shall deprive any person of life, liberty or property without due process of laws; nor deny to any person within its Jurisdiction the equal protection of the laws.

## STATEMENT

Petitioner SHERMAN LAMONT FIELDS was convicted in 2004 in the Western District of Texas (Waco Division) for escape, conspiracy, Using and carrying a firearm causing death, carjacking, Using and carrying a firearm during the commission of a crime of violence (escape)(conspiracy) Using and carrying a firearm during the commission of a crime of violence (carjacking); and felon in possession of a firearm. He was sentenced to Death plus a number of years. Mr. Fields have always maintained his innocence.

A divided panel of the 5th Circuit affirmed Petitioner's conviction and death sentence on direct appeal at United States v. Fields, 483 F.3d 313 (5th Cir. 2007). The Supreme Court denied certiorari at Fields v. United States 552 U.S. 1144 (2008).

Counsel for Petitioner filed a § 2255 motion challenging the conviction. However Counsel failed to address pertinent issues and/or append critical evidence.

As soon as Petitioner received a copy of the § 2255 motion, he immediately informed Judge Walter Smith that the motion was "incomplete". The Court did not respond. Id. Subsequently Judge Smith denied the "incomplete" motion and also informed Mr. Fields that he will not be allowed to proceed pro se.

Deligently Petitioner filed a timely pro se brief and motions to the 5th Circuit; the brief and motions was filed well in advance of appointed Counsel's filing. However, the 5th Circuit refused to consider Petitioner's brief and motions "because Mr. Fields [had] attorney's".

5

Petitioner informed the 5th Circuit that he will "relieve" counsel of their duty, he just want his brief and motions to be heard. Again the 5th Circuit refused. Id.

Counsel for Petitioner filed their brief appealing the District court's ruling to the 5th Circuit and subsequently sent Petitioner a copy. As soon as Mr. Fields saw the contents of the appeal he asked the 5th Circuit to "reconsider" his pro se brief and motions stating that he "strenuously object" to the appeal that counsel filed. Again the 5th Circuit refused.

Diligently Petitioner kept trying to file his pro se brief and motions all to no avail.

The 5th Circuit ultimately denied Counsel's request for a certificate of appeallability (COA). See United States v. Fields, 761 F. 3d 443 (5th cir. 2014). The Supreme Court denied cert. at Fields v. United States, 135 S.ct. 2803 (2015)

Diligently, in October 2016 Mr. Fields filed a motion pursuant to 28 u.s.c § 2241 in the Southern District of Indiana, the District of incarceration at Fields v. Warden, 2:16-cv-00418. A few months later, Fields' attorney's filed an amended petition "incorporat[ing]" his pro se arguments and adding a claim that his counts of conviction under § 924 (c) were invalid because the statute was unconstitutionally vague.

Fields objected to counsel trying to "take over" his § 2241 and after the government responded the presiding District Judge did a three-way conference call between herself, Mr. Fields and counsel and determined that both Mr. Fields and his counsel could respond to the government in a hybrid representation. Shortly thereafter Counsel was removed from the case and replaced by Florence Italia Patti and Jean Giles of the Indiana Federal Community

6

In June (2020) Mrs. Patti and Mrs. Giles severed the 924 (s) issues from the § 2241 and filed a successive motion under § 2255 in the Court of Conviction. See United States v. Fields, No. 6:01-cr-164 (N.D. Tex. June 15, 2020). And through a Joint motion the government and Fields' attorneys agreed the Court should vacate Fields' convictions and Death Sentence on two of the three 924(c) counts including the death eligible count. See Joint advisory 5-9, United States v. Fields, No. 6:01-cr-164 (N.D. Tex. Jan. 1L, 2021).

~~Recommen~~ On 4/8/21 the District Judge "uncoupled the package" and took the existing carjacking conviction from 9½ years to 15 years, and the remaining 924(c) from 25 years to life. See Judgment, United States v. Fields, No. 6:01-cr-164 (N.D. Tex. April 8, 2021).

On 5/26/21 a motion was filed to lift the stay on the § 2241 in the Southern District of Indiana and the Judge ordered further briefing. In the interim the Supreme Court decided Jones v. Hendrix, 599 U.S. ___ (2023) effectively narrowing § 2241. First the District Court and then the 7th Circuit denied relief on procedural grounds without reaching the merits of the appeal; The § 2241 was concluded in November 2024 at Sherman L. Fields v. John Gilley, No. 22-2762 (7th Cir. 11/13/24).

Diligently, in January 2025 and without attorney's for the first time in 24-years Mr. Fields filed a motion pursuant to RULE 60(b) and/or a motion pursuant to § 2255(e) in the 5th Circuit noting that the Court would "not accept "anything" Fields file pro se "while he was represented by attorney's".

On 3/20/25 the 5th Circuit responded stating that

7

You may address your 60(b) motion to the Clerk of the U.S. District Court". See (App. 1). This timely 60(b) motion is the result.

## MR. FIELDS IS ACTUALLY INNOCENT

The only thing anchoring Mr. Fields' continued incarceration is the carJacking conviction, a "carJacking" that the evidence undoubtedly prove Mr. Fields is actually innocent of; a carJacking that the real evidence suggests may have never even occured.

In November 2021 Mr. Fields walked away from a Federal holding facility in Waco, Texas, where he was being held on "Felon in possession of a firearm" charges. Nine days later on November 15, 2021 a Tammy Edwards claimed that her car was took by "an unknown black male"

A security guard at Hillcrest Hospital where the alleged carJacking purportedly happened ran up to Ms. Edwards with a picture of Mr. Fields "out of the newspaper" yelling, "Did you see Sherman Fields?! Did you see Sherman Fields?!"

Shortly after this suggestive identification a Waco police officer pulled up, and in a second suggestive identification the officer showed her a single photo of Sherman Fields. Tammy Edwards responded, "That's the same guy the security guard showed me"

Mr. Fields was re-arrested November 24, 2001 and was subsequently charged as described supra in the Statement of facts.

When Mr. Fields went on trial in January 2004 Tammy Edwards was the sole witness to the alleged carJacking.

8

The prosecutor called a Detective January to the witness stand to deliberately, intentionally, knowingly and willfully lie, defraud and deceive the Jury and the Court. Detective January told the Jury that there was "no fingerprints or nothing", the alleged carjacking vehicle "was clean". See (TT pgs. 1325-1326 App. 2). However there are fingerprints (App. 3) and those fingerprints exonerate Mr. Fields (App. 4). No court or Jury have ever weighed this crucial evidence against the known "facts". The fingerprint evidence establishes a "colorable showing of actual innocence". See Kuhlman v. Wilson, 477 U.S. at 454 & n. 17, 106 S.ct. at 2627 & n. 17; Schlup v. Delo, 513 U.S. 298, 314-16, 130 L.Ed. 2d 808, 115 S.ct. 851 (1995). And although this petition relates back to Mr. Fields' original appeal(s) and is grounded in Rule 60(b), a credible showing of actual innocence lets a petitioner overcome both a procedural default and AEDPA's limitations period. Mcquiggin v. Perkins, 569 U.S. 383, 386, 133 S.ct. 1924, 185 L.Ed. 2d 1019 (2013). "This rule, or fundamental miscarriage of Justice exception is grounded in the 'equitable discretion' of habeas courts to see that federal constitutional errors do not result in the incarceration of innocent persons." Herrera v. Collins, 506 U.S. 390, 404, 113 S.ct. 853, 122 L.Ed. 2d 203 (1993)

The Supreme Court has "consistently reaffirmed the existence and importance of the exception for fundamental miscarriages of Justice." Schlup, 513 U.S. at 321, 115 S.ct. 851. It has been applied to overcome various procedural defaults, including those stemming from successive petitions, abusive petitions, failure to develop facts in State court, and failure to observe State procedural rules. Perkins, 569

