

# EXHIBIT 1

# *United States Court of Appeals*
## FIFTH CIRCUIT
### OFFICE OF THE CLERK

**LYLE W. CAYCE**
**CLERK**

TEL. 504-310-7700
600 S. MAESTRI PLACE,
Suite 115
NEW ORLEANS, LA 70130

March 20, 2025

Sherman Fields
#15651-180
USP Lee
P.O. Box 305
Jonesville, VA 24263

Dear Mr. Fields,

We received your letter regarding your 60(b) motion. This court has no jurisdiction to grant the requested relief without a formal appeal. You may file a notice of appeal in the U.S. District Court.

You may address your 60(b) motion to the Clerk of the U.S. District Court.

Sincerely,

LYLE W. CAYCE, Clerk

By: _____
Christina A. Gardner, Deputy Clerk
504-310-7684

# EXHIBIT 2

Direct Examination of Steve January by Mr. Snyder—1326

A.    Same -- same thing, fingerprinted, trace lifters, vacuuming.

Q.    And had it vacuumed and everything, correct?

A.    I believe they vacuumed it. Yes.

Q.    And when you say vacuumed it, you're looking for trace evidence, correct?

A.    Yes.

Q.    Hairs, fibers, anything you can find?

A.    Yes.

Q.    And the results of that was this thing was clean, correct?

A.    That is correct.

Q.    Now, did you obtain a set of keys that were in evidence at the Waco Police Department?

A.    Yes. I did.

Q.    And these keys were -- the keys had been found in the apartment on Ruby. is that correct?

A.    Yes. It is.

Q.    And what did you do with these keys after you removed them from evidence?

A.    This particular car had -- I took the keys out of the property room is what I did.

Q.    Okay.

A.    It had an electronic chip in the key itself and -- which indicated it would only start one specific ignition. And

# EXHIBIT 3

App. 1

```
================================================================
        W.A C O  POLICE  DEPARTMENT          | SUPPLEMENT
              WACO, TEXAS                     | Report
================================================================
·Reported Date: 11/15/01  Time: 07:35    Case: 01-075644 (003)PAGE: 1 of 2
 Code: 29.03 1F PC         Crime: AGG ROBBERY  Class: 030110
 Occurrence Date: 11/15/01-        Day: THURSDAY -        Time: 07:30-07:35
·Status: AC  ACTIVE INVES          Closing Officer: 000201 JANUARY S
 Location: 3000 HERRING, WA                              RD:  335
           PARKING LOT
================================ NARRATIVE ================================
```

On 11/28/01 on coming to work, I found inside the Waco PD Laser Lab at 721 N. 4TH was a GRAY CHEVROLET LUMINA, 4DR, with TX tags D95MFG. I contacted ID TECH SANDERS, who put the vehicle in the lab and he told me DET. JANUARY found this vehicle which was used in an AGGRAVATED ROBBERY and requested printing of the vehicle to see if any prints could be found. On processing the outside of the vehicle, found a lot of water marks, some smudging, no good ridge detail on the inside. On dusting the inside of the trunk area, I found a set of plates that were F84KRK. On running the 28 on these plates, it came back to this 1999 CHEVROLET LUMINA. The plates that were on this vehicle were one rear plate being D95MFG. This also comes back to a 1999 CHEVROLET, but not with the same VIN# of this LUMINA. This one plate that did not belong to the vehicle was removed and printed. Results will be further in this report. The two plates that were found in the trunk area that belonged to this vehicle; one was put on the back and the other one was left in the sack in the trunk area. Also, there was a FORD key with a remote key ring on it. This will also be taken and placed in the property room as evidence. The inside of the vehicle, the windows and the mirrors were fingerprinted with the following results:

CARD # 1 - PRINTS FROM THE INSIDE DRIVER'S SIDE WINDOW

CARD #.2 - PRINTS FROM THE INSIDE DRIVER'S WINDOW, AFIS QUALITY

CARD # 3 - INSIDE BACK RIGHT PASSENGER WINDOW. APPEARS TO BE A PARTIAL
           PALM

CARD # 4 - AFIS QUALITY PRINTS FROM THE INSIDE DRIVER'S WINDOW

CARD # 5 - PRINT OVER PRINTS FROM INSIDE DRIVER'S WINDOW

CARD # 6 - PRINT OVER PRINTS. SOME OF THESE DO SHOW GOOD RIDGE DETAIL FROM
           THE INSIDE DRIVER'S WINDOW

CARD # 7 - VERY LIGHT PRINTING FROM THE INSIDE DRIVER'S WINDOW

CASRD # 8 - PRINT OVER PRINTS, SOME RIDGE DETAIL FROM THE INSIDE BACK
            PASSENGER WINDOW BEHIND DRIVER'S SEAT

CARD # 9 - TWO SMUDGE PRINTS FROM INSIDE BACK LEFT PASSENGER WINDOW BEHIND
           DRIVER

CARD #10 - LIGHT PRINTING AND SMUDGING FROM INSIDE BACK LEFT WINDOW

CARD #11 - PARTIAL PRINT FROM BACK OF LP# D95MFG

App. 1

```
            W A C O   POLICE   DEPARTMENT          | Continuation
                    WACO, TEXAS                    | Page
========================================================================
Reported Date: 11/15/01  Time: 07:35      Case: 01-075644 (003)PAGE: 2 of 2
Code: 29.03 1F PC        Crime: AGG ROBBERY   Class: 030110
```

CARD #12 - PARTIAL PRINT FROM BACK OF LP # D95MFG

The other plates that belong to the vehicle also printed, F84KRK; however, only smudging could be detected and no prints were located. The LP D95MFG will be placed in the property room along with the FORD KEY and the 12 print cards will be given to JOANN in fingerprints.

I notified DET. JANUARY, who was going to contact the owner of this 1999 CHEVROLET LUMINA had have them come retrieve their vehicle from the laser lab.

```
========================================================================
W A C O   Police Department                        | Continuation Page
========================================================================
Reporting Officer: BLAIR J          Number: 000179   Date: 11/29/01  Time: 12:30
        Typed by: BROUSSARD         Number: 384      Date: 11/29/01  Time: 13:11
Approving Officer: BROUSSARD        Number: 000384   Date: 11/29/01  Time: 13:22
```

# EXHIBIT 4

App. 2

```
==========================================================================
              W A C O   POLICE   DEPARTMENT           |  SUPPLEMENT
                      WACO, TEXAS                      |  Report
==========================================================================
Reported Date: 11/15/01  Time: 07:35    Case: 01-075644 (007)    PAGE: 1 of 1
Code: 29.03 1F PC        Crime: AGG ROBBERY   Class: 030110   CAD#:      Hate:
Occurrence Date: 11/15/01-              Day: Thursday -           Time: 07:30-07:35
Status: CA  CLEAR ADU AR               Closing Officer: 000201 JANUARY S
Location: 3000 HERRING, WA                              RD:  335  Beat:
          PARKING LOT
============================ NARRATIVE ====================================
On this case I was asked to do a comparison with subject, SHERMAN FIELDS,
DOB 7/14/74, and CHRISTIAN CHAE WALKER, DOB 10/11/73. On the comparison
there is no match. Latent prints remain on file in the AFIS Lab until
needed.
```

```
==========================================================================
W A C O   Police Department                          First Page
==========================================================================
Reporting Officer: GUERCIO           Number: 000361   Date: 12/11/03   Time:
        Typed by: HUBBARD            Number: 321      Date: 12/16/03   Time: 11:05
Approving Officer: HUBBARD,BETTY     Number: 000321   Date: 12/16/03   Time: 11:07
```

# EXHIBIT 5

2029

That's even more of a reason not to kill her.

Furthermore, the government allege that I was identified by positive identification that I stole Ms. Edwards' car. But you heard evidence that Ms. Edwards first stated that she didn't know who the male was that stole her car and only changed --

MR. SNYDER:  Your Honor, Your Honor, the only person that said that was the defendant.  Not the witness.

THE COURT:  Sustain the objection.

MR. FIELDS:  You know, I was told that when you're at the depths of despair, just open your Bible to any page.  So that's what I did this morning.  And the passage I came to it say, "Ask and you shall receive.  Seek and you shall find.  Knock and the door shall be opened for you."