9

U.S. at 393; 133 S.ct. 1924. To be credible, a claim of actual innocence [as we have here] requires a petitioner to present "new reliable evidence – whether it be "exculpatory scientific evidence", trustworthy eyewitness accounts, or "critical physical evidence" – that "was not presented at trial". Schlup, 513 U.S. at 324, 115 S.ct. 851. In light of the fingerprint evidence "it is more likely than not that no reasonable Juror would have found [Mr. Fields] guilty beyond a reasonable doubt". House v. Bell, 547 U.S. at 537-38, 126 s.ct. 2064 (2006) (quoting Schlup, 513 U.S. at 327, 115 S.ct. 851)

In assessing the adequacy of a petitioner's showing, "the [] court must consider 'all the evidence', old and new, incriminating and exculpatory, without regard to whether it would necessarily be admitted under 'rules of admissibility that would govern at trial'." House, 547 U.S. at 538, 126 s.ct. 2064 (quoting Schlup, 513 U.S. at 327-28, 115 s.ct. 851). This "requires a holistic Judgment about 'all the evidence' and its likely effect on reasonable Jurors applying the reasonable-doubt standard". Id. at 539, 126 s.ct. 2064 (quoting Schlup, 513 U.S. at 328, 115 s.ct. 851). "all the evidence" in this case preponderate in favor of Mr. Fields' innocence. Again Ms. Edwards was the sole "witness" to the alleged carJacking; and her account is rife with inaccuracies, falsehoods and downright lies and fabrications. Her ever evolving account went from:

· An unknown black male "Jacked my car. (Tommy Edwards written statement on the day of the incident).

(to)

10

I knew it was Sherman Fields the moment I saw him because there were posters of him up all around the hospital.
(Tammy Edwards Deposition two years after the alleged carjacking as she sued civigenics, the company over the jail that Fields walked away from).
(Note: The posters of Fields didn't go up until "after" the alleged carjacking, thus the security guard with the picture of Fields "out of the newspaper").

* Oh he shot at me too.
  (Tammy Edwards Deposition)
                    (to)
* No she never said you shot at her.
  (Detective Steve January at trial in 2004)

* The perpetrator "had on a black hat".
  (Officer Gonzales quoting Tammy Edwards in police report on day of incident).
                    (to)
* Your hair was shorter than it is now. And no I never said that "you" were wearing a hat.
  (Tammy Edwards at trial in 2004)

11

I was screaming and hollaring for help the whole time.
(Tammy Edwards written statement day of incident).

(to)

• I couldn't scream because I was being choked.
(Tammy Edwards trial testimony in 2004)

• I observed that she had some band-aids on her right middle finger and right ring finger.
(Officer Carrizales Police report day of incident).

(to)

• No I didn't have band-aids on my hand.
(Tammy Edwards in the Deposition)

• [He] had a green gun.
(Quoting Tammy Edwards)

(to)

• She initially thought the gun was green but now she realize it was black.
(Police report quoting Tammy Edwards)

(to)

• The gun was green
(Tammy Edwards at trial)

12

Tammy Edwards claimed that the "carjacking" impacted her in such a negative way that she could no longer do her Job.

(Tammy Edwards Deposition)

(to)

• Tammy has finished this year in her work performance. She has filled in during Departmental shortages. She has helped in training new associates. Tammy has worked in conjunction with supervisor to assure that the needs of the department have been fulfilled. She has performed all task that were not directly related to her Job description but were necessary to keep work flow for the hospital going. She helped to set up the "staff room" for office supplies. She has [lead] (sic) others to revised the appearance of the work place.

(Tammy Edwards Job report right after the alleged carjacking)

Tammy Edwards was in a relationship at the time with Chris Walker, a guy that was a "material witness" in the governments Capital Murder case against Fields. Chris Walker was later arrested at the same apartment complex where the police claim to have "found" Tammy Edwards car.

It appears that Tammy Edwards false implication of

13

Mr. Fields was money related. In her lawsuit against Civigenics she is quoted in the Deposition as saying: "I hope I win" --- the lawsuit.

And Mr. Fields asks the Court to be mindful that the alleged carjacking happened at shift change at a major hospital with people coming and going, and according to Ms. Edwards there was a struggle amid screaming and hollering, and a "gunshot", yet no one else saw or heard anything; That's impossible!

The Schlup Standard does not demand conclusive proof of exoneration; rather, it involves a probabilistic determination that, in light of all the evidence - "old and new, admissible and inadmissible." Case, 731 F.3d at 1036 - "more likely than not any reasonable Juror would have reasonable doubt." House, 547 U.S. at 538, 126 S.ct. 2064. "Reasonable doubt" does not require [the defense] to prove to the Jury who committed the carjacking [if a carjacking actually occurred], and it's not the Courts' function ... to make an independent factual determination about what likely occurred." House, 547 U.S. at 538, 126 S.ct. 2064. It is simply enough that "Due process of law prohibits the conviction of either a legally and/or factually innocent person." Gardens v. Stephens, Sup.Ct.#13-546 (2013), cert. pending (5th Cir. 8/21/13) and the evidence that the Jury was permitted to hear was impermissible, materially inaccurate, and demonstrably false. See Duest v. Singletary, 967 F.2d 472, 482 (11th Cir. 1997), vacated on other grounds, 507 U.S. 113 S.ct. 1940, 123 L.Ed.2d 647 (1993). In in re Davis, No. cv 409-130 (8/24/2010), the Court held that "the lowest degree of confidence

14

a Jury verdict would presumably occur when the Jury has heard a corrupted body of evidence." Because the procedural protections in place to protect the innocent from conviction have been breached, confidence in the result of the trial is generally undermined." The evidence in this petition undoubtedly proves that the prosecution used perjury to undermine the fingerprint evidence that would have exonerated Mr. Fields. Mooney v. Holohan, 294 U.S. 103, 113 (1935) Mr. Fields is actually innocent.

## PERJURY / SUBORNING PERJURY VIOLATED MR. FIELDS RIGHTS

The government formed a "Hit Squad" of henchmen that it used to frame Fields by fabricating evidence. The many incidents of perjury and suborning perjury is extensive, too many incident(s) of perjury to recount in this limited space, thus here we will focus on the fingerprint evidence.

As noted supra the prosecutor led Detective January into perjury stating: What did you do or have done to the carjacking vehicle?

Detective January replied "Same... same thing, fingerprinted, trace lifters vacuuming"

"And the results of that was this thing was clean correct?"

"That is correct" Detective January answered. Id. at TT pgs. 1325-26

However we now know that the car was not "clean" and the perjured testimony was used to defraud the

15

Jury; Trash, dirt, debris was found in the car. (Tammy Edwards deposition.) and fingerprints. (App 3).

Prosecutors "prep" their witnesses prior to trial thus there is no doubt whatsoever that the prosecution intentionally, willfully, deliberately, knowingly, with malice aforethought used law enforcement to mislead the Jury and defraud the court so they could obtain a conviction in regards to the carjacking

The Supreme Court have held that knowingly false or misleading testimony by law enforcement officer(s) is imputed to the prosecution; Medra v. Thomas, 671 F.2d 713, 717 n.1 (2d 1982); Curran v. Delaware, 259 F.2d 707, 712-713 (3d. Cir 1958) (citing Pyle v. Kansas, 317 U.S. 213, 87 L.Ed 214, 63 S.ct. 177 (1942); The knowing use of perjury constitutes a due process violation as defined in Kyles v. Whitley, 514 U.S. 419, 435, 131 L.Ed. 2d 490, 115 S.ct. 155 (1995). With witnesses being notoriously unreliable, fingerprint evidence, like DNA is impartial. Both Detective January and the prosecutor knew that, thus they contrived to suborn and commit perjury to conceal the real evidence. See Luna v. Beto, 391 F.2d 329, 332 (5th Cir. 1967) (Generally, due process is denied if the government knowingly used perjured testimony against the accused to obtain a conviction. See Napue v. Illinois, 360 U.S. 264, 269, 31 L.Ed 2d 1217, 79 S.ct. 1173 (1959). "The government does not have to solicit the false evidence, it is enough if the government allows the evidence to go uncorrected when it surfaces. Id. But here in Fields the government did "solicit the false evidence stating

16

and the result of that is that this thing that I was clean;" while already knowing that the car was not "clean".