I'm innocent.  And I'm asking you to make a just decision and acquit me of this madness.  Next, you were brought here to seek the truth, and I pray that the truth you shall find. Last, but not least, the Lord says, "Knock and the door shall be open for you."  (Mr. Fields knocks on counsel table three times.)  Please open the door and let me out of this nightmare.

THE COURT:  You have 28 minutes, Mr. Snyder.  Should I warn you when you have two minutes left?  Five?  What would you --

MR. SNYDER:  Yeah.

THE COURT:  Two or five?

# EXHIBIT 6

Page: 1 of 1        Case Number: 01- 75644

STATEMENT OF:

On 11-15-01 I had pulled into the Hillcrest hospital parking lot and started to get out of my car, when I saw a Black male approach me at my driver's side door. The Black male then told me to get back into my car, I kept getting out of my car and pushed him back away from me, he then grabbed me with his left hand around the throat and pulled out a gun with his right hand and tried to point it at me. I grabbed the gun with my left hand and tried to push it away from me, and used my right to try to fight him off, I was screaming and yelling for help the entire time. I was able to get away from his hold and ran towards the back of my car, towards the hospital. The Black male then got in my car, backed up and drove off. The male drove through the back of the parking lot then up to the exit at 30th. He then drove south 30th towards Pine then turned east on Pine. I did not know who the Black male was, then one of the hospital security guards showed me a picture of a Black male and I said that was him, he said this is Sherman Fields. Officer Carrizales also showed me a pic of another Black male, and I said that was the same person the guard showed me. Officer Carrizales told me this pic of a man named Sherman Fields. I will assist the Waco P.D. with the prosecution of this case.

---

I will assist the WACO POLICE DEPARTMENT IN THE INVESTIGATION AND PROSECUTION of this case. I have been given the opportunity, before signing this statement, to make any additions or deletions I desire in order that this statement be accurate. I have stated all the above is true and correct and happened in WACO, MCLENNAN COUNTY, TEXAS.

Signed this __15th__ day of __November__, 200_1_.

**EXHIBIT 7**

App. F---

64

and create trial errors so that if their client is convicted there will be a better chance of that conviction being reversed on appeal. That is a real disadvantage that you would have in trying to represent yourself because those types of decisions and those types of attempts to create error in the record is something that certainly cannot only best be done, but can almost only be done by someone who has proper legal training and experience. So I just want to point that out to you and ask you if you have any questions about that aspect of representing yourself, and if you do, let me know, and if you don't, then this would be your last opportunity to tell me whether or not you want to represent yourself or have Mr. Peterson and Mr. Swanton represent you.

MR. FIELDS: First of all, Your Honor, I don't -- I don't even want to get to no -- to the point where I have to go to appeal. I want a -- I want an acquittal. Do you know what I'm saying? And the way they're going, I can't see it.

THE COURT: Mr. Fields, I understand that's the primary goal of everyone who goes to trial anywhere any time. I understand that.

MR. FIELDS: And I just want to tell you that I'm not sure can do this, you know. I have no knowledge of the law and I believe I'll be hindered by a severe case of stage fright. I want to ask you one last time to appoint me new counsel. As I stated Friday, my attorneys and I have a major conflict of

65

interest, and if you refuse me new counsel, you would be forcing me to proceed pro se against my will.

Furthermore, I've heard you state on two different occasions that I was attempting to delay the trial. With all due respect, I want you to know that I've been verbally opposing each delay thus far. If you think I'm lying, all you have to do is ask Mr. Peterson and Mr. Swanton. The government is the one whom has delayed the trial this long for various reasons, the last being that they found some physical evidence that needed to be tested, a hair that they claim was found on the victim's body or clothes or somewhere. As I'm sure you know, the delay was a waste of my time but it was beneficial to the government because from my understanding they claim to have found several more inmates that have come forward claiming that I confessed to them or something like that. You've been unfairly admonishing me about delays when it's the government that has delayed the trial in order to gain an advantage.

THE COURT: Mr. Fields, my memory is that I told you the last time you decided -- well, you had suggested that you wanted to represent yourself and then you changed your mind and decided you wanted your attorneys to represent you, and at that point I told you that were you to change your mind once again, as you have now done, that that would not constitute or result in a delay in the trial. If I have taken the position that you yourself have been a cause of a delay, I'm not aware of having

**EXHIBIT 8**

Examination of Ms. Scroggins by Mr. Fields (Jury out)—1680

MR. FIELDS:  I asked you for new counsel.  You denied me.