"A prosecutor's knowing use of perjured testimony or knowing failure to disclose that testimony used to convict a defendant was false is a violation of due process, and any conviction must be set aside if there is a reasonable likelihood that false testimony could have affected the Judgment." United States v. Bagley, 473 U.S. 667, 668, 87 L.Ed.2d 481, 405 S.Ct. 3375 (1985). The prosecutor knew the testimony was false. Stockton v. Virginia, 852 F.2d 740, 749 (4th cir 1988), cert. denied, 489 U.S. 1071, 103 L.Ed. 2d 827, 109 S.Ct. 1354 (1989); United States v. Valentine, 820 F.2d 565, 570 (2d cir 1987) The supreme court emphasized that "the Jury's estimate of the truthfulness and reliability of a given witness may well be determinative of guilt or innocence, and it is upon such subtle factors as the possible interest of the witness in testifying falsely that a defendant's life or liberty may depend." Napue, 360 U.S. at 769. The prosecutor leading Detective Janvary into saying that there were no fingerprints is fundamentally unfair and the carjacking conviction and related 924(c) must be set aside because there is no doubt that the false testimony affected the Judgment of the Jury. See United States v. Agurs, 427 U.S. 97, 103, 96 S.Ct. 2392, 49 L.Ed. 2d 342 (1976) In any event, the perjured testimony prevented "a trial that could be in any real sense be termed fair." Napue, at 720, 79 S.Ct. 1173 (quoting People v. Savvides, 136

17

N.E. 2d 853, 855, 1 N.Y. 2d 554, 154 N.Y.S. 2d 885 (N.Y. 1956)).

## PROSECUTORIAL MISCONDUCT DENIED
## MR. FIELDS A FAIR TRIAL

Prosecutor misconduct in allowing [] perjured testimony [is a] powerful challenge to [a] conviction. Long v. Butler, 809 F.3d 799 (2015). Clearly established Federal law states that the government has a duty not to use false testimony. Giglio v. United States, 405 U.S., 92 S.Ct. 763, 766, 31 L.Ed. 2d 104 (1972). History has made clear that an "air tight" case is Nebors perjury. Thus the perjured testimony was key to prosecution's case. The prosecutor knew that (1) Fields had been forced to represent himself; (2) He knew nothing about the law or how to conduct a trial; (3) Fields' most important objective at the time was to save his life on the capital charge and prove his innocence therein; (4) Fields was forced to wear a stun belt so he would be mentally distracted; and (5) Tommy Edwards lies, properly challenged would result in exoneration.

"A government lawyer's use of perjured evidence is a threat to the concept of ordered liberty." See Napue, 360 U.S. at 769, 79 S.Ct. 1173. Assuming why the prosecutor would postulate that there were no fingerprints serves no purpose here. The reality is that the prosecutor did lie, deceive and defraud, so to deny this issue of clear prosecutorial misconduct "can work very unfair and mischievous results." Chapman v. California, 386 U.S. 18, 22, 87 S.Ct. 824, 827, 17 L.Ed. 2d 705 (1967). Denying

18

Defendants relief for clear violations of their procedural rights reduces the law to " 'pretend rules,'" United States v. Mechanik, 475 U.S. 66 (1986) (quoting United States v. Antonelli Fireworks Co., 155 F.2d 631, 661 (CA-2) (Frank, J., dissenting), cert. denied, 329 U.S. 742, 67 S.ct. 49, 91 L.Ed. 640 (1946); it means that prosecutors are free to engage in prohibited conduct subject only to "purely ceremonial" words of appellate displeasure. 155 F.2d at 661 Here in Fields the prosecutors conduct so infected the trial with unfairness as to make the resulting conviction a denial of due process. Donnelly v. Dechristoforo, 416 U.S. 637, 643, 94 S.ct. 1868, 40 L.Ed. 2d 431 (1974). The prosecutor's lie about the fingerprints were indeed deliberate and intentional as noted by another willful lie told during closing arguments. Mr. Fields told the Jury "... You heard evidence that Ms. Edwards first stated that she didn't know who the male was that stole her car..." See (TT pg. 7029; App. 5 ). The prosecutor objected stating " Your Honor the only person that said that was the defendant. Not the witness". Id. However Tammy Edwards did say she didn't know who the black male was until "after" the suggestive identification. See (App. 6 ). To say even the lie about the fingerprints deprived Mr Fields of a fair trial. Darden v. Wainwright, 477 U.S. 168, 91 L.Ed. 2d 144 106 S.ct. 2464 (1986)

19

FRAUD ON THE COURT AND JURY

"Perjury committed in the course of legal proceedings is a fraud on the Court". Allen v. Chicago Transit Auth. 317 F.3d 696, 703 (7th cir. 2003); Thomas v. Gen. Motors Acceptance Corp., 288 F.3d 305, 306-07 (7th cir. 2000). When the Prosecutor called Detective January to the stand to lie and say that there are "no fingerprints" while knowing all along that there are fingerprints and those prints don't match Fields, the Prosecutor's actions constituted a Fraud on the Court. See Fed. R. Civ. P. 60(b)(3) ("A scheme to defraud requires proof of material misrepresentations, or the omission or concealment of material facts ... reasonably calculated to deceive ...") United States v. Hasson, 333 F.3d at 1270-71; citing Neder v. United States, 527 U.S. 75, 119 S.Ct. 1827, 1841, 144 L. Ed. 2d 35 (1999))); Langford v. Rite Aid of Ala., Inc., 231 F.3d 1308, 1312 (11th cir. 2000). Due to the lack of evidence tying Mr. Fields to the alleged carjacking the "material misrepresentation" that there were "no fingerprints" was undoubtedly "calculated to deceive". The prosecutor knew that if the Jury knew that there were fingerprints and those prints don't match Mr. Fields the Jury would have exonerated him on that charge. There should be no doubt that the Fraud prevented Mr. Fields from fully and fairly presenting his case or defense. Frederick v. Kirby Tankships, Inc., 205 F.3d at 1282 (11th cir. 2000); Scutier

20

v. Page, 808 F.2d at 144 (5th Cir. 1987); Bosier v. Ford Motor Co. 573 F.2d 1332, 1338 (5th cir. 1978.). In this case the prosecutors violated their duty of honesty to the courts; Neder v. United States, Supra.

"A claim of prosecutorial fraud does not rely on a new rule of constitutional law, and may not establish by clear and convincing evidence that ... no reasonable factfinder would have found the applicant guilty of the underlying offense." It is a claim that nonetheless must be recognized." Mobley v. Head, 306 F.3d 1096, 1100-1105 (SA11 2002). "For example, if a Death row inmate could show that the [government] indeed committed Fraud upon the District Court during the habeas Corpus proceeding, it would be a miscarriage of Justice if we turned a blind eye to such abuse of the Judicial process." Abu-Ali Abdur' Rahman v. Ricky Bell 154 L.Ed. 2d 501, 537 U.S. 88 (2002). "The Supreme Court has repeatedly held that Federal Courts possess the inherent power" to vacate [their] own Judgments upon proof that a Fraud has been perpetrated upon the Court." Chambers v. NASCO inc., 501 U.S. 32, 44, 115 L.Ed.2d 27, 111 S.Ct. 7123 (1991) (citing Hazel-Atlas Glass Co. v. Hartford-Empire Co. 322 U.S. 238, 88 L.Ed. 1250, 64 S.ct. 997 (1944)). (Some elements of the inherent Authority are so essential to "The Judicial Power", U.S. Const. Art. III, § 1, that they are indefensible ...") The innuendo half truths, rhetorical hyperbole and outright willful lies in this case proves that the species of fraud that the government perpetrated subverted the integrity of the Court(s) itself so that the Judicial machinery could not perform in the usual manner and the impartial functions of the court have

21.