THE COURT:  That's correct.  You don't get the opportunity to choose whatever lawyer you want to have appointed.  As long as the lawyers I appoint are competent and are working in your behalf, then that's the lawyers that you get to represent you, Mr. Fields.  You or anybody else.

MR. FIELDS:  But if we -- we had a major conflict of interest and ...

THE COURT:  Not that I'm aware of, Mr. Fields.

MR. FIELDS:  You didn't -- you didn't -- you didn't realize what our conflict was about?

THE COURT:  I have no idea what your conflict is about, Mr. Fields.  I don't want to know.  That's not my business.

MR. FIELDS:  But when I asked you for new attorneys and I told you that we had a conflict of interest, didn't -- wasn't it your responsibility then?

THE COURT:  No.  It wasn't, Mr. Fields.

MR. FIELDS:  It wasn't?  So, in other words, I can't ask no questions.  What am I supposed to do?

THE COURT:  Mr. Fields, nobody is telling you you can't ask questions.  You can't ask questions that aren't admissible.  If the government objects, I'm going to sustain the objection if they're not admissible.  Just because you have a question written down and you think that's the way things ought to be, that doesn't mean you get to ask the question.  Everybody has

# EXHIBIT 64

App.6

```
WACO POLICE DEPARTMENT                              SUPPLEMENT
            WACO, TEXAS                               Report
```

rted Date: 11/08/01   Time: 15:15          Case: 01-074130 (004)   Page: 1
: 580000 NO          Crime: INFO ONLY    Class: 580000
rence Date: 11/08/01-           Day: THURSDAY -              Time: 15:15-
us: CL  CLOSED                  Closing Officer: 000740 SPECIAL CRIME
tion: 1034 DELANO, WA                                       RD:   104
       ESTELLA MAXEY APT. COMPLEX

================== NARRATIVE =================================================

1/14/01 I was contacted by ID TECH SANDERS. He told me a car driven by
iff's Department being a RED PONTIAC GRAND AM 2 DR bearing TX LP#
RT was brought down to the laser lab to be processed. I was told DET.
ARY was handling a missing person case in which he suspected foul
. A request was made to attempt to find blood inside the vehicle.

irst examining the vehicle, the crime scope was used at setting 475.
the trunk area and the inside of the vehicle were viewed through the
e scope. Some dull staining could be seen on the back left floor board
nd the driver's seat. I tested this one stain with TMB solution and I
not get an immediate reaction indicating this was blood. However, this
e of carpet will be taken and placed as evidence.

r viewing the entire inside of the vehicle for possible blood stains,
as then fingerprinted. A total of 15 print cards were obtained. Print
s numbered 1 through 11 will be given to JOANN GUERCIO in fingerprints
iew these prints and see if any of them are of AFIS quality or can be
ed to the suspect. Prints #12 through 15 will be attached to the
r request form. These prints show very little ridge detail that I could
that could be used to make an identification.

ace lift was done of the front passenger's seat, the driver's seat and
rear seat. Also, a vacuum was done of all the floor mats and also the
k carpet was taken for possible trace evidence. The following items
will be placed in the property room will be:
    ONE PIECE OF CARPET FROM THE BACK LEFT FLOOR BOARD
    THREE TRACE LIFTS
    ONE VACUUM CANISTER WITH TRACE EVIDENCE FIBER
    ONE SACK CONTAINING CARPET FROM THE TRUNK AREA OF THIS PONTIAC

ll photographs were taken of the outside and the inside of the vehicle.
35 mm film will also be turned in to the photo lab for processing if
ed at a later date.

=============================================================================
.O   Police Department                                      First Page
=============================================================================
ting Officer: BLAIR J       Number: 000179   Date: 11/15/01   Time: 09:00
    Typed by: BROUSSARD      Number: 384      Date: 11/16/01   Time: 16:25
ving Officer: BROUSSARD      Number: 000384   Date: 11/16/01   Time: 16:35

# EXHIBIT 10

Cross-Examination of Edward Outley by Mr. Fields——1847

(Conference between Mr. Fields and Mr. Peterson)

BY MR. FIELDS:

Q.    And, Mr. Outley, at one point -- Mr. Outley, have the government made you any promises, or --

A..   No.  The government hasn't made me any promises. They tried to get me to take a plea in the beginning of this case, and like I say, I wasn't admitting to none of the guns and taking the case to keep from talking on you and seeing Nay-Nay get any time.  I only got to come back when you tried to get me come be an eyewitness to this murder case, man.  You making me come up here like this.