been directly corrupted. See *Pfizer Inc., v. Int'L Rectifier Corp.,*, 538 F.2d 180, 195 (8th Cir. 1976), cert, denied, 429 U.S. 1040, 97 S.ct. 738, 50 L.Ed. 2d 751 (1977); *Abdar v. Bell, Supra*, when a witness commits perjury and the prosecutor knew he's lying, a scheme to suborn perjury "constitutes fraud on the court" *Cleveland Demolition Co., v. Azcon Scrap Corp., A Div. of Gold Fields Am. Indus.,* 827 F.2d 984, 986 (4th Cir 1987); *Great Coastal Express,* 675 F.2d at 1357; *H.K. Porter Co., inc., v. Goodyear Tire & Rubber co.,* 536 F.2d 1115, 1118-19 (6th Cir 1976) "Thus if a witness lied [as detective January did here] and the prosecutor participated in the Fraud, the verdict should be set aside." Fraud by an officer of the court is sufficient to prove a constitutional violation. *In re Genesys Data Techs. Inc.,* 204 F.3d 124, 130 (4th Cir 2000) "The constitutional errors so "fatally infected the trial" it violated fundamental fairness." *United States v. Ornelas-Rodriguez,* 12 F.3d 1339, 1349 (5th Cir 1994), and it runs the risk of undermining the public's confidence in the Judicial process. *Liljeberg v. Health Services acquisition Corp.,* 486 U.S 847, 863-64 1988)).

## VACATED COUNTS OF CONVICTION PREJUDICED MR. FIELDS

In or about January 2021 Mr. Fields' Death penalty conviction was vacated along with the 924(c) count for using and carrying a firearm during the commission of escape/conspiracy. Those

22.

Vacated counts unacceptably inspired the Jury to impose Mr. Fields' conviction on the carjacking count and corresponding 924(c) " under the influence of passion prejudice and/or other arbitrary factors." 18 U.S.C. § 3595 (c)(2)(a). These arbitrary and prejudicial factors include, but are not limited to the imposing of a death qualified Jury. Since the vacatur of the Death Count a major problem has now raised its ugly head; the contention that a death qualified or capital Jury is more conviction prone. Several courts have expressed reservations about the scientific evidence supporting the proposition that a death qualified Jury is necessarily more conviction prone. See eg., Lockhart v. McCree, 476 U.S. 162, 106 S.ct. 1758, 1762-64, 90 L.Ed.2d 137 (1986); Witherspoon v. Illinois, 391 U.S. 510, 88 S.ct. 1770, 1774-75, 20 L.Ed. 2d 582, 593 (1968). Without regard to the empirical data for the scientific evidence, most trial Judges would be willing to acknowledge the common sense proposition that death qualified Juries tend to be more conviction prone. In the view of researchers who have conducted studies on wrongful convictions: Because the crimes at issue in capital cases are typically horrendous murders, and thus accompanied by intense community pressure on police, prosecutors, and Jurors to secure a conviction, this pressure creates a greater likelihood of convicting the wrong person. See Gross, Jacoby, Matheson, Montgomery & Patil exonerations in the United States 1989 through 2003, 95 J. Crim. L.& C. 523, 531-533 (2005); Gross & O'Brien, Frequency and Predictors of false conviction. (why we know so little, and new data on capital cases). 5 J. Empirical L. Studies 927, 956-957 (2008) (noting that in comparing those who were

23

exonerated from Death Row to other capital defendants who were so not exonerated, the initial police investigations tended to be shooter for those exonerated); Irrespective of the semantics of vacatur v. exonerated Mr. Fields' police investigation was non existent. Because the crime(s) happened during the time Fields walked away from the federal jail law enforcement just assumed that he was the culprit and thus entirely went about "finding "evidence" to support that assumption. See also B. Garrett, convicting the innocent: where criminal prosecutions go wrong (2011) (discussing other common causes of wrongful convictions generally including false confessions, mistaken eyewitness testimony, untruthful jailhouse informants, and ineffective defense counsel.) "unless it can be ascertained [ ] that a trial court's sentence on what appears to be a valid conviction was not affected by a subsequently invalidated conviction on another count [ ], a defendant must be retried on a valid conviction" (collecting cases) Because Fields was also on trial for capital murder simultaneously with the carjacking it should be no doubt that the murder evidence prejudiced Mr. Fields on the carjacking conviction. Fields was entitled to the uncoerced verdict of the jury. Lowenfield v. Phelps, 484 U.S. 231, 241, 98 L.Ed. 2d 568, 108 S.Ct. 546 (1988). But because of the passion inflamed by the vacated counts he wasn't afforded that.


BRADY VIOLATION(S) VIOLATED
FIELDS CONSTITUTIONAL RIGHTS

24

Under Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), the government must disclose material, exculpatory (397 Fed. Appx. 971) evidence to a criminal defendant. United States v. Walters, 351 F.3d 159, 169 (5th Cir. 2003) (citing Brady, 373 U.S. at 87) "A valid Brady complaint contains three elements: (1) the prosecution must suppress or withhold evidence; (2) which is favorable, and (3) material to the defense." United States v. Lanford, 838 F.2d 1351, 1355 (5th Cir. 1988) (quoting United States v. Auten, 632 F.2d 478, 481 (5th Cir. 1980)). Impeachment as well as exculpatory evidence fall within Brady's purview. United States v. Bagley, 473 U.S. 667, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985)

Prior to trial counsel for Fields filed a Motion for Discovery pursuant to Rule 16 and was supposedly given "open file discovery". The motion specifically requests the timely disclosure of "Photographs, documents, tangible objects, results of reports or scientific tests or experiments, and disclosure of written summaries of testimony of expert witnesses". Id. The prosecution never turned over the 35mm film and/or photographs of the red Grand Am that Fields was alleged to have been driving the night of Sincerey Coleman's murder; the written summary of Detective Marcos "Bubba" Colyer's "expert testimony"; the 15-minute observation sheets from November 24, 2001 thru February 2004; and the phone recordings from the Federal Jail that Fields

25

burned during from on December 6, 2001, effectively suppressing and/or withholding the evidence. Thus the first prong of Brady have been satisfied.

The second prong of Brady is just as clear. The photographs is favorable to the defense because the evidence is exculpatory and impeaching. The photographs prove unequivocally that Detective Morris "Bubba" Colyer lied and defrauded the Jury and the court when he said that the Grand Am was clean and "looked detailed" or "wiped down". But most importantly, the Jury, during deliberations at the guilt/innocence phase only had one question: They wanted the "testimony (or evidence if it's available) of the results of DNA testing on the car. (see Jury note). Judge Walter Smith denied the Jurors request telling them to refer to the testimony. However if the Jury knew and/or remembered the testimony in regards to the forensics testing and the state or condition the vehicle was alleged to be in they wouldn't have been requesting the information; Thus the Jury had nothing to rely on. If the prosecution would have honored their duty to disclose then Fields would have impeached Detective Colyer's willfully false testimony with the photographs, and the photographs would have been in evidence for the Jury to use in their deliberations. There is no doubt that the photographs are favorable.

The same premise applies to the 15-minute observation sheets and the Jailhouse phone recordings. The government sought out and hired a cabal of criminals to lie and say that they heard Fields threaten the victim over the phone or that Fields confessed

26

produced phone records to show that Fields called the victim from Jail but never produced the recorded phone calls even though the Jail phones recorded every call. These recordings will show that Fields never threatened the victim in any manner.

The government also produced crooks to lie and say that Fields confessed to them in Jail, but the government never produced the 15-minute observation sheets.

Mr. Fields was a segregated inmate on "escape risk" status where he was closely observed 24/7. The U.S. Marshals and the prosecution mandated that Fields' cell be near the officer's desk, within sight and hearing range, and that the officer's had to document everything Mr. Fields said or did on an observation sheet attached to the cell door every 15-minutes. Like the photographs and the phone recordings these observation sheets were never turned over to the defense. If they were the Jury would have been able to see who, if anybody Fields talked to and what was said proving that Fields never confessed to the cabal of inmates, thus there is no doubt that the phone recordings and the observation sheets is favorable as well.