Q.    Mr. Outley, --

A.    Yes.

Q.    -- you indicate in this letter that you could have got a 5K1.  Could you -- could you explain that?  What -- what is that?

MR. SNYDER:. Your Honor, I object to this questioning and this entire line of questioning because that is not relevant.

THE COURT:  Overruled.

MR. SNYDER:  And would he then specify the document that he's saying where this statement was made?

BY MR. FIELDS:

Q.    Mr. Outley.

THE COURT:  What are you referring to, Mr. Fields?

(Document tendered to the witness)

**EXHIBIT 8** \\

**U.S. Department of Justice**

*United States Attorney's Office*
*Western District of Texas*

D

J

700 S. University Parks, Suite 770          (817) 750-1580
Waco, Texas 76706

January 2, 2004

Stan Schwieger
Attorney at Law
P.O. Box 975
Waco,    Tx.    76703

Re: Edward Lee Outley

Dear Mr. Schwieger,

This letter is written concerning the cooperation furnished by your client, Edward Outley, in connection with an investigation and trial being conducted by the United States into the murder of Suncerey Coleman and related crimes. This is to certify that your client is considered a witness in the case and not a target or subject of the investigation.

Correspondingly, any statement or testimony, or evidence derived directly or indirectly from the statements or testimony which your client provides regarding this matter or any other matter into which he may be inquired by any agent or attorney associated with this case or any testimony furnished to a grand or petit jury will not be used against him in this or any further criminal proceeding, either federal or state, except a prosecution for perjury or otherwise making a false statement.

This grant of immunity is completely conditional upon Mr. Outley's truthful, candid cooperation and is voidable by the United States in the event it can demonstrate to a court that Mr. Outley has made a material misstatement of fact to the Court or ceases to cooperate in this case.

Sincerely,

JOHNNY SUTTON
United States Attorney

by:    STEVEN L. SNYDER
Assistant United States Attorney

FIELDS 032134

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on June 9, 2025, I notified Assistant U.S. Attorney Zachary C. Richter of these filings by depositing a missive in United States Penitentiary Lee's internal mailing system with first class postage affixed thereto, correctly addressed to: Zachary Carl Richter, AUSA, Western District of Texas, 903 San Jacinto, Suite 334, Austin, Texas 78701

The undersigned hereby executed this certificate under penalty of perjury pursuant to 28 U.S.C. §1746

Sherman Fields

Sherman Fields

#15651-180

USP LEE

P.O. Box 305

Jonesville, VA

24263

Sherman L. Fields

v.                                          USDC No. 6:01-CR-164-1

                                                No. 25-50368

United States of America


MOTION FOR APPOINTMENT OF COUNSEL


Comes Now Sherman L. Fields, pro se, and respectfully moves this Honorable Court pursuant to the Fifth, Sixth and Fourteenth Amendments to the U.S. Constitution to appoint attorney's Italia Patti and Jean Giles of the Indiana Community Defenders office, 111 Monument Circle, Suite 3200, Indianapolis, In 46204, to represent him in the above entitled action. Mr. Fields will show the Court as follows:

   1. Mr. Fields is currently serving 15-years for carjacking and life on the accompanying 924(c).

   2. Mr. Fields has filed a RULE 60(b) and/or motion for C.O.A that 'Relates Back' with evidence and proof of innocence.

   3. Mr. Fields also filed a RULE 48(a) proposal for the government to consider,

1

the Court to appoint Mrs. Patti and Mrs. Giles for several reasons.

(A). Mrs. Patti and Mrs. Giles were Mr. Fields' counsel of record in Mr. Fields' last appearance in this Court in April 2021

(B) Mr Fields harbor debilitating trust issues with defense attorneys but he, Mrs. Patti and Mrs. Giles have a great working relationship.