The third prong of Brady have been met as well. "Testimony is material if it was designed to substantially affect the outcome of the case." United States v. Camp, 53 F.3d 87, 90 (5th Cir 1995).

27

Detective Coyer's false testimony about the car being "clean," and "detailed" was definitely designed to substantially affect the outcome of the case. The same applies to the false inmate testimony about Fields confessing to them or threatening the victim on the phone. The prosecution procured these false witnesses to defraud the court and the Jury to obtain and sustain Fields' convictions, thus the photographs, the Jail recordings and the 15-minute observation sheets is definitely material.

"The materiality of Brady material depends almost entirely on the value of the evidence relative to the other evidence mustered by the [government]." Smith v. Black, 904 F.2d 950, 967 (5th Cir. 1990), vacated, 503 U.S. 930, 112 S.Ct. 1463, 117 L.Ed. 2d 609 (1992); abrogated on other grounds, Stringer v. Black, 503 U.S. 222, 112 S.Ct. 1130, 117 L.Ed. 2d 367 (1992). The government's case in chief against Fields is "Jailhouse testimony", inmates whose stories are so ridiculous it defies description. And (1) there is concrete proof that the government went "seeking Jailhouse testimony"; and (2) Edward Lee Buffey and Shalaykea Scroggings, two of the governments "Star witnesses" was interacting with these inmates and telling them pertinent information before the inmates "came forward". Thus the Jail phone recordings, the fifteen minute observation sheets, and the photographs proving that the car was not "clean or detailed" and there was unequivocally no blood found in the car is definitely material to Mr. Fields' innocence.

In addition to that Detective Coyer lied and

28

determined that Coleman's car was being "clean" and/or "detailed" to hinder, impede and willfully thwart by illegal means the fact that the governments own "Star witnesses", both Edward Dutteg and Shalaykea Scroggins conspired to hide the Jaguar that they were in on the night of Coleman's murder (telling investigators that the car was blue, when in fact the Jaguar was gold); so investigators couldn't find and do forensics testing on the Jaguar. If the prosecution had honored their duty to disclose, and their duty of honesty to the Court, the Jury would have undoubtedly came back with a verdict of "Not Guilty". That's why the Court's have held that "If the prosecution withholds evidence that satifies the above definition of materiality, then a harmless error analysis is inapposite and relief is warranted." See <u>Kyles v. Whitley</u>, 514 U.S. 419, 435, 131 L.Ed.2d 490, 115 S.Ct. 1555 (1995).

<u>JUDICIAL BIAS AT TRIAL
AND ON APPEAL VIOLATE(S)
THE U.S. CONSTITUTION.</u>

Six months prior to Mr. Fields' January 2004 trial in <u>Andrade v. Chojnacki</u>, 388 F.3d 448 (July 14, 2003), District Judge Walter Smith, Jr. refused to participate in an investigation where his good friend, prosecuting attorney William "Bill" Johnston was under investigation for withholding evidence in the Andrade case. When Judge Smith presided over Mr. Fields case, William "Bill" Johnston was

the public defender and he was the attorney for the victim's family in the <u>United States v. Fields</u>, where he had an interest in the outcome of the case.

In order to help his friend William "Bill" Johnston meet his end result Judge Smith forced Fields to represent himself at trial.

Mr. Fields and his attorney had a major conflict of interest that rendered the attorney/client relationship irretrievably broken and thus null and void. In 2007 while awaiting trial on the capital offense that would eventually take Fields to death row, Fields believed that his attorney coerced him into pleading guilty on the original felon in possession of a firearm and ammunition charges. Fields maintained that the gun was not his: (The police found a 9mm pistol under a mattress during a "security sweep" of a house where they only had an arrest warrant). The attorney told Fields to plead guilty anyway because (1) "The max is ten years"; he would get some time and be sent off to prison away from the Jail where the officers kept assaulting him; and (2) "The murder and other charges "might Just go away." Fields followed the attorney's advice and Judge Smith sentenced Fields to 12½ years or 151 months in prison.

First the attorney said that he'd "never seen the Judge Jump off the chart like that." Then later the attorney admitted that he "misinterpreted the law". Mr. Fields wanted to appeal but the attorney refused to do so, Mr. Fields wrote the Court(s) and at that point the attorney filed an "Anders

30

brief...... However the "murder and other charges" didn't "just go away", and the attorney refused to withdraw from the Capital case. Another year and a half of chaos followed with major disagreements between Fields and the attorney. Then a week before trial in January 2004 the attorney informed Fields that he "was once a prosecutor", and in that position he had "prosecuted" Fields before. The attorney asked Mr. Fields to sign a paper stating that "there was no conflict" and Fields refused to sign it; All trust between Attorney/Client was obliterated and beyond repair. Fields petitioned Judge Smith for new attorney's.

Judge Smith refused to appoint new attorney's and stated that Fields is "free to represent [him]self." At that point it was either go to trial with Counsel with a conflict of interest whom Fields didn't trust, or Mr Fields could proceed pro se. But before the trial started Fields attempted to get out of representing himself, stating, "Your Honor, I can't do this, I'm not learned in the law." See TT pgs. 64-65 (App. 7). Later Fields tried again to tell Judge Smith about the attorney/client conflict and Judge Smith dismissed Fields stating, "I have no idea what your conflict is about. I don't want to know. That's not my business." See TT pg. 1680 (App. 8).

In McCoy v. Louisiana, 138 S.Ct. 1500 (2018) the Court held that "a defendant is likely to benefit from having counsel because "even the intelligent and educated layman" may "lack [] both the skill and knowledge adequately to prepare his defense." Powell v.

31

's skill and knowledge may thus be necessary to accord [a] defendant [] the 'ample opportunity to meet the case of the prosecution' to which [he is] entitled." Strickland v. Washington, 466 U.S. 668, 685 (1984) (quoting Adams v. U.S. ex rel. McCann, 317 U.S. 269, 275 (1942). Counsel's presence is essential "precisely because the right to counsel is " the means through which the other rights of the person on trial are secured" United States v. Cronic, 466 U.S. 648, 653 (1984). " without counsel the right to a fair trial itself would be of little consequence"; as " it is through Counsel that the accused secures his other rights. " Kimmelman v. Morrison, 477 U.S. 365, 377 (1986). The constitutional violation is where Mr. Fields asked for "attorney's" and the Judge forced him to proceed without "any attorney's"; Strickland; Supra. As Fields relayed to the Court, his Counsel was "working with the prosecution", their strategy was to " lessen the impact of the evidence " to try to get him a life sentence while Fields insisted that he was "not guilty" and wanted an acquital.

"A lawyer may decide what trial tactics would best serve the client's goal of acquittal; for example, by choosing which witnesses to call or which lines of questioning to pursue. But the lawyer may not decide, contrary to his client's express instructions, that acquittal is not the right goal." McCoy v. Louisiana; Supra. The Sixth Amendment thus provides a defendant with both the right to control the objectives of his defense and the right to the assistance of Counsel. It has never been understood to require a

32

defendant to choose between them both" Simmons v. United States, 390 U.S. 377, 394 (1968) ("[W]e find it intolerable that one Constitutional right should have to be surrendered in order to assert another.")

The error here is structural, the government [can] not show "beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained." Chapman v. California, 386 U.S. 18, 24 (1967); see also Arizona v. Fulminate, 499 U.S. at 306 (1991); Fed. R. Crim. P. 52 (a) (errors affecting "substantial rights" are not harmless.) To prove harmlessness, the government must prove that "the guilty verdict actually rendered in "this" trial was surely unattributable to the error" no matter how inescapable the findings to support that verdict might be." Sullivan v. Louisiana, 508 U.S. at 279 (1993). The government could never meet that burden here.

The Supreme Court have held that "whether a man is innocent cannot be determined from a trial in which, as here, denial of counsel has made it impossible to conclude, with any satisfactory degree of certainty, that the defendants case was adequately presented" (quoting Betts v. Brady, 316 U.S. 455, 476 (1942).