(C). If and when the Government decide to sign the Rule 48 (a) proposal having attorney's will work to the Courts advantage.

(D) And even if the Government don't sign the Rule 48 (a) proposal Ms. Patti and Ms. Giles are better equipped to represent Mr. Fields moving forward with the RULE 60 motion, and/or C.O.A. petition

(E) Mr. Fields, has no funds to retain counsel and has been in the Federal System for 24 years. Mr. Fields was appointed Counsel in the Federal System because of his indigence. Mr. Fields still remains in the in forma Pauperis Status and request counsel.

2

WHEREFORE based on the above, Mr. Fields urges this Honorable Court to appoint counsel to represent him on the entitled action.

Respectfully Submitted on this 9 day of June 2025.

Sherman Fields

Sherman Fields

#15651-180

USP LEE

P.O. Box 305

Jonesville, VA

24263

Florence Italia Patti
Attorney At Law
italia_patti@fd.org
cell phone #317.713-6129
office # 317-383-3520

Jean Biles
Attorney At Law
Jean_Biles@fd.org
cell phone #405-831-4281
office # 317-383-3520

3

IN THE UNITED STATES COURT
OF APPEALS FOR THE FIFTH CIRCUIT

UNITED STATES OF AMERICA

v.                                    USDC No. 6:01-CR-164-1
                                      No. 25-50368

SHERMAN L. FIELDS

GOVERNMENT'S [PROPOSAL] MOTION TO DISMISS THE
CRIMINAL INFORMATION AGAINST SHERMAN L. FIELDS

The United States of America hereby moves to dismiss with prejudice the criminal information filed against Sherman L Fields pursuant to RULE of Criminal Proceduce 48(a). The goverement has determined, pursuant to the Principles of Federal Prosecution and based on an extensive review and careful consideration of the facts and circumstances, that continued prosecution of this case would not serve the interests of Justice.

Mr. Fields was found guilty (although he has always maintained his innocence) - to carjacking and Using and carrying a firearm during the commission of Carjacking [amongst other charges] Carjacking and the accompanying 924(c) conviction, however, requires Due Process. U.S. Const. Amend's v and xiv; Pinkerton v. Farr, ul. Va., 220 S.E. 2d 682, 687. Due Process is an essential element of any conviction. Due Process, moreover, requires more than the right to be heard;

1

it requires "fundamental fairness" sans arbitrary, unreasonable and capricious actions. County of Sacramento v. Lewis, 523 U.S. 833, 846-847, 118 S.Ct. 1708, 140 L.Ed. 2d 1043 (1998) (reiterating the due process prohibition on "executive abuse of power ... which shocks the conscience").

After a considered review of all the facts and circumstances of this case, including newly discovered and disclosed information appended to Mr. Fields' supplemental pleadings, the Government has concluded that the conviction of Mr. Fields was untethered to, and unjustified by, the Jury's verdict.

The Government is not persuaded that the Statement(s) Ms. Tammy Edwards gave over the two year period prior to trial was truthful, rendering her trial testimony false, as well. Furthermore the Government is not persuaded that Detective Steve January's statement[s] about there being "No fingerprints", was truthful as well. Moreover, we do not believe that the Government can prove at this point, after considering "all the facts and evidence" that a carjacking even occurred.

"A determination to prosecute represents a policy Judgment that the fundamental interests of society require the application of federal criminal law to a particular set of circumstances ..." Justice Manual § 9-27.001. In the Government's assessment – mindful of the high burden to prove every element of an offense beyond a reasonable doubt, and that "government prosecutors have a duty to do Justice," United States v. Davis, 614 F. Supp. 2d 25, 37 (D.D.C. 2009) – continued prosecution of the [crimes] does

not serve a substantial federal interest.

Under the Principles of Federal Prosecution, the Government should not prosecute a defendant "unless the attorney for the government believes that the admissible evidence is sufficient to obtain and sustain a guilty verdict by an unbiased trier of fact." Justice Manual 9-27.220. "A determination to prosecute represents a policy Judgment that the fundamental interests of society require the application of federal criminal law to a particular set of circumstances..." Justice Manual 9-27.001. The particular circumstances of this case militate in favor of terminating the conviction[s]. Mr. Fields was found guilty of charge[s] in which the evidence now contradicts. Because the Government does not have a substantial federal interest in penalizing a defendant for a crime that it is not satisfied occurred and it does not believe it can prove beyond a reasonable doubt, the Government now moves to dismiss the conviction under RULE 48(a).