## THE FIFTH CIRCUIT

On appeal to the 5th Circuit Mr. Fields drew Judge Edith Jones, a Judge that he'd tried to recuse for her racial, religious, anti-innocence, and anti mental health views. See United States v. Fields, No 13-70025 (2014) Judge Jones denied the recusal motion

33

First Judge Jones denied Mr. Fields his constitutional right to file his own timely brief and motions.

Then in an unreasonable determination of the facts and the law Judge Jones ruled that Fields "voluntarily" represented himself.

She went on to rule that "Actual innocence" isn't "cognizable" in the 5th Circuit."

Judge Jones ruled that Edward Ottley, the governments star witness did not commit reversible error when he lied and said the government hadn't made him any promises.

In another unreasonable determination of the facts and the law Judge Jones ruled that "there was a stain [in the Grand Am] that could possibly be blood".

She went on to rule that Fields "couldn't show that false evidence was used against him".

Judge Jones should have recused herself. see Liljeberg v. Health Services Acquisition Corp. (1988) 486 U.S. 847, 100 L.Ed.2d 855, 108 S.Ct. 2194. Her bias against minorities, the innocent, and the mentally ill is reflected in the 5th Circuits erroneous opinion(s) in denial of Fields' C.O.A.

The law cannot directly or indirectly give Judge Jones' personal bias effect. Palmore v. Sidoti, 466 U.S. 429, 433, 80 L.Ed.2d 421, 104 S.Ct. 1879 (1984).

The 5th Circuit quoted Detective Morris Colyer's false testimony that the Grand Am "looked detailed" or "wiped down". TT pgs. 1924-1925. And referenced Detective James Blair's testimony that there was "a stain" that could possibly be blood". Id. This

34

couldn't Judge Jones and the 5th Circuit's bias! The forensics report shows that the car was not clean. See (App. 9). And the court, while referencing "the stain" failed to reference the remainder of Detective Blair's testimony where he admits that the "stain" was tested and it was not blood. (see forensics report App. 9) and TT pg. 1332)). The verdict is undeniable that it was not blood. So why would the 5th Circuit insinuate that it was blood?

"A factual determination made by a [] court must be rebutted by clear and convincing evidence". (quoting Clack v. Quarterman, 457 F.3d 441, 443 (5th Cir. 2006)) (internal quotation marks omitted). The factual determination by the 5th Circuit that the car "looked detailed" or "wiped down" and the alleged "stain" was blood involves issues of fact that the forensics report and other evidence undoubtedly rebuts clearly and convincingly. Maldonado v. Thaler, 625 F.3d 229, 736 (5th Cir. 2010)). (internal quotation marks omitted). Dirt, fingerprints, bags of debris, a "stain" isn't conducive of a vehicle that was "detailed" or "wiped down". A court abuses its discretion if it applies or make findings of fact that are clearly erroneous. Chicago Tribune Co. v. Bridgestone/Firestone inc., 262 F.3d 1304, 1309 (11th Cir. 2001). When Judge Jones and the 5th Circuit ruled that Fields can't show that false evidence was used against him, that too is a finding of fact that is clearly erroneous. As laid out supra. Detective January said "there are no fingerprints" in regards to the alleged carjacking vehicle, yet the forensics reports: App (3) & (4) show that there

35

Again, when Judge Jones and the 5th Circuit said that Fields "voluntarily" represented himself that too is rebutted by clear and convincing evidence. App (7) + (8) Clark v. Quarterman; supra.

A courts decision is contrary to Supreme Court precedent if: (1) the Court arrives at a conclusion opposite to that reached by the [Supreme Court] on a question of law; or (2) the Court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to [that of the Supreme Court]. Pippin v. Dretke, 434 F.3d 782, 787 (5th Cir. 2005) (alterations in original) (quoting Williams v. Taylor, 529 U.S. 362, 405, 120 S.ct. 1495, 146 L.Ed. 2d 48 (2006). Fields is materially indistinguishable from McCoy v. Louisiana; supra. Also when Edward Duffey lied and said that the government hadn't made him any promises. TT pg. 1847 (App 10). When in fact the government had promised him immunity, see (App. 11), is a clear violation of Smith v. Kemp, 715 F.2d 1459, 1463 (11th Cir.) cert. denied 464 U.S. 1003, 104 S.ct. 510, 78 L.Ed. 2d 699 (1983) and it's materially indistinguishable from Napue v. Illinois, 360 U.S. 264, 269, 31 Ed. 2d 1217, 79 S.ct. 1173 (1959). "A court's decision is an unreasonable application of clearly established federal law whenever the Court identifies the correct governing legal principle from the Supreme Court's decisions but applies that principle to the facts of the prisoner's case in an objectively unreasonable manner". Id. (quoting Young v. Dretke, 356 F.3d 616, 623 (5th Cir. 2004). In evaluating the evidence presented in the Court, the Supreme Court presume

36

...unless a. petitioner "rebut[s] the presumption of correctness by clear and convincing evidence." 28 U.S.C. s. 2254 (e)(1). Above Fields clearly rebut[s] the Court's factual findings.

The 5th Circuits refusal to consider Mc Fields timely constitutional pro se brief and motions restricted the court from adjudicating his claims on the merits because it let bias "unreasonably truncate further factual development" on Fields' claim of Actual innocence. Whether there is actual bias and/or the appearance of bias, Judge Smith and the 5th Circuit violated due process principles. Bracy v. Schoming, 286 F.3d at 410-11. Judge Smith and Judge Jones should have recused themselves.

THE 5th CIRCUITS REFUSAL TO ENTERTAIN ANYTHING FIELDS FILE VIOLATED THE FIRST AMENDMENT RIGHT TO PETITION THE GOVERNMENT, THE FIFTH AND FOURTEENTH AMENDMENTS DUE PROCESS CLAUSE, AND ARTICLE I, SECTION NINE, CLAUSE TWO OF THE U.S. CONSTITUTION

In 2014 the 5th Circuit entered an Order to "not accept anything Mc Fields file" because Fields [had] attorney's. Even when Fields told the Court that he would "relieve counsel of their duty" he "Just want his pro se brief and motions heard" the Court still refused. The 5th circuits position was that

37

"only Fields attorney's could file on his behalf" Id. This disposition, unconstitutional in every regard auto- matically placed Mr. Fields on a different playing field from other post conviction inmates for two reasons. First, indigent defendants are only given attorney's post trial, throughout the direct appeal stage. Once that stage of the appeal is concluded the defendant will have to hire his § 2255 counsel or proceed pro se; Counsel isn't forced upon the defendant. Yet unlike every other § 2255 defendant, Counsel was forced upon Mr. Fields.

Second, Mr. Fields have a Constitutional right to file pro se briefs and motions. Yet unlike every other § 2255 applicant, he was denied that right.

In Price v. Johnson, 334 U.S. 266, 68 S.ct. 1049, 92 L.Ed. 1356 (1948), the Court held that "a prisoner has no absolute right to argue his own appeal or even to be present at the proceedings in an appellate Court" foreclosed any right of a pro se defendant to act pro se. But this did not foreclose the right of a defendant to present a "pro se brief". In light of this the Court argued that, whether at trial or on appeal, a defendant should not be required to have counsel forced upon him or her. In Chamberlain v. Ericksen, 744 F.2d 628, 630 (8th Cir. 1984), cert. denied, 470 U.S. 1008, 84 L.Ed. 2d 387, 105 S.ct. 1368 (1985), the Chamberlain Court, quoting the above styled language from Price v. Johnson, found that a criminal defendant does have the right under the Constitution to present pro se briefs or motions on appeal.