Federal Rule of Criminal Procedure 48(a) permits the Government, "with leave of court", to "dismiss an indictment, information or complaint." Fed R Crim P. 48(a). It is also "well established that the Government may move to dismiss "even after a complaint has turned into a conviction." United States v. Hector, 577 F.3d 1099 (9th Cir. 2009) (collecting cases); see also Rinaldi v. United States, 434 U.S. 22, 31 (finding an abuse of discretion to refuse to grant post-conviction Rule 48(a) motion).

When the Government so moves, the role for courts addressing Rule 48(a) motions is "narrow" and

circumscribed. United States v. Fokker Secus., B.v., 818 F.3d 733, 742 (D.C. cir. 2016). The "leave of court" provision serves "primarily to guard against the prospect that dismissal is part of a scheme of 'prosecutorial harassment' of the defendant" through repeated prosecutions — a prospect not implicated here, as noted, a motion to dismiss with prejudice. Id (citing Rinaldi, 434 U.S. at 29 n.15); see also In re United States, 345 F.3d 450, 453 (7th cir. 2003) (no such concerns where "[T]he government wants to dismiss the civil rights count with prejudice, and that is what [the defendant] wants as well").

The discretion accorded the DOJ under Rule 48 (a) recognizes that "decisions to dismiss [ ] charges ... lie squarely within the ken of prosecutorial discretion" and " 'at the core of the Executive's duty to see to the faithful execution of the laws.' " Fokker Secus., 818 F.3d at 741 (citation omitted); see also United States v. Nixon, 418 U.S. 683, 693 (1974) ("[T]he Executive Branch has exclusive authority and absolute discretion to decide whether to prosecute a case.") As the Supreme Court has explained, the factors relevant to carrying forward with a prosecution, including "the strength of the case, the prosecution's general deterrence value, the Government's enforcement priorities, and the case's relationship to the Government's overall enforcement plan," are "particularly ill-suited to judicial review." Wayte v. United States, 470 U.S. 598, 607 (1985).

For these reasons, a court should not deny the Government's motion to dismiss. Nor should a court second-guess the Government's conclusion that additional

prosecution or punishment would not serve the public interest." Id. at 743; see also In re United States, 345 F.3d at 453 ("we are unaware ... of any appellate decision that actually upholds a denial of a motion to dismiss a charge" on grounds that dismissal would not serve the "public interest.")

"The advocacy function of a prosecutor includes seeking exoneration and confessing error to correct an erroneous conviction." Mooney v. Monroe Cty., 587 F.3d 113, 125 (7d Cir 2009). So in the final analysis, irrespective of Mr. Fields' conviction, "prosecutors have a duty to do Justice." Davis, 614 F. Supp. 2d at 37; see also Marshall v. Jerrico, Inc., 446 U.S. 238, 249 (1980) (" Prosecutors are also public officials; they too must serve the public interest.") (citation omitted). Federal prosecutors possess "immense power to strike at citizens, not with mere individual strength, but with all the force of government itself." Robert H. Jackson, The Federal Prosecutor, 24 Judicature 18, 18 (1940) (address delivered at the Second Annual Conference of United States Attorneys, April 1, 1940). For that reason, "the citizens safety lies in the prosecutor who ... seeks truth and not victims, who serves the law and not factional purposes, and who approaches [the] task with humility." Id. Based on a careful assessment of the balance of proof, the equities and the federal interest served by continued prosecution of a carJacking that most likely never occurred, the Government has concluded that the evidence is insufficient to prove its case beyond a reasonable doubt. The Government

therefore moves to dismiss the conviction under Rule 48(a).

CONCLUSION

The Government respectfully moves under Rule 48(a) to dismiss the conviction against Mr Fields.

Respectfully Submitted

ZACHARY CARL RICHTER

By: _____

United States Attorney's Office
Western District of Texas
903 San Jacinto
Suite 334
Austin, Tx 78701
(512) 370-1254
Fax: (202) 916-5854
Email: Zachary.C.Richter@usdoj.gov