Four years after the 8th Circuit held that they would not accept anything Fields file and forced attorney's upon

138 S.Ct. 1500 (2018), reiterating the fact that a defendant is in control of "his own Autonomy." The Sixth Amendment speaks of the 'assistance' of counsel, and no assistant, however expert, is still an assistant." _Faretta v. California_, 422 U.S., at 819-820, 95 S.ct. 2525 (1975); see _Gannett Co. v. DePasquale_, 443 U.S. 368, 382, n.10, 99 S.ct. 2898, 61 L.Ed. 2d 608 (1979) (the Sixth Amendment "contemplat[es] a norm in which the [convicted] and not a lawyer, is master of his own defense"). With that being said, Fields' attorney did file 'Actual innocence', but as Fields relayed to the Court(s) the petition was "incomplete" because Counsel failed to append crucial forensic reports (see Actual Innocence claim, supra). In _In re Dewey_, 590 B.R. 706 (Aug 17, 2018) (footnote), the Court held that "A claim without evidence to establish it is speculation and unenforceable." Fields tried to present these critical factual legal documents but the District Court and then the 5th Circuit refused to allow Mr Fields to present the documents [and other evidence] because Fields "had" attorney's" (Even when Fields was willing to "relieve counsel of [their] duty"); all in violation of federal law and the United States Constitution. See _Gordon v. Braxton_, 2015 BL 56012 (4th cir.), No. 13-7040 ("A claim is not 'adjudicated on the merits' when the Court makes its decision "on a materially incomplete record;"... [A] record may be materially incomplete 'when a [] court unreasonably refuses to permit further development of the facts' of a claim.") (quoting _Winston v. Pearson_ (Winston II), 683 F.3d at 496). This skewed the fairness of the entire system. _Barker v. Wingo_, 407 U.S. 514 (1972).

When Mr Fields filed a timely brief to the 5th circuit

39

refused to consider the filings "because Fields [had] attorney's".

Later when counsel filed their brief Fields "strenuously objected" to the "incomplete" brief, and asked the Court again to allow his pro se brief and motions to be heard. This time the Court entered an Order to "not accept anything that Fields file pro se"; again forcing counsel and an incomplete brief upon him. The Price v. Johnson and the Chamberlain v. Ericksen Courts was the controlling precedent at the time, holding that "a criminal defendant does have a Constitutional right to present pro se brief[s] and motions on appeal" and "whether at trial or on appeal, a defendant should not be required to have counsel forced upon him." Fields vociferously insisted that he wanted his pro se filings considered with or without counsel, a right that every other § 2255 petitioner is allowed to make, yet the Court overruled that Constitutional right over Mr. Fields intransigent and unambiguous objection(s).

At common law "it was not representation by counsel but self-representation that was the practice in prosecutions for serious crimes." Faretta, 422 U.S. at 823; See also Powell v. Alabama, 287 U.S. at 60-61 (1932). The defendant was required to plead and prove all affirmative defenses and mitigation defenses; "indeed, 'all ... circumstances of Justification, excuse or alleviation' rested on the defendant." Patterson v. New York, 432 U.S. 197, 202 (1977) (quoting 4 Blackstone, commentaries on the law of England * 201).

Mr. Fields did not silently acquiesce to the counsel that was forced upon him to leave out issues and evidence that would have exonerated him, thus he isn't bound by the act of his agent New York v. Hill, 528 U.S. 110, 115 (2000)

40

(quoting *Hamdi v. Rumsfeld*) *United States*, 553 U.S. at 257 (2008) (Scalia, J., concurring in Judgment). The constitutional violation occurs "when [the defendant] insists that he wants to file his own brief and motions" and is prevented from doing so. *Chamberlain v. Ericksen, Supra*. See also *Faretta*, 422 u.s. at 806, 821.

Next Fields followed the Supreme Court's directions and filed "in the District of incarceration". Now with new counsel he prevailed on 2255(h) under *United States v. Davis*, 139 s.ct. 2319 (2019). The vacatur of two of the convictions left Mr. Fields incarcerated with 15 years for carjacking and life on the accompanying 924(c) where fingerprints prove that Fields never 'carjacked' anyone. But eight years after Fields filed the § 2241 the 7th Circuit Court of appeals denied on procedural grounds due to the Supreme Court's holding in *Jones v. Hendrix; Supra*. That decision terminated Court appointed Counsel, leaving Fields to Petition the government pro se.

Had the Court of conviction and/or the 5th circuit Court of appeals not denied Mr. Fields his Constitutional right to present the evidence that would have cured their unreasonable application of the facts and the law, Fields would be free and we wouldn't be here today.

In *Boumediene v. Bush*, 128 s.ct. at 2270 (2008) it was a reminder that collateral factfinding may sometimes be required even after criminal trials suggests that appeal may not always afford an adequate substitute. Being mindful that the "Constitution deals with substance not shadows", *Salazar v. Buono*, 559 u.s. 700, 723 (2010) (Roberts, c. J., concurring) (internal quotation marks omitted), it is substantive

41

court in "any pro se capacity"; those "settled facts satisfy a legal standard" which amounts to a "legal inquiry". The Court violated Constitutional due process and their denial of access to the Court, by design did not provide Mr. Fields a meaningful opportunity to establish his claims and "[U]nder constitutionally adequate procedures Petitioner would have prevailed on his claims". Thus this RULE 60(b) motion "Relates back" to the original pleading. Fed. R. Civil P. 15(c).

## THE ANTITERRORISM AND EFFECTIVE DEATH PENALTY ACT IS ILLEGAL, AND ANTITHETICAL TO THE UNITED STATES CONSTITUTION

The Antiterrorism and effective Death Penalty act is illegal and unconstitutional because; (1) It abridge the rights of the people; (2) Any law that allows for open ended criminal violations against the people abridge the rights of the sovereign and is therefore Unconstitutional; (3) Any law that either directly or indirectly support the reckless disregard for human life is illegal and Unconstitutional; (4) The AEDPA's restrictions forces the Court(s) to Aid and Abet criminal homicide (in the pretense of Justice); (5) The AEDPA fail to provide for meaningful Appellate review in the event of a conviction and/or death sentence; (6) The AEDPA's restrictions allow for discriminatory application; (7) The AEDPA's restrictions victimize the innocent; (8) If a defendant fail to bring a meritorious issue to the Court

42

believe [illegible] imposed by the AEDPA concludes (for whatever the reason may be), then the defendant, whether he's guilty or innocent, will Just have to suffer death and/or the loss of liberty because the AEDPA's restrictions prevents him from obtaining relief on that issue; (9). The AEDPA's restrictions places Unconstitutional demands on Court(s) barring them from acting "at any stage", even where it's clear the defendant's Constitutional rights have been violated; (10) The AEDPA forces the Court(s) to ignore violations of defendant's Constitutional Rights; (11). It's illegal and unconstitutional for Congress to make a law (AEDPA) that places their rush to finality before violations of the Constitution; (13) When the AEDPA was enacted Congress failed to consider the off chance that Judicial Bias, whether at trial or on appeal would pollute the process; (14) The Court(s) definition of "extraordinary circumstances" and "extraordinary case" is Unconstitutionally vague, and Unconstitutionally limiting; (15) The AEDPA's restrictions allows for fundamental miscarriages of Justice; This case signifies the AEDPA's Unconstitutionality.

The facts here within Fields' case exposes the illegal and unconstitutional defects in the Antiterrorism and effective Death Penalty Act. In Marbury v. Madison, 5 U.S. 137, 1 Cranch 137, 176, 2 L.Ed. 60 (1803), the Court held that "the powers of the legislature are defined and limited; and those limits may not be mistaken or forgotten, the Constitution is written." Thus Congress do indeed have the right to make laws, but Congress don't have the right to make laws that abridge the Rights of the people and violate the Constitution." The

AEDPA's restrictions promotes the willful, deliberate, and knowing violation of Mr. Fields and other defendants Constitutional rights. The law itself convey the message: 'we don't care if your rights have been violated; we don't care if you're innocent, AEDPA's restrictions stand as a tecnical blockade to which a defendant's life and/or liberty hinges upon.' That stance alone, regress Unconstitutional Convictions rather than make it progressive. In Fields case he petitioned the District Court as soon as he was made aware that his Habeas Petition was incomplete, all to no avail. Fields then filed a timely pro se petition even before the statute of limitations were up and the 5th Circuit rejected it "because Fields [had] attorney's". Fields even elected to "relieve counsel of their duty" so his brief could be heard, yet the 5th Circuit still refused. And when Counsel finally filed a brief Fields "strenuously objected" to the brief, but the 5th Circuit entered an Order "not to accept anything Fields file pro se". The 5th Circuit then denied Counsel's brief based on an unreasonable determination of the facts and the law precipitated by the Courts own unconstitutional act of not allowing Fields to present the evidence in his timely pro se filings. Now, through no fault of Mr. Fields own, his impediment is the AEDPA. Thus Fields have been, and still is in an unconstitutional situation because of this illegal and unconstitutional law.

The peculiar circumstances of the moment when congress enacted the AEDPA might have rendered the measure more or less wise, but it cannot render it Constitutional, and there can be no question

44

that it is the responsibility of the court to enforce the limits on Federal power (132 S.Ct. 2580) by striking down acts of Congress that transgress those limits. Marbury v. Madison, supra, at 175-176, 2 L.Ed. 60. The question before the Court must be considered against the backdrop of these basic principles. The AEDPA is volatile of the 1st, 5th, 8th, 9th and 14th Amendments because the state and/or governments misguided "right" to finality cannot be construed to deny or disparage the rights retained by the people under the United States Constitution. The AEDPA is volatile of the sixth Amendment because in Fields' case, in 2004 he was forced to proceed to trial without counsel even though Fields knew nothing about law and practically begged the Judge for "new attorney's", all to no avail. And then ten years later, in 2014, when Fields had learned the law to a sufficient degree and filed his own timely pro se brief in light of appointed counsel's "mistakes", the Court forced Counsel and an incomplete brief on Mr. Fields. Both instances violate the Constitution, yet the AEDPA's restrictions is Mr. Fields' impediment.

With the evidence herein there should be no doubt that Mr. Fields conviction(s) and sentence(s) was arbitrarily imposed. In a concurring opinion by Mr. Justice Douglas, it was stated that a penalty was arbitrarily or discriminator imposed and should be considered so if it was unusually imposed. Nothing is considered "usual" about a case like this. Furman v. Georgia (1972) 408 U.S. 238, 33 L.Ed. 2d 346, 92 S.Ct. 2726. Being forced to proceed to trial without counsel is (i.e)"Unusual"! Being hindered from presenting exonerating, exculpatory and impeachment evidence on appea

45

is "[f]air" then _____ constitutes an _____ or "extreme". "It is true that extreme cases often test the bounds of established legal principles, and sometimes no administrable standard may be available to address the perceived wrong. But it is also true that extreme cases [like Fields] are more likely to cross constitutional limits, requiring the Court's intervention and formulation of objective standards. This is particularly true when Due Process is violated. See, e.g., County of Sacramento v. Lewis, 523 u.s. 833, 846-847, 118 S. Ct. 1708, 140 L. Ed. 2d 1043 (1998) (reiterating the due process prohibition on "executive abuse of power ... which shocks the conscience"). By permitting a death penalty statute to displace that of common sense and logic, the AEDPA's appellate scheme has led to curious and potentially arbitrary outcomes. For example, almost all exonerations prevail on successive review after the Courts determine that guilt is conclusive and deny a defendants first round of appeals, including habeas. (collecting cases). The AEDPA makes it virtually impossible to file a successive appeal: In at least one case the outcome was tragic. See http://www.innocenceproject.org/content/Cameron_Todd_Willingham_Posthumous_Pardon_Filing_Documents.php.

The AEDPA reflects prejudice and antipathy ... a view that (even if someone is actually innocent) they are not as worthy or deserving to prove such; For these reasons and because such discrimination is unlikely to be soon rectified by legislative means, the law should be subjected to (rejection/repeal). Adhering to the AEDPA's strict restrictions in Fields' case is a violation of Federal law

46

and the rule of constitution; (2) It allows an innocent man to remain incarcerated; (2) It allows the prosecution to act with the most egregious criminal intent; and (3) It totally decimates the integrity of the Federal Courts. In this instance the AEDPA's end result do not seem to square with our 8th Amendment Jurisprudence.

Prosecutors know how to scheme, trick and beat the system. In cases where there is no evidence connecting the defendant to the crime, like here in Fields, the prosecution can just solicit, procure and use false testimony/evidence to obtain the conviction and it shifts the burden of proof onto the defendant. That, coupled with bias Judges, Brady violations and other unconstitutional acts places an undue and impossible burden on the defendant and makes relief impossible.

The threat that AEDPA poses to our system of constitutional government, however, is clear. As Justice Scalia once said, "this wolf comes as a wolf". Morrison v. Olsen, 487 U.S. 654, 699 (1988) (Scalia, J., dissenting). The Civil War was fought to cleanse the nation's soul of the great sin of slavery. In its wake, not only was slavery abolished but the very nature of the American Republic was reforged. National citizenship was made paramount, not state citizenship, and for the first time the national Constitution obliged States to respect the "privileges or immunities of citizens of the United States," to afford the "equal protection of the laws" to all, and to provide "due process of law" before "depriv[ing] any person of life, liberty, or property." U.S. Const. Amend. XIV, §1. The Great writ of Habeas Corpus is, today, the only means by which the federal government can satisfy itself that these commands,

47



and to be obeyed in particular are faithfully to be observed and given effect by the [government]. Cf. Amar, Neo-Federalist Article III, note 101 at 268-70 [arguing that discretionary Supreme Court review on certiorari inadequately vindicates the interest in having all questions of federal law decided by federal courts.] AEDPA, however it is understood, would remove this last arrow from the quiver of Justice and thereby render genuine enforcement of the Constitution impossible. It would oblige the sovereign People of the United States to sit idly by while the States and/or Government imprison or execute their fellow Americans in contravention of the Supreme Law of the Land. This is not federalism, See Coleman v. Thompson, 501 U.S. 722, 758-62 (1991); cf. id. at 726, it is the anti-federalist vision of States' rights over human rights that lost during the ratification debate over the new Constitution and which lost again, at terrible cost, during the Civil War. Cf. Senator Hubert Humphrey, Address at the Democratic National Convention (July 14, 1948) ("The time has arrived in America for the Democratic party to get out of the shadow of States' rights and to walk forthrightly into the bright sunshine of human rights") So long as AEDPA lives, that vision, so hateful to the Constitution's promise to "Secure the Blessings of Liberty", lives. U.S. Const. pmbl. Fortunately, as Mr Fields case shows clearly, § 2254(d)(1) is repugnant not merely to the Constitution's principles, but also to its provisions, and should hence be declared unconstitutional and void.

48

<u>Conclusion</u>

By the protection of the law human rights are secured; withdraw that protection and we are at the mercy of wicked rulers, or the clamors of an excited people; <u>Walberg v. Israel</u>, 766 F.2d 1071, 1078 (7th Cir.) (Posner J.) cert. denied, 474 U.S. 1031 (1985). If this court refuse to entertain the claims herein it would result in a fundamental miscarriage of Justice; <u>Sawyer v. Whitley</u>, 505 U.S. 333, 120 L.Ed.2d 269, 112 S.Ct. 2514 (1992). Fields asks this court to use its Supervisory powers to correct this miscarriage of Justice and to deter any further illegal/unconstitutional conduct. <u>Bank of Nova Scotia v. United States</u>, 487 U.S. 250, 108 S.Ct. 2369, 101 L.Ed.2d 228 (1988).

For the reason(s) stated herein Mr. Fields ask that this court grant this Motion.

Sherman Fields

#15651-180

USP LEE

P.O. Box 305

Jonesville, VA

24263

49

Case 6:01-cr-00164-CRW   Document 424   Filed 06/16/25   Page 61 of 61

Sherman Fields
#15651-180
USP LEE
P.O. Box 305
Jonesville, VA
      24263-0305



Legal Mail

Special Mail
28 C.F.R. 540.18

To the Clerk
United States Court of Appeals
 For the Fifth Circuit
F. EDWARD HEBERT BUILDING
 600 S. MAESTRI PLACE
New Orleans, Louisiana 70130-3408